# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, *et. al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD TRUMP, *et. al.*, <br><br> Defendants, | No. 1:17-CV-5228 |

**Declaration of Alan Essig, Meg Wiehe, and Misha Hill**

We, Alan Essig, Meg Wiehe, and Misha Hill declare as follows:

1. We are tax policy experts working for the Institute on Taxation and Economic Policy (ITEP). ITEP is a non-profit, nonpartisan research organization that provides in-depth analyses on the effects of federal, state, and local tax policies. ITEP's mission is to ensure the nation has a fair and sustainable tax system that raises enough revenue to fund our common priorities, including education, health care, infrastructure and public safety. ITEP researchers use a tax incidence model to produce distributional and revenue analyses of current tax systems and proposed changes at the federal, state, and local level.

    a. Alan Essig has been the Executive Director of ITEP since April 2017. He holds a master's degree from the Nelson A. Rockefeller College of Public Affairs and Policy at the State University of New York at Albany and an undergraduate degree from the State University of New York at Buffalo.

    b. Meg Wiehe is the Deputy Director of ITEP. She has worked with ITEP since 2010. Meg is nationally recognized expert on state and local taxation. She studies, writes and provides commentary and insight to a wide range of audiences on historical and current trends in state tax and budget policy. In particular, her analyses focus both on how tax and budget policies affect low- and moderate-income families as well as the intersection of fiscal policies and state and local governments' ability to fund basic public priorities, including education, infrastructure and health care. Meg has conducted hundreds of revenue and distributional analyses of proposed tax changes in more than 40 states using ITEP's microsimulation tax model. She also is a lead author of ITEP's flagship report, *Who Pays? A Distributional Analysis of the Tax Systems in All Fifty States.* Meg holds a Master of Public Administration from the Maxwell School at Syracuse University and a Bachelor of Arts in Anthropology from the University of Virginia.

  c. Misha Hill has been a State Policy Fellow at ITEP since 2016. She holds a Master of Public Policy from The George Washington University and Bachelor of Arts in Hispanic Studies from the University of Pennsylvania.

2. According to U.S. Citizenship and Immigration Services (USCIS), the agency that administers Deferred Action for Childhood Arrivals (DACA), as of the second quarter of March 31, 2017 over 880,000 young people who were brought to the United States as children without documentation are currently enrolled in DACA.[1] The Migration Policy Institute, a non-profit, non-partisan think tank that analyzes the movement of people worldwide, estimates an additional 450,000 individuals are eligible for DACA but not currently enrolled.[2]

3. We used the above estimates of the current population receiving and eligible for but not receiving Deferred Action for Childhood Arrivals (DACA) in each state to estimate the annual aggregate state and local tax contributions of the DACA-eligible population.

4. Young undocumented immigrants eligible for or enrolled in DACA, like all people living and working in the U.S., pay state and local income, property, sales, and excise taxes. We estimate that the total DACA-eligible population contributes more than $2 billion annually in state and local taxes. $1.6 billion of that is from the population currently enrolled in DACA. The following assumptions were made to calculate the sales and excise, income, and property taxes of the DACA-eligible population:

  a. Taxpaying units and employment status:

    i. ITEP's analysis treats each DACA-eligible immigrant who is working as a single taxpaying unit.

    ii. The employment rate of immigrants depends on legal status

---

[1] Deferred Action for Childhood Arrivals Process (Through Fiscal Year 2017, 2nd Qtr). Available at: https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/daca_performancedata_fy2017_qtr2.pdf

[2] Migration Policy Institute, "Deferred Action for Childhood Arrivals (DACA) Data Tools." Availablehttp://www.migrationpolicy.org/programs/data-hub/deferred-action-childhood-arrivals-daca-profiles#overlay-context=events

DECLARATION OF ALAN ESSIG, MEG WIEHE, AND MISHA HILL

   iii. 2016 national survey of 1,308 DACA recipients found that 87 percent of respondents were employed.[3] DACA enrollees pay the same income taxes (in states with income taxes) as other lawfully present individuals. DACA enrollees receive a temporary social security number which allows them to file federal and state income taxes and, additionally payroll taxes are deducted from their paychecks.

   iv. The previously mentioned national survey also found that prior to obtaining DACA only 51% of survey respondents were employed. Our analysis assumes that 51% of the population that is eligible for DACA but not currently enrolled are employed.

 b. Income of DACA-eligible population

   i. Immigrant wages change depending on legal status. Undocumented workers earn $22,029 a year on average and granting DACA status increases wages by 8.5 percent, according to a 2014 report by the Center for American Progress. The average wages applied to the estimated DACA working population in ITEP's analysis are:

- $23,901 for the DACA-eligible population working and enrolled in the program.
- $22,029 for the DACA-eligible population working, but not enrolled in the program.

 c. Estimated effective tax rates (taxes as share of income) for sales, income, and property taxes paid by DACA-eligible population in each state.

   i. ITEP's microsimulation computer model is a sophisticated program that applies the state and local tax laws in each state (including sales, excise, income, and property tax laws) to a statistically valid database of tax returns to generate estimates of the effective tax rates paid by taxpayers

---

[3] "Results of Tom K. Wong, United We Dream, National Immigration Law Center, and Center for American Progress National Survey." Center for American Progress, https://cdn.americanprogressaction.org/content/uploads/2016/10/21111136/2016-daca_survey_draft_updated-FINAL2.pdf

