

**U.S. Department of Justice**
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530

September 29, 2017

**By ECF and Fax**
The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  *Batalla Vidal, et al., v. Baran, et al.*, 16-cv-4756 (NGG) (JO)
            *State of New York, et al., v. Donald Trump, et al.*, 17-cv-5228 (NGG) (JO)

Dear Judge Garaufis:

      Defendants respectfully seek relief from a portion of Magistrate Judge Orenstein's September 27, 2017 case-management and scheduling order, *Vidal* ECF No. 67 ("the Order"), in the above-captioned matters, which ordered discovery to proceed on an expedited schedule. As a threshold matter, Defendants maintain their objections (incorporated here by reference, *see generally* Defs.' Sept. 22, 2017 Ltr. re: Discovery, *Vidal* ECF No. 65) to (1) any discovery in these cases; (2) any discovery before the resolution of Defendants' forthcoming dispositive motions; and (3) any discovery before the production of the administrative record. In addition, Defendants object to Paragraph II(c) of the Order, which requires Defendants to produce a privilege log identifying all documents "considered within any component of the executive branch as part of the process of determining the policy and actions at issue in these actions," because it is beyond the authority of the Court and raises substantial separation-of-powers concerns. In addition to other objections, Defendants note at the outset that Paragraph II(c) of the Order imposes an impossible burden on them, as it requires Defendants and undefined Executive Branch entities to identify, collect, process, review, and create a privilege log for *all* privileged documents responsive to the Order, within the entire Executive Branch, by October 6, 2017—a mere nine calendar days after the issuance of the Order—or suffer waiver of all privileges as to those documents. *See* Order ¶ II(c).

      For these reasons, and as set forth in more detail below, Defendants respectfully request that the Court, at minimum, vacate Paragraph II(c) of the Order. Given the timing of the privilege waiver provision, Defendants also respectfully request that this objection be ruled upon as expeditiously as possible, to allow, if necessary, opportunity for the Solicitor General of the United States to consider pursing immediate mandamus relief from the U.S. Court of Appeals for the Second Circuit and, if immediate relief is sought, to seek it no earlier than October 3, 2017. For the same reason, Defendants also request that, if the requested relief is denied, the Court immediately stay the Order for a reasonable time to allow for the pursuit of meaningful appellate review.[1]

---

[1] Pursuant to the Local Rules and Federal Rule of Civil Procedure 72(a), Defendants are presenting this objection to the district court, rather than to the Magistrate Judge, in the first instance. *See, e.g.*, *McNamee v. Clemens*,

Subject to Defendants' continued objections, Defendants will continue to prepare a privilege log, to be produced on October 6, 2017, which identifies any privileged documents that were actually considered by the agency decision maker: Acting Secretary of Homeland Security Elaine C. Duke. *See, e.g.*, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) ("[R]eview is to be based on the full administrative record that was before the Secretary at the time he made his decision.").

## I. The Order

On September 27, 2017, Magistrate Judge Orenstein issued the Order, which was entered "over the defendants' objection." Order at 1. Paragraph II(c) of the Order provides:

> The privilege log to be produced by October 6, 2017, shall include a description of every document considered within any component of the executive branch as part of the process of determining the policy and actions at issue in these actions that are not being produced and as to which the defendants would assert a claim of privilege, regardless of whether the defendants deem such that record to be part of the official administrative record. Failure to describe a pertinent document in the privilege log due on October 6, 2017, will waive any later assertion of privilege absent a showing of good cause. *See* Loc. Civ. R. 26.2, 26.3.

Order ¶ II(c). At the time the Order was issued—and to this day—there were no outstanding requests for the production of documents. The Order therefore cannot be based on any rationale pertaining to discovery, even assuming that discovery should be permitted at all in these challenges to allegedly unlawful agency action. And Plaintiffs have never sought any relief as broad as that issued by the Order. *See Vidal* Pls.' Sept. 22, 2017 Ltr. re: Discovery, *Vidal* ECF No. 66, at 4 (requesting a privilege log identifying any documents withheld from the administrative record on the basis of privilege).

