

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

ERIC T. SCHNEIDERMAN
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CIVIL RIGHTS BUREAU
LOURDES M. ROSADO, BUREAU CHIEF

October 3, 2017

**VIA ECF & HAND DELIVERY**

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *State of New York, et al. v. Donald Trump, et al.,* 17-cv-5228 (NGG) (JO)
*Batalla Vidal, et al., v. Baran, et al*., 16-cv-4756 (NGG) (JO)

Dear Judge Garaufis:

Plaintiff States in the above-captioned matter respectfully submit this response in opposition to Defendants' objections (ECF No. 48) ("Objections") to Magistrate Judge Orenstein's September 27, 2017 case management and scheduling order (ECF No. 46) (the "Order"). Defendants specifically request that this Court vacate Part II(c) of the Order, which directs Defendants to produce a privilege log concurrent with their production of the administrative record on October 6, 2017. In support, Defendants erroneously argue that Part II(c) is vague, overly broad in scope, and unduly burdensome in the allotted timeframe; that the Court is without authority to order the production of a privilege log of those documents that Defendants withhold in their production of the administrative record; and that an order to produce a privilege log raises separation of power concerns.[1] As set forth in greater detail below, neither governing law nor practical considerations warrant the vacating of Part II(c) the Order on any of the grounds asserted by Defendants.[2]

---

[1] Defendants also incorporated by reference objections raised in their letter of September 22, 2017, *Vidal* (ECF 65) to any discovery in these matters and, in the alternative, to any discovery before resolution of their forthcoming dispositive motions or their production of the administrative record. (ECF 48 at 1.) Plaintiff States herein limit their argument to Defendants' specific objection to Part II(c) of the Order, and do not waive any arguments in opposition to the objections previously raised by Defendants in their September 22, 2017 letter.

[2] Defendants argue that there are "additional fundamental flaws with these lawsuits." (ECF 48 at 5.) Plaintiff States respectfully submit that those arguments are properly raised in a dispositive motion such as a motion to dismiss; the Court has instructed the parties to submit dispositive motions by December 15, 2017, at which time the Court will consider such arguments. (Tr. at 36:23-37:8.)

**Factual Background**

On September 26, 2017, Judges Garaufis and Orenstein held a status conference to address, *inter alia*, a discovery schedule for these matters. This included a discussion of Defendants' obligation to produce an administrative record, because the Plaintiff States and *Vidal* Plaintiffs (together, "Plaintiffs") both alleged violations of the Administrative Procedure Act ("APA"). (ECF 1 ¶¶ 281-284-293). When asked by the Court "what administrative record" would be produced, Defendants' counsel stated that, "the administrative records will contain all of the documents that were relied upon by the [Acting Secretary of Homeland Security], Elaine Duke, when she rescinded the memorandum." (Tr. at 17: 11-15.) Defendants' counsel further stated that, "to the extent materials other than Department of the Homeland Security materials were considered by the decision maker and to the extent the materials were not privileged, they will be included." (Tr. at 17:25-18.) However, as Defendants had represented in an earlier pre-motion conference,[3] the decision to terminate DACA was made jointly by the Acting Secretary of Homeland Security and Attorney General Sessions. Thus, Plaintiffs' counsel clarified at the September 26th status conference that the administrative record also must include records that the Attorney General relied on in reaching his decision that the program must be terminated because it is allegedly unlawful. (Tr. at 23:13-17, 25:16-20.)

Defendants' counsel objected to producing a privilege log, stating that "privileged documents are not part of the administrative record" (Tr. at 20; 15-16), and that Defendants' "preference would be a privilege log [that] could be compiled at the end of the document production." (Tr. at 22: 16-18.) The Court specifically asked Defendants' counsel "[w]ho here representing the government is familiar with the administrative record that will have to be produced?" (Tr. at 21: 19-21). Defendants' counsel replied that they were "not yet in a position to make clear representations" regarding "any specific content" in the administrative record (Tr. 17:20-22), as it was still being compiled by agency representatives (Tr. 21:22-24). At the close of the conference, Judge Orenstein stated, "[i]f there are records, there's information that was considered in the decision making process, whether or not you [Defendants' counsel] believe it to be part of the record, … [i]f there are such records that exist and are not being included in the administrative record based on a claim of privilege, I expect there to be concurrent with the service of the record a privilege log that conforms to local rules." (Tr. at 29:12-19.)

