# EXHIBIT 2



Secretary
U.S. Department of Homeland Security
Washington, DC 20528

February 20, 2017

MEMORANDUM FOR:   Kevin McAleenan
                 Acting Commissioner
                 U.S. Customs and Border Protection

                 Thomas D. Homan
                 Acting Director
                 U.S. Immigration and Customs Enforcement

                 Lori Scialabba
                 Acting Director
                 U.S. Citizenship and Immigration Services

                 Joseph B. Maher
                 Acting General Counsel

                 Dimple Shah
                 Acting Assistant Secretary for International Affairs

                 Chip Fulghum
                 Acting Undersecretary for Management

FROM:            John Kelly
                 Secretary

SUBJECT:         **Enforcement of the Immigration Laws to Serve the National Interest**

    This memorandum implements the Executive Order entitled "Enhancing Public Safety in the Interior of the United States," issued by the President on January 25, 2017. It constitutes guidance for all Department personnel regarding the enforcement of the immigration laws of the United States, and is applicable to the activities of U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS). As such, it should inform enforcement and removal activities, detention decisions, administrative litigation, budget requests and execution, and strategic planning.

With the exception of the June 15, 2012, memorandum entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children," and the November 20, 2014 memorandum entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who Are the Parents of U.S. Citizens or Permanent Residents,"[1] all existing conflicting directives, memoranda, or field guidance regarding the enforcement of our immigration laws and priorities for removal are hereby immediately rescinded—to the extent of the conflict—including, but not limited to, the November 20, 2014, memoranda entitled "Policies for the Apprehension, Detention and Removal of Undocumented Immigrants," and "Secure Communities."

### A. The Department's Enforcement Priorities

Congress has defined the Department's role and responsibilities regarding the enforcement of the immigration laws of the United States. Effective immediately, and consistent with Article II, Section 3 of the United States Constitution and Section 3331 of Title 5, United States Code, Department personnel shall faithfully execute the immigration laws of the United States against all removable aliens.

Except as specifically noted above, the Department no longer will exempt classes or categories of removable aliens from potential enforcement. In faithfully executing the immigration laws, Department personnel should take enforcement actions in accordance with applicable law. In order to achieve this goal, as noted below, I have directed ICE to hire 10,000 officers and agents expeditiously, subject to available resources, and to take enforcement actions consistent with available resources. However, in order to maximize the benefit to public safety, to stem unlawful migration and to prevent fraud and misrepresentation, Department personnel should prioritize for removal those aliens described by Congress in Sections 212(a)(2), (a)(3), and (a)(6)(C), 235(b) and (c), and 237(a)(2) and (4) of the Immigration and Nationality Act (INA).

Additionally, regardless of the basis of removability, Department personnel should prioritize removable aliens who: (1) have been convicted of any criminal offense; (2) have been charged with any criminal offense that has not been resolved; (3) have committed acts which constitute a chargeable criminal offense; (4) have engaged in fraud or willful misrepresentation in connection with any official matter before a governmental agency; (5) have abused any program related to receipt of public benefits; (6) are subject to a final order of removal but have not complied with their legal obligation to depart the United States; or (7) in the judgment of an immigration officer, otherwise pose a risk to public safety or national security. The Director of ICE, the Commissioner of CBP, and the Director of USCIS may, as they determine is appropriate, issue further guidance to allocate appropriate resources to prioritize enforcement activities within these categories—for example, by prioritizing enforcement activities against removable aliens who are convicted felons or who are involved in gang activity or drug trafficking.

---

[1] The November 20, 2014, memorandum will be addressed in future guidance.

**B. Strengthening Programs to Facilitate the Efficient and Faithful Execution of the Immigration Laws of the United States**

Facilitating the efficient and faithful execution of the immigration laws of the United States—and prioritizing the Department's resources—requires the use of all available systems and enforcement tools by Department personnel.

Through passage of the immigration laws, Congress established a comprehensive statutory regime to remove aliens expeditiously from the United States in accordance with all applicable due process of law. I determine that the faithful execution of our immigration laws is best achieved by using all these statutory authorities to the greatest extent practicable. Accordingly, Department personnel shall make full use of these authorities.

