# EXHIBIT 51

April 27, 2017

# Privacy Policy 2017-01
# Questions & Answers

### U.S. Citizen Definitions

**Who is a U.S. citizen?**
  A person may become a U.S. citizen at birth, if:
  i. He or she was born in the United States or certain territories or outlying possessions of the United States, and subject to the jurisdiction of the United States; or
  ii. She or he had a parent or parents who were citizens at the time of your birth (if you were born abroad) and meet other requirements.
  A person may become a U.S. citizen after birth, if:
  i. She or he applies for "derived" or "acquired" citizenship through parents, or
  ii. He or she applies for naturalization.

**Who is a lawful permanent resident?**
  A person is a lawful permanent resident if he or she enjoys the status accorded to an individual who has been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with immigration laws, and that status has not changed.

**Who is an immigrant?**
  A person who is an alien in the United States, except one legally admitted under specific non-immigrant categories as discussed below in response to question 14. Additionally, a person who has entered without inspection, an illegal alien, is also considered an immigrant.

**Who is a non-immigrant?**
  A person who is an alien seeking temporary entry to the United States for a specific purpose. The alien must have a permanent residence abroad (for most classes of admission) and qualify for the nonimmigrant classification sought. The nonimmigrant classifications include: foreign government officials, visitors for business and for pleasure, aliens in transit through the United States, treaty traders and investors, students, international representatives, temporary workers and trainees, representatives of foreign information media, exchange visitors, fiancé(e)s of U.S. citizens, intracompany transferees, NATO officials, religious

April 27, 2017

workers, and some others. Most nonimmigrants can be accompanied or joined by spouses and unmarried minor (or dependent) children.

1. **Why is the Policy changing?**
   a. The Department of Homeland Security (DHS) is changing its policy regarding the extension of Privacy Act protections to all persons as directed by section 14 of Executive Order 13768, which states, that "[a]gencies shall, to the extent consistent with applicable law, ensure that their privacy policies exclude persons who are not United States citizens or lawful permanent residents from the protections of the Privacy Act regarding personally identifiable information." Previously, DHS had provided the administrative protections of the Privacy Act to all persons, as permitted by regulatory guidance from the Office of Management and Budget. The policy of the current Administration is to grant Privacy Act protections only to those explicitly covered by the Privacy Act.

2. **What changes result from the new Policy?**
   a. Generally, the new policy clarifies that immigrants and non-immigrants may only obtain access to their records through the Freedom of Information Act and may not be granted amendment of their records upon request. The Executive Order limits the rights and protections of the Privacy Act, subject to applicable law, to U.S. citizens and lawful permanent residents. The new policy requires that decisions regarding the collection, maintenance, use, disclosure, retention, and disposal of information being held by DHS conform to an analysis consistent with the Fair Information Practice Principles, see questions 7 and 8.

3. **What changes to the analysis of records and information disclosure under the Freedom of Information Act result from the new Policy?**
   a. The new Policy does not change the analysis of records and information disclosure under the Freedom of Information Act (FOIA), an applicable law. Decisions to withhold information requested by third parties about immigrants and non-immigrants will be analyzed in accordance the FOIA exemptions at 5 U.S.C. § 552(b)(6) or (b)(7)(C), which balance the public's right to know about government operations against the personal privacy interests of the subject. With respect to FOIA requests about oneself, an immigrant or non-immigrant will receive those records that are not exempt under the FOIA, just like any other person.

April 27, 2017

4. **What is the impact of the new Policy on the Judicial Redress Act?**
   a. The new Policy has no effect upon the Judicial Redress Act, an applicable law. The Judicial Redress Act provides that "covered persons," who are citizens of covered foreign states, will have both administrative and judicial Privacy Act rights with respect to their information contained in "covered records," which are law enforcement in nature. This means that certain foreign nationals, currently citizens of the majority of European Union states, may seek access or amendment of their covered records held and covered by a DHS System of Records Notice (SORN), or pursue judicial redress for access, amendment, or wrongful disclosure of such records. For more information see, https://www.justice.gov/opcl/judicial-redress-act-2015.

5. **What changes to the sharing or disclosure of information with the Congress result from the new Policy?**
   a. The new Policy does not change the requirements for sharing information in full in response to a request from the Chairperson of Congressional Committee asking upon behalf of the Committee regarding a matter within the jurisdiction of the Committee. Such a response is normally confidential for use in support of the Committee's business and not a public disclosure. Similarly, the new Policy does not change how we respond to Congressional requests on behalf of constituents, who are U.S. citizens or lawful permanent residents, in that it is treated as a first-party Privacy Act request by consent of the constituent; nor does it change how we respond to Congressional requests on behalf of immigrants, non-immigrants, or other third parties (such as, state and local government, or the Congressperson asking in a personal capacity), in that it is treated as a Freedom of Information Act request.

