UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MARTIN JONATHAN BATALLA VIDAL et al.,

                  Plaintiffs,

      -against-

ELAINE C. DUKE, Acting Secretary, Department of
Homeland Security, et al.,

                  Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**16-CV-4756 (NGG) (JO)**

STATE OF NEW YORK et al.,

                  Plaintiffs,

      -against-

DONALD TRUMP, President of the United States, et al.,

                  Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-5228 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

On September 27, 2017, Magistrate Judge James Orenstein issued a case management and scheduling order that authorized and set a schedule for discovery in the above-captioned actions, which challenge the Government's decision to end the Deferred Action for Childhood Arrivals ("DACA") program. (Sept. 27, 2017, Case Management and Scheduling Order (the "Order") (Dkt. 67)[1].) Defendants timely objected, arguing that (1) discovery is inappropriate in

---

[1] Except as otherwise noted, all docket citations refer to the docket in Batalla Vidal v. Duke, No. 16-CV-4756 (E.D.N.Y.), and all record citations refer to the Administrative Record ("A.R.") (Dkt. 77-1). For convenience, the court refers to the Plaintiffs in Batalla Vidal v. Duke as the "Batalla Vidal Plaintiffs," the Plaintiffs in New York v. Trump, No. 17-CV-5228, as the "State Plaintiffs," and the Department of Homeland Security as "DHS."

1

this case because the court's review is limited to the administrative record ("A.R.") (Dkt. 77-1); (2) discovery should be stayed pending resolution of their anticipated motion to dismiss; (3) the court should vacate Paragraph II(c) of the Order, which requires them to compile a privilege log with respect to documents withheld from the administrative record on privilege grounds, because that paragraph is vague, overbroad, and raises separation-of-powers concerns;[2] and (4) they could not possibly compile a privilege log within nine days, as the Order required. (Defs. Sept. 22, 2017, Ltr. Regarding Discovery ("Defs. Sept. 22 Ltr.") (Dkt. 65); Defs. Sept. 29, 2017, Mot. to Vacate the Case Management Order ("Defs. Mot.") (Dkt. 69).)

In order to give the court the opportunity to review the administrative record before ruling on Defendants' remaining objections, and in light of Defendants' protests that they could not compile the privilege log before it was due, the court ordered the deadline for producing the privilege log extended by two weeks. (Oct. 3, 2017, Order (Dkt. 72) at 3-4.) The court otherwise reserved ruling on the motion. (Id. at 4.) After the court issued this order, Defendants submitted a 256-page administrative record, composed of documents "actually considered by Elaine C. Duke, the Acting Secretary of Homeland Security, in connection with her September 5, 2017 decision" to rescind the 2012 memorandum that created the DACA program. (Notice of Filing of A.R. (Dkt. 77), ECF at p.3; A.R.) Plaintiffs have moved Judge Orenstein to compel

---

[2] The disputed paragraph reads in full as follows:

> The privilege log to be produced by October 6, 2017, shall include a description of every document considered within any component of the executive branch as part of the process of determining the policy and actions at issue in these actions that are not being produced and as to which the defendants would assert a claim of privilege, regardless of whether the defendants deem such that [sic] record to be part of the official administrative record. Failure to describe a pertinent document in the privilege log due on October 6, 2017, will waive any later assertion of privilege absent a showing of good cause. See Loc. Civ. R. 26.2, 26.3.

Order ¶ II(c).

Defendants to complete production of the administrative record. (Oct. 11, 2017, Order (Dkt. 81); Oct. 13, 2017, Pls. Mot. to Compel Defs. to Produce a Complete A.R. (Dkt. 84).)

## I.  EXTRA-RECORD DISCOVERY

The bulk of Defendants' objections turn at least in part on whether the administrative record is complete. Defendants argue that the "thrust" of Plaintiffs' suits are challenges to DHS's decision to end the DACA program, and thus that judicial review of these actions is limited to the administrative record compiled by the agency, which the court must presume is complete. See Nat'l Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997). (Defs. Sept. 22 Ltr. at 1-2; Defs. Reply (Dkt. 80).) This argument is unavailing for two reasons.

