## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MARTÍN JONATHAN BATALLA VIDAL, *et al.*, <br><br>         Plaintiffs, <br><br>         v. <br><br> KIRSTJEN M. NIELSEN, in her official capacity as Secretary of Homeland Security, *et al.*, <br><br>         Defendants. | No. 16-cv-4756 (NGG) (JO) |
| STATE OF NEW YORK, *et al.*, <br><br>         Plaintiffs, <br><br>         v. <br><br> DONALD TRUMP, in his official capacity as President of the United States, *et al.*, <br><br>         Defendants. | No. 17-cv-5228 (NGG) (JO) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR CERTIFICATION OF THIS COURT'S NOVEMBER 9, 2017 ORDER FOR INTERLOCUTORY APPEAL AND MOTION FOR STAY**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 2

ARGUMENT ................................................................................................................. 3

I.      THIS COURT'S ORDER INVOLVES CONTROLLING QUESTIONS OF LAW. ........ 4

II.     THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION
        WITH THIS COURT'S RULING. ........................................................................ 5

        A.      There Are Substantial Grounds for Disagreement with This Court's
                Conclusion that the Rescission of DACA is Not Committed to Agency
                Discretion by Law. ............................................................................... 6

        B.      There Are Substantial Grounds for Disagreement with This Court's
                Conclusion that the INA Does Not Deprive the Court of Jurisdiction to
                Consider Challenges to the Rescission Policy. ...................................... 11

III.    CERTIFICATION WILL MATERIALLY ADVANCE THE DISPOSITION OF
        THE LITIGATION. ........................................................................................... 13

IV.     THIS COURT SHOULD STAY RECORD SUPPLEMENTATION AND
        DISCOVERY ................................................................................................... 14

CONCLUSION ............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Allstate Ins. Co. v. Elzanaty*,
   No. 11–CV–3862 (ADS)(ARL), 2013 WL 2154759 (E.D.N.Y. May 16, 2013) .............. 13, 14

*Analect LLC v. Fifth Third Bancorp*,
   No. 06–CV–891 (JFB)(WDW), 2009 WL 2568540 (E.D.N.Y. Aug. 19, 2009)..................... 13

*Bay Casino, LLC v. M/V Royal Empress*,
   No. 98 CV 2333(SJ), 1998 WL 566772 (E.D.N.Y. Aug. 21, 1998)........................................ 13

*Botezatu v. I.N.S.*,
   195 F.3d 311 (7th Cir. 1999) ................................................................................................ 13

*Elgharib v. Napolitano*,
   600 F.3d 597 (6th Cir. 2010) ................................................................................................ 11

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
   No. 13 Civ. 5784(CM), 2015 WL 585641 (S.D.N.Y. Feb. 10, 2015) ..................................... 15

*Goldberg v. UBS AG*,
   690 F. Supp. 2d 92 (E.D.N.Y. 2010) ....................................................................................... 5

*Heckler v. Chaney*,
   470 U.S. 821 (1985)................................................................................................................. 6

*I.C.C. v. Bhd. of Locomotive Eng'rs*,
   482 U.S. 270 (1987)................................................................................................................. 9

*In re Duplan Corp.*,
   591 F.2d 139 (2d Cir. 1978) ................................................................................................. 13

*In re Flor*,
   79 F.3d 281 (2d Cir. 1996) ..................................................................................................... 5

*In re United States*,
   No. 17-801, 583 U.S. ----, 2017 WL 6505860 (Dec. 20, 2017) ...................................... 1, 3, 3-4

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
   Amministrazione Straordinaria*,
   921 F.2d 21 (2d Cir. 1990) ................................................................................................4, 5

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)............................................................................................................... 15

*Lincoln v. Vigil*,
    508 U.S. 182 (1993)...................................................................................... 10

*Lunney v. United States*,
    319 F.3d 550 (2d Cir. 2003) ........................................................................ 9

*Maestri v. Westlake Excavating Co.*,
    894 F. Supp. 573 (N.D.N.Y 1995)............................................................ 14

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009)................................................................................. 3, 14

