**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARTÍN JONATHAN BATALLA VIDAL, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>KIRSTJEN M. NIELSEN, *et al.*,<br><br>      Defendants. | No. 16-cv-4756 (NGG) (JO) |
| STATE OF NEW YORK, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>DONALD TRUMP, *et al.*,<br><br>      Defendants. | No. 17-cv-5228 (NGG) (JO) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
CERTIFICATION OF THIS COURT'S MARCH 29, 2018 ORDER FOR
<u>INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)</u>**

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 3

   I.   THE ORDER PRESENTS A CONTROLLING QUESTION OF LAW. .......................... 3

   II.   THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION. ................................................................................................................. 4

   III.   CERTIFICATION WILL MATERIALLY ADVANCE THE EFFICIENT DISPOSITION OF THIS LITIGATION. ........................................................... 8

CONCLUSION ................................................................................................................ 10

i

## INTRODUCTION

This Court has now issued three orders addressing the justiciability or merits of Plaintiffs' claims in this litigation challenging the rescission of the Department of Homeland Security's Deferred Action for Childhood Arrivals (DACA) Policy: (1) a November 9, 2017 Memorandum & Order, *Batalla Vidal* ECF No. 104, granting in part, denying in part, and reserving decision in part on Defendants' motion to dismiss (*i.e.*, rejecting Defendants' jurisdictional arguments in substantial part but reserving decision on Defendants' arguments for dismissal under Rule 12(b)(6)) ("the jurisdiction order"); (2) a February 13, 2018 Amended Memorandum & Order & Preliminary Injunction, *Batalla Vidal* ECF No. 255, entering a preliminary injunction on Plaintiffs' substantive Administrative Procedure Act claims ("the preliminary injunction order"); and (3) a March 29, 2018 Memorandum & Order, *Batalla Vidal* ECF No. 260, granting in part and denying in part Defendants' arguments for dismissal under Rule 12(b)(6) ("the motion to dismiss order" or "MTD Order").

The first two of those three orders are already before the United States Court of Appeals for the Second Circuit—the jurisdiction order on petition for appeal after certification under 28 U.S.C. § 1292(b), and the preliminary injunction order on appeal as of right under 28 U.S.C. § 1292(a)(1). For the sake of efficiency and judicial economy, Defendants now seek certification for interlocutory appeal of the Court's third and most recent order (the motion to dismiss order), so that all of the key substantive issues in this litigation can be considered promptly and efficiently by the Second Circuit—and, if necessary, by the Supreme Court of the United States. The United States District Court for the Northern District of California (Alsup, J.) recently issued *sua sponte* a similar certification order under section 1292(b), and the Ninth Circuit then granted the

government's (unopposed) motion for leave to appeal in parallel litigation challenging the rescission of DACA.[1]

The motion to dismiss order presents a legal question of profound importance that has recently led to conflicting decisions among the federal judiciary: whether Plaintiffs may state an equal protection claim where the challenged decision is a facially neutral exercise of immigration enforcement discretion, and where the alleged evidence of discrimination relies almost entirely on Presidential campaign statements.  Although the Court ruled against the government on this question, it also recognized that "searching for evidence of discriminatory motivation in campaign-trail statements is potentially fraught," and that this sort of claim "raises difficult questions" that offer "good reasons to tread lightly."  MTD Order at 19.  The government agrees, and respectfully submits that the Court's order presents a "controlling question of law" about which there is a "substantial ground for difference of opinion," and that an immediate appeal will "materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Certification for interlocutory appeal is therefore an appropriate practical step that will promote an efficient resolution of this litigation.[2]

---

[1] *See Regents of the Univ. of California v. DHS*, No. 17-cv-05211, 2018 WL 401177, at *8 (N.D. Cal. Jan. 12, 2018) ("The district court hereby certifies for interlocutory appeal the issues of whether (i) President Trump's campaign statements are properly considered in evaluating plaintiffs' equal protection claims, (ii) whether the Individual Plaintiffs' and County of Santa Clara's allegations as pleaded state an equal protection claim . . . ."), *granting leave to appeal*, No. 18-0004, Dkt. No. 11 (9th Cir. Jan. 25, 2018).

