# Exhibit 4



U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*Office of the Director* (MS 2000)
Washington, DC 20529-2000

August 21, 2020

# Memorandum

TO:          Associate Directors and Program Office Chiefs

FROM:      Joseph Edlow
                Deputy Director for Policy

SUBJECT:   Implementing Acting Secretary Chad Wolf's July 28, 2020 Memorandum, "Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children'"

On July 28, 2020, Acting Secretary of Homeland Security Chad Wolf issued a memorandum entitled, "Reconsideration of the June 15, 2012 Memorandum Entitled 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children.'" In light of the U.S. Supreme Court's decision in *Department of Homeland Security (DHS), et al. v. Regents of the University of California, et al.* Nos. 18-587, 18-588, 18-589, Acting Secretary Wolf rescinded memoranda issued by former Acting Secretary Elaine Duke in 2017 and former Secretary Kirstjen Nielsen in 2018 that had concluded that the Deferred Action for Childhood Arrivals (DACA) policy established on June 15, 2012 by former Secretary Janet Napolitano[1] (hereafter "the Napolitano memorandum") should be rescinded after an orderly wind-down process.

Acting Secretary Wolf's memorandum (hereafter "the Wolf Memorandum") also set forth departmental action to effect certain immediate changes to limit the scope of the DACA policy pending a full and careful reconsideration of the DACA policy. Through this memorandum, I am providing additional guidance to facilitate implementation of the specific changes to the DACA policy that are within the purview of USCIS.

The Wolf Memorandum directed the following actions, effective immediately:

- Reject all initial DACA requests and associated applications for Employment Authorization Documents, and refund all associated fees, without prejudice to re-filing

---

[1] Memorandum for David Aguilar, Acting Commissioner, CBP, et al., from Janet Napolitano, Secretary, DHS, Re: Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children (June 15, 2012) ("Napolitano memorandum").

www.uscis.gov

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 2

such requests should DHS determine to begin accepting initial requests again in the future;

- Adjudicate all pending and future properly submitted DACA renewal requests and associated applications for Employment Authorization Documents from current beneficiaries;

- Limit the period of any deferred action granted pursuant to the DACA policy after the issuance of this memorandum (and thereby limit the period of any associated work authorization) to one year;

- Refrain from terminating any grants of previously issued deferred action or revoking any Employment Authorization Documents based solely on the directives in this memorandum for the remaining duration of their validity periods;

- Reject all pending and future Form I-131 applications for advance parole from beneficiaries of the DACA policy and refund all associated fees, absent exceptional circumstances;

- Refrain from terminating any grants of previously approved advance parole based solely on the directives in this memorandum for the remaining duration of their validity periods;

- Exercise its discretionary authority to terminate or deny deferred action at any time when immigration officials determine termination or denial of deferred action is appropriate; and

- Continue to comply with the information-sharing policy as reflected in the DACA Frequently Asked Questions issued alongside the Napolitano memorandum, and as set forth in USCIS's Form I-821D instructions. Nothing in this memorandum changes that policy.

To facilitate implementation of the Wolf Memorandum, I am providing additional guidance to USCIS personnel as follows:

> **Reject all initial DACA requests and associated applications for Employment Authorization Documents, and return all associated fees, without prejudice to re-filing such requests should DHS determine to begin accepting initial requests again in the future.**

The Wolf Memorandum makes clear that these changes should apply to all initial DACA requests submitted by aliens who have never before received DACA, whether submitted after the issuance of his memorandum or pending before USCIS at the time his memorandum was issued. In accordance with the Wolf Memorandum, USCIS shall reject and return the fees for any DACA requests and associated applications for employment authorization submitted by aliens *who have never before received a grant of DACA.* Since the Supreme Court's decision in

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 3

*Regents*, these requests, if properly filed, have generally been on hold at the USCIS filing location pending further action by USCIS.[2]

