UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>      Plaintiffs,<br><br>   v.<br><br>DONALD J. TRUMP, *in his official capacity as President of the United States*, et al.,<br><br>      Defendants. | 17-CV-5228 (NGG) (JO) |

**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

Pursuant to Local Civil Rule 56.1, Plaintiffs the State of New York et al. submit the following statement of material facts as to which there is no genuine issue to be tried.

**I. Issuance of the July 28, 2020 Wolf Memorandum.**

1. In 2012, former Secretary of Homeland Security Janet Napolitano issued a memorandum establishing Deferred Action for Childhood Arrivals ("DACA")—that set forth specific criteria for DHS to employ on a case-by-case basis when deciding requests for protection from deportation for certain young immigrants brought to the United States as children who have continually lived in the United States for at least five years. *See* Ex. 1[1] (Janet Napolitano, U.S. Department of Homeland Security, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States As Children* (June 15, 2012)).

---

[1] All references in this Local Rule 56.1 Statement of Material Facts to "Ex. __" are to the exhibits to the accompanying Declaration of Matthew Colangelo dated August 28, 2020 (ECF No. 273).

1

2. Individuals granted deferred action under DACA received protection from removal for renewable two-year periods, and the ability to apply for authorization and for permission to travel outside the country ("advance parole"). *Id.*

3. On June 18, 2020, the Supreme Court held that the Department of Homeland Security's 2017 rescission of the DACA program was arbitrary and capricious under the Administrative Procedure Act ("APA"). *See Department of Homeland Security v. Regents of Univ. of California*, 140 S. Ct. 1891, 1915 (2020).

4. On June 30, 2020, the Court of Appeals for the Fourth Circuit issued the mandate associated with its 2019 decision entering summary judgment for plaintiffs and vacating the 2017 rescission of DACA as arbitrary and capricious under the APA. Ex. 2 (Mandate, *Casa de Maryland*, No. 18-1521, ECF No. 71 (4th Cir. June 30, 2020)).

5. Following *Regents* and the Fourth Circuit's mandate, DHS declined to process DACA applications and instead "generally held" applications "in anticipation of potential policy changes." Ex. 3 (Chad F. Wolf, *Reconsideration of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children"* (July 28, 2020)) ("Wolf Memo").

6. On July 28, 2020, Acting Secretary of Homeland Security Chad Wolf issued a memorandum directing DHS to make interim changes to DACA while Wolf considered whether to fully rescind DACA. *Id.*

7. The Wolf Memo orders DHS to reject all new initial DACA applications, to change the renewal period for current beneficiaries from two years to one year, and to reject all advance parole applications absent exceptional circumstances. *Id.* at 7-8; *see also* Ex. 4 (Joseph Edlow, *Implementing Acting Secretary Chad Wolf's July 28, 2020, Memorandum,*

*"Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children'"* (Aug. 21, 2020)).

8. The Wolf Memo calls for a retroactive application of its changes to the availability of DACA, making those changes effective as of June 18, the date of the *Regents* decision. Wolf Memo 7 & n.1.

9. With respect to advance parole, the Wolf Memo states (Ex. 3 at 7 & n.1) that DHS began categorically holding advance parole requests on July 24. According to the Memo, between June 18 and July 24, many advance parole requests were rejected while some were accepted. *Id.* The Memo invites any DACA recipient whose advance parole requests DHS rejected before July 24 to renew the request if the requestor "believes exceptional circumstances support his or her request." *Id.* at 7 n.1.

**II.     Amendments to the DHS Succession Order.**

10. On February 15, 2019, then-Secretary of Homeland Security Kirstjen Nielsen exercised her authority under 6 U.S.C. § 113(g)(2) to set an order of succession should the Deputy Secretary and Under Secretary for Management positions be vacant, by amending the existing order of succession, Delegation 00106, issued in 2016 by then-Secretary of Homeland Security Jeh Johnson. *See* Ex. 5 at 5 (U.S. Gov't Accountability Off., B-331650, *Department of Homeland Security—Legality of Service of Acting Secretary of Homeland Security and Service of Senior Official Performing the Duties of Deputy Secretary of Homeland Security* (Aug. 14, 2020)) (the "GAO Report").

