**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

STATE OF NEW YORK, et al.,

                Plaintiffs,

      v.

DONALD J. TRUMP, *in his official*
*capacity as President of the United*
*States*, et al.,

                Defendants.

17-CV-5228 (NGG) (JO)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ........................................................................................................... 4

I.      Constitutional and Statutory Framework. ......................................................... 4

II.     Events Culminating in Chad Wolf Assuming the Role of Acting Secretary of
        Homeland Security and Issuing a Memorandum Partially Rescinding DACA. ................. 6

III.    Congress and the Courts Question the Validity of Wolf's Service as Acting
        Secretary of DHS. .......................................................................................... 11

ARGUMENT .............................................................................................................. 14

I.      Standard of Review. ....................................................................................... 14

II.     Wolf Has Been Unlawfully Serving As Acting Secretary in Violation of the
        Federal Vacancies Reform Act and Homeland Security Act. ............................ 16

III.    The Wolf Memo Is Void and the Changes Effected By It Must Be Set Aside. ............... 22

CONCLUSION ........................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Aid Ass'n for Lutherans v. U.S. Postal Serv.*,
    321 F.3d 1166 (D.C. Cir. 2003) ...................................................................15

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ....................................................................................14

*Batalla Vidal v. Nielsen*,
    279 F. Supp. 3d 401 (E.D.N.Y. 2018) ..................................................... 1-2

*Batalla Vidal v. Trump*,
    No. 18-485 (2d Cir. July 29, 2020) ...........................................................24

*Bowen v. Mich. Acad. of Family Physicians*,
    476 U.S. 667-670 (1986) ............................................................................14

*Casa de Maryland v. U.S. Dep't of Homeland Sec.*,
    924 F.3d 684 (4th Cir. 2019) ........................................................................2

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ....................................................................................14

*Dart v. United States*,
    848 F.2d 217 (D.C. Cir. 1988) ...................................................................15

*Department of Homeland Sec. v. Regents of Univ. of California*,
    140 S. Ct. 1891 (2020) ...........................................................................2, 23

*English v. Trump*,
    279 F. Supp. 3d 307 (D.D.C. 2018) ...........................................................18

*Freytag v. Comm'r of Internal Revenue*,
    501 U.S. 868 (1991) ......................................................................................4

*Guedes v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*,
    920 F.3d 1 (D.C. Cir. 2019) ..................................................................5, 16

*L.M.-M. v. Cuccinelli*,
    442 F. Supp. 3d 1 (D.D.C. 2020) ...........................................5, 13, 15, 22

*La Clinica De La Raza v. Trump*,
    No. 19-cv-4980-PJH, 2020 WL 4569462 (N.D. Cal. Aug. 7, 2020) ............................. passim

*Mittleman v. Postal Regulatory Comm'n*,
    757 F.3d 300 (D.C. Cir. 2014) ...........................................................15

*NAACP v. Trump*,
    315 F. Supp. 3d 457 (D.D.C. 2018) ................................................2, 23

*Nat'l Mining Ass'n v. U.S. Army Corps of Engr's*,
    145 F.3d 1399, 1409 (D.C. Cir. 1998) ...............................................24

*New York v. U.S. Dep't of Homeland Sec.*,
    No. 19-3591, 2020 WL 4457951 (2d Cir. Aug. 4, 2020) ..................3, 24

*NLRB v. SW Gen., Inc.*,
    137 S. Ct. 929 (2017) ...............................................................4-5, 22

*Nw. Envtl. Advocates v. U.S. E.P.A.*,
    537 F.3d 1006 (9th Cir. 2008) .........................................................15

*Rhode Island Dep't of Envtl. Mgmt. v. United States*,
    304 F.3d 31 (1st Cir. 2002) ...............................................................14

*Rojas v. Roman Catholic Diocese of Rochester*,
    660 F.3d 98 (2d Cir. 2011)...............................................................14

*SW Gen., Inc. v. N.L.R.B.*,
    796 F.3d 67 (D.C. Cir. 2015) .......................................................17, 23

## CONSTITUTION AND STATUTES

U.S. Const. art. II, § 2, cl. 2 ....................................................................4

5 U.S.C.
    § 551(13) ......................................................................................22
    § 706(2)(A), (C) ...........................................................................15
    § 3345 ....................................................................................5, 18
    § 3346 ..............................................................................5, 18-19
    § 3347 ...............................................................................5, 20, 22
    § 3348(a) .....................................................................................22
    § 3348(b)(1) ................................................................................18
    § 3348(d) ......................................................4, 6, 17, 22-23

6 U.S.C.
    § 112(a)(2) ...................................................................................22
    § 113(a)(1)(A) ...............................................................5-7, 16, 21
    § 113(g)...................................................................5-7, 16, 20-21

28 U.S.C.
  § 1331 .................................................................................................................14
  § 2201 .................................................................................................................14

**RULES**

Fed. R. Civ. P. 56(a) ...............................................................................................14

**MISCELLANEOUS AUTHORITIES**

Complaint, *Casa de Maryland, Inc. v. Wolf*,
  No. 8:20-cv-2118 (D. Md. July 21, 2020), ECF No. 1 ....................................14

Complaint, *Cent. Am. Res. Ctr. v. Cuccinelli*,
  No. 20-cv-2363 (D.D.C. Aug. 26, 2020), ECF No. 1 ......................................14

Complaint, *Don't Shoot Portland v. Wolf*,
  No. 1:20-cv-2040 (D.D.C. July 27, 2020), ECF No. 1 .....................................14

Order Dismissing Appeal, *L.M.-M. v. Cuccinelli*,
  No. 20-5141 (D.C. Cir. Aug. 25, 2020), ECF No. 45 .......................................13

## PRELIMINARY STATEMENT

This lawsuit challenges changes to Deferred Action for Childhood Arrivals ("DACA")

that were recently imposed by an unlawful federal agency memorandum.  Those changes affect

the lives of hundreds of thousands of immigrants and the States where they reside.  The

memorandum is unlawful because, among other things, the Acting Secretary who issued it was

improperly serving in that role in violation of the Homeland Security Act ("HSA") and Federal

Vacancies Reform Act ("FVRA")—making the memorandum an ultra vires agency action that

was void ab initio.

In 2012, then-Secretary of Homeland Security Janet Napolitano issued a memorandum on

DACA that set forth specific criteria for DHS to employ on a case-by-case basis when deciding

requests for protection from deportation for certain young immigrants who came to the United

States as children and have continually lived in the United States for at least five years.  *See* Pls.'