DECLARATION OF ALAN ESSIG, MEG WIEHE, AND MISHA HILL
3

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

at various income levels under state and local tax law in place as of December 31, 2014. In January of 2015, ITEP released the 5th edition of *Who Pays?* which estimates the effect of the state and local tax laws as of January 2015 on taxpayers at 2012 income levels. This report applies effective tax rates calculated in the 2015 *Who Pays?* report to the DACA eligible population.

d. We estimate that the DACA-eligible population contributes $282 million in state and local income taxes annually.

   i. Eligible immigrants enrolled in DACA are required to pay personal income taxes using a temporary social security number. Thus, this study assumes the 740,400 DACA-enrolled workers are fully complying with state personal income taxes. Personal income tax effective rates in each state were applied accordingly. Various studies have estimated between 50 and 75 percent of undocumented immigrants currently pay personal income taxes predominantly using Individual Tax Identification (ITIN) numbers or with false social security numbers. This analysis assumes a 50 percent compliance rate for DACA-eligible immigrants who are not enrolled and applies 50 percent compliance if DACA protections are lost. Personal income tax effective rates in each state were applied to 50 percent of the estimated income.

   ii. Enrolled DACA recipients are eligible to receive the federal Earned Income Tax Credit (EITC) and the state versions of the credit as well, however state EITC benefits were not included in this study for two reasons: 1) all DACA-eligible workers are treated as single taxpaying units and 2) the average income of the enrolled DACA population is above the EITC income eligibility amounts for single workers. The impact of state EITCs was also left out of the other policy options given that DACA-eligible immigrants not enrolled in the program are ineligible for the credit.

e. We estimate the DACA-eligible population contributes $496 million annually in state and local property taxes. The DACA-eligible population pays property taxes either directly as homeowners, or indirectly through higher rents as tenants.
   i. The first step in calculating property taxes was to identify the share of DACA-eligible immigrants who are homeowners or renters in each state. This analysis used state-by-state data from the Migration Policy Institute to estimate homeownership rates for undocumented immigrants in each state. The ITEP model assumes that for renters, half of the cost of the property tax paid initially by owners of rental properties is passed through to renters.

f. We estimate the DACA-eligible population contributes $1.24 billion annually in state and local sales and excise taxes. The DACA-eligible population, like anyone purchasing goods or services, pays consumption taxes directly at the point of sale on taxable items.
   i. Sales and excise taxes are collected by retailers every time a purchase is made on a taxable good or service. It is reasonable to assume that DACA eligible immigrants pay sales and excise taxes at similar rates to U.S. citizens and legal immigrants with similar incomes thus the estimated rates in ITEP's *Who Pays?* for each state were applied to the various estimated DACA-eligible population incomes.

5. A useful way to compare taxes paid across income levels is the effective tax rate. This is the total of all taxes paid - income, property, and sales and excise - as a share of income. The DACA-eligible population pays an average effective tax rate of 8.9%. ITEP's 2015 report, *Who Pays: A Distributional Analysis of the Tax Systems in All Fifty States* found that the middle 20% of taxpayers pays on average an effective tax rate of 9.4%, and the top 1% of taxpayers pays just 5.4% of their income in taxes.[4] This

---

[4] Davis, Carl, et al. "Who Pays? A Distributional Analysis of the Tax Systems in All 50 States, 5th ed.", Institute on Taxation and Economic Policy, Jan. 2015, www.whopays.org.

DECLARATION OF ALAN ESSIG, MEG WIEHE, AND MISHA HILL
5

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

means the DACA-eligible population pays state and local taxes at a similar rate to middle income taxpayers across the country.

6. We also estimate that if DACA protections were lost the population would continue to contribute to state and local revenues, but at much lower levels. We estimate a total loss of $797 million in state and local tax revenues.

    a. DACA protections increase state and local tax contributions because they increase employment rates, increase average salaries, and increase the share paying state personal income taxes from 50 to 100 percent. Surveys of DACA recipients found that after receiving DACA protections respondents were employed at higher rates and earned higher wages. This is likely because the work authorizations and deferral from deportation provided by DACA allow recipients to better compete with legally present workers, pursue advanced degrees, and protects them from wage theft by unscrupulous employers. Thus, a loss of DACA protections would eliminate the revenue gained from the increased salaries DACA affords.

7. There are residents of every state that are eligible for or enrolled in DACA, which means every state revenue stream could be harmed by the loss of DACA protections. Some examples relevant to this case below:

    a. California is home to 379,000 DACA-eligible residents that contribute over $534 million annually in state and local taxes. If DACA protections were lost their contributions would decrease by $199 million to $334 million.

    b. 19,000 Massachusetts residents are eligible for or receiving DACA, and contributing $24 million in state and local taxes. If DACA protections were lost their contributions would decrease by $9 million to $15 million.

    c. 76,000 DACA-eligible individuals live in New York and contribute $140 million in state and local taxes. If DACA protections were lost their contributions would decrease by $55 million to $84 million

    d. And in Washington State 27,000 DACA-eligible persons contribute $51 million in state and local taxes. If DACA protections were lost their contributions would decrease by $19 million to $32 million.

8. For all the foregoing reasons, in our professional opinions rescinding DACA would reduce the state and local tax contributions of the population eligible for DACA by at least half. This would hamper state and local revenues and hurt their economies.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of our knowledge.

Respectfully submitted,

_____
Alan Essig

_____
Meg Wiehe

_____
Misha Hill

September 1, 2017

_____
Date