## II. Defendants' Objections to the Order

*a. The Order Raises Substantial Separation-of-Powers Concerns.* On its face, the Order applies not only to the primary agency defendant, the Department of Homeland Security ("DHS"), and the Acting Secretary of Homeland Security who issued the memorandum concerning the rescission of the DACA policy, but also to "any component of the executive branch." Order ¶ II(c). In addition to DHS (and some of its components), Plaintiffs have named the President and the Attorney General as Defendants. Plaintiffs have not, however, named any other Executive

---

2014 WL 1338720, at *2 n.4 (E.D.N.Y. Apr. 2, 2014). And because this matter "require[s] immediate attention," Defendants are filing this objection with the Court, in letter form, via ECF and fax. *See* Individual Rules of Judge Nicholas G. Garaufis § II.A. Before filing, undersigned counsel for Defendants contacted counsel for Plaintiffs by telephone and email to meet and confer. The *Vidal* plaintiffs noted that they "take no position on the defendants' exercising of their right to appeal section 2(c) of Judge Orenstein's order," but that they do "intend to oppose the content of that appeal." The *State of New York* plaintiffs noted that they "take no position with regard to DOJ's exercise of its right to appeal," and that they also "do not consent to the substance of DOJ's challenge to Part II(c)" of the Order.

2

Branch departments or agencies as defendants. Nonetheless, the Order requires Defendants to identify on a privilege log "every document considered within any component of the executive branch" that was "part of the process of determining the policy and actions at issue in these actions," *id.*, regardless of where those documents are actually located, and regardless of whether they were ever shared with any of the Defendants.

Applying the Order to White House documents, in particular, raises substantial separation-of-powers concerns. In addition to any other privileges that may apply, many of these documents are likely subject to a strong claim of executive privilege. Courts are charged with narrowing cases as much as possible before forcing consideration of executive privilege, but the Order requires such consideration immediately. *See Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 390 (2004) (lower court should "narrow . . . the scope of the subpoenas" prior to requiring consideration of executive privilege). As the Supreme Court has held, resort to mandamus may be appropriate in response to discovery of this sort—including before the Executive Branch is actually forced to assert specific privilege claims—because "[o]nce executive privilege is asserted, coequal branches of the Government are set on a collision course" and "[t]he Judiciary is forced into the difficult task of balancing the need for information in a judicial proceeding and the Executive's Article II prerogatives." *Id.* at 389; *see also id.* at 385 (discovery directed to the White House raises "special considerations" regarding "the Executive Branch's interests in maintaining the autonomy of its office" and "the high respect that is owed to the office of the Chief Executive"). The *Cheney* Court specifically rejected the contention that the White House could sufficiently protect itself against intrusive discovery through individual privilege assertions. *Id.* at 390.

The Order also applies, on its face, to senior leadership offices within DHS and the Department of Justice. Discovery targeted at senior, cabinet-level officials and their leadership staff is highly disfavored. *See, e.g.*, *Nat'l Nutritional Foods Ass'n v. FDA*, 491 F.2d 1141, 1145 (2d Cir. 1974) (Friendly, J.) ("It is hardly necessary to say that when a decision has been made by the Secretary of the Interior, courts will not entertain an inquiry as to the extent of his investigation and knowledge of the points decided, or as to the methods by which he reached his determination.").[2]

Based on these separation-of-powers concerns alone, Paragraph II(c) of the Order should be vacated.

**b.     *The Order is Impermissibly Vague, Improperly Defines the Scope of the Administrative Record, and Impermissibly Requires the Logging of Privileged Documents Outside the Scope of Any Record.*** The Order, which in effect is a discovery request issued by the court, is also impermissibly vague. Under threat of sanctions for non-compliance, *see* Order ¶ V(a), and waiver of privilege over any omitted documents, *see id.* ¶ II(c), the Order requires an immediate assertion of privilege over any documents considered "as part of the process of determining the policy and actions at issue in these actions," *id.*

---

[2] Based on the allegations in the complaints, Defendants presume that the Order, at a minimum, was intended to apply to DHS, DOJ, and the White House. But its text sweeps far broader—*all* Executive Branch agencies risk waiver of privilege over any records relating to "the policy and actions at issue in these actions," Order ¶ II(c), unless they unerringly perform in a nine-day sprint to compile this Executive-Branch-wide privilege log.