On September 27, 2017, Judge Orenstein entered the Order directing Defendants to, among other things, produce the administrative record and privilege log by October 6, 2017. On September 28, 2017, Defendants requested a conference call with Plaintiffs to discuss an unspecified matter. A conference call was set for the following day, September 29, 2017, at 2 PM. On that call, Defendants informed Plaintiffs of their intent to file—at 5 PM that same day—a request that the Court vacate Part II(c) of the Order. Notably, Defendants did not ask if Plaintiffs would agree to additional time for the production of the privilege log, or indicate that Defendants sought clarification of the scope of the Order. Instead, Defendants simply requested Plaintiffs' position on Defendants' request that the Court vacate Part II(c) of the Order.

---

[3] *See, e.g.*, *Batalla Vidal v. Baran*, 16-cv-4756, Tr. of Sept. 14, 2017 Pre-Motion Conf. at 13:17-20, 24:21-24 and 26:2-3.

## Argument

**I.    Defendants' Request to Vacate Part II(c) of the Order is Premature and Unsupported.**

As noted in the Factual Background *supra*, Defendants did not meaningfully confer with counsel prior to filing their objections, in violation of the Order, Local Rule 37.3(a), and Federal Rule of Civil Procedure 37(a)(1). Defendants also argued that Part II(c) should be vacated because it is "impossible" for them to produce the privilege log by October 6, 2017. This argument is without merit because, pursuant to the court's order, Defendants could have sought modification of the October 6th deadline for good cause shown. Order at Part II(c). However, Defendants did not request such of the court, nor did Defendants ask Plaintiffs whether they would be amenable to an extension for good cause. Defendants' position that it is "impossible" to produce the log by October 6th is premised on the erroneous assumption that the log must cover a much wider range of documents than are actually subject to the Order. *See* note 6 infra. Plaintiff States also note that the expedited discovery schedule is only necessary because Defendants themselves have chosen to terminate the DACA program on March 5, 2018.

Moreover, this motion is premature because it assumes, without any evidence whatsoever, that some number of documents might be subject to unidentified privileges that Defendants seek to exercise. Defendants present no evidence that they have exercised due diligence in compiling and reviewing the record, or that they have actually identified documents that they believe are subject to privilege. Indeed, as of September 26th, three days before they filed the instant objections, Defendants' counsel stated that they were make any clear representations about the content of the administrative record. *See* Factual Background *supra*. Unless and until counsel for Defendants represents that they have reviewed the record and that they wish to resist the application of Part II(c) of the Order based on the information they have reviewed, there is no basis for the court to credit their complaints of burden, much less evaluate the application of particular legal arguments.

**II.    Section II(c) of the Order Clearly Sets Forth Defendants' Production Obligations in Accordance with Applicable Law.**

Part II (c) of the Order directs Defendants to log "every document considered within any component of the executive branch as part of the process of determining the policy and actions at issue in these actions that are not being produced and as to which the defendants would assert a claim of privilege, regardless of whether the defendants deem such that record to be part of the official administrative record." (ECF 46 at 2.) In their objections, Defendants mischaracterize this instruction as "vague" and "not limited to anything resembling a traditional administrative record." (ECF 48 at 3-4.)  This argument is wholly belied by the APA's language and relevant case law. The APA requires that courts evaluating APA claims "shall review the <u>whole</u> record or those parts of it cited by a party." 5 U.S.C. § 706 (emphasis added). Accordingly, "the agency must produce a complete and true record for the court to review." *New York v. Salazar*, 701 F. Supp.2d 224, 235 (N.D.N.Y. 2010) (internal citations omitted); *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ('To review less than the full administrative record might allow a party to withhold evidence unfavorable to its case, and so the APA requires review of 'the whole record.'"). Like Judge Orenstein, courts routinely describe a "complete" administrative record as