Criminal aliens have demonstrated their disregard for the rule of law and pose a threat to persons residing in the United States. As such, criminal aliens are a priority for removal. The Priority Enforcement Program failed to achieve its stated objectives, added an unnecessary layer of uncertainty for the Department's personnel, and hampered the Department's enforcement of the immigration laws in the interior of the United States. Effective immediately, the Priority Enforcement Program is terminated and the Secure Communities Program shall be restored. To protect our communities and better facilitate the identification, detention, and removal of criminal aliens within constitutional and statutory parameters, the Department shall eliminate the existing Forms I-247D, I-247N, and I-247X, and replace them with a new form to more effectively communicate with recipient law enforcement agencies. However, until such forms are updated they may be used as an interim measure to ensure that detainers may still be issued, as appropriate.

ICE's Criminal Alien Program is an effective tool to facilitate the removal of criminal aliens from the United States, while also protecting our communities and conserving the Department's detention resources. Accordingly, ICE should devote available resources to expanding the use of the Criminal Alien Program in any willing jurisdiction in the United States. To the maximum extent possible, in coordination with the Executive Office for Immigration Review (EOIR), removal proceedings shall be initiated against aliens incarcerated in federal, state, and local correctional facilities under the Institutional Hearing and Removal Program pursuant to section 238(a) of the INA, and administrative removal processes, such as those under section 238(b) of the INA, shall be used in all eligible cases.

The INA § 287(g) Program has been a highly successful force multiplier that allows a qualified state or local law enforcement officer to be designated as an "immigration officer" for purposes of enforcing federal immigration law. Such officers have the authority to perform all law enforcement functions specified in section 287(a) of the INA, including the authority to investigate, identify, apprehend, arrest, detain, and conduct searches authorized under the INA, under the direction and supervision of the Department.

There are currently 32 law enforcement agencies in 16 states participating in the 287(g)

Program. In previous years, there were significantly more law enforcement agencies participating in the 287(g) Program. To the greatest extent practicable, the Director of ICE and Commissioner of CBP shall expand the 287(g) Program to include all qualified law enforcement agencies that request to participate and meet all program requirements. In furtherance of this direction and the guidance memorandum, "Implementing the President's Border Security and Immigration Enforcement Improvements Policies" (Feb. 20, 2017), the Commissioner of CBP is authorized, in addition to the Director of ICE, to accept State services and take other actions as appropriate to carry out immigration enforcement pursuant to section 287(g) of the INA.

### C. Exercise of Prosecutorial Discretion

Unless otherwise directed, Department personnel may initiate enforcement actions against removable aliens encountered during the performance of their official duties and should act consistently with the President's enforcement priorities identified in his Executive Order and any further guidance issued pursuant to this memorandum. Department personnel have full authority to arrest or apprehend an alien whom an immigration officer has probable cause to believe is in violation of the immigration laws. They also have full authority to initiate removal proceedings against any alien who is subject to removal under any provision of the INA, and to refer appropriate cases for criminal prosecution. The Department shall prioritize aliens described in the Department's Enforcement Priorities (Section A) for arrest and removal. This is not intended to remove the individual, case-by-case decisions of immigration officers.

The exercise of prosecutorial discretion with regard to any alien who is subject to arrest, criminal prosecution, or removal in accordance with law shall be made on a case-by-case basis in consultation with the head of the field office component, where appropriate, of CBP, ICE, or USCIS that initiated or will initiate the enforcement action, regardless of which entity actually files any applicable charging documents: CBP Chief Patrol Agent, CBP Director of Field Operations, ICE Field Office Director, ICE Special Agent-in-Charge, or the USCIS Field Office Director, Asylum Office Director or Service Center Director.

Except as specifically provided in this memorandum, prosecutorial discretion shall not be exercised in a manner that exempts or excludes a specified class or category of aliens from enforcement of the immigration laws. The General Counsel shall issue guidance consistent with these principles to all attorneys involved in immigration proceedings.

### D. Establishing the Victims of Immigration Crime Engagement (VOICE) Office

Criminal aliens routinely victimize Americans and other legal residents. Often, these victims are not provided adequate information about the offender, the offender's immigration status, or any enforcement action taken by ICE against the offender. Efforts by ICE to engage these victims have been hampered by prior Department of Homeland Security (DHS) policy extending certain Privacy Act protections to persons other than U.S. citizens and lawful permanent residents, leaving victims feeling marginalized and without a voice. Accordingly, I am establishing the Victims of Immigration Crime Engagement (VOICE) Office within the Office of

the Director of ICE, which will create a programmatic liaison between ICE and the known victims of crimes committed by removable aliens. The liaison will facilitate engagement with the victims and their families to ensure, to the extent permitted by law, that they are provided information about the offender, including the offender's immigration status and custody status, and that their questions and concerns regarding immigration enforcement efforts are addressed.