6. **What changes to the sharing or disclosure of information with federal, state, and local law enforcement result from the new Policy?**
   a. The new Policy, subject to the Judicial Redress Act or confidentiality provisions provided by statute or regulation, permits the sharing of information about immigrants and non-immigrants with federal, state, and local law enforcement. The Policy requires that such sharing conform to an analysis based upon the Fair Information Practice Principles that demonstrates a consistent relationship between the purpose for collection of the information and intended use.

April 27, 2017

7. **What are the Fair Information Practice Principles (FIPPs)?**
   a. The Fair Information Practice Principles (FIPPs) are principles that were first promulgated by the Department of Health, Education, and Welfare in 1973 and have guided federal government information practices going forward. The concepts are integral to many privacy laws, including both the Privacy Act of 1974 and to the E-Government Act of 2002, which also governs agency use of new technology. The eight foundational principles are: Transparency, Individual Participation, Purpose Specification, Data Minimization, Use Limitation, Data Quality and Integrity, Security, and Accountability and Auditing. For a discussion see question 8.

8. **How do the FIPPs inform the use and protection of information by DHS?**
   a. The FIPPs inform the use and protection of information by DHS as follows:
      i. **Transparency** requires that DHS give public notice to its actions to collect information (e.g., System of Records Notices and Privacy Impact Assessments, which are located on the DHS Privacy Office Website, and signage [see, www.dhs.gov/privacy.]);
      ii. **Individual Participation** requires that, when appropriate, DHS involve the person in the decision whether or not to provide personal information to DHS (i.e., make a choice);
      iii. **Purpose Specification** requires that DHS inform the public of its authority to collect the information that it seeks—in other words, say what information is sought, why it is being sought, and whether or not it's submission is voluntary;
      iv. **Data Minimization** requires that DHS only seek to collect the information that it needs, based upon its authority and based upon the mission or operation that requires the information;
      v. **Use Limitation** requires that DHS use the information that it collects in a manner compatible with the purpose and authority that permit the collection;
      vi. **Data Quality and Integrity** require that DHS has means to ensure the accuracy of the information it collects, provides measures to maintain the data free from corruption, and allow for corrections to data that become inaccurate or stale;
      vii. **Security** requires that DHS ensure its data systems are protected against intrusion, that user access is determined by mission assignments, and that remedial procedures exist to address the possibility of breach or data spills;
      viii. **Accountability and Auditing** require that DHS maintains the integrity of its systems such that it may find, use, and report upon the data

April 27, 2017

> residing in those systems, and so that it may allow for independent audits to verify the accuracy of its reporting and its satisfaction of the prior seven principles.

9. **What access to records is available to immigrants and non-immigrants?**
   a. Immigrants and non-immigrants may access their records through the Freedom of Information Act (FOIA). Any person, irrespective of immigration status, may file a FOIA request with DHS for information about him or herself that DHS has in its possession and systems; he or she is entitled to a response that details the search for information about the person and informs him or her whether or not the records about them are released in full, released with certain portions masked in accordance with exemptions under the FOIA, or withheld in full.

10. **May immigrants and non-immigrants amend their records, which are held by DHS?**
    a. Immigrants and non-immigrants may not request amendment of their records in accordance with the Privacy Act. DHS, however, as a matter of efficiency and accurate recordkeeping strives to keep all information in its possession current. When DHS becomes aware and is able to confirm that information in its possession is inaccurate or no longer relevant it may choose to update or dispose of such information in accordance with the terms of the Federal Records Act records disposition schedules that apply to the particular records under review.

11. **What impact does the new Policy have on immigrants and non-immigrants access to redress through the DHS Traveler Redress Inquiry Process (DHS TRIP)?**
    a. The new Policy has no impact upon an immigrant or non-immigrant's access to Redress through DHS TRIP. DHS TRIP provides traveler redress to all persons irrespective of immigration status. Individuals, including foreign nationals, or persons who believe they have been improperly denied entry, refused boarding for transportation, or identified for additional screening by DHS may submit a redress request through DHS TRIP. DHS TRIP is a single point of contact for persons who have inquiries or seek resolution regarding difficulties they experienced during their travel screening at transportation hubs such as airports, seaports and train stations, or at U.S. land borders. For more information see, [www.dhs.gov/trip](www.dhs.gov/trip).