First, in addition to asserting claims under the Administrative Procedure Act, 5 U.S.C. § 500 et seq., Plaintiffs also assert (among other claims) constitutional and equitable claims challenging certain collateral decisions affecting DACA beneficiaries. Plaintiffs contend that Defendants violated the Due Process Clause of the Fifth Amendment by failing to provide individualized notice to DACA recipients who were eligible to renew their deferred action and work authorization that they needed to do so prior to October 5, 2017, not just "as soon as possible."[3] (Second Am. Compl. (Dkt. 60) ¶¶ 103-105, 160-66; Am. Compl. ("State Pls. Am. Compl.") (New York v. Trump Dkt. 54) ¶¶ 91-99, 274-80.) Those claims do not challenge the decision to end the DACA program, but instead challenge how Defendants communicated that decision to DACA beneficiaries. The State Plaintiffs also contend that Defendants violated the

---

[3] The State Plaintiffs also contend that Defendants violated the Due Process Clause by failing to provide individualized notice to DACA recipients who, under Acting Secretary Duke's September 5, 2017, memorandum terminating the DACA program, were ineligible to renew their deferred action and work authorization, that they were ineligible to renew their DACA benefits. (Memorandum from Elaine C. Duke, Acting Sec'y, DHS, to James W. McCament et al., Rescission of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children" (Sept. 5, 2017) (AR 252); Am. Compl. ("State Pls. Am. Compl.") (New York v. Trump Dkt. 54) ¶¶ 97-99, 276-77.)

3

Fifth Amendment Due Process Clause and principles of equitable estoppel by changing the Government's policy regarding how information derived from DACA applications would be used for immigration-enforcement purposes. (State Pls. Am. Compl. ¶¶ 39-44, 87-90, 240-52.) Those claims, too, do not challenge the decision to end the DACA program itself, but challenge the Government's alleged withdrawal of protections against the use of DACA beneficiaries' personal information to facilitate deportations. So far, Defendants have provided no reason why the court's review of these claims, all of which challenge agency actions other than the decision to end the DACA program, should be limited to an administrative record that documents the decision to end the DACA program and sheds no light on why the Government allegedly made these collateral decisions. Accordingly, the court finds no error in Magistrate Judge Orenstein's decision that discovery should proceed with respect to these claims, and it denies Defendants' motion to permanently stay discovery with respect to those claims.[4]

Second, the general rule that review of agency action is limited to the administrative record compiled by the agency is not absolute. Inquiry outside the administrative record is appropriate in certain circumstances, including when plaintiffs make a "strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers or where the absence of formal administrative findings makes such investigation necessary in order

---

[4] Because the court concludes that discovery is not inappropriate with respect to Plaintiffs' individualized-notice and information-policy claims, it need not decide at this point whether its review of constitutional challenges to agency action is, like its review of challenges under the APA that an agency acted arbitrarily and capriciously, necessarily limited to the administrative record prepared by the agency. See 5 U.S.C. § 706 (permitting review of agency action "contrary to constitutional right" and limiting review to "the whole record or those parts of it cited by a party"). Compare Chiayu Chang v. U.S. Citizenship & Immigration Servs., ___ F. Supp. 3d ___, 2017 WL 2480749 (D.D.C. 2017) (constitutional challenges to agency action not necessarily exempt from the rule that review of agency action is limited to the administrative record), and Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Service, 58 F.Supp.3d 1191, 1237-41 (D.N.M. Oct. 22, 2014) (same), with Tafas v. Dudas, 530 F. Supp. 2d 786, 802 (E.D. Va. 2008) (noting that "in adjudicating constitutional claims under the APA, courts have permitted plaintiffs to submit evidence that was not part of the administrative record"), and Puerto Rico Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urban Dev., 59 F. Supp. 2d 310, 328 (D.P.R. 1999) (authorizing discovery on constitutional claims brought alongside APA claims). (Batalla Vidal Pls. Sept. 22, 2017, Ltr. Regarding Discovery (Dkt. 66) at 3, 5.)