*Morris v. Flaig*,
    511 F. Supp. 2d 282 (E.D.N.Y. 2007) ....................................................... 4

*Ryan, Beck & Co. v. Fakih*,
    275 F. Supp. 2d 393 (E.D.N.Y. 2003) ....................................................... 4

*S.E.C. v. Credit Bancorp, Ltd.*,
    103 F. Supp. 2d 223 (S.D.N.Y 2000) ......................................................... 4

*Wayte v. United States*,
    470 U.S. 598 (1985).................................................................................... 8

*Weber v. United States*,
    484 F.3d 154 (2d Cir. 2007) ........................................................................ 3

*Republic of Colombia v. Diageo N. Am. Inc.*,
    619 F. Supp. 2d 7 (E.D.N.Y 2007) ........................................................ 3, 5

*Webster v. Doe*,
    486 U.S. 592 (1988).................................................................................... 9

**STATUTES**

5 U.S.C. § 701(a)(2)............................................................................................ 7, 10

6 U.S.C. § 557.......................................................................................................... 11

8 U.S.C. § 1252(g) ....................................................................................... 11, 12, 13

28 U.S.C. § 1292(b) ..................................................................................... *passim*

## INTRODUCTION

On December 20, 2017, the Supreme Court issued an opinion describing the proper procedure to resolve parallel litigation in the Northern District of California, also involving the rescission of DACA. *In re United States*, No. 17-801, 583 U.S. ----, 2017 WL 6505860, at *2 (Dec. 20, 2017) (per curiam). According to the Supreme Court, a district court should rule on the Government's threshold justiciability arguments and then "consider certifying that ruling for interlocutory appeal under 28 U.S.C. § 1292(b)." *Id.* at *2. In light of the Supreme Court's opinion, the Second Circuit then instructed that, although this Court "already considered and rejected these threshold arguments" in its November 9, 2017 Memorandum Opinion & Order, "the Government has the right to ask the District Court to certify its ruling for interlocutory appeal," and "it may be prudent for the District Court to stay discovery pending the resolution of such proceedings." *In re Kirstjen M. Nielsen, Sec'y of Homeland Sec.*, No. 17-3345, Order at 4 (2d Cir. Dec. 27, 2017), ECF No. 172.

This Court should follow the lead of the Supreme Court and Second Circuit by certifying its November 9, 2017 Memorandum Opinion & Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The standard for certification is satisfied because the Government's threshold justiciability arguments involve controlling questions of law; there is substantial ground for disagreement with the Court's resolution of those questions; and an interlocutory appeal could lead to the dismissal of these cases. For these same reasons, the Court should also stay record supplementation and discovery until the resolution of such interlocutory appeal proceedings. At a minimum, the Court should issue a stay until ruling on Defendants' Motions to Dismiss or Plaintiffs' motions for injunctive relief. The parties should not expend additional resources on record and discovery matters because the Second Circuit may ultimately determine that this Court

lacks jurisdiction to review the Government's rescission of DACA or this Court may resolve the case on the existing record. Additionally, in light of Defendants' immediate obligation to supplement the administrative record by January 8, 2018, Defendants seek an administrative stay while the Court considers this motion.

## BACKGROUND

In 2012, then-Secretary of Homeland Security Janet Napolitano adopted the policy now known as DACA, or Deferred Action for Childhood Arrivals. DACA made deferred action—a practice by which the Secretary exercises individualized enforcement discretion to issue a reversible notification that she does not intend to remove an alien for a set period of time— available to a class of unlawfully present aliens who came to the United States as children. In September 2017, faced with significant litigation risk and the Attorney General's view that DACA was unlawful, then-Acting Secretary of Homeland Security Elaine C. Duke decided to wind down the policy in an orderly fashion. Together, Plaintiffs in this pair of related cases raised six claims challenging the Rescission Policy.