[2] On April 5, 2018, Defendants contacted counsel for both sets of Plaintiffs to seek their consent to the relief requested in this motion.  The *State of New York* Plaintiffs reported on April 9, 2018 that they will not oppose this motion; they instead "take no position," but will "request an expedited briefing schedule" in the Second Circuit if certification is granted.  (Defendants are also amenable to an expedited briefing schedule in the Second Circuit.)  The *Batalla Vidal* Plaintiffs reported on April 9, 2018 that they oppose this motion.

## ARGUMENT

### I.    THE ORDER PRESENTS A CONTROLLING QUESTION OF LAW.

For purposes of certification under 28 U.S.C. § 1292(b), a question of law may be "controlling" when reversal of the lower court's order would either "result in dismissal, 'significantly affect the conduct' of the case, or have 'precedential value for a large number of cases.'"  *Ryan, Beck & Co. v. Fakih*, 275 F. Supp. 2d 393, 396 (E.D.N.Y. 2003) (quoting *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 226 (S.D.N.Y 2000)).  "[T]he resolution of an issue need not necessarily terminate an action in order to be 'controlling.'"  *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (citation omitted); *see also In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (certification appropriate when question of law "may importantly affect the conduct of an action"); *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs.*, 86 F.3d 656, 659 (7th Cir. 1996) ("A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." (citation omitted)).  Of course, "it is clear that a question of law *is* 'controlling' if reversal of the district court's order *would* terminate the action."  *Klinghoffer*, 921 F.2d at 24 (emphasis added) (citation omitted).

Assuming the government prevails on an appeal of either one of the Court's two other interlocutory orders, then reversal of this Court's equal protection holding would effectively terminate this litigation, as that claim would otherwise be Plaintiffs' sole surviving claim.[3]  The

---

[3] To be sure, the Court also denied Defendants' motion to dismiss certain of the *Batalla Vidal* Plaintiffs' procedural due process claims, to the extent that Make the Road New York "alleged that the rejection of DACA renewal requests that arrived late in the day on October 5, 2017, or that were erroneously deemed to contain minor clerical errors, violated procedural due process."  MTD Order at 32.  But whether or not that claim appropriately survived Defendants' motion to dismiss, it will require no additional district-court development.  Anyone whose DACA renewal request was initially rejected either because it "arrived late in the day on October 5, 2017"

3

possibility of such an outcome demonstrates that this question of law is "controlling" for purposes of certification under section 1292(b).

Even if the government does *not* succeed in the other appeals, or prevails only in part, reversal on the equal protection issue would still, at a minimum, "significantly affect the conduct of the case" moving forward.  *Ryan*, 275 F. Supp. 2d at 396 (quoting *Credit Bancorp*, 103 F. Supp. 2d at 226).  That alone, too, is enough for the question to be sufficiently "controlling" to warrant certification under section 1292(b), as this Court recognized in its prior certification order in this case.  *See* Jan. 8, 2018 Mem. & Order at 4 n.3, *Batalla Vidal* ECF No. 233 ("District courts have discretion, however, to certify an order for interlocutory appeal even when reversal of the order would not terminate the action in its entirety.").

## II.   THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION.

Certification under section 1292(b) may be appropriate if there is a "substantial ground for difference of opinion" on the issue to be certified.  That standard "may be met where there is substantial doubt that the district court's order was correct; where there is conflicting authority on the issue; or where the issue is particularly difficult and of first impression for the Second Circuit." *Goldberg v. UBS AG*, 690 F. Supp. 2d 92, 103 (E.D.N.Y. 2010) (internal citations omitted).  While "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion," *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (citations omitted), "this element is satisfied when where the issues are *difficult*

---

or because it was "erroneously deemed to contain minor clerical errors" either already has, or soon will have, received a complete remedy for any alleged injury—they may (and most presumably have) submitted another DACA renewal request pursuant to this Court's (or Judge Alsup's) preliminary injunction requiring Defendants to process DACA renewal requests without regard to the October 5, 2017 deadline.  And no Plaintiffs seek money damages for any harm suffered in the past attributable to any delay in adjudication of their DACA requests (nor could they).