Historically, USCIS policy on DACA renewals has permitted DACA recipients to request renewal of DACA for up to one year after their underlying DACA grant has expired. DACA recipients who failed to submit their renewal requests within the one-year time period following expiration have generally been permitted to request DACA anew. Given the lapse of time between these aliens' last DACA period and their subsequent request to again receive DACA, however, USCIS has treated such requests as requests for "initial" DACA for required evidence, processing, and adjudication purposes. Likewise, DACA recipients whose most recent period of DACA has been terminated by USCIS (rather than expired on its own terms) have also been permitted to request DACA anew, but such requests are treated as requests for "initial" DACA (even if the lapse of time between the termination of their most recent period of DACA and their subsequent request to receive DACA again is less than one year).

Under the preliminary injunctions issued in January and February of 2018,[3] USCIS has accepted and adjudicated DACA requests from aliens who have previously received grants of DACA *at any time*—including requests that are treated as "initial" requests for the reasons described above. Given the Acting Secretary's desire to maintain the status quo of the past few years, USCIS will continue to accept and adjudicate such requests notwithstanding any language in the Wolf Memorandum about rejecting "all" requests for initial DACA.

> **Adjudicate all pending and future DACA renewal requests and associated applications for Employment Authorization Documents from DACA recipients.**

USCIS shall continue to adjudicate all pending DACA renewal requests and renewal requests received after the Wolf Memorandum, as well as certain initial requests as discussed above, under the general adjudicative guidelines in place for DACA. USCIS will continue to reject, without prejudice to re-submission, DACA renewal requests that are not properly filed in accordance with form instructions and USCIS filing guidance, as it has done since USCIS first started accepting DACA renewal requests. While USCIS will continue to adjudicate DACA requests under the same general adjudicative guidelines, USCIS is implementing certain immediate changes to DACA processing consistent with and in furtherance of the Wolf Memorandum.

Since June 2014 when DHS and USCIS announced the DACA renewal process, USCIS has consistently instructed DACA recipients to file renewal requests between 150 days and 120 days

---

[2] Initial DACA requests that were properly filed prior to September 5, 2017, should be adjudicated to completion in the event that any of these requests still remain pending with USCIS. This guidance to reject and return the fees for pending initial DACA requests does not apply to initial DACA requests properly filed prior to September 5, 2017.

[3] See https://www.uscis.gov/humanitarian/deferred-action-for-childhood-arrivals-response-to-january-2018-preliminary-injunction

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 4

prior to their DACA expiration.[4] Previously, USCIS has accepted renewal requests filed in advance of that period. In furtherance of the directives in the Wolf Memorandum, USCIS will generally reject DACA renewal requests received more than 150 days prior to the expiration of the DACA recipient's current DACA validity period. The Wolf Memorandum expressed concerns with the scope of the DACA policy during the interim period the policy is under review. Exercising discretion to generally reject DACA renewal requests received more than 150 days prior to the expiration of the alien's current period of DACA is more consistent with our long-existing guidance to DACA recipients and serves other important operational interests to improve USCIS's processing and operational efficiencies as a whole. Additionally, implementing these case intake procedures recognizes that the DACA policy is under comprehensive legal and policy review and may be modified or entirely rescinded by the Acting Secretary once DHS's review of the DACA policy is complete. Therefore, USCIS believes that it is more prudent to generally reject DACA renewal requests received more than 150 days prior to the expiration of the DACA recipient's current DACA validity period as the DACA policy may be revised or rescinded before USCIS would normally take final adjudicative action on these early filed renewal requests.

USCIS understands that applicants, petitioners, and requestors have an interest in timely adjudications. This is particularly true for aliens granted temporary authorization to work in the United States who then apply to USCIS to renew their employment authorization documents before their temporary employment authorization expires. The interim adjustment discussed in this memorandum with respect to early filed DACA renewals balances concerns with the scope of the DACA policy during this interim period with the interests DACA recipients have in preventing gaps in DACA and associated employment authorization. Further, this guidance reflects an understanding that USCIS processes millions of requests for immigration benefits every year in addition to DACA requests, and therefore USCIS must also balance the interests of all other individuals requesting immigration benefits from the agency. Of course, this balancing of interests must be done with consideration given to available resources.