11. In the case of the Secretary's death, resignation, or inability to perform the functions of office, Secretary Nielsen's February Delegation provided that Executive Order 13753 governed the order of succession. *Id.*

12. If the Secretary is unavailable to act during a disaster or catastrophic emergency, Secretary Nielsen's February Delegation provided that Annex A to the February Delegation governed the order of succession. *Id.*

13. At the time of the February Delegation, the orders of succession found in E.O. 13753 and Annex A were identical; the first four positions in the order of succession for both were as follows: (1) Deputy Secretary; (2) Under Secretary for Management, (3) Administrator of the Federal Emergency Management Agency ("FEMA") and (4) Director of the Cybersecurity and Infrastructure Security Agency ("CISA"). *See* Ex. 5 at 5-6 (GAO Report); Ex. 6 (*Amending the Order of Succession in the Department of Homeland Security*, Exec. Order 13753, 81 Fed. Reg. 90,667 (Dec. 9, 2016)).

14. When E.O 13753 was issued in 2016, the Director of CISA was called the Under Secretary for National Protection and Programs; the position was renamed in 2018. Pub. L. No. 115-278, § 2(a), 132 Stat. 4168, 4169 (Nov. 16, 2018), *codified at* 6 U.S.C. § 652(a), (b).

15. The February Delegation further provided that acting officials in the listed positions were ineligible to serve as acting secretary and, thus, the order of succession would fall to the next Senate-confirmed official. *See* Ex. 5 at 6 (GAO Report).

16. Secretary Nielsen announced her resignation from the Secretary position effective April 7, 2019. Ex. 7 (Secretary Kirstjen Nielsen, Resignation Letter to the President (Apr. 7, 2019)).

17. Secretary Nielsen nonetheless purported to remain in office until April 10, 2019. Ex. 8 at 25 (Mem. of Law in Support of Defs.' Opp. to Pls.' Mot. for a Prelim. Injunction, *Casa de Maryland, Inc. et al. v. Wolf, et al.*, No. 8:20-cv-2118, ECF No. 41 (D. Md. Aug. 3, 2020)).

18. Before leaving office on April 10, 2019, Nielsen made a partial amendment to DHS's order of succession. In this April Delegation, Secretary Nielsen retained the two separate grounds for accession to the role of Acting Secretary: vacancies arising from Secretary's death, resignation, or inability to perform the functions of office were still governed by E.O. 13753, and vacancies arising from the Secretary's unavailability to act during a disaster or catastrophic emergency were still governed by Annex A to the Delegation. Ex. 9 at §§ II.A, II.B (Dep't of Homeland Security, *DHS Orders of Succession and Delegations of Authorities for Named Positions*, Delegation No. 00106, Revision No. 08.5 (Apr. 10, 2019)).

19. Secretary Nielsen also did not amend E.O. 13753, which continued to govern the order of succession in the event of a vacancy created by the Secretary's death, resignation or inability to perform the functions of the office. *See id.* § II.A.

20. Secretary Nielsen did, however, amend Annex A, which set forth the order of succession for when the Secretary is unavailable to act during a disaster or catastrophic emergency; the new order of succession was as follows: (1) Deputy Secretary; (2) Under Secretary for Management; (3) Commissioner of U.S. Customs and Border Protection ("CBP"), and (4) Administrator of FEMA. *Id.* at Annex A.

21. Following Nielsen's April 10, 2019 departure, Senate-confirmed Commissioner of CBP Kevin McAleenan assumed the role of Acting Secretary. *See* Ex. 5 at 4 (GAO Report).

22. On November 8, 2019, McAleenen substituted Annex A for E.O. 13753 to govern the order of succession when the Secretary dies, resigns, or is unable to perform the functions of office. *See* Ex. 10 (Kevin K. McAleenan, Amendment to the Order of Succession for the Secretary of Homeland Security (Nov. 8, 2019)); Ex. 11 (Dep't of Homeland Security, *DHS*

5

*Orders of Succession and Delegations of Authorities for Named Positions*, Delegation No. 00106, Revision No. 08.6 (Nov. 14, 2019)).