56.1 Stmt. ¶ 1 (ECF No. 274).  Individuals granted deferred action under DACA received

protection from removal for renewable two-year periods, and the ability to apply for

authorization and for permission to travel outside the country ("advance parole").  *See* Pls.' 56.1

Stmt. ¶ 2.  As this Court has recognized, since 2012, DACA has provided a means for nearly

800,000 grantees to support themselves and their families, and to contribute to their broader

communities.  *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 407 (E.D.N.Y. 2018).

The societal benefits of DACA are broad and deep.  For example, because DACA

permits grantees to seek and obtain legal authorization to work, DACA grantees have been able

to perform a wide variety of critical job functions in the Plaintiff States, including as teachers,

healthcare workers, and information technology specialists.  Such work allows grantees to

provide vital financial support to their families, and to enhance the economies of their

communities.  *See* Pls.' Second Am. Supplemental Compl. ¶¶ 132-233, 236-52, 258-63, 272-76

(ECF No. 271).  Indeed, state and local governments raise approximately $884 million in taxes from DACA grantees each year.  *See id.* ¶¶ 137, 143, 149, 155, 161, 166, 172, 178, 184, 190, 196, 202, 209, 217, 222, 233.

In September 2017, former Acting Secretary of Homeland Security Elaine Duke issued a memorandum stating that she was rescinding DACA on the grounds that DACA was purportedly unlawful.  In 2018, at an earlier stage of this case, this Court found that Duke's decision to rescind DACA was likely arbitrary and capricious under the Administrative Procedure Act ("APA") and entered a nationwide preliminary injunction requiring DHS to continue processing DACA renewal applications.  *See Batalla Vidal*, 279 F. Supp. 3d at 420-33, 437-38.  The federal government petitioned for certiorari while its appeal was pending before the Second Circuit, and the Supreme Court granted that petition along with the federal government's petitions for certiorari in parallel litigation in the Ninth Circuit and the U.S. District Court for the District of Columbia.

On June 18, 2020, the Supreme Court held that Duke's 2017 rescission of DACA was arbitrary and capricious under the APA.  *See Department of Homeland Sec. v. Regents of Univ. of California* ("*Regents*"), 140 S. Ct. 1891, 1915 (2020); Pls.' 56.1 Stmt. ¶ 3.  Among other things, the Supreme Court expressly affirmed in full a summary judgment ruling "that DACA's rescission was unlawful and must be set aside."  *NAACP v. Trump*, 315 F. Supp. 3d 457, 473 (D.D.C. 2018); *see Regents*, 140 S. Ct. at 1916 & n.7.  Shortly thereafter, the Supreme Court denied the federal government's petition for certiorari from a Fourth Circuit summary judgment ruling vacating the 2017 rescission of DACA as arbitrary and capricious under the APA.  *Casa de Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 706 (4th Cir. 2019), *cert. denied*, — S. Ct. —, 2020 WL 3492650 (Mem.) (U.S. June 29, 2010) (No. 18-1469).  On June 30, 2020,

the Fourth Circuit issued the mandate associated with its summary judgment ruling.  Pls.' 56.1

Stmt. ¶ 4.  The issuance of that mandate had the effect of vacating the rescission nationwide.

*See, e.g., New York v. U.S. Dep't of Homeland Sec.*, No. 19-3591, 2020 WL 4457951, at \*31 (2d

Cir. Aug. 4, 2020) (describing the effect of a final judgment vacating agency action under the

APA).

      Notwithstanding *Regents* and the Fourth Circuit's mandate, DHS did not restore DACA

as it existed before the September 2017 rescission and did not recommence processing DACA

applications, but instead "generally held" applications "in anticipation of potential policy

changes."  Ex. 3 (Chad F. Wolf, *Reconsideration of the June 15, 2012 Memorandum Entitled*

*"Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States*

*as Children"* (July 28, 2020)) (the "Wolf Memo"); Pls.' 56.1 Stmt. ¶ 5.[1]  On July 28, 2020, Chad

Wolf—in his capacity as purported Acting Secretary of Homeland Security—issued a

memorandum directing DHS to make interim changes to DACA while Wolf considered whether

to fully rescind DACA.  *Id.*  In particular, the Wolf Memo orders DHS to reject all new initial

DACA applications, to change the renewal period for current beneficiaries from two years to one

year, and to reject all advance parole applications absent exceptional circumstances.  Pls.' 56.1

Stmt. ¶ 7.  The Wolf Memo purports to apply these changes retroactively to all applications

submitted after the June 18, 2020 *Regents* decision.  Pls.' 56.1 Stmt. ¶ 8.

      This Court should hold the Wolf Memo invalid and vacate the Wolf Memo's changes to

DACA.  As the U.S. Government Accountability Office ("GAO") has concluded, Wolf has never

lawfully served in the role of Acting Secretary of Homeland Security because Wolf's assumption

---

[1] Citations in this Memorandum to "Ex. __" are to the exhibits to the accompanying Declaration
of Matthew Colangelo dated August 28, 2020 (ECF No. 273).

of that role violated the FVRA and HSA.  Wolf assumed the Acting Secretary position pursuant to a November 2019 revision to DHS's succession order issued by then-Acting Secretary Kevin McAleenan.  But McAleenan had no power to make that revision because McAleenan himself assumed the Acting Secretary position unlawfully following then-Secretary Nielsen's April 2019 resignation.  DHS's operative succession order at the time of Secretary Nielsen's resignation unambiguously provided that the Director of the Cybersecurity and Infrastructure Security Agency ("CISA"), not the Commissioner of U.S. Customs and Border Protection (the position McAleenan was filling before he succeeded Nielsen), was to succeed the Secretary in the event she resigned.

Because Wolf issued his memorandum ordering changes to DACA while unlawfully serving as Acting Secretary, the FVRA mandates that the memorandum "shall have no force or effect" and "may not be ratified" by the official who lawfully should have assumed the Acting Secretary role.  *See* 5 U.S.C. §§ 3348(d)(1), (2).  The Wolf Memo was thus void at the outset, and DHS has continually violated the Supreme Court's order in *Regents* by not reinstating DACA as DACA existed before DHS's September 2017 rescission.  In view of DHS's plain violation of the FVRA and HSA, this court should grant Plaintiffs' motion for partial summary judgment on the claims in Plaintiffs' second amended complaint.