At the outset, the *State of New York* plaintiffs have not yet even filed their operative complaint, making it impossible to identify what is "at issue in these actions" with the sort of clarity and specificity required for Defendants and their counsel to ensure that they do not inadvertently run afoul of the Order and thus risk sanctions or waiver. More fundamentally, the phrase "as part of the process of determining the policy and actions at issue," *id.*, is inherently vague, particularly when paired with the explicit warning in the Order that its scope is not limited to anything resembling a traditional administrative record. To the contrary, the Order expressly applies to documents "regardless of whether the defendants deem such that record to be part of the official administrative record." *Id.*

The Order also fails to recognize that the scope of the administrative record must be bounded by the proper scope of administrative review. It is well-settled that agency action is to be judged only on the basis of the agency's stated reasons for its decision. *See, e.g.*, *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943); *see also Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."); *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169 (1962). It is "not the function of the court to probe the mental processes" of the agency. *United States v. Morgan*, 304 U.S. 1, 18 (1938) ("*Morgan I*"). "Just as a judge cannot be subjected to such a scrutiny . . . so the integrity of the administrative process must be equally respected." *United States v. Morgan*, 313 U.S. 409, 422 (1941) ("*Morgan II*"). Accordingly, "such inquiry into the mental processes of administrative decisionmakers is usually to be avoided." *Overton Park*, 401 U.S. at 420. Where, as here, administrative determinations and reasons are provided at the time of the decision, "there must be a strong showing of bad faith or improper behavior before such inquiry may be made." *Id.* No such determination of bad faith or improper behavior has been made here.

For many of these same reasons, inquiry into privilege is generally unnecessary in the context of a record-review case. Here, however, the Order requires the identification of privileged documents on a log in connection with the filing of the administrative record, even though a properly constructed administrative record does not include privileged documents. *See San Luis Obispo Mothers for Peace v. NRC*, 789 F.2d 26, 44-45 (D.C. Cir. 1986) (*en banc*) (refusing to supplement the record to consider transcripts of agency proceedings protected by the deliberative-process privilege); *Town of Norfolk v. Army Corps of Eng'rs*, 968 F.2d 1438, 1455-58 (1st Cir. 1992) (upholding exclusion of documents from administrative record on attorney-client and deliberative-process privilege grounds); *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 312-13 (S.D.N.Y. 2012) ("[C]ourts have consistently recognized that, for the purpose of judicial review of agency action, deliberative materials antecedent to the agency's decision fall outside the administrative record.").

For that reason, agencies need not (and generally do not) produce any privilege log at all with an administrative record. *See, e.g.*, *Great Am. Ins. Co. v. United States*, No. 12-9718, 2013 WL 4506929, at *8 (N.D. Ill. Aug. 23, 2013) ("The law is clear: [since] predecisional and deliberative documents are not part of the administrative record to begin with, . . . they do not need to be logged as withheld from the administrative record."). And it is certainly not required that the agency log *all* privileged documents within the scope of Paragraph II(c) of the Order, "regardless of whether the defendants deem such that record to be part of the official administrative record." Order ¶ II(c). Such an order upends the presumption of regularity that typically applies

4

to the question of whether an administrative record has been properly compiled. *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993) ("The court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary."); *Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. 2d at 309 (same).

   *c.* ***It is Impossible for Defendants to Comply with the Order.*** It is impossible for Defendants to comply with the Order on a nine-day timeline. The Order applies to every component of the Executive Branch. And even if it were limited to DHS (including its components), the Department of Justice, and the White House, and even assuming that Defendants could overcome the vagueness problems detailed above, compliance would require, at an absolute minimum: (1) the identification of custodians likely to possess responsive records; (2) the retrieval (in a forensically sound manner) of potentially responsive records; (3) the processing of those records on an electronic-review platform; (4) document-by-document, line-by-line review of individual records for responsiveness; (5) the identification of any applicable privileges (including, where applicable, coordination with other agencies and the White House to ascertain whether and under what circumstances privilege should be asserted); and (6) the creation of a privilege log consistent with this Court's Local Rules. It is simply not possible for all of this to take place before October 6th. Nor could Defendants have been reasonably on notice of such an obligation before the Order was issued, given that the Order extends far beyond the scope of an administrative record, because it extends to privileged documents and to records never considered by the actual agency decision maker. *See Overton Park*, 401 U.S. at 420; *San Luis Obispo*, 789 F.2d at 44-45. Ordering the impossible is an abuse of discretion. *Am. Hosp. Ass'n v. Price*, 867 F.3d 160, 166 (D.C. Cir. 2017).