comprising "all" materials that the agency "directly or indirectly considered" in rendering its decision. *See, e.g.*, *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 308 (S.D.N.Y. 2012) (stating administrative record includes materials "that the agency decision-makers directly or indirectly considered"); *Bimini Superfast Operations LLC v. Winkowski*, 994 F. Supp. 2d 103, 105 (D.D.C. 2014) ("So long as the agency considered the document, even if the agency considered it only indirectly and did not even rely on it in making its decision . . . that document is properly in the administrative record."); *Merritt Parkway Conservancy v. Mineta*, 424 F. Supp.2d 396, 403 (D. Conn. 2006) (citing *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993)) (A complete administrative record includes "all documents and materials directly or indirectly considered by the agency." ).

Thus, in order for Defendants to satisfy their obligation under the APA, they must review "every document" that the Departments of Homeland Security and Justice considered in reaching their joint decision to terminate DACA. Defendants are required to evaluate whether any materials should be withheld on privilege grounds or risk waiving the privilege, an evaluative process that is a routine part of record production. Rather than being vague or imposing non-traditional burdens, Part II(c) clearly defines Defendants' production obligation in the manner customarily used by courts nationwide. Courts in the Second Circuit and elsewhere have required parties to produce an "administrative record . . . accompanied by a privilege log." *Salazar*, 701 F. Supp.2d at 235; *see also Gill v. Dep't of Justice*, No. 14-cv-0120-RS(KAW), 2015 WL 9258075, at *7 (N.D. Cal. Dec. 18, 2015) (recognizing requirement that "parties withholding documents on the basis of the deliberative process privilege [must], at a minimum, substantiate those claims in a privilege log"); *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1276 n.10 (D. Colo. 2010) (instructing agency to provide privilege log along with administrative record "in order to allow meaningful review of any assertions of privilege"). These courts have found that, in order for plaintiffs to rebut the presumption of completeness that applies to administrative records, a privilege log must be provided to evaluate any certifications by defendant that the record contains all documents directly or indirectly considered by the agency in question. *Gill*, 2015 WL 9258075, at *5-7; *see also People of the State of Cal. ex rel. Lockyer v. U.S. Dep't of Agriculture*, Nos. 05-03508 EDL & C05-04038 EDL, 2006 WL 708914 (N.D. Cal. Mar. 16, 2006) (ordering defendants to provide log if withholding documents on the basis of privilege).

Courts in this Circuit have concluded that the deliberative process privilege is a qualified privilege and therefore one that the invoking party has the burden of proving. *E.g., Mary Imogene Bassett Hosp. v. Sullivan*, 136 F.R.D. 42, 44 (N.D.N.Y. 1991). Moreover, "the claim of privilege must be lodged by the head of the agency, or by a high-level subordinate/delegate . . . 'after personal consideration of the allegedly privileged nature of the information.'" *Id.* (citing *Mobil Oil Corp. v. Dep't of Energy*, 520 F.Supp. 414, 416 (N.D.N.Y.1981), *rev'd on other grounds*, 659 F.2d 150 (TECA), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981). Additionally, the claim of privilege "must specifically designate and describe the information that is purportedly privileged." *Mary Imogene Bassett Hosp.*, 136 F.R.D. at 44. Finally, the agency must provide "'precise and certain' reasons for preserving the confidentiality of the requested information." *Id.* (citation omitted).[4]

---

[4] Other courts have found that the agency subject to an APA claim where its decision-making process was not at issue was not required to provide a privilege log with its production of the administrative record. *See, e.g., Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health and Human Servs.*, 631 F.Supp.2d 23, 27 (D.D.C. 2009)

Thus, the court was well within its authority to order Defendants to produce a privilege log concurrent with their production of the administrative record.