To that end, I direct the Director of ICE to immediately reallocate any and all resources that are currently used to advocate on behalf of illegal aliens (except as necessary to comply with a judicial order) to the new VOICE Office, and to immediately terminate the provision of such outreach or advocacy services to illegal aliens.

Nothing herein may be construed to authorize disclosures that are prohibited by law or may relate to information that is Classified, Sensitive but Unclassified (SBU), Law Enforcement Sensitive (LES), For Official Use Only (FOUO), or similarly designated information that may relate to national security, law enforcement, or intelligence programs or operations, or disclosures that are reasonably likely to cause harm to any person.

### E. Hiring Additional ICE Officers and Agents

To enforce the immigration laws effectively in the interior of the United States in accordance with the President's directives, additional ICE agents and officers are necessary. The Director of ICE shall—while ensuring consistency in training and standards—take all appropriate action to expeditiously hire 10,000 agents and officers, as well as additional operational and mission support and legal staff necessary to hire and support their activities. Human Capital leadership in CBP and ICE, in coordination with the Under Secretary for Management and the Chief Human Capital Officer, shall develop hiring plans that balance growth and interagency attrition by integrating workforce shaping and career paths for incumbents and new hires.

### F. Establishment of Programs to Collect Authorized Civil Fines and Penalties

As soon as practicable, the Director of ICE, the Commissioner of CBP, and the Director of USCIS shall issue guidance and promulgate regulations, where required by law, to ensure the assessment and collection of all fines and penalties which the Department is authorized under the law to assess and collect from aliens and from those who facilitate their unlawful presence in the United States.

### G. Aligning the Department's Privacy Policies With the Law

The Department will no longer afford Privacy Act rights and protections to persons who are neither U.S. citizens nor lawful permanent residents. The DHS Privacy Office will rescind the DHS *Privacy Policy Guidance memorandum*, dated January 7, 2009, which implemented the DHS "mixed systems" policy of administratively treating all personal information contained in DHS record systems as being subject to the Privacy Act regardless of the subject's immigration status. The DHS Privacy Office, with the assistance of the Office of the General Counsel, will

develop new guidance specifying the appropriate treatment of personal information DHS maintains in its record systems.

### H. Collecting and Reporting Data on Alien Apprehensions and Releases

The collection of data regarding aliens apprehended by ICE and the disposition of their cases will assist in the development of agency performance metrics and provide transparency in the immigration enforcement mission. Accordingly, to the extent permitted by law, the Director of ICE shall develop a standardized method of reporting statistical data regarding aliens apprehended by ICE and, at the earliest practicable time, provide monthly reports of such data to the public without charge.

The reporting method shall include uniform terminology and shall utilize a format that is easily understandable by the public and a medium that can be readily accessed. At a minimum, in addition to statistical information currently being publicly reported regarding apprehended aliens, the following categories of information must be included: country of citizenship, convicted criminals and the nature of their offenses, gang members, prior immigration violators, custody status of aliens and, if released, the reason for release and location of their release, aliens ordered removed, and aliens physically removed or returned.

The ICE Director shall also develop and provide a weekly report to the public, utilizing a medium that can be readily accessed without charge, of non-Federal jurisdictions that release aliens from their custody, notwithstanding that such aliens are subject to a detainer or similar request for custody issued by ICE to that jurisdiction. In addition to other relevant information, to the extent that such information is readily available, the report shall reflect the name of the jurisdiction, the citizenship and immigration status of the alien, the arrest, charge, or conviction for which each alien was in the custody of that jurisdiction, the date on which the ICE detainer or similar request for custody was served on the jurisdiction by ICE, the date of the alien's release from the custody of that jurisdiction and the reason for the release, an explanation concerning why the detainer or similar request for custody was not honored, and all arrests, charges, or convictions occurring after the alien's release from the custody of that jurisdiction.

### I. No Private Right of Action

This document provides only internal DHS policy guidance, which may be modified, rescinded, or superseded at any time without notice. This guidance is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigation prerogatives of DHS.

In implementing these policies, I direct DHS Components to consult with legal counsel to ensure compliance with all applicable laws, including the Administrative Procedure Act.