to determine the reasons for the agency's choice." Nat'l Audubon, 132 F.3d at 14; see also Camp v. Pitts, 411 U.S. 138, 142-43 (1973) (per curiam) (inquiry outside the administrative record appropriate when "there was such failure to explain administrative action as to frustrate effective judicial review"); cf. Am. Wildlands v. Kempthorne, 530 F.3d 991, 1002 (D.C. Cir. 2008) (identifying circumstances in which supplementation of the administrative record is appropriate). Moreover, the presumption that the agency produced the complete administrative record may be rebutted by "clear evidence" that the record omits relevant materials, see Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993), and does not apply where there is a "strong suggestion that the record before the [c]ourt [is] not complete," in which case limited discovery may be authorized as to the completeness of the administrative record, see Dopico v. Goldschmidt, 687 F.2d 644, 654 (2d Cir. 1982).

Whether the administrative record is complete is clearly relevant to the question of whether discovery relating to Plaintiffs' challenges to the decision to end the DACA program should be stayed. In light of the ongoing dispute before Judge Orenstein as to whether Defendants should be compelled to produce a complete administrative record, the court declines to address in the first instance the question of whether the administrative record is complete. Accordingly, pending Judge Orenstein's resolution of Plaintiffs' motion to compel, the court reserves ruling on whether discovery relating to Plaintiffs' challenges to the decision to end the DACA program should be temporarily or permanently stayed, except as noted above.

## II. THE PRIVILEGE-LOG REQUIREMENT

Relatedly, Defendants also argue that they should not be required to compile a privilege log because privileged documents are not part of the administrative record. (Defs. Mot. at 4-5; Defs. Reply at 2-3.) That contention, too, is premised on the presumption that the agency correctly designated the administrative record. See Nat'l Ass'n of Chain Drug Stores v. U.S.

5

Dep't of Health & Human Servs., 631 F. Supp. 2d 23, 28 (D.D.C. 2009) (rejecting plaintiffs' argument that defendants should be required to produce a privilege log so that plaintiffs and the court could test defendants' claims of privilege as inconsistent with the "standard presumption that the agency properly designated the [a]dministrative [r]ecord" (quoting Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior, 143 F. Supp. 2d 7, 12 (D.D.C. 2001))); Tafas v. Dudas, 530 F. Supp. 2d 786, 800 (E.D. Va. 2008) ("Once a court has determined that a plaintiff has provided enough evidence for the court to conclude that the agency has omitted otherwise relevant material from the administrative record, the agency must explain its decision to do so.").[5] (Defs. Mot. at 4-5 (arguing that the requirement that Defendants produce a privilege log "upends the presumption of regularity that typically applies to the question of whether an administrative record has been properly compiled").) If Defendants did not produce a complete administrative record in the first instance, however, the court does not see why it should presume that they correctly withheld privileged materials from the record; if the administrative record is incomplete, Defendants will be required to assert privilege specifically with respect to any such materials. See Gill v. Dep't of Justice, No. 14-CV-03120-RS (KAW), 2015 WL 9258075, at *6 (N.D. Cal. Dec. 18, 2015).

Again, the court declines to address this question in the first instance while the dispute over the completeness of the administrative record is before Judge Orenstein. The court therefore also reserves ruling on Defendants' motion to vacate Paragraph II(c) of the Order in its entirety.

---

[5] Additionally, the court notes that, although the U.S. District Court for the District of Columbia has held that agencies do not need to provide a privilege log in Administrative Procedure Act cases because, absent a "strong showing of bad faith or improper behavior," pre-decisional and deliberative documents are legally immaterial, see, e.g., Oceana, Inc. v. Pritzker, 217 F. Supp. 3d 310, 318-19 (D.D.C. 2016), not all courts have reached the same conclusion, see, e.g., Inst. for Fisheries Res. v. Burwell, No. 16-CV-01574 (VC), 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017).