On October 27, 2017, Defendants moved to dismiss both cases in their entirety, both for lack of subject matter jurisdiction and for failure to state a claim. (No. 16-cv-4756, ECF No. 95).[1] On November 9, 2017, this Court issued a Memorandum & Order granting in part and denying in part Defendants' motion to dismiss for lack of subject matter jurisdiction, and reserving ruling on Defendants' motion to dismiss for failure to state a claim. (No. 16-cv-4756, ECF No. 104). In particular, this Court rejected Defendants' arguments that: (1) the Rescission Policy is not

---

[1] Plaintiffs in *Batalla Vidal* subsequently filed a Third-Amended Complaint, which Defendants moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim on December 26, 2017. (No. 16-cv-4756, ECF No. 207). Though this Court has not yet ruled on the justiciability arguments identified in that motion, the arguments are essentially identical to those rejected by the Court in the order at issue here.

justiciable because immigration enforcement policy is a matter committed to agency discretion by law; and (2) the Immigration and Nationality Act (INA) deprives district courts of jurisdiction over challenges to the Rescission Policy because it is a denial of deferred action. *Id.* at 20-32. Defendants now respectfully request that the Court certify its Memorandum & Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## ARGUMENT

The Court should certify its Memorandum & Order for interlocutory appeal because: (1) it involves "controlling question[s] of law"; (2) there is a "substantial ground for difference of opinion" on those questions; and (3) an immediate appeal will "materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b).[2] As the Supreme Court recently indicated, Defendants' threshold justiciability arguments are precisely the type of issues contemplated by § 1292(b). *In re United States*, 583 U.S. at ----, 2017 WL 6505860, at *2 (per curiam). Indeed, the "preconditions for § 1292(b) review . . . are most likely to be satisfied" where, as here, "a . . . ruling . . . is of special consequence[.]" *Mohawk Indus.*, *Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009). In such cases, "district courts should not hesitate to certify an interlocutory appeal." *Id.*; *see also Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007) (citations omitted). For these reasons, and as noted by the Second Circuit, *see In re Kirstjen M. Nielsen, Sec'y of Homeland Sec.*, No. 17-3345, Order at 4 (2d Cir. Dec. 27, 2017), the Supreme Court encouraged the United States District Court for the Northern District of California to "consider certifying" for interlocutory appeal its forthcoming ruling on the same jurisdictional and justiciability questions at issue here, if it did not

---

[2] Though the requirements for § 1292(b) certification have been met for both legal issues identified in this brief, so long as this Court "determines that a single issue . . . satisfie[s] the Section 1292(b) requirements[.]" the entire order is certified for appeal. *Republic of Columbia v. Diageo v. N. Am., Inc.*, 619 F. Supp. 2d 7, 10 n.1 (E.D.N.Y 2007).

dismiss the cases before it. *In re United States*, 583 U.S. at ----, 2017 WL 6505860, at *2 (per curiam). The Court should follow that suggestion in this case.

## I.      THIS COURT'S ORDER INVOLVES CONTROLLING QUESTIONS OF LAW.

"The 'question of law' certified for interlocutory appeal 'must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.'"*Morris v. Flaig*, 511 F. Supp. 2d 282, 315 (E.D.N.Y. 2007) (citations omitted). Here, Defendants seek to certify two questions for interlocutory review: (1) whether or not the rescission of DACA was a decision "committed to agency discretion by law;" and (2) whether or not the INA deprives federal district courts of jurisdiction over challenges to the Rescission Policy. Neither question involves a fact-specific determination that would require the Second Circuit to reference the factual record. To the contrary, these are purely legal questions concerning this Court's authority to hear any challenge to the type of discretionary non-enforcement decision at issue in this case.

Questions of law are "controlling" when reversal of the lower court's order would either "result in dismissal, 'significantly affect the conduct' of the case, or have 'precedential value for a large number of cases.'" *Ryan, Beck & Co. v. Fakih*, 275 F. Supp. 2d 393, 396 (E.D.N.Y. 2003) (quoting *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 226 (S.D.N.Y 2000)). "Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (citation omitted). Should the Second Circuit reverse this Court's decision and determine that the Acting Secretary's decision to rescind DACA was "committed to agency discretion," the Administrative Procedure Act ("APA")

would bar judicial review of at least Plaintiffs' statutory claims. Plaintiffs' claims would also be dismissed if the Second Circuit determines that the INA bars judicial review of the Rescission Policy.