and of first impression," *Republic of Colombia v. Diageo N. Am. Inc.*, 619 F. Supp. 2d 7, 11 (E.D.N.Y. 2007) (emphasis added); *see also Klinghoffer*, 921 F.2d at 25 (finding that there were "substantial grounds for difference of opinion" when issues were "difficult and of first impression"). Legal questions may be particularly "difficult" when there are "few decisions considering the[] doctrines" at issue in the case, when the court has "to address significant legal and policy concerns that do not appear to have been considered in other . . . decisions[,]" and when the "novelty and complexity of the issues presented" gives rise to disagreement about their application to the issues at hand. *Diageo*, 619 F. Supp. 2d at 11.

The government respectfully submits that this Court's equal protection holding was erroneous. At a minimum, however, the propriety of that holding is subject to debate, for several reasons. First, as this Court effectively acknowledged in its opinion, reasonable jurists not only could—but actually have—recently expressed sharp disagreement over the question whether campaign-trail statements may be relied upon to attribute a discriminatory motive to the President of the United States and his subordinates for official actions carried out after the President has taken the oath of office:

> The court recognizes that searching for evidence of discriminatory motivation in campaign-trail statements is potentially fraught. Old statements may say little about what lay behind a later decision. Statements made in the throes of a heated race may be "contradictory or inflammatory," and considering them may indeed incentivize litigants in future cases to embark on an "evidentiary snark hunt" in search of past comments indicative of some sort of bias. *Washington v. Trump*, 858 F.3d 1168, 1173-74 (9th Cir. 2017) (Kozinski, J., dissenting from denial of reh'g en banc); *cf. Regents 12(b)(6) Order*, 2018 WL 401177, at *7 (recognizing that consideration of campaign statements "can readily lead to mischief in challenging the policies of a new administration").

MTD Order at 19. By the same token, as this Court also appropriately recognized, this sort of "equal-protection claim brought against the President raises difficult questions of whether—and,

if so, for how long—any Executive action disproportionately affecting a group" that has been the subject of the campaign statements in question "may be considered constitutionally suspect." *Id.*; *see also Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233, 268 (4th Cir. 2018), *as amended* (Feb. 28, 2018) ("The Government correctly points out that the President's past actions cannot 'forever taint' his future actions." (quoting *McCreary Cty. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 874 (2005))).

Ultimately, although the Court acknowledged that "these are all good reasons to tread lightly," MTD Order at 19, it ruled against the government on this question that has repeatedly troubled the federal judiciary in recent months. *See, e.g.*, *Int'l Refugee Assistance Project*, 883 F.3d at 266 (declining to consider the President's pre-election statements while noting that they "certainly provide relevant context when examining the purpose" of a Proclamation issued by the President) (cited in MTD Order at 19); *id.* at 354, 373-75 (Niemeyer, J., dissenting) (criticizing as "dangerous and unworkable" "a novel legal rule that provides for the use of campaign-trail statements to recast later official acts of the President"); *Casa de Maryland v. DHS*, 284 F. Supp. 3d 758, 775 (D. Md. 2018) ("The rescission of the DACA program merely fulfills the duty of the executive branch to faithfully enforce the laws passed by Congress.  Accordingly, no affirmative showing of bad faith can follow. . . . [T]he Court need not go further than the facially legitimate motivation offered in the DACA Rescission Memo and supported by the Administrative Record."). That multiple federal judges—including this Court—have openly labored over this issue in recent months is, standing alone, sufficient to find that there are substantial grounds for difference of opinion with the Court's equal protection holding.