USCIS has seen thousands of instances of current DACA recipients filing for DACA renewal when they still have more than 150 days remaining in their current DACA validity. USCIS data shows that as of June 30, 2020, there were over 11,000 active DACA recipients with DACA renewals pending before USCIS whose current DACA was not set to expire until after January 1, 2021; further, there were nearly 400 active DACA recipients with pending renewal requests whose DACA was not set to expire until the year 2022.

In an effort to minimize overlapping validity periods between an alien's renewed DACA validity period and an alien's current DACA validity period, USCIS has generally withheld issuing final approval of a DACA renewal request until the alien's remaining DACA validity period is closer to the expiration date. USCIS will continue to manage DACA renewal processing to limit significant overlaps in the renewal validity period and the alien's current DACA validity period. However, permitting and accepting DACA renewal requests filed many months in advance of

---

[4] See DACA FAQ 50; https://www.uscis.gov/archive/frequently-asked-questions#renewal; See also: https://www.dhs.gov/news/2014/06/05/secretary-johnson-announces-process-daca-renewal

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 5

DACA expiration only to be preliminarily processed by USCIS and placed on hold is not an efficient use of agency resources.

In assessing whether USCIS should exercise its discretion to begin generally rejecting DACA renewal requests filed more than 150 days prior to expiration, I considered the interests DACA renewal requestors may have in being permitted to file for renewal more than 150 days prior to DACA expiration. In consideration of these potential interests, I examined DACA renewal processing times. USCIS data shows that from August 1, 2019 to August 1, 2020, approximately ninety-six percent of DACA renewal requests processed were completed in 120 or fewer days.

The data demonstrate that in the overwhelming majority of DACA renewal cases, it is not necessary to accept DACA renewal requests more than 150 days before the alien's current DACA period expires in order to facilitate timely processing and minimize gaps in DACA and associated employment authorization. For those aliens, the only effect of this change will be for those early requesters either to wait until the specified period to request renewal or to re-file an early-filed renewal request at the appropriate time. In cases where the requestor may not continue to meet the DACA guidelines, including concerns that arise from background check results, renewal processing may require more time, but these outliers do not reasonably justify permitting routine acceptance of early filings during this interim period while the DACA policy is under review given USCIS's other policy and operational concerns.

Lastly, nothing precludes USCIS from exercising its discretion to accept a DACA renewal request filed 150 days or more in advance of expiration if there are legitimate reasons for doing so, and nothing precludes USCIS from again modifying recommended filing timelines either during this interim period or should DHS announce changes to the DACA policy in the future.

> **Limit the period of any deferred action granted pursuant to the DACA policy after the issuance of this memorandum (and thereby limit the period of any associated work authorization) to one year.**

As described in the Wolf Memorandum, all requests for DACA and associated employment authorization granted after July 28, 2020 will be for a validity period of no more than one year.[5]

The one-year validity period shall begin on the date the DACA request receives final approval, consistent with past practices, and have an ending validity date that is no more than one year minus one day from the date of approval. Also consistent with past practices, the associated employment authorization validity period shall end on the same date that the DACA validity period ends.

The Wolf Memorandum acknowledged that shortening validity periods to one year during this interim period will have the effect of increasing the total amount of fees DACA requestors would pay over a multi-year period and asked USCIS to consider whether it is possible to reduce renewal fees during this time. USCIS is currently considering the merits and feasibility of

---

[5] 8 CFR 274a.12(c) states in pertinent part that "USCIS, in its discretion, may establish a specific validity period for an employment authorization document . . ."