23. McAleenan then directed the order of succession in Annex A to be: (1) Deputy Secretary, (2) Under Secretary for Management; (3) Commissioner of CBP; and (4) Under Secretary for Strategy, Policy, and Plans. *See id.*

24. On November 13, 2019, McAleenan resigned as both Acting Secretary and Commissioner of CBP, and the Senate-confirmed Under Secretary for Strategy, Policy, and Plans, Chad Wolf, assumed the role of Acting Secretary. *See* Ex. 5 at 4 (GAO Report).

### III. Congress and the U.S. Government Accountability Office question the validity of Wolf's service as Acting Secretary of Homeland Security.

25. On November 15, 2019, the Chairman of the House of Representatives Committee on Homeland Security and the Acting Chairwoman of the House Committee on Oversight and Reform wrote a letter to the head of GAO "to express serious concerns with the legality of the appointment" of Chad Wolf as Acting Secretary of Homeland Security and Ken Cuccinelli as Senior Official Performing the Duties of Deputy Secretary. Ex. 12 (Letter from Bennie G. Thompson, Chairman, House Committee on Homeland Security, and Carolyn B. Maloney, Acting Chairwoman, House Committee on Oversight & Reform, to Gene Dodaro, Comptroller General of the United States (Nov. 15, 2019)).

26. In particular, the Chairman and Acting Chairwoman expressed concern that Wolf was serving in violation of the Federal Vacancies Reform Act ("FVRA") and Homeland Security Act ("HSA") because former Acting Secretary McAleenan did not lawfully assume the Acting Secretary position, and so McAleenan had no authority to make the changes to DHS's order of succession that formed the basis for Wolf's accession to Acting Secretary. *Id.* at 2.

6

27. On August 14, 2020, GAO issued a report responding to the Chairman and Acting Chairwoman's request, and assessing the legality of the appointment of Chad Wolf as Acting Secretary of Homeland Security and Ken Cuccinelli as Senior Official Performing the Duties of Deputy Secretary. *See* Ex. 5 (GAO Report).

28. In the report, GAO explained that "[i]n the case of vacancy in the positions of Secretary, Deputy Secretary, and Under Secretary for Management, the HSA provides a means for an official to assume the title of Acting Secretary pursuant to a designation of further order of succession by the Secretary." *Id.* at 11.

29. Based on the amendments Secretary Nielsen made to the order of succession in April 2019, GAO concluded that the Senate-confirmed CBP Commissioner (McAleenan) "would have been the appropriate official" to serve as Acting Secretary only if Secretary Nielsen had been "unavailable to act during a disaster or catastrophic emergency." *Id.* at 7 (citing Annex A to the April Delegation).

30. GAO concluded that because Secretary Nielsen had *resigned*, E.O. 13753 controlled under "the plain language of the April Delegation." *Id.*

31. GAO explained that after Nielsen's resignation, then-Director of CISA, Christopher Krebs, should have assumed the position Acting Secretary because he was the first Senate-confirmed official in the E.O. 13753 order of succession, which governed following a Secretary's resignation. *Id.* at 8 & n.11.

32. GAO noted that although "McAleenan assumed the title of Acting Secretary upon the resignation of Secretary Nielsen," "the express terms of the existing [succession] designation required [Krebs] to assume that title" and so "McAleenan did not have authority to amend the Secretary's existing designation." *Id.* at 11.

7

33. GAO thus concluded that Wolf and Cuccinelli were improperly serving in their acting roles because they assumed those acting roles under "[the] invalid order of succession" established by McAleenan in November 2019. *Id.*

34. GAO did not assess the consequences of Wolf's and Cuccinelli's unlawful appointments and instead referred that question to the DHS Office of Inspector General. *Id.* at 11.

DATED: August 28, 2020

Anisha S. Dasgupta
  *Deputy Solicitor General*
Joshua M. Parker
  *Assistant Solicitor General*

*Of Counsel*

Respectfully submitted,

LETITIA JAMES
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo
  *Chief Counsel for Federal Initiatives*
Sania Khan, *Assistant Attorney General*
Joseph Wardenski, *Senior Trial Counsel*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
Matthew.Colangelo@ag.ny.gov

*Attorneys for the State Plaintiffs*

8