## BACKGROUND

### I.     Constitutional and Statutory Framework.

"Article II of the Constitution requires that the President obtain 'the Advice and Consent of the Senate' before appointing 'Officers of the United States.'"  *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 934 (2017) (quoting U.S. Const. art. II, § 2, cl. 2).  "The Senate's advice and consent power is a crucial structural safeguard [] of the constitutional scheme," *id.* at 935, given that "[t]he manipulation of official appointments had long been one of the American revolutionary

generation's greatest grievances against executive power." *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 883 (1991) (quotation marks omitted). "Since President Washington's first term, Congress has given the President limited authority to appoint acting officials to temporarily perform the functions of a vacant . . . office without first obtaining Senate approval." *SW Gen.*, 137 S. Ct. at 935.

The FVRA establishes a default framework for authorizing acting officials to fill Senate-confirmed roles, with three options for who may serve as an acting official.[2] *See* 5 U.S.C. § 3345; *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 24 (D.D.C. 2020) (describing FVRA's default framework). The FVRA further provides that a position may be occupied by an acting official only for a maximum of 210 days. *See* 5 U.S.C. § 3346. Section 3347 of the FVRA explains that this framework is the "exclusive means" for authorizing acting officials unless a specific statute designates one or authorizes "the President, a court, or the head of an Executive department" to designate one. 5 U.S.C. § 3347; *see Guedes v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 920 F.3d 1, 11 (D.C. Cir. 2019) (describing this exception to the exclusivity of the FVRA). DHS has such a statute: the Homeland Security Act, which establishes an order of succession for the Acting Secretary, expressly superseding the FVRA's default options for who may serve as Acting Secretary of Homeland Security. 6 U.S.C. § 113(g). First in line under the HSA is the Deputy Secretary, and then the Under Secretary for Management. 6 U.S.C.

---

[2] The "first assistant to the office" of the vacant officer generally becomes the acting official. 5 U.S.C. § 3345(a)(1). Instead of the first assistant, however, the President may appoint someone who is already serving in a different Senate-confirmed position. *Id.* § 3345(a)(2). Alternatively, the President may authorize "an officer or employee" of the relevant agency to serve as acting official if that officer or employee has held a position in the agency above the GS-15 pay rate for 90 days or more within the preceding year. *Id.* § 3345(a)(3).

§§ 113(a)(1)(A), 113(g)(1).  After these two offices, the order of succession is set by the

Secretary of Homeland Security.  *Id.* § 113(g)(2).

The FVRA provides that official actions taken by unlawfully serving acting officials

"shall have no force or effect" and "may not be ratified" after the fact.  5 U.S.C. §§ 3348(d)(1),

(2).  This includes acting officials who assume their roles through agency-specific statutes,

because Section 3348 expressly applies to "any person who is not acting under action 3345,

3346, or 3347."  *Id.* § 3348(d)(1).  The HSA thus does not supersede Section 3348(d) of the

FRVA.  Put another way, the HSA governs the order of succession for Acting Secretary, but the

FVRA determines the consequences of an official's serving as Acting Secretary in violation of

the HSA.

## II.    Events Culminating in Chad Wolf Assuming the Role of Acting Secretary of Homeland Security and Issuing a Memorandum Partially Rescinding DACA.

Secretary Kirstjen Nielsen was the most recent Senate-confirmed Secretary of Homeland

Security.  On February 15, 2019, she exercised her power under the HSA to set an order of

succession for the position of Acting Secretary of DHS should the Deputy Secretary and Under

Secretary for Management positions be vacant.  She did so by amending the existing order of

succession—Delegation 00106[3]—that had been issued by then-Secretary Jeh Johnson in 2016.

*See* Ex. 5 at 5 (U.S. Gov't Accountability Off., B-331650, *Department of Homeland Security—*

*Legality of Service of Acting Secretary of Homeland Security and Service of Senior Official*

*Performing the Duties of Deputy Secretary of Homeland Security* (Aug. 14, 2020)) (the "GAO

---

[3] The term "Delegation" refers to the Secretary's delegation of her authority to perform her functions and duties should the Secretary leave her position or otherwise be unavailable to act for the reasons outlined in the Delegation.

Report"); Pls.' 56.1 Stmt. ¶ 10.  Nielsen's February Delegation[4] provided two grounds for accession of an Acting Secretary: (1) the Secretary's death, resignation, or inability to perform the functions of the office; and (2) the Secretary's unavailability to act during a disaster or catastrophic emergency.  Each ground set forth the order of succession that would govern under those circumstances.  In the case of the Secretary's death, resignation, or inability to perform the functions of office, Executive Order 13753—the most recent prior amendment to the order of succession in the Department—would govern the order of succession.  If the Secretary were unavailable to act during a disaster or catastrophic emergency, the order of succession would be governed by Annex A to the February Delegation.  Pls.' 56.1 Stmt. ¶¶ 10-12.

At the time of the February Delegation, the orders of succession found in E.O. 13753 and Annex A were identical; the first four positions in the order of succession for both were as follows: (1) Deputy Secretary; (2) Under Secretary for Management, (3) Administrator of the Federal Emergency Management Agency ("FEMA") and (4) Director of CISA.[5]  Pls.' 56.1 Stmt. ¶ 13.  The February Delegation further provided that officials who were only acting in the listed positions (rather than confirmed to those positions) were ineligible to serve as Acting Secretary of Homeland Security, such that the position of Acting Secretary would pass to the next Senate-confirmed official.  Pls.' 56.1 Stmt. ¶ 15.[6]

---

[4] For consistency with the GAO Report, this Memorandum refers to revisions to Delegation 00106 as themselves delegations, identified by the month they were issued (*e.g.*, the "February Delegation").

[5] When E.O. 13753 was issued in 2016, the Director of CISA was called the Under Secretary for National Protection and Programs; the position was renamed in 2018.  Pls.' 56.1 Stmt. ¶ 14.

[6] The chart on page 10 of this Memorandum depicts the different succession orders following the February 2019, April 2019, and November 2019 revisions to Delegation 00106.

Nielsen originally announced her resignation from the Secretary position effective April 7, 2019.  Pls.' 56.1 Stmt. ¶ 16.  Under the order of succession in effect at that time, and in view of the vacancy in the Deputy Secretary position, the Acting Secretary position would have been assumed by Claire Grady, the Under Secretary for Management.  *See* 6 U.S.C. §§ 113(a)(1)(A), 113(g)(1).  But Nielsen then purported to remain in office until April 10, and Grady resigned on April 9.