   *d.* ***Additional Fundamental Flaws With These Lawsuits.*** There are other fundamental flaws with the Order that derive from proceeding into expedited discovery prior to considering threshold dismissal arguments that would be dispositive, as Defendants argued in their recent letter to Magistrate Judge Orenstein. *See* Defs.' Sept. 22, 2017 Ltr. re: Discovery.

   First, like the original DACA policy itself, its rescission is an exercise of "prosecutorial discretion" that is "a special province of the Executive," and "'[t]his broad discretion . . . rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489-90 (1999) ("*AAADC*") (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)). That is true even in the face of allegations of unequal treatment in its exercise. *Id.* at 487-89 (rejecting argument that plaintiffs entitled to "factual development for their claim," explaining that "an alien unlawfully in this country has no constitutional right to assert [a] selective enforcement" claim); *United States v. Armstrong*, 517 U.S. 456, 463-65 (1996) (must be "clear evidence," including evidence relating to others similarly situated who are treated more favorably, to displace presumption prosecutor acted with proper motive); *AAADC*, 525 U.S. at 489 (citing *Armstrong*, and explaining that "[t]hese concerns are greatly magnified in the deportation context").

   Second, these claims are barred by 8 U.S.C. § 1252(g), which specifies that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision

or action by the Attorney General [now Secretary]³ to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." In interpreting that language, the Supreme Court specifically explained that this statute "was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *AAADC*, 525 U.S. at 485 n.9. The statute was "clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed" through individual removal proceedings and judicial review thereof. *Id.* at 485.

Third, review of an administrative decision is to be made on the administrative record. 5 U.S.C. § 706; *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997). Here, the record has not yet been compiled, and agencies are accorded a strong presumption of regularity in compiling the record, and it is to be supplemented only if there are "gross procedural deficiencies—such as where the administrative record itself is so deficient as to preclude effective review," *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013), or upon a "strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers," *Hoffman*, 132 F.3d at 14. No such showing has been made.

\* \* \*

The Order in question amounts to an improper discovery request from the court that is an abuse of discretion and is manifestly unjust. Defendants therefore ask that it be vacated promptly. Should the Court deny that request, Defendants' respectfully request that the Court grant a stay of the order, so that Defendants have a meaningful opportunity to seek appellate review, and can avoid risking privilege waiver, sanctions, or contempt.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BRIDGET M. ROHDE
Acting United States Attorney

BRETT M. SHUMATE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS

---

³ *See* 6 U.S.C. § 557 ("[A]fter the effective date of this chapter, reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary."); *Elgharib v. Napolitano*, 600 F.3d 597, 606-07 (6th Cir. 2010) ("When Congress passed the Homeland Security Act of 2002, it transferred to DHS authority over all functions that the former Immigration Naturalization Service ('INS') or its officers previously carried out. This legislation effectively replaced all statutory references to the INS or its officers with references to the applicable DHS official. Thus, under 6 U.S.C. § 557, references in federal law to any agency or officer whose functions have been transferred to DHS shall be deemed to refer to the Secretary of DHS or other official or component to which the functions were transferred.") (internal citations and quotation marks omitted).

Director, Federal Programs Branch

JOHN R. TYLER
Assistant Branch Director

BRAD P. ROSENBERG
Senior Trial Counsel

*/s/ Stephen M. Pezzi*
STEPHEN M. PEZZI (D.C. Bar #995500)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel.:  (202) 305-8576
Fax:  (202) 616-8470
Email:  stephen.pezzi@usdoj.gov

JOSEPH A. MARUTOLLO
Assistant U.S. Attorney
United States Attorney's Office
Eastern District of New York
271-A Cadman Plaza East, 7th Floor
Brooklyn, NY  11201
Tel:  (718) 254-6288
Fax:  (718) 254-7489
Email:  joseph.marutollo@usdoj.gov

*Counsel for Defendants*

CC:

The Honorable James Orenstein
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201