## III. Plaintiff States Are Not Required to Prove Bad Faith to Obtain a Complete Administrative Record.

Defendants are incorrect in asserting that Plaintiff States must prove bad faith on the part of the decision makers who terminated DACA in order to obtain the full administrative record. Instead, the case law demonstrates that it is enough that Plaintiff States have alleged that the agencies' subjective motivation in the decision-making process is at issue.[5]

As discussed above, the default rule in APA cases requires agencies to produce the "whole" administrative record. Where certain privileges apply, *i.e.* attorney-client or work-product, an agency may withhold those items from the administrative record. *Salazar*, 701 F. Supp.2d at 236. For example, in claims that solely challenge agency action as arbitrary and capricious, agencies routinely invoke the deliberative process privilege to shield materials that are "pre-decisional" and "part of the deliberative process" from disclosure. *Id.* at 237. However, when the agency's "decision-making process itself is the subject of litigation," rather than only the final agency action, the deliberative process privilege "evaporates" and those documents are properly included in the administrative record. *See id.* at 236 (recognizing that only "privileged materials" may be excluded from the administrative record). "The burden of establishing that a document falls within the parameters of the privilege rests with the government." *Citizens Against Casino Gambling in Erie Cty. v. Stevens*, 814 F. Supp.2d 261, 266 (W.D.N.Y. 2011).

Here, Plaintiff States' Equal Protection Claim alleges that DACA's termination is unconstitutional because it "was motivated, at least in part, by a discriminatory motive and/or a desire to harm a particular group." (ECF 1 ¶ 272.) The Plaintiff States' APA claim challenges the decision to terminate DACA as arbitrary and capricious because it stemmed, in part, from unconstitutional motives. (*Id.* ¶ 282.) Because the decision-making process is at the heart of this case, Defendants should not be permitted to withhold documents on the basis of the deliberative process privilege or, at a minimum, they should be required to log any documents that they believe are subject to this privilege.

---

(explaining that in cases where the "actual subjective motivation of agency makers is immaterial" the "pre-decisional, deliberative documents are immaterial" and therefore can be properly excluded from the administrative record without being described in a privilege log). As discussed *infra*, here, the agencies' subjective motivation are highly material to the Plaintiff States' claims. Accordingly, that rationale is inapplicable. Moreover, this reasoning is not binding in the Second Circuit. Indeed, there is no binding precedent that prevents the Court from directing Defendants to produce a privilege log.

[5] Plaintiff States have alleged that the decision makers acted with improper motive, i.e., national origin animus, in terminating DACA. *See* ECF 1 at ¶¶ 239-252 (President Trump's Statement About Mexicans) and ¶¶ 255-262 (President Trump Rescinds DACA in Response to the Litigation Threats of a State Found To Have Discriminated Against Latinos/Hispanics Nine Times Since 2010). *And see Mhany Mgmt, Inc. v. Cty. of Nassau*, 819 F.3d 581, 606 (2d Cir. 2016) (holding that a plaintiff can establish a *prima facie* case of discrimination by demonstrating that animus against a protected group motivated, at least in part, the decision maker or those to whom the decision maker was responsive).

In arguing otherwise, Defendants conflate two distinct principles. The first principle states that court review of agency action must be restricted to the complete administrative record absent a showing of bad faith or improper behavior by the agency. *See Salazar*, 701 F. Supp. 2d at 240. Upon a showing of bad faith or improper behavior, a plaintiff may seek to supplement the administrative record with extra-record evidence that was "neither before the agency nor considered in the decision-making process." *Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Security*, No. ELH-16-1015, 2017 WL 3189446, at \*13 (D. Md. July 27, 2017) (internal citations omitted).  The second principle states that where the agency's "subjective motivation" in issuing its decision is central to the case, the deliberative process privilege is inapplicable and therefore pre-decisional and deliberative documents are appropriately deemed part of the administrative record. *Salazar*, 701 F. Supp. 2d at 238. In sum, the first principle relates to discovery of "extra-record" evidence while the second principle outlines the scope of the "administrative record."