## III. THE SCOPE OF THE PRIVILEGE-LOG REQUIREMENT

The court will, however, narrow the scope of Paragraph II(c) of the Order. The Order requires Defendants to identify and assert privilege with respect to any documents "considered <u>within any component of the executive branch</u> as part of the process of determining the policy and actions at issue in these actions that are not being produced and as to which the defendants would assert a claim of privilege." (Order ¶ II(c) (emphasis added).) Defendants raise two objections to the scope of this part of the Order. First, they argue that, on its face, the Order requires the identification and assertion of privilege with respect to White House communications that are "likely subject to a strong claim of executive privilege," which "raises substantial separation-of-powers concerns." (Defs. Mot. at 3.) Second, they argue that, notwithstanding the two-week extension previously granted by the court, compliance with the Order remains impossible "if [the Order is] taken literally." (Reply at 2.) Accordingly, Defendants request that, if the court does not vacate Paragraph II(c) of the Order in its entirety, it should at least narrow that paragraph to "apply only to records that were actually considered by the Acting Secretary of Homeland Security as part of her decision to rescind the DACA policy but were omitted from the administrative record because they are privileged." (Id. at 3.) The court will limit the privilege-log requirement to DHS and the Department of Justice ("DOJ"), but it sees no reason to narrow that requirement further at this time.

### A. The Privilege-Log Requirement Only Applies to DHS and the DOJ

The court agrees that, on its face, Paragraph II(c) of the Order raises potential separation-of-powers problems. As the Supreme Court observed in <u>Cheney v. U.S. District Court for the District of Columbia</u>, 542 U.S. 367 (2004), courts must narrow overly broad and intrusive discovery requests directed at the highest levels of the Executive Branch, lest "vexatious litigation . . . distract [the Executive Branch] from the energetic performance of its constitutional

7

duties." Id. at 382; see id. at 381-85. In Cheney, the Court specifically rejected the D.C. Circuit's reasoning that mandamus was unwarranted because the defendants could invoke privilege with respect to specific documents. See id. at 383, 388-89. By requiring the White House to identify and assert privilege with respect to specific documents or risk waiving privilege over those documents, Paragraph II(c) of the Order potentially raises constitutional concerns akin to those at issue in Cheney.

The court need not consider the full scope of these constitutional concerns, or whether these concerns are offset by the court's need to obtain information necessary to fulfill its own "constitutional responsibility to resolve cases and controversies within its jurisdiction." Id. at 385. At this point, Plaintiffs only seek materials considered by DHS and DOJ in connection with the decision to end the DACA program, and argue that the Order's reference to the "executive branch" need not be read to include other agencies or the White House. (Batalla Vidal Pls. Resp. in Opp'n to Defs. Mot. to Vacate ("Batalla Vidal Pls. Opp'n") (Dkt. 70), at 2 & n.2; State Pls. Resp. in Opp'n to Defs. Mot. to Vacate (New York v. Trump Dkt. 49) at 6-8 & n.6.) Indeed, the Batalla Vidal Plaintiffs specifically suggest, without conceding that the Order is inappropriate as written, that the reference to "any component of the executive branch" could be replaced with "the Department of Homeland Security and the Department of Justice." (Batalla Vidal Pls. Opp'n at 2 n.2.) Because Defendants have raised separation-of-powers objections only with respect to the discovery of White House documents (Defs. Mot. at 3; Defs. Reply at 3-4), the court sees no reason why limiting Paragraph II(c) of the Order to require Defendants to compile a privilege log only with respect to DHS and DOJ documents would not cure any separation-of-powers problems with the original Order.

The court therefore grants Defendants' motion in part by limiting Paragraph II(c) of the Order to relevant documents considered within DHS or DOJ as part of the process of determining the policy and actions at issue in these cases.