## II.     THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION WITH THIS COURT'S RULING.

Certification under § 1292(b) is appropriate if there is a "substantial ground for difference of opinion" on the questions at issue. That standard "may be met where there is substantial doubt that the district court's order was correct; where there is conflicting authority on the issue; or where the issue is particularly difficult and of first impression for the Second Circuit." *Goldberg v. UBS AG*, 690 F. Supp. 2d 92, 103 (E.D.N.Y. 2010) (internal citations and quotations omitted). While "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion," *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (citations omitted), "this element is satisfied when where the issues are *difficult and of first impression*." *Republic of Colombia v. Diageo N. Am. Inc.*, 619 F. Supp. 2d 7, 11 (E.D.N.Y. 2007) (emphasis added); *see also Klinghoffer*, 921 F.2d at 25 (finding that there were "substantial grounds for difference of opinion" when issues were "difficult and of first impression"). Legal questions may be particularly "difficult" when there are "few decisions considering [the] doctrines" at issue in the case, when the court has "to address significant legal and policy concerns that do not appear to have been considered in other . . . decisions[,]" and when the "novelty and complexity of the issues presented" gives rise to disagreement about their application to the issues at hand. *Diageo*, 619 F. Supp. 2d at 11. As a threshold matter, there are substantial grounds for difference of opinion because this Court's order is in significant tension with established Supreme Court precedent. At a minimum, however, the issues are significantly

"difficult" to warrant certification, especially given the Supreme Court and Second Circuit's suggestion that interlocutory appeal may be appropriate.

> **A.      There Are Substantial Grounds for Disagreement with This Court's Conclusion that the Rescission of DACA is Not Committed to Agency Discretion by Law.**

There are substantial grounds for disagreement with the Court's conclusion that the decision to rescind DACA "was not itself a presumptively reviewable exercise of enforcement discretion." (No. 16-cv-4756, ECF No. 104 at 23). In reaching this conclusion, the Court distinguished *Heckler v. Chaney*, 470 U.S. 821, 830-33 (1985), on the grounds that: (1) *Heckler* involved a challenge to "an agency's failure or refusal to prosecute or take enforcement actions with respect to certain violations of the law" as opposed to "Defendants' affirmative decision to eliminate a programs by which DHS exercised prosecutorial discretion with respect to a large number of undocumented immigrants[;]" and (2) *Heckler* involved a "non-enforcement decision," whereas the rescission of DACA, as the Court put it, is an "affirmative decision to eliminate a program by which DHS *exercised prosecutorial discretion* with respect to a large number of undocumented immigrants." (No. 16-cv-4756, ECF No. 104 at 24 (emphasis added)).

The Court's distinction between the decision in *Heckler* and the decision to rescind DACA is immaterial. First of all, the Court misunderstood the policy at issue in *Heckler*. In that case, Plaintiffs sought an enforcement action against an entire industry engaged in manufacturing drugs for use in capital punishment, not just the individual drug marker that would provide drugs for their executions. *See Heckler*, 470 U.S. at 823-24. Similarly, the decision to rescind DACA applies to all individuals who have been granted DACA, not just the particular individuals who are Plaintiffs in these cases. Second, the agency action in *Heckler* was non-reviewable precisely because it involved an exercise of prosecutorial discretion—that is, a decision whether or not to

take an enforcement action—not merely because, in the end, the agency had *declined* to prosecute. Then-Acting Secretary Duke exercised precisely the same type of prosecutorial discretion when rescinding the DACA policy. It makes no difference that the result of that consideration was to reverse a prior policy of non-enforcement. *Heckler* cannot be read to support the proposition that, although an agency's decision *not* to prosecute is immune from review, the reversal of that decision is reviewable. Indeed, no precedent establishes that the "committed to agency discretion" inquiry under § 701(a)(2) turns on the result of an agency's exercise of prosecutorial discretion. It is the exercise itself that is unreviewable.