Importantly, if the Second Circuit agrees with the government about the propriety of reliance on campaign statements unrelated to DACA in attributing a discriminatory motive to the

President and his subordinates, then it will almost surely reverse the Court's equal protection holding. As this Court effectively acknowledged in the motion to dismiss opinion, absent reliance on such statements by the President, Plaintiffs cannot plausibly state a claim for relief: the Court relied almost exclusively on statements by candidate Trump before he assumed the Office of President and took the oath of office to find that Plaintiffs' allegations raise a plausible inference of discriminatory animus. MTD Order at 17. The Court agreed with the government that "Plaintiffs have not identified statements by Acting Secretary Duke or the Attorney General that would give rise to an inference of discriminatory motive." MTD Order at 20. And the Court noted that "Plaintiffs' remaining allegations" concerning statements made and actions taken by the President principally *after* he took the oath of office "would seem to offer only weak support, at best," for Plaintiffs' allegations of discriminatory motive. *Id*. at 18 n.8.

The propriety of reliance on this sort of campaign rhetoric is also "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Morris v. Flaig*, 511 F. Supp. 2d 282, 315 (E.D.N.Y. 2007) (citations omitted). Even accepting as true all of the well-pleaded allegations in Plaintiffs' complaints, Plaintiffs may only state a claim for relief on their equal protection theory if (among other things) this Court correctly held, as a matter of law, that campaign statements are appropriately relied upon to attribute discriminatory intent to the President and a Department Head for the latter's official act—even where, as here, none of the statements were about the rescission of DACA, and none of the statements were made by the Acting Secretary of Homeland Security (the official who actually rescinded the policy). That is a legal question that has been decided by this Court—and can likewise be decided by the Second Circuit—without any detailed factual inquiry.

Finally, this Court's rejection of Defendants' arguments about immigration enforcement discretion, and the significance of *United States v. Armstrong*, 517 U.S. 456 (1996), and *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 485 (1999) (*AADC*), present an additional independent ground for difference of opinion on the Court's equal protection holding. This Court distinguished *Armstrong* as a criminal case, *see* MTD Order at 14, but in doing so overlooked both (1) *Armstrong*'s explicit engagement with "ordinary equal protection standards," 517 U.S. at 465; and (2) the Supreme Court's subsequent application of the principles of *Armstrong* not only to a civil case, but a case about *immigration enforcement discretion*, in *AADC* itself, noting that *Armstrong*'s concerns were "greatly magnified" in this context, *AADC*, 525 U.S. at 489-90.  Accordingly, Defendants maintain that if this sort of discriminatory-motive claim is cognizable at all in the immigration-enforcement context, it must at least meet the "particularly demanding" standard called for by *Armstrong* and *AADC*: plaintiffs must plausibly allege the existence of "clear evidence" of "outrageous" discrimination, thus "displacing the presumption that a [federal enforcement official] has acted lawfully," before the claim may proceed past the pleadings.  *Id.* at 489, 491 (citing *Armstrong*, 517 U.S. at 463-65).  Because Plaintiffs have not even attempted to make such a showing, if Defendants are correct that this standard governs here, then the Second Circuit may reverse this Court's equal protection holding on that basis alone.

## III.   CERTIFICATION WILL MATERIALLY ADVANCE THE EFFICIENT DISPOSITION OF THIS LITIGATION.

"Although technically the question of whether there is a controlling issue of law is distinct [from] the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected." *Allstate Ins. Co. v. Elzanaty*, No. 11-cv-3862, 2013 WL 2154759, at *4 (E.D.N.Y. May 16, 2013) (citations omitted). "Ultimately, '[t]he critical requirement is that [an interlocutory appeal] have the potential for

substantially accelerating the disposition of the litigation.'" *Analect LLC v. Fifth Third Bancorp*, No. 06-cv-891, 2009 WL 2568540, at \*5 (E.D.N.Y. Aug. 19, 2009) (alteration in original) (quoting *Duplan*, 591 F.2d at 148 n.11 ); *see also Bay Casino, LLC v. M/V Royal Empress*, No. 98-cv-2333, 1998 WL 566772, at \*3 (E.D.N.Y. Aug. 21, 1998) ("Interlocutory appeals must advance the cause of saving court time." (citation omitted)).