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 6

reducing DACA-related fees during the interim period the DACA policy is under review. Pursuant to INA Section 286(m), DHS may set fees at a level that will "ensure recovery of full costs" of providing adjudication services. While USCIS has never charged a fee for Form I-821D, Consideration of Deferred Action for Childhood Arrivals, all DACA requestors are required to file Form I-765, Application for Employment Authorization, which does require a fee with very limited exemptions. DACA requestors are also required to pay a biometrics fee.

USCIS notes that the new fee rule, which becomes effective on Oct. 2, 2020, includes a fee increase for the Form I-765, Application for Employment Authorization, for all categories of employment authorization **except** for the DACA category. The fee for DACA-based applications for employment authorization will remain at $410, plus an $85 biometrics fee, for the time being. Lastly, as noted above, USCIS will continue to manage DACA renewal processing to limit significant overlaps in the renewal validity period and the alien's current DACA validity period, which may lessen some of the economic impact from shortened DACA renewal validity periods.

> **Refrain from terminating any grants of previously issued deferred action or revoking any Employment Authorization Documents based solely on the directives in this memorandum for the remaining duration of their validity periods.**

Notwithstanding the prospective changes made by the Wolf Memorandum, USCIS will allow previous two-year grants of DACA and associated employment authorization to remain undisturbed during their existing two-year validity periods (unless USCIS terminates an alien's DACA and associated employment authorization for other reasons). Consistent with this guidance, two-year DACA recipients who apply for a replacement EAD due to loss, theft, or the mutilation of their prior EAD will receive a replacement EAD with the same expiration date based on the original two-year validity period, assuming the application is otherwise approvable.

> **Reject all pending and future Form I-131 applications for advance parole from DACA recipients and refund all associated fees, absent exceptional circumstances.**

Acting Secretary Wolf states the following in his memorandum with respect to advance parole:

> "In light of my concerns about the policy as a whole, I do not believe that, at least absent exceptional circumstances, DHS should continue to make the benefit of advance parole available while I reconsider whether the DACA policy itself should exist."

Because USCIS will not be able to determine whether Form I-131 applications already received at the DACA-specific filing location fit within Secretary Wolf's stated parole policy without adjudicating the applications, and applicants who filed their Form I-131 before the Wolf Memorandum was issued did not have prior knowledge of the guidance in the memorandum, USCIS has determined that it would be more efficient and fair if applicants refile their applications under the new guidance. Therefore, USCIS shall reject and return the fees for all Form I-131 applications received at the DACA specific filing location that have been held since July 24, 2020.

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 7

If those DACA recipients still wish to submit a request for advance parole, they may submit their Form I-131 applications consistent with filing instructions that will be announced on the USCIS website. The Form I-131 rejection notice shall inform applicants that they may re-apply for advance parole consistent with the Wolf Memorandum and filing instructions that will be announced on the USCIS website.

Regarding Form I-131 applications filed by DACA recipients at non-DACA filing locations before the Wolf Memorandum was issued and therefore accepted, USCIS will treat these applications similarly to those that have been on hold at the DACA-specific filing location. USCIS will administratively close these cases and refund the fees. USCIS will issue notices informing these applicants that their application has been administratively closed consistent with the Wolf Memorandum. The notice shall inform applicants that they may re-apply for advance parole consistent with the Wolf Memorandum and filing instructions that will be announced on the USCIS website.

USCIS will continue to maintain the current policy for DACA recipients who apply for advance parole in association with other non-DACA immigration requests. For instance, if a DACA recipient has a pending Form I-485 Application to Register Permanent Residence or Adjust Status and requests advance parole on the basis of his or her pending Form I-485, USCIS will adjudicate the advance parole request under the existing policies for Form I-485-based advance parole requests. USCIS will not apply this memorandum to a parole request by a DACA recipient if the request is associated with another underlying immigration benefit (i.e., other than DACA) as described in the instructions to Form I-131 or in USCIS policy guidance.