Before leaving office on April 10, 2019, Nielsen made a partial amendment to DHS's order of succession.  In this April Delegation, Secretary Nielsen retained the two separate grounds for accession to the role of Acting Secretary: vacancies arising from Secretary's death, resignation, or inability to perform the functions of office were still governed by E.O. 13753, and vacancies arising from the Secretary's unavailability to act during a disaster or catastrophic emergency were still governed by Annex A to the Delegation.  Pls.' 56.1 Stmt. ¶ 18.  Secretary Nielsen also did not amend E.O. 13753, which continued to govern the order of succession in the event of a vacancy created by the Secretary's death, resignation or inability to perform the functions of the office.  Pls.' 56.1 Stmt. ¶ 19.  Secretary Nielsen did, however, amend Annex A, which set forth the order of succession for when the Secretary is unavailable to act during a disaster or catastrophic emergency; the new order of succession was as follows: (1) Deputy Secretary; (2) Under Secretary for Management; (3) Commissioner of U.S. Customs and Border Protection ("CBP"), and (4) Administrator of FEMA.  Pls.' 56.1 Stmt. ¶ 20.

Following Nielsen's April 10, 2019 departure, Senate-confirmed CBP Commissioner of Kevin McAleenan assumed the role of Acting Secretary, supposedly pursuant to Annex A.  Pls.' 56.1 Stmt. ¶ 21.  Yet E.O. 13753 rather than Annex A governed the relevant order of succession

because the vacancy in the position of Secretary was created by Nielsen's resignation, not through the Secretary's unavailability during a disaster or catastrophic emergency.

On November 8, 2019, McAleenan substituted Annex A for E.O. 13753 to govern the order of succession when the Secretary dies, resigns, or is unable to perform the functions of office.  Pls.' 56.1 Stmt. ¶ 22.  McAleenan then directed the order of succession in Annex A to be: (1) Deputy Secretary, (2) Under Secretary for Management; (3) Commissioner of CBP; and (4) Under Secretary for Strategy, Policy, and Plans. Pls.' 56.1 Stmt. ¶ 23.  On November 13, 2019, McAleenan resigned as both Acting Secretary and Commissioner of CBP.  Because the first three positions in the line of succession were vacant, the Senate-confirmed Under Secretary for Strategy, Policy, and Plans—Chad Wolf—assumed the role of Acting Secretary.  Pls.' 56.1 Stmt. ¶ 24.

For ease of reference, the following chart depicts the different succession orders in the February, April, and November delegations:

|  | Vacancy created by Secretary's death, resignation, or inability to perform the functions of office | Secretary unavailable to act during a disaster or emergency | Changes made from prior delegation |
|---|---|---|---|
| **February Delegation** | *Succession order governed by E.O. 13753*<br><br>Succession order:<br>(1) Deputy Secretary;<br>(2) Under Secretary for Management;<br>(3) Administrator of FEMA;<br>(4) Director of CISA | *Succession order governed by Annex A to Delegation*<br><br>Succession order:<br>(1) Deputy Secretary;<br>(2) Under Secretary for Management;<br>(3) Administrator of FEMA;<br>(4) Director of CISA | |
| **April Delegation** | *Succession order governed by E.O. 13753*<br><br>Succession order:<br>(1) Deputy Secretary;<br>(2) Under Secretary for Management;<br>(3) Administrator of FEMA;<br>(4) Director of CISA | *Succession order governed by Annex A to Delegation*<br><br>Succession order:<br>(1) Deputy Secretary;<br>(2) Under Secretary for Management;<br>(3) Commissioner of CBP;<br>(4) Administrator of FEMA | In Annex A, the Commissioner of CBP moves from the seventh to third in the succession order. |
| **November Delegation** | *Succession order governed by Annex A to Delegation*<br><br>Succession order:<br>(1) Deputy Secretary;<br>(2) Under Secretary for Management;<br>(3) Commissioner of CBP;<br>(4) Under Secretary for Strategy, Policy, and Plans | *Succession order governed by Annex A to delegation*<br><br>Succession order:<br>(1) Deputy Secretary;<br>(2) Under Secretary for Management;<br>(3) Commissioner of CBP;<br>(4) Under Secretary for Strategy, Policy, and Plans | Succession order set forth in Annex A—rather than E.O. 13753—governs vacancy created by Secretary's death, resignation, or inability to perform the functions of office.<br><br>Under Secretary for Strategy, Policy, and Plans replaces Administrator of FEMA as fourth in Annex A's succession order. |

On July 28, 2020, Wolf issued a memorandum purporting to reconsider the Napolitano Memo establishing DACA.  The Wolf Memo directed DHS to make certain "changes [to DACA] on an interim basis while [Wolf] consider[s] whether to make more substantial changes," including full rescission, "on a permanent basis."  Pls.' 56.1 Stmt. ¶ 6.  Under the Wolf Memo, DHS must (a) reject all pending and future DACA applications; (b) limit DACA renewals for existing DACA recipients to one year instead of two years; and (c) reject all applications for advanced parole from DACA beneficiaries absent exceptional circumstances.  Pls.' 56.1 Stmt. ¶ 7.  The Wolf Memo calls for a retroactive application of its changes to the availability of DACA, making those changes effective as of June 18, 2020, the date of the *Regents* decision.[7]  Pls.' 56.1 Stmt. ¶ 8.

### III.   Congress and the Courts Question the Validity of Wolf's Service as Acting Secretary of DHS.

On November 15, 2019, two days after Wolf assumed the Acting Secretary role, the Chairman of the House of Representatives Committee on Homeland Security and the Acting Chairwoman of the House Committee on Oversight and Reform wrote a letter to the head of GAO "to express serious concerns with the legality of the appointment" of Chad Wolf as Acting Secretary of DHS and Ken Cuccinelli as Senior Official Performing the Duties of Deputy Secretary.  Pls.' 56.1 Stmt. ¶ 25.  In particular, the Chairman and Acting Chairwoman expressed concern that Wolf was serving in violation of the FVRA and HSA because former Acting Secretary McAleenan did not lawfully assume the Acting Secretary position, and so McAleenan

---

[7] With respect to advance parole, the Wolf Memo states that DHS began categorically holding advance parole requests on July 24, 2020.  According to the Memo, between June 18 and July 24, 2020, many advance parole requests were rejected while some were accepted.  The Memo invites any DACA recipient whose advance parole requests DHS rejected before July 24 to renew the request if the requestor "believes exceptional circumstances support his or her request."  Pls.' 56.1 Stmt. ¶ 9.

had no authority to make the changes to DHS's order of succession that formed the basis for

Wolf's accession to Acting Secretary.  Pls.' 56.1 Stmt. ¶ 26.