Although Defendants' objections focus on the first principle, Plaintiff States have not sought, and Judge Orenstein has not ordered, the production of any extra-record evidence. Part II (c) of the Order solely involves the second principle—the scope of the administrative record. Courts do not require plaintiffs to demonstrate bad faith or improper motive simply to obtain a copy of the complete administrative record. As stated above, given Plaintiff States' claims, it is likely that a complete administrative record here includes deliberative materials that would be considered privileged in another matter.  Contrary to Defendants' assertions, that does not heighten Plaintiffs' burden; it merely expands the scope of record documents to which Plaintiffs are entitled. Accordingly, Defendants' objections on this ground fail.

## IV.    Section II(C) of the Order Directing Defendants to Produce a Privilege Log Concurrent with the Administrative Record Does Not Implicate Separation of Powers Concerns.

Even if, following their review, Defendants seek to claim that some group of documents is subject to executive privilege, Defendants nonetheless misstate the scope and application of that privilege. Defendants suggest that invoking the term "executive privilege" triggers an absolute bar to any further analysis, including through the production of a standard privilege log. As demonstrated *infra*, Defendants considerably overstate the case law.

The fact that a federal court's ordinary exercise of "its traditional Article III jurisdiction may significantly burden the time and attention of the Chief Executive is not sufficient to establish a violation of the Constitution" standing alone. *Clinton v. Jones*, 520 US. 681, 703 (1997). Moreover, it is well settled that "even the President is subject to judicial process in appropriate circumstances," and that "neither the doctrine of separation of powers, nor the need for confidentiality of high-level communications, without more, can sustain an absolute" presidential privilege against any and all judicial process. *Id.* at 703, 704 (quoting *United States v. Nixon*, 418 U.S. 683, 706 (1974)).

Defendants' reliance on *Cheney* v. *United States Dist. Court*, 542 U.S. 367 (2004) to argue that the order to produce a privilege log violates separation of powers is unavailing. In *Cheney*, the

Court considered whether documents sought pursuant to civil discovery requests served on the Vice President and other senior Government officials could be permissibly withheld. *Id.* at 372, 381-82. The Court concluded that nondisclosure was appropriate for reasons that do not arise on the facts of this case or at this juncture of the proceedings.

As a threshold matter, Cheney is inapposite here. *Cheney* dealt with the permissibility of discovery requests served by the plaintiffs directly on the Vice President, whereas here Defendants are required to produce the administrative record because Plaintiffs have alleged APA claims. *See* 5 U.S.C. 706 (2)(e) (implicitly creating administrative record requirement by providing that when legality of agency action is properly raised, "[t]he reviewing court shall [*inter alia*] hold unlawful and set aside agency action, findings, and conclusions found to be [among other possibilities] unsupported by substantial evidence in a case … reviewed on the record of an agency hearing provided by statute"). Second, the Court's exact admonition in *Cheney* is that "[s]pecial considerations control when the Executive's interests in maintaining its autonomy and safeguarding its communications' confidentiality are implicated." *Cheney*, 542 U.S. at 470. As stated previously, here the Departments of Homeland Security and Justice, as the DACA termination decision makers, are the agencies required to produce the administrative record and explain any privilege objections, not the Vice-President or the President.[6] Moreover, Defendants have not yet specified whether the privilege that might hypothetically arise is one that implicates the "autonomy" or "communications' confidentiality" of the Executive. This Court has no way to evaluate whether this is the privilege at issue, let alone whether the facts support its exercise.