### B. The DOJ Is Not Exempt from the Privilege-Log Requirement

The court rejects Defendants' contention, however, that Paragraph II(c) should be limited to only those materials that Acting Secretary Duke "actually considered . . . as part of her decision to rescind the DACA policy but were omitted from the administrative record because they are privileged."[6] (Defs. Reply at 3.) Defendants argue that DOJ materials pertaining to the decision to rescind the DACA program are irrelevant, because DHS has sole responsibility for ending the program. (Id. at 4.) Indeed, while Defendants acknowledge that DOJ "participated in deliberations regarding the rescission of DACA (most, but not all of which remain privileged)," they aver that it is "nonsensical as a matter of law" to suggest that DOJ was even partially legally responsible for the decision to end the DACA program. (Id.)

Ordinarily, Defendants' argument might have some force. Regardless of which Executive Branch officials played a role in ending the DACA program, Acting Secretary Duke implemented that decision by issuing the memorandum that rescinded the 2012 memorandum that created the DACA program. (Memorandum from Elaine C. Duke, Acting Sec'y, DHS, to James W. McCament et al., Rescission of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as

---

[6] As an initial matter, it is not clear that Defendants correctly define the scope of the administrative record, which includes, at the very least, all materials that Acting Secretary Duke considered "directly or indirectly," Comprehensive Cmty. Dev. Corp. v. Sebelius, 890 F. Supp. 2d 305, 309 (S.D.N.Y. 2012) (quoting Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps. of Eng'rs, 448 F.Supp.2d 1, 4 (D.D.C. 2006)), including any non-privileged "work and recommendations of subordinates" on which [she] based . . . her decision," Amfac Resorts, 143 F. Supp. 2d at 12. The court will reserve ruling on the adequacy of Defendants' certification of the administrative record, however, pending the resolution of Plaintiffs' motion to compel Defendants to complete the administrative record.

9

Children" (Sept. 5, 2017) (AR 252).) The problem with Defendants' argument, however, is that they have repeatedly represented to this court that Attorney General Jeff Sessions and Acting Secretary Duke jointly decided to rescind the DACA program. As Defendants explained at the September 14, 2017, status conference, "[t]he Attorney General and DHS both decided that [DACA] is an unlawful program, and what they decided was—it was a decision based on litigation risk. . . . So in their judgment, what they decided to do is . . . have a responsible way to wind this program down . . . ." (Sept. 14, 2017, Hr'g Tr. (Docket Number Pending) 13:17-14:06 (emphasis added).) Likewise, when Judge Orenstein probed Defendants' position that the DACA program was unconstitutional but that they nonetheless had authority to continue renewing certain individuals' DACA status, Defendants explained that "the Attorney General decided that it would be harsh—we'd be in a much different situation if the Attorney General had decided we need to end this program now" (id. 24:21-24) (emphasis added), later adding that "[t]hese are decisions that are committed to the executive branch[,] and the Attorney General and DHS decided that, in the exercise of their discretion, they're going to wind down this program that had substantial litigation risk" (id. 26:1-6) (emphasis added). Neither the Government's Motion nor its Reply acknowledge—let alone explain—this apparent reversal in position.

In light of the Defendants' conflicting statements about which agencies were responsible for ending the DACA program, the court declines, at this point in the proceedings, to narrow Paragraph II(c) of the Order to only materials considered within DHS.[7]

---

[7] Indeed, it is not clear that, even if DHS were exclusively legally responsible for the decision to end the DACA program, DOJ materials could properly be excluded from the administrative record and associated privilege log. As discussed above, the whole administrative record considers all materials "directly or indirectly" considered by the agency decisionmaker. Because Acting Secretary Duke's stated rationale for rescinding the DACA program relied heavily on Attorney General Sessions's recommendations that she do so, materials on which the Attorney General relied in formulating his recommendation may be properly included in the administrative record on the grounds that Acting Secretary Duke "indirectly" considered them. The court need not decide this question in the first instance and without the benefit of fuller briefing by the parties or reference to specific documents.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part, DENIES in part, and RESERVES RULING in part on Defendants' motion to vacate the Order (Dkt. 69).

SO ORDERED.

                                                             s/Nicholas G. Garaufis

Dated: Brooklyn, New York                         NICHOLAS G. GARAUFIS
       October 17, 2017                             United States District Judge