The Court's conclusion that the "DACA Rescission Memo curtails (if it does not eliminate outright) DHS's ability to exercise prosecutorial discretion" and thus it "cannot be analogized to an exercise of prosecutorial discretion, which would be presumptively immune from judicial review[,]" (No. 16-cv-4756, ECF No. 104 at 24-25) (emphasis added), miscomprehends the nature of the DACA Rescission and the availability of deferred action generally. Deferred action was available on a discretionary basis before the DACA Policy (albeit on a more limited and case-specific basis), and it remains available today. DACA is not the only manner by which individuals obtain deferred action, as demonstrated by the long history of similar policies. That a particular policy permitting a class of individuals to seek deferred action based on certain criteria has been rescinded does not "eliminate outright" the ability of DHS officials to later extend deferred action on an individualized basis to persons regardless of if they are former DACA recipients, and nothing in the Rescission Policy indicates otherwise. And more fundamentally, prosecutorial discretion cannot be a one-way valve whereby the Secretary is free to expand the availability of deferred action without subjecting that decision to judicial review, but, once a policy is announced, any

later attempt to change course falls outside the agency's discretion and is only amenable to APA review.

Moreover, it is common for senior prosecutors to set bright-line policies directing the exercise of discretion by individual prosecutors—or even cabining it substantially— yet such decisions are not subject to judicial review, regardless of whether the policies are to enforce or not to enforce and regardless of whether the policies are new policies or modifications of old policies.. For example, the "passive enforcement policy" adopted by the Attorney General and approved in *Wayte v. United States*, 470 U.S. 598, 601–02, 613 (1985), limited the discretion of prosecutors to pursue charges against those who had not self-reported their violation of the law – if the Attorney General rescinded that policy and directed a zero-tolerance policy instead, criminals who had not self-reported obviously could not seek judicial review of the change in enforcement policy. Likewise, earlier this year the Attorney General issued a memorandum instructing all federal prosecutors to "charge and pursue the most serious, readily provable offense" in all federal criminal prosecutions, expressly rescinding two earlier, more lenient policies. *See* Memorandum from the Attorney General to All Federal Prosecutors (May 10, 2017), https://www.justice.gov/opa/press-release/file/965896/download. Simply because a decision curtails the exercise of prosecutorial discretion does not subject it to judicial scrutiny.

There are also substantial grounds for disagreement with this Court's conclusion that there is "law to apply" in reviewing Plaintiffs substantive APA claims. This Court held that "Defendants expressly and exclusively relied on a legal determination that the program was unlawful and could not be sustained in court," and that it could thus "review that rationale in light of, among other sources, the text of the INA and other statutes, the history of the use of deferred action by

immigration authorities, and the OLC Opinion."[3] (No. 16-cv-4756, ECF No. 104 at 22). But that logic runs headlong into the principle that an agency's discretionary determination is not reviewable simply because "the agency gives a reviewable reason for otherwise unreviewable action[.]" *I.C.C. v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987). As the Supreme Court explained, for example, where a prosecutor chooses not to prosecute a category of conduct based on his legal determination that it is not covered by the statute, that enforcement decision is not reviewable even though it is based on legal reasoning. *Id.* at 284.

What matters is not the particular rationale given for the agency action, but whether the agency action itself is traditionally reviewable and subject to meaningful standards under the governing statute. As the Supreme Court repeatedly has emphasized, the determination of whether an action is committed to agency discretion "requires careful examination of the statute" under which the agency purports to exercise authority to determine whether "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Webster v. Doe*, 486 U.S. 592, 600 (1988); *see also Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003) (requiring a plaintiff to "specify *some statute or regulation* that would limit" an agency's discretion in the area challenged (emphasis added)).

When DHS decides to deny (or grant) deferred action, it exercises authority derived from the INA. Because the INA confers generally unreviewable discretion on the Secretary of

---

[3] The Former Acting Secretary did not "exclusively" rely on a legal determination regarding DACA's lawfulness; as the Rescission Policy makes clear, in determining to wind down the policy pursuant to the parameters laid out in the memorandum, she relied also on the history of the *Texas* litigation and potential risk it posed to the continuation of DACA, as well as the self-evident complexities associated with winding down a policy that impacts nearly 800,000 individuals. Rescission Policy at 2-4 (AR 253-55). Even had she relied exclusively on an assessment of DACA's legality, however, that decision still would not supply "law to apply" under the APA for the reasons explained herein.