Depending on the outcome of the other pending appeals, a reversal of this Court's equal protection order would either "terminate the litigation" entirely, *see supra* Part I, or at a minimum "clarify the rights of the parties" and save substantial time and expense by narrowing the proceedings.  *See Maestri v. Westlake Excavating Co.*, 894 F. Supp. 573, 578 (N.D.N.Y 1995) (holding that a decision which would "clarify the rights of the parties or terminate the litigation . . . may materially advance the ultimate termination of the litigation"); *see also Elzanaty*, 2013 WL 2154759, at \*5 (holding that certification would materially advance the ultimate termination of the litigation when, if "the certified question was answered in the affirmative, the scope of Plaintiffs' claims would be significantly narrowed").

Reversal might also mean dismissal of the only surviving claim for which Plaintiffs seek substantial (or any) discovery.  That would save significant time and resources for the parties and the Court, and could bring to an end (or at least narrow) the heavily disputed ancillary litigation in these matters regarding the appropriate scope of the record.

Finally, the parties, the Court, and the Second Circuit will enjoy undeniable efficiency benefits from certifying this order.  The final judgment rule, and the general presumption against interlocutory appeals, are founded on a concern about the potential inefficiency created by piecemeal appellate litigation.  That concern, however, is simply not present here—and in fact certification would *serve* the goal of avoiding piecemeal appeals.  That is because the parties are

already engaged in interlocutory appellate litigation over related issues in the same case. Certification of the motion to dismiss order would allow for a cohesive set of related appeals to be considered by the Second Circuit promptly and efficiently.

Indeed, Defendants have already suggested to the Second Circuit that it may "wish[] to address all issues raised in these cases at the same time," and that if certification is granted "the parties can propose an expedited briefing schedule to the [Second Circuit] taking into account the existing briefing and argument schedule in the preliminary injunction appeal."  Ltr. of A. Wright to C. O'Hagan Wolfe at 2, *Nielsen v. Batalla-Vidal*, No. 18-122 (2d Cir. April 10, 2018), Dkt. No. 53.[4]  That desire for efficient and expedited consideration in the Second Circuit is apparently shared by the *State of New York* Plaintiffs, who take no position on this request and also intend to seek expedited briefing in the Second Circuit if certification is granted.

## CONCLUSION

For the foregoing reasons, the Court should certify its March 29, 2018 Memorandum & Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Dated: April 13, 2018          Respectfully submitted,

                               CHAD A. READLER
                               Acting Assistant Attorney General

---

[4] This Court has suggested that Defendants "vigorously sought" the original interlocutory appeal in this matter "before reversing course and conceding that the Second Circuit should hold Defendants' petitions for leave to appeal in abeyance pending this court's ruling on Plaintiffs' motions for a preliminary injunction and Defendants' motions to dismiss."  MTD Order at 5 n.4. Defendants have always believed—and continue to believe—that prompt interlocutory appellate review was an appropriate and efficient course for final resolution of several of the complex legal questions presented in these cases.  To the extent that this Court interpreted Defendants' agreement with Plaintiffs that an abeyance was appropriate under the circumstances presented by the unique timing of this complex litigation as inconsistent with that goal of efficient and prompt resolution, Defendants regret any confusion or miscommunication caused by any of their prior filings on this issue.

RICHARD P. DONOGHUE
United States Attorney

BRETT A. SHUMATE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

JOHN R. TYLER
Assistant Branch Director

BRAD P. ROSENBERG
Senior Trial Counsel

*/s/ Stephen M. Pezzi*
STEPHEN M. PEZZI (D.C. Bar #995500)
RACHAEL L. WESTMORELAND
KATE BAILEY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel.:  (202) 305-8576
Fax:  (202) 616-8470
Email:  stephen.pezzi@usdoj.gov

JOSEPH A. MARUTOLLO
Assistant U.S. Attorney
United States Attorney's Office
Eastern District of New York
271-A Cadman Plaza East, 7th Floor
Brooklyn, NY  11201
Tel:  (718) 254-6288
Fax:  (718) 254-7489
Email:  joseph.marutollo@usdoj.gov

*Counsel for Defendants*

11