DACA recipients who have no separate basis for requesting advance parole as described in the instructions to Form I-131 may request advance parole if they have valid DACA and can demonstrate that they warrant the extraordinary privilege of being permitted to return to the United States after traveling abroad, even without a lawful immigration status, pursuant to a valid advance parole travel document.

The Wolf Memorandum sets forth new agency guidance with respect to management of the adjudication of advance parole applications submitted by DACA recipients who do not have a non-DACA basis for advance parole. For nearly three years, advance parole applications submitted by DACA recipients were rejected or denied by USCIS (the applications that were accepted and then denied were accepted solely because they were submitted to an incorrect filing location).

The Wolf Memorandum does not revive the prior DACA-based advance parole standards[6] or add a supplementary exceptional circumstances test to those standards. Rather, the Wolf

---

[6] The prior policy for granting advance parole based on DACA stated that USCIS would generally only grant advance parole if the DACA recipient's travel abroad would be in the furtherance of:

- Humanitarian purposes, including travel to obtain medical treatment, attending funeral services for a family member, or visiting an ailing relative;
- Educational purposes, such as semester-abroad programs and academic research, or;

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 8

Memorandum institutes a new general hold on granting advance parole to DACA recipients based on prior DACA-based advance parole standards during an interim period while DHS conducts a full review of the DACA policy. As Acting Secretary Wolf noted, it makes sense to continue this approach while he reconsiders whether to rescind or revise the prior policy. The only difference is that the Wolf Memorandum permits USCIS to process advance parole applications submitted by DACA recipients consistent with INA Section 212(d)(5) and based on a full consideration of all the discretionary factors presented in the alien's application.

Such grants of advance parole should, as a threshold matter, be consistent with the statutory description of parole under INA Section 212(d)(5), 8 U.S.C. § 1182(d)(5)(A), which mandates a case-by-case assessment and a determination that parole of the alien is for urgent humanitarian reasons or significant public benefit. Accordingly, I am directing USCIS officers to ensure that any grants of advance parole to DACA recipients are consistent with the statute and take into consideration all other discretionary factors present in the case under the totality of circumstances.

Secretary Wolf's memorandum providing for "exceptional circumstances" should be understood in the context of this existing high statutory standard for parole found in INA Section 212(d)(5). Therefore, in most instances, traveling abroad for educational purposes, employment related purposes, or to visit family members living abroad will not warrant advance parole under Secretary Wolf's interim policy regarding the discretionary exercise of parole for urgent humanitarian reasons or significant public benefit. Additionally, as USCIS has noted since DACA recipients were first permitted to apply for advance parole, travel for vacation is not a valid basis for advance parole.

While the determination of whether to grant advance parole to a DACA recipient based on exceptional circumstances is a case-by-case assessment involving the assessment of the totality of factors presented, some examples of travel that may fit within the statutory standard for parole include, but are not limited to the following:

- Travel to support the national security interests of the United States including U.S. military interests;

- Travel in furtherance of U.S. federal law enforcement interests;

- Travel to obtain life-sustaining medical treatment that is not otherwise available to the alien in the United States;

- Travel needed to support the immediate safety, well-being, or care of an *immediate* relative, particularly minor children of the alien.

The burden shall be on the alien to establish eligibility for parole pursuant to INA section 212(d)(5).

---

- Employment purposes such as overseas assignments, interviews, conferences or, training, or meetings with clients overseas.

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 9

USCIS will consider all discretionary factors presented in the application before making a decision on the advance parole request. The advance permission to travel abroad and return to the United States pursuant to an advance parole travel document is an extraordinary privilege. It is a particularly extraordinary privilege when conferred to an alien who has resided in the United States contrary to our immigration laws (irrespective of when the alien arrived in the United States). The June 15, 2012 Napolitano memorandum itself contained no directive to provide this extraordinary benefit to DACA recipients, and USCIS has not granted this benefit to DACA recipients since the issuance of the September 5, 2017, Duke memorandum.