On August 14, 2020, GAO issued a report responding to the Chairman and Acting

Chairwoman's request and assessing the legality of the appointment of Chad Wolf as Acting

Secretary of DHS and Ken Cuccinelli as Senior Official Performing the Duties of Deputy

Secretary.  Pls.' 56.1 Stmt. ¶ 27.  In the report, GAO explained that "[i]n the case of vacancy in

the positions of Secretary, Deputy Secretary, and Under Secretary for Management, the HSA

provides a means for an official to assume the title of Acting Secretary pursuant to a designation

of further order of succession by the Secretary."  Ex. 5 at 11 (GAO Report); Pls.' 56.1 Stmt.

¶ 28.  Based on the amendments Secretary Nielsen made to the order of succession in April

2019, GAO concluded that the Senate-confirmed CBP Commissioner (McAleenan) "would have

been the appropriate official" to serve as Acting Secretary only if Secretary Nielsen had been

"unavailable to act during a disaster or catastrophic emergency."  Ex. 5 at 7 (GAO Report)

(citing Annex A to the April Delegation); Pls.' 56.1 Stmt. ¶ 29.

GAO concluded that because Secretary Nielsen had *resigned*, E.O. 13753 controlled

under "the plain language of the April Delegation."  Ex. 5 at 7(GAO Report); Pls.' 56.1 Stmt.

¶ 30.  GAO explained that after Nielsen's resignation, then-Director of CISA, Christopher Krebs,

should have assumed the position of Acting Secretary because he was the first Senate-confirmed

official in the E.O. 13753 order of succession, which governed following a Secretary's

resignation.[8]  Ex. 5 at 8 & n.11 (GAO Report); Pls.' 56.1 Stmt. ¶ 31.  GAO noted that although

"McAleenan assumed the title of Acting Secretary upon the resignation of Secretary Nielsen,"

---

[8] The FEMA Administrator had resigned a week before Nielsen resigned. Ex. 5 at 8 n.11 (GAO Report).

"the express terms of the existing [succession] designation required [Krebs] to assume that title" and so "McAleenan did not have authority to amend the Secretary's existing designation."  Ex. 5 at 11 (GAO Report); Pls.' 56.1 Stmt. ¶ 32.  GAO thus concluded that Wolf and Cuccinelli were improperly serving in their acting roles because they assumed those acting roles under "[the] invalid order of succession" established by McAleenan in November 2019.  Ex. 5 at 11 (GAO Report); Pls.' 56.1 Stmt. ¶ 33.

GAO recognized that Secretary Nielsen's conduct may have suggested that she intended McAleenan to become Acting Secretary upon her resignation, but GAO concluded that "it would be inappropriate, in light of the clear express directive of the April Delegation"—which provided that McAleenan would only take over if Nielsen was unavailable to act during a disaster or catastrophic emergency—"to interpret the order of succession based on post-hoc actions."  Ex. 5 at 9 (GAO Report).  GAO did not assess the consequences of Wolf's and Cuccinelli's unlawful appointments and instead referred that question to the DHS Office of Inspector General.  *Id.* at 11; Pls.' 56.1 Stmt. ¶ 34.

Multiple lawsuits have challenged actions taken by Wolf and Cuccinelli on the ground that they assumed their positions in violation of the FVRA and HSA.  At least one district court has invalidated DHS action on the ground that the responsible agency official was not lawfully serving in his position, and the federal government recently dismissed its appeal of the district court's order.  *See L.M.-M.*, 442 F. Supp. 3d at 25, 37 (holding that Cuccinelli's appointment as Acting Director of U.S. Citizenship and Immigration Services "cannot be squared with the text, structure, or purpose of the FVRA" and thus the directives he issued in that role should have no force or effect); Order Dismissing Appeal, *L.M.-M. v. Cuccinelli*, No. 20-5141 (D.C. Cir. Aug. 25, 2020), ECF No. 45.  And there are several other pending challenges to DHS's actions in

which the plaintiffs have argued that Wolf is unlawfully serving as Acting Secretary in violation of the FVRA, HSA, and DHS's succession orders. *See, e.g.*, Complaint, *Don't Shoot Portland v. Wolf*, No. 1:20-cv-2040 (D.D.C. July 27, 2020), ECF No. 1; Complaint, *Casa de Maryland, Inc. v. Wolf*, No. 8:20-cv-2118 (D. Md. July 21, 2020), ECF No. 1; *see also* Complaint, *Cent. Am. Res. Ctr. v. Cuccinelli*, No. 20-cv-2363 (D.D.C. Aug. 26, 2020), ECF No. 1 (alleging that Cuccinelli's designation as Principal Deputy Director of U.S. Citizenship and Immigration Services violates FVRA, HRA, and DHS's succession orders).

## ARGUMENT

Chad Wolf unlawfully assumed the position of Acting Secretary of Homeland Security in violation of the FVRA and HSA. Under the plain terms of the FVRA, all official actions taken by Wolf as Acting Secretary—including his issuance of the Wolf Memo—are therefore invalid.

## I.      Standard of Review.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Declaratory Judgment Act provides Plaintiffs with a cause of action to obtain judicial review of Wolf's ultra vires changes to DACA. The Supreme Court has recognized that there is a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family Physicians,* 476 U.S. 667, 670 (1986). Thus, courts have long exercised federal question jurisdiction to review, under the Declaratory Judgment Act, agency action that is ultra vires. *See, e.g., Rhode Island Dep't of Envtl. Mgmt. v. United States*, 304 F.3d 31, 41-42

14

(1st Cir. 2002); 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2201 (Declaratory

Judgment Act).  As the D.C. Circuit has observed, "[e]ven where Congress is understood

generally to have precluded review, the Supreme Court has found an implicit but narrow

exception, closely paralleling the historic origins of judicial review for agency actions in excess

of jurisdiction."  *See Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173 (D.C.

Cir. 2003).  Such review exists independently from the APA, and the APA does not restrict or

"repeal the review of *ultra vires* actions."  *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir.

1988); *see also Mittleman v. Postal Regulatory Comm'n*, 757 F.3d 300, 307 (D.C. Cir. 2014)

("[T]he absence of a cause of action for judicial review under the APA does not necessarily

foreclose all judicial review.").

Plaintiffs accordingly ask this Court to enter summary judgment on their Ninth Claim for

Relief, *see* Second Am. Supplemental Compl. ¶¶ 332-37, and issue a declaration that the Wolf

Memo, and the changes it ordered to DACA, were void from the outset.[9]

## II.   Wolf Has Been Unlawfully Serving As Acting Secretary in Violation of the Federal Vacancies Reform Act and Homeland Security Act.