Third, the *Cheney* Court particularly focused on whether, by withholding documents, defendants would impair the lower court's ability to carry out its Article III functions to resolve a "case or controversy." *Id.* at 383-86. There, the question before the court and to which the disputed discovery requests pertained was whether the cause of action under a certain federal statute could be brought against certain categories of individuals. That is, the judicial inquiry was whether a claim existed, not whether the claim was meritorious. *Id.* at 385. In this case, production of the administrative record is not needed to determine whether the States may bring an APA claim, but to assist the Court in making a substantive determination on Plaintiff States' claims. Defendants' objections, while clothed as separation of powers concerns, amount to an assertion of absolute privilege that effectively eliminates this Court's ability to carry out is essential duty to resolve cases and controversies. *Cf. United States v. Nixon*, 418 U.S. 683, 707 (1974) ("To read the Art. II

---

[6] Defendants point to language in the Order that refers to documents "considered within any component of the executive branch" as evidence that the Order is impermissibly broad and violates the separation of powers. (ECF 48 at 2 (*citing* Order, at Part II(c)).) However, this faulty argument ignores the fact that this phrase is qualified by the clause "as part of the process of determining the policy and action at issue in these actions…" (Order, at Part II(c).) Thus, by its terms, the Order does not require Defendants to produce a privilege log of any and all documents in any part of the executive branch that pertain to DACA termination that were withheld from production of the administrative record, but only those that were consulted by the decision makers. This correct reading of the Order is reinforced by the discussion at the September 26, 2017 status conference during which the *Batalla Vidal* Plaintiffs and the Plaintiff States pointed out—in response to counsel's assertion that the termination of DACA was solely the decision of the Department of Homeland Security (Tr. at 18: 22-23)—that the administrative record that must be produced included not only what was considered by the Acting Secretary of Homeland Security but what was reviewed by the Attorney General, as both officials made the decision to terminate DACA. *See* (Tr. at 23:13-17, 25: 16-20). Thus, the Order's language regarding "any component of the executive" is directed at ensuring that Defendants produce documents that were considered by all the decision makers.

powers of the President as providing an absolute privilege as against a subpoena essential to enforcement of criminal statutes on no more than a generalized claim of the public interest in confidentiality of nonmilitary and nondiplomatic discussions would upset the constitutional balance of 'a workable government' and gravely impair the role of the courts under Art. III.")

Finally, the discovery requests contested in *Cheney* "asked for everything under the sky"; they were impermissible because they were unbounded, broad inquiries into general activities and membership of a government entity, not any particular act or specific conduct.[7] The production requirement here is far more limited in scope. Plaintiff States are challenging one specific action, namely, the termination of the DACA program. ECF 1, *passim.* Plaintiff States seek production of an administrative record from the Departments of Homeland Security and Justice since they have identified themselves as decision makers with regard to the termination of the DACA program.

***

For these reasons, Plaintiff States respectfully request that the Court deny Defendants' request to vacate Part II(c) of the Order.

Respectfully submitted,

/s/Lourdes M. Rosado
Lourdes M. Rosado, Bureau Chief
Civil Rights Bureau
Office of the New York State
   Attorney General
120 Broadway, 23rd Floor
New York, New York 10271
Lourdes.Rosado@ag.ny.gov
Tel. (212) 416-8252
Fax (212) 416-8074

Genevieve C. Nadeau (*pro hac vice*)          Colleen M. Melody (*pro hac vice*)
Assistant Attorney General                    Civil Rights Unit Chief
Office of the Attorney General of             Office of the Attorney General of
   Massachusetts                              Washington
One Ashburton Place                           800 Fifth Avenue, Suite 2000
Boston, MA 02108                              Seattle, WA 98104
genevieve.nadeau@state.ma.us                  ColleenM1@atg.wa.gov
Tel. (617) 727-2200                           Tel. (206) 464-7744

*Attorneys for Plaintiff States*

cc:      Counsel for all parties (by ECF and/or email)
         Magistrate Judge Orenstein (by hand delivery)

---

[7] Among other things, the *Cheney* defendants were asked for "[a]ll documents identifying or referring to any staff, personnel, contractors, consultants or employees of the Task Force"; "All documents establishing or referring to any Sub-Group"; and "All documents identifying or referring to any other persons participating in the preparation of the Report or in the activities of the Task Force or any Sub-Group." *Cheney*, 542 U.S. at 387 (quoting requests).