Homeland Security to make deferred-action decisions, there is no law for this Court to apply. Contrary to this Court's conclusion, the law to apply cannot be based on the agency's rationale—regardless of whether that rationale included a legal determination—nor can it come from a comparison between this decision and "the history of the use of deferred action" or "the OLC Opinion." (No. 16-cv-4756, ECF No. 104 at 22).

Finally, there are two substantial grounds for difference of opinion with respect to this Court's conclusion that the Rescission Policy may be reviewed for procedural compliance with the APA *even if* the decision is committed to agency discretion. (No. 16-cv-4756, ECF No. 104 at 21-22). First, although the Court cited *Lincoln v. Vigil*, 508 U.S. 182, 195-98 (1993), for the proposition that the "process by which an agency makes a rule may be reviewed for compliance with applicable procedural requirements regardless of whether the substance of the rule is itself reviewable[,]" (No. 16-cv-4756, ECF No. 104 at 21-22 (citation omitted)), the *Lincoln* court actually recognized that 5 U.S.C. § 701(a)(2) "*preclude[s]* judicial review of certain categories of administrative decisions" committed to agency discretion, 508 U.S. at 191 (emphasis added), without suggesting that the bar on judicial review applies to only certain types of review. To be sure, the *Lincoln* court proceeded to explain why the court of appeals was wrong to conclude that the challenged decision was subject to notice and comment, *id.* at 195-98, but in no way did it suggest that an action could be committed to discretion—such that judicial review is *precluded*—yet still subject to review for procedural compliance with the APA. That contention would be irreconcilable with the court's holding that the APA "gives the courts no leave to intrude" on matters committed to agency discretion, *id.* at 193. Second, for the same reasons that the DACA rescission is an enforcement policy committed to agency discretion by law, it is likewise a statement of policy exempt from notice-and-comment rulemaking. *Cf. id.* at 197. In any event,

even if this claim survives, it will not require record development, and this Court will be able to decide it more expeditiously than if coupled with Plaintiffs' other APA claims.

> **B.** **There Are Substantial Grounds for Disagreement with This Court's Conclusion that the INA Does Not Deprive the Court of Jurisdiction to Consider Challenges to the Rescission Policy.**

There are also substantial grounds for disagreement with the Court's conclusion that the INA does not "divest the court of jurisdiction to hear this case" under 8 U.S.C. § 1252(g) and *Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471 (1999); (No. 16-cv-4756, ECF No. 104 at 28). In *AADC*, the Supreme Court explained that Congress enacted § 1252(g) to combat a "particular evil[,]" that is "attempts to impose judicial constraints upon prosecutorial discretion[,]" principally when the Executive had "chose[n] *not* to exercise it," 525 U.S. at 484, 485 n.9. Accordingly, § 1252(g) provides that, outside of petitions for review from final removal orders and certain other limited channels for review, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary of Homeland Security[4]] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." These were "the acts . . . that had prompted challenges to the . . . exercise of prosecutorial discretion" in denying deferred action, and thus § 1252(g) "seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed"—namely, an individual removal proceeding. *AADC*, 525 U.S. at 485 & n.9.

---

[4] *See* 6 U.S.C. § 557; *see also* §§ 202, 251; *Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010) ("[U]nder 6 U.S.C. § 557, . . . the statutory reference to the 'Attorney General' in § 1252(g) now means 'Secretary of DHS.'").