To ensure compliance with this interim policy, I am directing that any applications for advance parole preliminarily assessed to be approvable by the Service Center(s) designated to adjudicate such applications, receive concurrence from no lower than the Deputy Associate Director for Service Center Operations Directorate (SCOPS) prior to final approval. SCOPS will develop a process to facilitate this review in a timely manner.

SCOPS shall immediately work with the Office of Intake and Document Production (OIDP) and the External Affairs Directorate (EXA) to develop public guidance consistent with this memorandum. The public guidance shall make clear that any applications for advance parole submitted by DACA recipients and received at the designated filing location will be considered a DACA-based application for advance parole based on the Wolf Memorandum.

The public guidance shall make clear that USCIS will accept the application if properly completed and process the fee prior to making an adjudicative determination on whether advance parole should be granted. The public guidance shall also make clear that any applications denied by USCIS because USCIS finds that the application does not merit approval, in the exercise of its discretion, under INA Section 212(d)(5), are not appealable and shall not receive a refund of application fees.

As noted above, INA Section 286(m) gives USCIS authority to collect application fees that "ensure recovery of the full costs of providing [adjudication services]." The determination of whether to grant advance parole under INA Section 212(d)(5) must be made by a trained Immigration Officer after required background checks and other processing requirements are completed. Those services cost money which USCIS recoups from the application fee. As those services must be completed prior to a final determination on whether the alien merits a grant of advance parole USCIS will not refund the application fees on advance parole applications that USCIS denies, consistent with USCIS standard practice.

SCOPS will work with the Office of Policy and Strategy (OP&S) and the Office of the Chief Counsel (OCC) to develop additional training or guidance materials to assist officers in the adjudication of these applications consistent with this memorandum.

> ➢ **Refrain from terminating any grants of previously approved advance parole based solely on the directives in this memorandum for the remaining duration of their validity periods.**

USCIS shall not terminate any previously approved advance parole documents issued to DACA recipients during the stated validity period of the existing advance parole document, absent a

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 10

valid, separate legal basis distinct from the directives in the Wolf Memorandum for terminating advance parole.[7]

> ➢ **Exercise its discretionary authority to terminate or deny deferred action at any time when immigration officials determine termination or denial of deferred action is appropriate.**

Based on the immediate review of the DACA policy, including the immediate interim changes to the policy discussed in the Wolf Memorandum and this memorandum, I am directing SCOPS to immediately review the internal guidance document referred to as the DACA SOP last revised on August 28, 2013. SCOPS should work with OCC and OP&S to immediately update the DACA SOP consistent with the Wolf Memorandum and this memorandum. The updated DACA SOP shall make clear that it is intended solely for the instruction of USCIS personnel in the performance of their official duties, and that the SOP is not legally binding, does not confer any substantive rights to removable aliens, and does not otherwise constrain DHS' authority to enforce the immigration laws passed by Congress.

SCOPS should also review other internal DACA operational guidance and training materials currently in use to ensure that they are consistent with the Wolf Memorandum and this memorandum.

USCIS must continue to follow the DACA termination procedures required by all relevant court orders as long as they remain in effect.

> ➢ **Continue to comply with the information-sharing policy as reflected in the DACA Frequently Asked Questions issued alongside the Napolitano memorandum, and as set forth in USCIS's Form I-821D instructions. Nothing in this memorandum makes any change to that policy.**

USCIS shall continue to operate under the DACA information sharing policy described above. Nothing in this memorandum or the Wolf Memorandum makes any change to that policy.

**Use**

This memorandum is intended solely for the instruction of USCIS personnel in the performance of their official duties. It is not intended to, does not, and may not be relied upon to, create any right or benefit, substantive or procedural, enforceable at law, or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner.

---

[7] USCIS has not granted advance parole based on the standards associated with DACA since September 5, 2017.