Chad Wolf never lawfully served as Acting Secretary of Homeland Security.  Wolf

assumed that position pursuant to the November 2019 revised succession order issued by then-

Acting Secretary McAleenan.  But because McAleenan himself held the position of Acting

---

[9] Plaintiffs' Second Amended Supplemental Complaint separately alleges (Eighth Claim for Relief) that the Wolf Memo should be vacated and set aside under the APA both because it is arbitrary and capricious, and because Wolf's official actions were taken in excess of statutory authority and were not taken in accordance with law.  *See* Second Am. Supplemental Compl. ¶¶ 328-31.  To the extent this motion for partial summary judgment is not dispositive of this action, Plaintiffs intend to argue in a subsequent motion for partial summary judgment on their APA claims that because Wolf was exercising the authority of the Acting Secretary of Homeland Security in violation of the FVRA and HSA, his official actions are invalid under the APA and must be set aside.  *See* 5 U.S.C. § 706(2)(A), (C); *Nw. Envtl. Advocates v. U.S. E.P.A.*, 537 F.3d 1006, 1027 (9th Cir. 2008)*; L.M.-M.*, 442 F. Supp. 3d at 34, 36.

Secretary unlawfully, McAleenan had no authority to revise the succession order to make Wolf

his successor.  Wolf's service as Acting Secretary is thus unlawful under the FVRA and HSA.

The HSA establishes the order of succession for the Acting Secretary position, with the

DHS Deputy Secretary and Under Secretary for Management being first in line, followed by an

order of succession set by the Secretary.  6 U.S.C. §§ 113(a)(1)(A), 113(g)(1), 113(g)(2); *supra*

at 5-6; *see also Guedes*, 920 F.3d at 11 (consulting agency-specific succession statute to

determine succession order).  On April 10, 2019, Nielsen amended the order of succession, but

only for circumstances when "the Secretary is unavailable to act during a disaster or catastrophic

emergency."  Pls.' 56.1 Stmt. ¶¶ 19-20.  Under those circumstances, the Deputy Secretary

remained first in line to become Acting Secretary, followed by the Under Secretary for

Management, and then the Commissioner of CBP (at that time, McAleenan).

Nielsen's April Delegation expressly stated that "[i]n case of the Secretary's death,

*resignation*, or inability to perform functions of the Office, the orderly succession of officials is

governed by Executive Order 13753, amended on December 9, 2016."  Ex. 9 at § II.A (emphasis

added) (Dep't of Homeland Security, *DHS Orders of Succession and Delegations of Authorities*

*for Named Positions*, Delegation No. 00106, Revision No. 08.5 (Apr. 10, 2019)).  Because

Nielsen resigned, the order of succession set forth in E.O. 13753 controlled.  *See La Clinica De*

*La Raza v. Trump*, No. 19-cv-4980-PJH, 2020 WL 4569462, at *13 (N.D. Cal. Aug. 7, 2020)

("[W]hen Secretary Nielsen resigned," E.O. 13753 governed, "not the amended Annex A, which

only applied when the Secretary was unavailable due to disaster or catastrophic emergency.").

And that order of succession clearly provided that if the Deputy Secretary and Under Secretary

for Management positions were vacant, as they were at the time, the next in line to succeed

would be the FEMA Administrator and then the Director of CISA.[10] *See* Ex. 6 (Exec. Order

13753).  Because the FEMA Administrator resigned before Secretary Nielsen resigned, the

Director of CISA—and not McAleenan—was the lawful successor to Nielsen, as GAO correctly

found.  Ex. 5 at 8 & n.11 (GAO Report); *see supra* at 12-13 & n.8.

Indeed, in other litigation, DHS has *admitted* that Nielsen's April Delegation was not

correctly implemented, stating at a hearing that Nielsen's change to the order of succession "was

not implemented per her direction" and that "it was an essentially an error in how it was

implemented from Secretary Nielsen's direction, and that was fixed subsequently [in November]

to remove any reference to the Executive Order."  Ex. 13 (Pls.' Supp. Br. in support of Mot. for

Prelim. Injunction at 5-6, *A.B.-B. v. Morgan*, No. 1:20-cv-846 (D.D.C. June 1, 2020), ECF No.

24 (quoting Tr. of Telephonic Prelim. Injunction Mot. Hearing Proceedings at 29-30, *A.B.-B. v.

Morgan*, No. 1:20-cv-846 (D.D.C. May 12, 2020), ECF No. 26)); *see also* Ex. 8 (Mem. of Law

in Support of Defs.' Opp. to Pls.' Mot. for a Prelim. Injunction at 26 n.10, *Casa de Maryland,

Inc v. Wolf*, No. 8:20-cv-2118 (D. Md. Aug. 3, 2020), ECF No. 41) (DHS argues that the April

Delegation's failure to change the succession order that governs when the Secretary resigns was

an "inadvertent, ministerial error").

Because McAleenan was not lawfully serving as Acting Secretary, he did not have the

authority to amend DHS's order of succession to move up Wolf's position.  Under the FVRA,

when an official without lawful authority performs a "function or duty of a vacant office," it

"shall have no force or effect."  *See* 5 U.S.C. § 3348(d)(1); *SW Gen., Inc. v. N.L.R.B.*, 796 F.3d

67, 71 (D.C. Cir. 2015), *aff'd*, 137 S. Ct. 929 (2017) ("[T]he FVRA renders actions taken by

---

[10] The position McAleenan was filling at the time—Commissioner of CBP—was seventh in the succession order outlined in E.O. 13753. *See* Ex. 6 (Exec. Order 13753).

persons serving in violation of the Act void ab initio.").  Because Wolf only assumed the position

of Acting Secretary because of McAleenan's ultra vires amendment to the succession order,

Wolf's service as Acting Secretary is similarly unlawful under the HSA and FVRA, as GAO

correctly concluded.[11]

To be sure, Executive Order 13753—which sets forth the order of succession for DHS

Secretary when the Secretary resigns—vests the President with "discretion, to the extent

permitted by the [FVRA], to depart from" the succession order contained in E.O. 13753 "in

designating an Acting Secretary."  Ex. 6 (Exec. Order 13753); *see also La Clinica*, 2020 WL

4569462, at *14.  And as part of its default framework, Section 3345 of the FVRA permits the

President to appoint as Acting Secretary an official who is already serving in a different Senate-

confirmed position.  *See* 5 U.S.C. § 3345(a)(2); Ex. 6 (Exec. Order 13753).