This Court held that § 1252(g) did not divest it of jurisdiction to review the Rescission Policy because Plaintiffs' challenge to the Policy did not arise from one of the three enumerated immigration actions that trigger the statute. (No. 16-cv-4756, ECF No. 104 at 38-21).[5] The decision not to continue deferred action is an ingredient to the commencement of enforcement proceedings at some future date, and is thus encompassed by the text of § 1252(g) barring review of decisions to "commence proceedings." The Supreme Court acknowledged that the apparent purpose of § 1252(g) was to protect "'no deferred action' decisions and similar discretionary determinations," like the Rescission Policy, by preventing challenges to such decisions in "separate rounds of judicial intervention" outside the process designed by Congress, as is the case here. *AADC*, 525 U.S. at 485. If aliens (or entities suing on their behalf) could evade § 1252(g)'s bar simply by challenging the forthcoming expiration of deferred action before actual removal proceedings (if any) began, then jurisdiction would turn on a race to the courthouse. Such a framework would create the perverse incentive for DHS to begin removal proceedings immediately rather than to allow, as it did here, for rolling expirations of deferred action over a two-and-a-half year period. There is no indication that Congress sought to enact such a nonsensical regime. Instead, § 1252(g) precludes review of either a "decision *or* action" by the then-Acting

---

[5] The Court also held that § 1252(g) did not divest the court of jurisdiction to hear claims of the non-individual plaintiffs (several states and an advocacy organization) because the statute bars only suits by or on behalf of an alien. (No. 16-cv-4756, ECF No. 104 at 31). However, the fundamental concerns of § 1252(g) apply no matter if the challenge is brought by the alien himself or an outside entity (on behalf of the alien and, indirectly, itself). *See AADC*, 525 U.S. at 485. In either context, the purpose of the jurisdictional bar is to prevent separate judicial review outside the streamlined process Congress intended. *See id.* Furthermore, like the American-Arab Anti-Discrimination Committee in *AADC*, itself an organizational plaintiff, the Plaintiff-organizations in this matter are for purposes of § 1252(b) suing "on behalf" of an alien because the relief they seek will benefit the individual Plaintiffs and all other DACA recipients. To the extent the Plaintiff-organizations would benefit from an order setting aside the Rescission Policy, their benefit would be only an indirect and incidental effect of the relief for DACA recipients.

Secretary "to commence proceedings," and thereby sweeps in the Rescission Policy. (emphasis added).

The Court's interpretation of § 1252(g) also conflicts with Seventh Circuit precedent. In *Botezatu v. I.N.S.*, the Seventh Circuit rejected an alien's argument that a court could review the Executive's "refusal to . . . grant him humanitarian parole or deferred action" simply because that denial occurred in "post-deportation procedures," 195 F.3d 311, 313-14 (7th Cir. 1999). As the Seventh Circuit explained, because *AADC* broadly held that "'no deferred action' decisions and similar discretionary determinations' [were] governed by § 1252(g)," that jurisdictional bar should apply regardless of *when* such determinations occurred. *Id.* at 314 (quoting *AADC*, 525 U.S. at 485). Because there are "substantial grounds for difference of opinion" on these important questions, this Court should certify its decision for interlocutory appeal.

## III.   CERTIFICATION WILL MATERIALLY ADVANCE THE DISPOSITION OF THE LITIGATION.

"Although technically the question of whether there is a controlling issue of law is distinct [from] the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected." *Allstate Ins. Co. v. Elzanaty*, No. 11–CV–3862 (ADS)(ARL), 2013 WL 2154759, at *4 (E.D.N.Y. May 16, 2013) (citations omitted). "Ultimately, '[t]he critical requirement is that [an interlocutory appeal] have the potential for substantially accelerating the disposition of the litigation.'" *Analect LLC v. Fifth Third Bancorp*, No. 06–CV–891 (JFB)(WDW), 2009 WL 2568540, at *5 (E.D.N.Y. Aug. 19, 2009) (quoting *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978)); *see also Bay Casino, LLC v. M/V Royal Empress*, No. 98 CV 2333(SJ), 1998 WL 566772, at *3 (E.D.N.Y. Aug. 21, 1998) ("Interlocutory appeals must advance the cause of saving court time.").