But DHS cannot rely on the interaction between E.O. 13753 and the FVRA's default

framework to justify McAleenan's[12] and Wolf's accessions as lawful, for three reasons.  *First,* if

Wolf were serving as Acting Secretary pursuant to Section 3345 of the FVRA, he would be

unable to serve as Acting Secretary more than 210 days after the Secretary position became

vacant.  *See* 5 U.S.C. § 3346; *English v. Trump*, 279 F. Supp. 3d 307, 312 (D.D.C. 2018); *see*

*also* 5 U.S.C. § 3348(b)(1) ("office shall remain vacant" unless acting officer is serving in

---

[11] In contrast to Nielsen's amendment, McAleenan's amendment made the new order of succession applicable "in the case of the Secretary's death, resignation, or inability to perform the functions of the office."  *See* Ex. 10 (Kevin K. McAleenan, Amendment to the Order of Succession for the Secretary of Homeland Security (Nov. 8, 2019)); Ex. 11 (Dep't of Homeland Security, *DHS Orders of Succession and Delegations of Authorities for Named Positions*, Delegation No. 00106, Revision No. 08.6 (Nov. 14, 2019)).  Thus, if McAleenan did have the authority to make this amendment, Wolf would be lawfully serving as Acting Secretary.  But McAleenan had no such authority.

[12] Because Wolf's accession would be unlawful if McAleenan did not lawfully assume the role of Acting Secretary, DHS must show that McAleenan's accession was lawful under the FVRA and HSA. *See supra* at 3, 8-9, 11-13.

accordance with Section 3346).  Secretary Nielsen resigned on April 10, 2019 at the latest, and

210 days after April 10, 2019 is November 6, 2019.  Yet Wolf's service as Acting Secretary did

not begin until November 13, 2019, *see* Pls.' 56.1 Stmt. ¶ 24—seven days after the latest possible

expiration of the 210-day period.

*Second*, the President never purported to exercise his discretion under E.O. 13753 to

depart from DHS's order of succession.  Indeed, the federal government has admitted that it

intended to follow the succession order set forth in Nielsen's April Delegation and

accompanying memorandum, but that Nielsen inadvertently amended the wrong part of the

Delegation.  *See supra* at 17.

*Third*, Nielsen's April Delegation expressly provides that in the case of the Secretary's

resignation, the succession order set forth in E.O. 13753 governs rather than the FVRA's default

order of succession.  *See* Ex. 9 at § II.A.

DHS has incorrectly argued in other places that Secretary Nielsen's change to the order

of succession applied to any vacancy in the position of the Secretary, including a vacancy created

by way of the Secretary's resignation.  *See* Ex. 5 at 8 (GAO Report); *La Clinica*, 2020 WL

4569462, at *13 (rejecting DHS's argument).  In support of that argument, DHS has observed

that Nielsen's memorandum regarding her amendment to the succession order is entitled

"Amending the Order of Succession" and that a summary of Nielsen's amendment by DHS's

General Counsel states that the Secretary expressed her "desire to designate certain officers of"

DHS "in order of succession to serve as acting Secretary."  *See* Ex. 14 at 1-2 (Memorandum for

the Secretary from John M. Mitnick, General Counsel, U.S. Dep't of Homeland Security (Apr. 9,

2019)).  But the very memorandum DHS points to states only that "Annex A . . . is hereby

amended by striking the text of such Annex in its entirety and inserting" the new succession

order "in lieu thereof."  *Id.* at 2.  The amendment does not purport to alter the succession order

set out in E.O. 13753, which governed in the case of Nielsen's resignation.  *See supra* at 8; *La*

*Clinica*, 2020 WL 4569462, at *13.

As GAO correctly found, "[n]otwithstanding the General Counsel's statement in the

Memorandum asserting the Secretary's intentions in amending the April Delegation, the plain

language of the delegation controls and it speaks for itself."  Ex. 5 at 9 (GAO Report).  Nielsen

"only amended Annex A" and "did not change the ground for which Annex A would apply,"

namely the Secretary's unavailability to act during a disaster or catastrophic emergency. *Id.*

DHS has also tried to claim—again, incorrectly—that the April Delegation was a mere

non-binding administrative document.  *See* Ex. 5 at 8 (GAO Report); Ex. 8 (Mem. of Law in

Support of Defs.' Opp. to Pls.' Mot. for a Prelim. Injunction at 30-31, *Casa de Maryland, Inc. v.*

*Wolf*, No. 8:20-cv-2118 (D. Md. Aug. 3, 2020), ECF No. 41).  But the delegation amended in

April 2019 by Secretary Nielsen was originally enacted and signed by former Secretary Jeh

Johnson, under the authority vested in him by the FVRA and HSA to set the order of succession

for DHS.  *See* Ex. 9 (Dep't of Homeland Security, *DHS Orders of Succession and Delegations of*

*Authorities for Named Positions*, Delegation No. 00106, Revision No. 08.5 (Apr. 10, 2019)).

Under the plain terms of the FVRA and HSA, Johnson's delegation—whether or not it was

validly modified by Nielsen in April 2019—set forth the legally binding order of succession for

DHS.  *See* 5 U.S.C. § 3347; 6 U.S.C. § 113(g)(2).

McAleenan's attempted November 2019 Delegation further demonstrates the limited

scope of Nielsen's April Delegation.  As discussed above, Nielsen's April Delegation addressed

only Annex A, which governed the DHS order of succession in circumstances where the

Secretary is unavailable to act during a disaster or catastrophic emergency; Nielsen made no

change to the succession order in or scope of E.O. 13753, which provided the succession order

when the Secretary resigns. *See supra* at 8. McAleenan's supposed November Delegation

confirms this point, by purporting to revise Nielsen's April Delegation to state that "[i]n case of

the Secretary, death, resignation, or inability to perform the functions of the Office, the order of

succession is governed by Annex A," rather than E.O. 13753. Pls.' 56.1 Stmt. ¶ 22. This

amendment would have been superfluous if Nielsen had already made Annex A govern the

succession order in the event of the Secretary's resignation. As another court has observed,

"[t]he fact that McAleenan amended Delegation No. 00106 to modify section II.A to cross-

reference Annex A but Nielsen did not, reinforces the conclusion that at the time of Nielsen's

resignation, Executive Order 13753 governed the order of succession." *La Clinica*, 2020 WL

4569462, at *12-15.

Even if Nielsen had amended Delegation 00106 to make McAleenan her successor in the

event of her resignation, Nielsen's amendment still would have been unlawful because she made

it after she resigned as Secretary on April 7, 2020. When Secretary Nielsen resigned, she issued

a resignation letter with the effective date of April 7, 2019. Ex. 7 (Secretary Kirstjen Nielsen,

Resignation Letter to the President (Apr. 7, 2019)) ("I hereby resign from the position of

Secretary of the U.S. Department of Homeland Security (DHS), effective April 7th 2019."); *see*

Pls.' 56.1 Stmt. ¶ 16. At that point, Claire Grady, the Under Secretary for Management, should

have become Acting Secretary since the Deputy Secretary position was vacant. *See* 6 U.S.C.