Here, a reversal of this Court's order in whole or in part by the Second Circuit would either "terminate the litigation," *see supra* Part I, or "clarify the rights of the parties" and save the Court time by limiting the claims going forward in this litigation. *See Maestri v. Westlake Excavating Co.,* 894 F. Supp. 573, 578 (N.D.N.Y 1995) (holding that a decision which would "clarify the rights of the parties or terminate the litigation . . . may materially advance the ultimate termination of the litigation"); *see also Elzanaty*, 2013 WL 2154759, at *5 (holding that certification would materially advance the ultimate termination of the litigation when, if "the certified question was answered in the affirmative, the scope of Plaintiffs' claims would be significantly narrowed"). In particular, limiting the claims going forward would significantly narrow the scope of discovery, saving the time and resources of both the Court and parties.

Moreover, the Supreme Court has emphasized that "[t]he preconditions for § 1292(b) review—'a controlling question of law,' the prompt resolution of which 'may materially advance the ultimate termination of the litigation'—are most likely to be satisfied when a … ruling involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases." *Mohawk*, 558 U.S. at 110-11. As discussed in Part II, *supra*, the questions presented in this Court's order are ones of first impression carrying important consequences. The Court should follow the Supreme Court's suggestion and certify the order for interlocutory appeal.

## IV.    THIS COURT SHOULD STAY RECORD SUPPLEMENTATION AND DISCOVERY.

For many of the same reasons, the Court should also stay record supplementation and discovery until the resolution of such interlocutory appeal proceedings. At a minimum, the Court should issue a stay until ruling on Defendants' Motions to Dismiss or Plaintiffs' motions for

14

injunctive relief.[6]  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). When certifying a decision for interlocutory review, the district judge has discretion to stay proceedings in the district court. *See* 28 U.S.C. § 1292(b) ("[A]pplication for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."); *see also Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13 Civ. 5784(CM), 2015 WL 585641, at *4 (S.D.N.Y. Feb. 10, 2015) (applying *Landis* to request for stay pending resolution of § 1292(b) proceedings). As the Second Circuit suggested, "it may be prudent for the District Court to stay discovery pending the resolution of such proceedings." *In re Kirstjen M. Nielsen, Sec'y of Homeland Sec.*, No. 17-3345, Order at 4 (2d Cir. Dec. 27, 2017), ECF No. 172. Indeed, Defendants face the immediate burden of compiling a supplemented Administrative Record by January 8, 2018 (*See* No. 16-cv-4756, ECF No. 217) and creating an accompanying privilege log. Additionally, Defendants face potential discovery burdens including the depositions of high-level government officials and the potential review of approximately 1 million collected documents, all of which will require senior government officials to take time away from their other duties. All of these efforts will be wasted if the Second Circuit determines that this case is not justiciable or should otherwise be dismissed, or if this Court decides the case on the existing record.

## CONCLUSION

For the foregoing reasons, the Court should certify its November 9, 2017 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and stay record supplementation and

---

[6] Defendants met and conferred with Plaintiffs on December 28, 2017 regarding this request for a stay. Plaintiffs do not consent to Defendants' request.

discovery until either the resolution of these interlocutory appeal proceedings or this Court's ruling on Defendants' Motions to Dismiss or Plaintiffs' motions for injunctive relief. Additionally, in light of Defendants' immediate obligation to supplement the administrative record by January 8, 2018, Defendants seek an administrative stay while the Court considers this motion.

Dated: December 28, 2017           Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BRIDGET M. ROHDE
Acting United States Attorney

BRETT A. SHUMATE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

JOHN R. TYLER
Assistant Branch Director

BRAD P. ROSENBERG
Senior Trial Counsel

*/s/ Rachael L. Westmoreland*
RACHAEL L. WESTMORELAND
(GA Bar #539498)
STEPHEN M. PEZZI
KATE BAILEY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel.:  (202) 514-1280
Fax:  (202) 616-8470
Email: rachael.westmoreland@usdoj.gov

JOSEPH A. MARUTOLLO
Assistant U.S. Attorney
United States Attorney's Office

Eastern District of New York
271-A Cadman Plaza East, 7th Floor
Brooklyn, NY  11201
Tel:  (718) 254-6288
Fax:  (718) 254-7489
Email:  joseph.marutollo@usdoj.gov

*Counsel for Defendants*