§§ 113(a)(1)(A), 113(g)(1); *see supra* at 8. But despite her April 7 resignation, Nielsen

purported to remain in office three additional days, until April 10, at which point she amended

the succession order in Delegation 00106. *See supra* at 8. Because Nielsen was no longer

Secretary on April 10, she had no authority to revise the Delegation or to take any other official

action.  Thus, McAleenan's (and then Wolf's) assumption of the Acting Secretary role was invalid for yet another reason: Nielsen was acting ultra vires when she made the April 10 amendment to the succession order in an effort to move up McAleenan's position.

## III.   The Wolf Memo Is Void and the Changes Effected By It Must Be Set Aside.

Because Wolf is unlawfully serving as Acting Secretary of DHS, the official actions he has taken as Acting Secretary—including the changes he made to DACA through the Wolf Memo—are void under the plain terms of the FVRA.  The FVRA provides that "[a]n action taken by any person who is not acting under section 3345, 3346, or 3347 . . . in the performance of any function or duty of a vacant office . . . shall have no force or effect."[13]  5 U.S.C. § 3348(d)(1).  Section 3347 is the FVRA provision authorizing acting officials to assume their position under an agency-specific statute, which is how Wolf purportedly assumed his role.  Pls.' 56.1 Stmt. ¶¶ 21-23; *see also SW Gen.*, 137 S. Ct. at 939 (Section 3347 "appl[ies] to anyone serving as an acting officer under the FVRA, not just first assistants").

By effecting changes to DACA through the Wolf Memo, Wolf performed a "function or duty," *id.*, as Acting Secretary—taking action as "the head of the Department" and exercising the Secretary's power to "have direction, authority, and control over" the Department, 6 U.S.C. § 112(a)(2)—despite his lack of authority to serve in the role of Acting Secretary.  The FVRA defines the term "function or duty" as including "any function or duty of the applicable office that" is established by statute or regulation.  5 U.S.C. § 3348(a)(2).  Because Wolf exercised the Acting Secretary's statutory authority to change DACA, the changes Wolf ordered "shall have no force or effect."  *See* 5 U.S.C. § 3348(d)(1); *L.M.-M.*, 442 F. Supp. 3d at 36 (holding that

---

[13] The FVRA defines "action" as "any agency action defined under section 551(13)," which defines "agency action" as "the whole or part of an agency rule, order license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13); 5 U.S.C. § 3348(a)(1).

because the responsible DHS official assumed his position in violation of the FVRA, the
directives he issued in that position "had no force or effect" under 5 U.S.C. § 3348(d)(1))

Wolf's actions cannot be ratified by the Director of CISA, who should have assumed the
Acting Secretary role.  *See supra* at 3, 12, 17.  The FVRA clearly provides that "[a]n action that
has no force or effect under" § 3348(d)(1) "may not be ratified" by the official who lawfully
should have assumed the Acting Secretary role.  *See* 5 U.S.C. § 3348(d)(2); *SW Gen.*, 796 F.3d at
71.

In sum, the Wolf Memo, and the changes it effected to DACA, were void at the outset
and never had "force or effect."  *See SW Gen., Inc.,* 796 F.3d at 71 ("[T]the FVRA renders
actions taken by persons serving in violation of the Act void ab initio.").

DHS has thus been continuously violating *Regents* since *Regents* became effective on
June 30, 2020—including by declining to process applications for initial DACA, DACA
renewals, and advance parole under the terms established by the Napolitano Memo in 2012.  In
*Regents*, the Supreme Court affirmed in full a summary judgment ruling "that DACA's [2017]
rescission was unlawful and must be set aside," *NAACP v. Trump*, 315 F. Supp. 3d 457, 473
(D.D.C. 2018); *see Regents*, 140 S. Ct. at 1916 & n.7.  That affirmance had the effect of
reinstating DACA.  *See* Ex. 15 (Order, *Casa de Maryland v. U.S. Dep't of Homeland Sec.*, No.
8:17-cv-2942-PWG (D. Md. July 17, 2020), ECF No. 97).

*Regents* became effective nationwide on June 30, 2020, after the U.S. Court of Appeals
for the Fourth Circuit issued a mandate enforcing the Fourth Circuit's decision to vacate the
2017 rescission of DACA as arbitrary and capricious under the APA.[14]  *See supra* at 2-3; *see,*

---

[14] On July 17, 2020, in conformity with the Fourth Circuit's mandate, the United States District
Court for the District of Maryland explicitly ordered DHS to reinstate the DACA program as

*e.g., New York v. U.S. Dep't of Homeland Sec.*, No. 19-3591, 2020 WL 4457951, at *31 (2d Cir. Aug. 4, 2020) (noting that "when an agency action is found unlawful under the APA, 'the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed'") (quoting *Nat'l Mining Ass'n v. U.S. Army Corps of Engr's*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)).  As of June 30, DHS was thus required to reinstate the DACA program as it existed before the 2017 rescission.  Because DHS, by its own admission, has not done so, it is plainly violating *Regents*.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant this motion for partial summary judgment, and vacate the changes to DACA imposed by the Wolf Memo.

DATED:  August 28, 2020                              Respectfully submitted,

                                                     LETITIA JAMES
                                                     *Attorney General of the State of New York*

Anisha S. Dasgupta                                   By: */s/ Matthew Colangelo*
  *Deputy Solicitor General*                         Matthew Colangelo
Joshua M. Parker                                       *Chief Counsel for Federal Initiatives*
  *Assistant Solicitor General*                      Sania Khan, *Assistant Attorney General*
                                                     Joseph Wardenski, *Senior Trial Counsel*
*Of Counsel*                                         Office of the New York State Attorney General
                                                     28 Liberty Street
                                                     New York, NY 10005
                                                     Phone: (212) 416-6057
                                                     Matthew.Colangelo@ag.ny.gov

                                                     *Attorneys for the Plaintiffs*

---

DACA existed before the September 2017 rescission.  *See* Ex. 15 (Order, *Casa de Maryland v. U.S. Dep't of Homeland Sec.*, No. 8:17-cv-2942-PWG (D. Md. July 17, 2020), ECF No. 97). And on July 29, 2020, the Court of Appeals for the Second Circuit issued its mandate in this case, executing the *Regents* decision.  *See* Mandate, *Batalla Vidal v. Trump*, No. 18-485 (2d Cir. July 29, 2020), ECF No. 659.