**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARTÍN JONATHAN BATALLA VIDAL, *et al.*, | |
| Plaintiffs, | |
| v. | No. 16-cv-4756 (NGG) (JO) |
| CHAD F. WOLF, *et al.*, | |
| Defendants. | |

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, | |
| Plaintiffs, | |
| v. | No. 17-cv-5228 (NGG) (JO) |
| DONALD TRUMP, *et al.*, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN
<u>OPPOSITION TO PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 2

    I.    Department of Homeland Security Order of Succession .................................. 2

    II.   Deferred Action for Childhood Arrivals ......................................................... 4

    III.  Litigation History ............................................................................................ 5

    IV.  The Wolf Memorandum ................................................................................. 6

LEGAL STANDARD ....................................................................................................... 7

ARGUMENT ................................................................................................................... 7

    I.    Then-Secretary Nielsen's April 2019 Order lawfully designated an order of
          succession under 6 U.S.C. § 113(g)(2) that applied in the event of a vacancy....... 7

    II.   The plain text of the FVRA and the HSA make clear that the FVRA's 210-
          day time limit does not apply to designations under the HSA............................. 15

    III.  Acting Secretary Wolf's service does not violate the Appointments Clause. ...... 21

    IV.  Plaintiffs' requested relief is overbroad. .......................................................... 23

CONCLUSION ............................................................................................................... 25

## TABLE OF AUTHORITIES

**CASES**

*Alden v. Maine,*
   527 U.S. 706 (1999) .................................................................................................. 21

*Batalla Vidal v. Duke,*
   295 F. Supp. 3d 127 (E.D.N.Y. 2017) ..................................................................... 24

*Batalla Vidal v. Nielsen,*
   279 F. Supp. 3d 401 (E.D.N.Y. 2018), *vacated and remanded on other grounds by,*
   *Dep't of Homeland Security v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020)...... 1, 5, 23

*Bhatti v. Fed. Hous. Fin. Agency,*
   332 F. Supp. 3d 1206 (D. Minn. 2018) ..................................................................... 22

*Dep't of Homeland Security v. Regents of the Univ. of Cal.,*
   140 S. Ct. 1891 (2020) ......................................................................................... 1, 5, 6

*English v. Trump,*
   279 F. Supp. 3d 307 (D.D.C. 2018) ......................................................................... 10

*Guedes v. ATF,*
   356 F. Supp. 3d 109 (D.D.C. 2019) ......................................................................... 16

*Hooks v. Kitsap Tenant Support Servs.,*
   816 F.3d 550 (9th Cir. 2016) ................................................................................... 16

*Jama v. ICE,*
   543 U.S. 335 (2005) .................................................................................................. 18

*Kisor v. Wilkie,*
   139 S. Ct. 2400 (2019) ............................................................................................. 12

*NAACP v. Trump,*
   298 F. Supp. 3d 209 (D.D.C. 2018) ........................................................................... 5

*NAACP v. Trump,*
   315 F. Supp. 3d 457 (D.D.C. 2018) ........................................................................... 5

*New York v. U.S. Dep't of Homeland Sec.,*
   969 F.3d 42 (2d Cir. 2020) ....................................................................................... 23

*NLRB v. SW Gen., Inc.,*
   137 S. Ct. 929 (2017) ......................................................................................... 17, 25

ii

*Noll v. Int'l Bus. Machines Corp.*,
   787 F.3d 89 (2d Cir. 2015) ................................................................. 6

*Palisades Collections LLC v. Shorts*,
   552 F.3d 327 (4th Cir. 2008) ............................................................ 18

*Regents of the Univ. of Cal. v. DHS*,
   279 F. Supp. 3d 1011 (N.D. Cal. 2018) ............................................. 5

*Reno v. Am. Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999) ........................................................................... 4

*SW. Gen., Inc. v. NLRB*,
   796 F.3d 67 (D.C. Cir. 2015), *aff'd*, 137 S. Ct. 929 (20107) ............ 25

*United States v. Eaton*,
   169 U.S. 331 (1898) .................................................................... 21, 23

*United States v. Lucido*,
   373 F. Supp. 1142 (E.D. Mich. 1974) .............................................. 16

*United States v. Smith*,
   962 F.3d 755 (4th Cir. 2020) ............................................... 16, 19, 23

*Va. Uranium, Inc. v. Warren*,
   139 S. Ct. 1894 (2019) ..................................................................... 17

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*,
   714 F.3d 186 (4th Cir. 2013) ............................................................. 8

*Weiss v. United States*,
   510 U.S. 163 (1994) ......................................................................... 22

## STATUTES

5 U.S.C. § 706 ........................................................................... 7, 24, 25

5 U.S.C. § 3345 .................................................................... *passim*

5 U.S.C. § 3346 .................................................................... *passim*

5 U.S.C. § 3347 .................................................................... *passim*

5 U.S.C. § 3348 ...................................................................... 21, 24, 25

5 U.S.C. § 3349 ............................................................................. 16, 22

6 U.S.C. § 112 ......................................................................................................... *passim*

6 U.S.C. § 113 ......................................................................................................... *passim*

28 U.S.C. § 508 ...................................................................................................... 19, 20

28 U.S.C. § 509 ............................................................................................................ 20

28 U.S.C. § 510 ............................................................................................................ 20

28 U.S.C. § 1226a(a)(4) .............................................................................................. 25

29 U.S.C. § 153 ............................................................................................................ 17

31 U.S.C. § 1344(d)(3) ................................................................................................ 25

National Defense Authorization Act for Fiscal Year 2017,
  Pub. L. No. 114-328, 130 Stat. 2000 (2016) (codified at 6 U.S.C. § 113) .............. 10

Act of May 8, 1792, 1 Stat. 279 .................................................................................. 21

Act of Feb. 13, 1795, 1 Stat. 415 ................................................................................ 21

**ADMINISTRATIVE AND EXECUTIVE MATERIALS**

8 C.F.R. § 274a.12 ....................................................................................................... 4

Amending the Order of Succession in the Department of Homeland Security,
  Exec. Order No. 13753 81 Fed. Reg. 90,667 (2016) ...................................... *passim*

**FEDERAL RULE**

Fed. R. Civ. P. 56 ......................................................................................................... 6

**OTHER AUTHORITIES**

S. Rep. No. 105-250 (1998) ................................................................................. *passim*

*CBP Commissioner Kevin McAleenan sworn-in as the Acting DHS Secretary; Opens New DHS Headquarters*, Border Observer,
  https://theborderobserver.wordpress.com/2019/04/11/cbp-commissioner-kevin-mcaleenan-sworn-in-as-the-acting-dhs-secretary/ ................................................... 12

Daniel Lippman, Ian Kullgren, & Anita Kumar, *White House plans to name Chad Wolf acting DHS Secretary*, Politico (Oct. 31, 2019),
  https://www.politico.com/news/2019/10/31/chad-wolf-acting-dhs-secretary-063363 ............ 22

*Guidance on Application of Federal Vacancies Reform Act of 1998*,
    23 OLC Op. 60 (Mar. 22, 1999) ................................................................................. 16

*In re Department of Homeland Security—Legality of Service of Acting Secretary of Homeland
    Security and Service of Senior Official Performing the Duties of Deputy Secretary of
    Homeland Security*, B-331650 (GAO Aug. 14, 2020)............................................... 13

*In re Department of Homeland Security—Legality of Service of Acting Secretary of Homeland
    Security and Service of Senior Official Performing the Duties of Deputy Secretary of
    Homeland Security—Reconsideration*, B-332451 (GAO Aug. 21, 2020)................................ 13

Notice of Intent to Nominate, (Aug. 27, 2020),
    https://www.whitehouse.gov/presidential-actions/president-donald-j-trump-announces-
    intent-to-nominate-the-following-individual-to-a-key-administration-post-082720/................. 3

Office of Legal Counsel, *Designating an Acting Director of National Intelligence*,
    43 Op. O.L.C. (Nov. 15, 2019), https://www.justice.gov/olc/file/1220586/download ........... 11

Press Release, DHS, Kirstjen M. Nielsen, Secretary of Homeland Security, Farewell Message
    from Secretary Kirstjen M. Nielsen (Apr. 10 2019),
    https://www.dhs.gov/news/2019/04/10/farewell-message-secretary-kirstjen-m-nielsen ......... 12

Zolan Kanno-Youngs & Maggie Haberman, *Trump to Name Chad Wolf as Acting Secretary*,
    N.Y. Times (Nov. 1, 2019),
    https://www.nytimes.com/2019/11/01/us/politics/trump-chad-wolf-dhs.html........................ 22

## **INTRODUCTION**

This litigation has never been about "whether DHS may rescind DACA"—in fact, before the Supreme Court, "[a]ll parties agree[d] that it may," and the Supreme Court offered no reason to doubt that consensus. *Dep't of Homeland Security v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020). As this Court put it, "Defendants indisputably can end the DACA program." *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401 (E.D.N.Y. 2018); *vacated and remanded on other grounds by Regents*, 140 S. Ct. at 1891. There can likewise be no dispute that the Department of Homeland Security may *modify* a discretionary non-enforcement policy like DACA, at any time, so long as it provides a sufficient explanation. The agency has now done so: for the reasons explained in the Wolf Memorandum, until further notice, DHS has modified DACA, while retaining its core—including by allowing current DACA recipients to renew indefinitely.

After years of litigation over whether DHS's attempts to rescind DACA were arbitrary and capricious under the APA, Plaintiffs have now placed that question on the back burner. Instead, they now seek partial summary judgment only on the basis that the individual who signed the operative document—Acting Secretary of Homeland Security Chad F. Wolf—was not lawfully appointed. Although Plaintiffs' argument is an inventive one, it is meritless—as it turns out to be based on misinterpretations of both the relevant statutory provisions, and the agency's own internal documents. Acting Secretary Wolf took office pursuant to a valid order of succession, and has been serving lawfully under the Homeland Security Act ever since. Accordingly, the default limitations imposed upon acting service by the (older, and more generic) Federal Vacancies Reform Act do not apply. Nor does the Appointments Clause of the U.S. Constitution foreclose the practice of temporary acting service, ubiquitous since the founding—especially by an official, like Acting Secretary Wolf, who has already been nominated by the President and confirmed by the Senate to another germane office within the same agency.

Plaintiffs' motions for partial summary judgment should be denied, and Defendants' cross-motion for partial summary judgment should be granted on all of Plaintiffs' claims relating to the validity of Acting Secretary Wolf's appointment.

**BACKGROUND**

I.   **Department of Homeland Security Order of Succession**

Since its amendment in 2016, the Department of Homeland Security's organic statute—
that is, the Homeland Security Act (HSA)—gives the Secretary of Homeland Security the power
to "designate such other officers of the Department in further order of succession to serve as Acting
Secretary."  6 U.S.C. § 113(g)(2).  In April 2019, then-Secretary of Homeland Security Kirstjen
M. Nielsen[1] exercised this power and designated an order of succession for the office of the
Secretary in the event of a vacancy: "By the authority vested in me as Secretary of Homeland
Security, including the Homeland Security Act of 2002, 6 U.S.C. § 113(g)(2), I hereby designate
the *order of succession* for the Secretary of Homeland Security as follows . . . ."  *See* Ex. 1,
Designation of an Order of Succession for the Secretary (Apr. 9, 2019) ("April 2019 Order")
(emphasis added); *see also* Ex. 2, Decl. of Neal J. Swartz ¶ 3 ("Swartz Decl.").  That new order of
succession, in turn, made the Commissioner of U.S. Customs and Border Protection (CBP) third
in line to serve as Acting Secretary of Homeland Security.  April 2019 Order at 2.

That signed order constituted the controlling order of succession when Nielsen resigned in
April 2019.  *See* Swartz Decl. ¶ 6 ("[T]hen-Secretary Nielsen's signed order amending the DHS
order of succession for Acting Secretary, pursuant to her authority under 6 U.S.C. § 113(g)(2), was
effective when she signed the order on April 9, 2019 . . . .").  When she resigned, *see* Ex. 13, Letter
from Neal J. Swartz, Associate General Counsel for General Law, DHS, to Hon. Michael R. Pence,
President of the Senate (Apr. 11, 2019), the first two offices in the succession order were vacant,
*see* Swartz Decl. ¶ 5; *see also* Ex. 3, Letter from Neal J. Swartz, Associate General Counsel for
General Law, DHS, to Hon. Michael R. Pence, President of the Senate (Apr. 16, 2018); Ex. 4,
Letter from Neal J. Swartz, Associate General Counsel for General Law, DHS, to Hon. Michael
R. Pence, President of the Senate (Apr. 11, 2019); .  Thus, as the next official in line, CBP

---

[1] Kirstjen M. Nielsen was nominated by the President to serve as the Secretary of Homeland
Security on October 11, 2017, confirmed by the Senate on December 5, 2017, and sworn into the
office on December 6, 2017.

Commissioner Kevin McAleenan[2] began serving as Acting Secretary of Homeland Security. And because McAleenan's service was consistent with the operative succession order, he lawfully used his power as Acting Secretary in November 2019 to further amend the succession order.

When Mr. McAleenan resigned, Chad F. Wolf—who had been appointed by the President following confirmation by the Senate to serve as the Under Secretary for DHS's Office of Strategy, Policy and Plans and was the most senior official listed on the new succession order—began serving as Acting Secretary of Homeland Security, per the terms of that November 2019 amended succession order. *See* Ex. 5, Amendment to the Order of Succession for the Secretary (Nov. 9, 2019). On August 27, 2020, the President formally announced his intent to nominate Acting Secretary Wolf to serve as the Secretary of Homeland Security.[3] On September 10, 2020, the President submitted Mr. Wolf's nomination to the Senate.[4]

As DHS has consistently explained, Acting Secretary Wolf is serving lawfully under the HSA, and under valid orders altering the DHS order of succession issued by Ms. Nielsen and Mr. McAleenan. But DHS recognizes that ongoing challenges to Acting Secretary Wolf's service risk an unnecessary "distraction to the mission of the Department of Homeland Security." Ex. 6, Order Designating the Order of Succession for the Secretary of Homeland Security (Sept. 10, 2020). Thus, "out of an abundance of caution," the Senate-confirmed Administrator of the Federal Emergency Management Agency (FEMA), Peter T. Gaynor[5]—who, upon the submission of Mr. Wolf's nomination and under the terms of Executive Order 13753, would be the officer next in line to serve as Acting Secretary—issued a new order of succession on September 10, 2020, relying

---

[2] Kevin McAleenan was nominated by the President to serve as the Commissioner of U.S. Customs and Border Protection on May 22, 2017, confirmed by the Senate on March 19, 2018, and sworn into office on March 20, 2018.

[3] *Notice of Intent to Nominate*, (Aug. 27, 2020), *available at* https://www.whitehouse.gov/presidential-actions/president-donald-j-trump-announces-intent-to-nominate-the-following-individual-to-a-key-administration-post-082720/.

[4] *Two Nominations Sent to the Senate* (Sept. 10, 2020), *available at* https://www.whitehouse.gov/presidential-actions/two-nominations-sent-senate-091020/.

[5] Gaynor was nominated by the President to serve as FEMA Administrator on October 15, 2019, confirmed by the Senate on January 14, 2020, and sworn into office on January 16, 2020.

on "any authority vested in [him] as Acting Secretary of Homeland Security." *Id.* In other words, although DHS disagrees with the legal theory advanced by plaintiffs in these and other cases, if that theory is correct, the result would be that Mr. Gaynor (not Mr. Wolf) would be the proper Acting Secretary under the Executive Order's order of succession—and thus would be authorized under 6 U.S.C. § 113(g)(2) to alter the order of succession. And as a result of *that* order approved by Mr. Gaynor—through which the FEMA Administrator and the Under Secretary for Strategy, Policy, and Plans would become sixth and fourth in line, respectively—Mr. Wolf would then become Acting Secretary, as the most senior official now serving in the line of succession.

## II.     Deferred Action for Childhood Arrivals

On June 15, 2012, then-Secretary of Homeland Security Janet Napolitano announced the policy known as DACA, or Deferred Action for Childhood Arrivals. Administrative Record ("AR"), *Batalla Vidal* ECF No. 319, AR0009. DACA made deferred action—a practice of individualized enforcement discretion to issue a reversible notification that DHS does not intend to remove an alien for a set period of time—available to "certain young people who were brought to this country as children" and remained here in violation of the immigration laws. Napolitano Mem. at 1. Under DHS regulations, aliens granted deferred action may receive certain benefits, including work authorization for the same period if they establish economic necessity. *See* 8 C.F.R. § 274a.12(c)(14). The Napolitano Memorandum stated that deferred action pursuant to DACA was an "exercise of prosecutorial discretion." Napolitano Mem. at 1; *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999); *see* 8 C.F.R. § 274a.12(c)(14) (describing "deferred action" as "an act of administrative convenience to the government which gives some cases lower priority"). To that end, the Napolitano Memorandum explained that DACA "confer[red] no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights." Napolitano Mem. at 3.

On September 5, 2017, then-Acting Secretary of Homeland Security Elaine Duke rescinded the Napolitano Memorandum, and decided to wind down DACA in an orderly fashion. AR0012. Numerous lawsuits followed, challenging that agency decision on various grounds.

4

### III.  Litigation History

In five related cases challenging the Duke Memorandum, on January 9, 2018, the U.S. District Court for the Northern District of California granted a motion for a preliminary injunction, and ordered Defendants to "maintain the DACA program on a nationwide basis on the same terms and conditions as were in effect before the rescission on September 5, 2017, including allowing DACA enrollees to renew their enrollments." *Regents of the Univ. of Cal. v. DHS*, 279 F. Supp. 3d 1011, 1048 (N.D. Cal. 2018).  That injunction, however, specifically excluded (1) "new applications from applicants who have never before received deferred action" and (2) DACA-based requests for advance parole.  *Id.*  Shortly thereafter, a co-extensive preliminary injunction was issued by this Court, in the above-captioned matters.  *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401 (E.D.N.Y. 2018).  And the U.S. District Court for the District of Columbia later issued a final judgment vacating the Duke Memorandum in its entirety, *NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018), and also rejected a subsequent agency explanation (the Nielsen Memorandum) on similar grounds, 315 F. Supp. 3d 457 (D.D.C. 2018).

The Supreme Court ultimately granted certiorari (or certiorari before judgment) in all of the California, District of Columbia, and New York DACA-rescission cases, including these two. On June 18, 2020, the Supreme Court issued a decision setting aside the Duke Memorandum as arbitrary and capricious under the APA, and declining to consider the Nielsen Memorandum.  The Court acknowledged that DHS's authority to rescind DACA was undisputed.  *Regents*, 140 S. Ct. at 1905.  Indeed, it recognized that deciding the best way to move forward with "a program with the breadth of DACA" involves "important policy choices" that are left to DHS, *id.* at 1910, and that DHS has "considerable flexibility in carrying out" this policy-making responsibility, *id.* at 1914.  Nonetheless, the Court held that the Duke Memorandum failed to consider alternatives to rescinding DACA in its entirety, and failed to adequately address the possibility of legitimate reliance interests related to DACA.  *Id.* at 1912, 1913.  Accordingly, the Supreme Court held that a remand to DHS was appropriate "so that it may consider the problem anew." *Id.* at 1916.  The Supreme Court also ordered vacatur of both preliminary injunctions, which had required

maintaining portions of the DACA policy during the litigation.  *See Regents*, 140 S. Ct. at 1916. The Second Circuit's mandate issued to this Court on July 29, 2020.  *Batalla Vidal* ECF No. 299.

## IV.    The Wolf Memorandum

On July 28, 2020, the day before issuance of the Second Circuit's mandate, Acting Secretary Wolf formally rescinded the Duke Memorandum and the Nielsen Memorandum. AR0001.   The Wolf Memorandum announced the Acting Secretary's determination, "[i]n accordance with the Supreme Court's decision," "to give careful consideration to whether the DACA policy should be maintained, rescinded, or modified."  Wolf Mem. at 5.  Given the Acting Secretary's serious enforcement policy concerns, the Wolf Memorandum also made certain immediate changes to DACA.  *Id.* at 4-5.

The Wolf Memorandum explains that, until further notice, DHS (1) will not accept first-time DACA requests; (2) will continue to accept renewal requests from DACA recipients, though it will limit the period of any future grants of DACA to one year, rather than the two years provided under the Napolitano Memorandum; and (3) will allow DACA recipients to submit applications for advance parole, to be granted only in "exceptional circumstances."  *See id.* at 5. These changes apply to both pending and prospective requests.  *Id.* at 7.  The Wolf Memorandum noted that "nothing in this memorandum precludes the exercise of deferred action on a truly individualized, case-by-case basis when and if warranted."  *Id.* at 6.  The Wolf Memorandum also reiterates that DHS will "[c]ontinue to comply with the information-sharing policy" regarding DACA-related information announced in 2012.  *Id.* at 8.

## <u>LEGAL STANDARD</u>

"Summary judgment must be granted if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 93-94 (2d Cir. 2015) (quoting Fed. R. Civ. P. 56(a)).  Under the Administrative Procedure Act, a reviewing court may "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; that is "in excess of

statutory jurisdiction, authority, or limitations, or short of statutory right"; or that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706.

## ARGUMENT

Plaintiffs assert that the Wolf Memorandum should be set aside as *void ab initio* on the theory that Acting Secretary Wolf is serving unlawfully. Between them, they rely on three arguments: (i) that then-Secretary Nielsen's April 9, 2019 order did not properly designate an order of succession for the position of Acting Secretary and instead set only an order for delegating the Secretary's authority under limited emergency circumstances; (ii) that the 210-day time limit for acting service under the Federal Vacancies Reform Act ("FVRA") should apply to service under the HSA, despite the absence of any time limit in the HSA itself; and (iii) that Acting Secretary Wolf's service violates the Appointments Clause of the U.S. Constitution. Those arguments are meritless.[6]

## I. Then-Secretary Nielsen's April 2019 Order lawfully designated an order of succession under 6 U.S.C. § 113(g)(2) that applied in the event of a vacancy.

Then-Secretary Nielsen's April 9, 2019 order exercised her authority under the HSA, 6 U.S.C. § 113(g)(2), to designate a new succession order for the office of Secretary of Homeland Security. This order applied to all vacancies in the office, regardless of the reason. Secretary Nielsen's resignation triggered application of her succession order, and Mr. McAleenan thus began serving as Acting Secretary. Acting Secretary McAleenan later relied on Section 113(g)(2) to further amend the succession order. So, when Acting Secretary McAleenan resigned, Mr. Wolf began serving as Acting Secretary under that amended succession order.

---

[6] Currently, the September 10, 2020 order issued by Peter T. Gaynor has no effect on this litigation, because its potential relevance is limited to the question of whether Acting Secretary Wolf is *currently* serving lawfully. The September 10 order does not have any effect on whether Acting Secretary Wolf was serving lawfully *on July 28, 2020*—the date on which he signed the Wolf Memorandum. If the Acting Secretary ultimately takes any further curative steps to address legal challenges to past agency actions in reliance on that September 10 order (including the Wolf Memorandum), then the parties can address the significance of any such ratification (and of the September 10 order generally) at that time.

Neither the *Batalla Vidal* Plaintiffs nor the *State of New York* Plaintiffs meaningfully dispute that Section 113(g)(2) of the HSA permits each of those order-of-succession modifications; instead, the *State of New York* Plaintiffs simply argue that the succession order issued by then-Secretary Nielsen did not extend to vacancies caused by a Secretary's *resignation*. Rather, they say that the succession order applied only to Annex A of DHS Delegation 00106, a document that sets an order for delegating authority "during a disaster or catastrophic emergency." NY Mem. at 15-21. (The *Batalla Vidal* Plaintiffs reiterate that argument in a more abbreviated form. BV Mem. at 16-17.) That argument is incorrect.

**1.** Then-Secretary Nielsen's April 2019 order expressly stated *five* times that she was designating a new "order of succession," employing unqualified language. *See* April 2019 Order. As the Secretary of Homeland Security, Ms. Nielsen was the only person within DHS with the authority to designate an order of succession. *See* 6 U.S.C. § 113(g)(2). Thus, her signed order controlled the order of succession when she resigned. Although Plaintiffs attempt to manufacture a conflict between Secretary Nielsen's signed order and Revision 8.5 to DHS Delegation 00106, NY Mem. at 16-17—an administrative document that Ms. Nielsen did not sign—that attempt falls short. An administrative document that *collects* orders from the Secretary cannot override *the Secretary's signed order*. *Cf. Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 195 (4th Cir. 2013) (explaining that agency's "formal approval" of a project was the final agency action, not the agency's "subsequent activities in carrying it out"). So even if there were a conflict, or even if the administrative document did not accurately implement the Secretary's change, by function of Section 113(g)(2) of the HSA, any conflict should be resolved in favor of the Secretary's signed order.

Beyond Secretary Nielsen's use of unqualified language, the statutory authority she relied upon—Section 113(g)(2) of the HSA—shows that she changed more than just the delegation of authority that applied "during a disaster or catastrophic emergency." *See* NY Mem. at 16. Section 113(g)(2) empowers the Secretary to designate an "order of succession" for officers to serve as Acting Secretary in the event of a vacancy. Ms. Nielsen's order expressly cites this statutory

authority three times.  Crucially, an *order of succession* is different from a *delegation of authority*. The HSA reflects this, and a different provision, 6 U.S.C. § 112(b)(1), empowers the Secretary to *delegate* her authority to other officials in the agency, even when the Secretary continues to occupy her office.  Plaintiffs cannot explain why Ms. Nielsen would have invoked her Section 113(g)(2) authority to designate the order of succession—or why she repeatedly stated that she was designating an order of succession—if she was actually doing nothing but amending the order for delegated authority during an emergency.

**2.**  The flaw in Plaintiffs' argument is even clearer when the April 2019 order is read in the context of earlier revisions to DHS Delegation No. 00106.  On December 16, 2016, then-Secretary of Homeland Security Jeh Johnson signed Revision 8 to DHS Delegation No. 00106.  *See generally* Ex. 7, *DHS Orders of Succession and Delegations of Authorities for Named Positions*, DHS Delegation No. 00106, Revision No. 08 (Dec. 15, 2016) (signed at page 3).  This signed revision addressed two different kinds of orders: (1) an order of succession (*i.e.*, a list of officials who could become Acting Secretary in the event of a vacancy); and (2) an order for delegation of authority.

*First*, Section II.A of Revision 8 to DHS Delegation No. 0106 explained that, "[i]n case of the Secretary's death, resignation, or inability to perform the functions of the Office," the order of succession would be governed by Executive Order 13753.  *Id.*  This was not an order of the Secretary, and did not invoke any authority vested in the Secretary, because under the existing version of the HSA, the Secretary had no authority to designate an order of succession.  At that time, only the President had the authority (under the FVRA) to designate an order of succession. *See* 5 U.S.C. § 3345(a)(2)-(3) (allowing the President to designate an acting official).  Section II.A thus expressly tracked the FVRA: it noted that the President's order of succession would apply to a vacancy covered by the FVRA.  Section II.A even listed the same triggering events as the FVRA. *Compare* 5 U.S.C. § 3345(a).  It was only *after* Mr. Johnson had signed Revision 8 that Congress gave the Secretary the power to designate an order of succession that would apply "[n]otwithstanding" the FVRA.  *See* National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 1903, 130 Stat. 2000 (2016) (codified at 6 U.S.C. § 113(g) (Dec. 23, 2016)).

9

*Second*, in Section II.B, Secretary Johnson separately exercised his own authority under 6 U.S.C. § 112(b)(1)—authority that the Secretary had long possessed—and delegated the authorities of his office to a list of officials in the event that he was temporarily "unavailable to act during a disaster or catastrophic emergency." This was not an order of succession—the circumstances addressed by Section II.B are not the kind of vacancy that would trigger the FVRA, and the Section II.B delegation would not make someone exercising that authority an Acting Secretary of Homeland Security.[7] *Cf. English v. Trump*, 279 F. Supp. 3d 307, 322 (D.D.C. 2018) ("Defendants argue, with some force, that [unavailability to act is] commonly understood to reflect a temporary condition, such as not being reachable due to illness or travel," rather than a permanent condition such as a vacancy.). And, as explained, the Secretary had no statutory authority to designate an order of succession at that time.

This context, along with the text of Ms. Nielsen's April 2019 order, shows that, when then-Secretary Nielsen changed the list of officers in Annex A—a document setting an order for delegation of authority of the Secretary—she also provided that Annex A would now perform two separate roles. It would both (1) designate the agency's first order of succession under Section 113(g)(2), and (2) amend the list of officials in the order for delegation of authority.

As to the first role, Ms. Nielsen established the first order of succession under Section 113(g)(2); it would apply in the case of a vacancy that would otherwise have been covered by the FVRA. Before Ms. Nielsen's order, there was no order of succession under Section 113(g)(2). Rather, as acknowledged by Section II.A, the President's order of succession under Executive Order 13753 governed when the Secretary's office was vacant, because then-Secretary Johnson lacked the statutory authority to create an order of succession. Thus, when Ms. Nielsen invoked Section 113(g)(2)—which she expressly did three times in the April 9, 2019 order—she

---

[7] The FVRA is generally the "exclusive means for temporarily authorizing an acting official," unless another statute provides otherwise. 5 U.S.C. § 3347(a). Until the enactment of Section 113(g)(2) of the HSA, there was no other statute providing for the designation of an Acting Secretary of Homeland Security.

exercised the Secretary's authority under that statute and designated an order of succession that applied "[n]otwithstanding chapter 33 of title 5," 6 U.S.C. § 113(g)(2).  As a matter of law, that order of succession would supersede the order of succession under Executive Order 13753 when an official on the Secretary's list was able to serve as Acting Secretary.

The text of Ms. Nielsen's order cited 6 U.S.C. § 113(g)(2), and used that authority to "designate the order of succession for the Secretary of Homeland Security as follows."  April 2019 Order.  The order that "follows" was the amended list of officials in Annex A.  Annex A was also introduced with another clause and title showing that it would simultaneously continue to serve its original function as an order for delegation of authority.  But Annex A's amended list was followed by a new provision that had not appeared in the prior, delegation-only version of Annex A.  The new provision noted that "[n]o individual who is serving in an office herein listed in an acting capacity, by virtue of so serving, shall act as Secretary pursuant to this designation."  *Id.*  That reference to a "*designation*"—rather than a "delegation"—constitutes yet another textual and structural acknowledgment that Annex A had executed the Secretary's new authority under Section 113(g)(2).  *See* 6 U.S.C. § 113(g)(2) (authorizing the Secretary to "designate such other officers . . . in further order of succession to serve as Acting Secretary").[8]  Accepting Plaintiffs' suggested reading would thus require the Court to read *out* of Ms. Nielsen's order all three references to 6 U.S.C. § 113(g)(2), to disregard its structure (what introduces and concludes its list of officials), and to read Mr. Johnson's document as creating an order of succession that he lacked the statutory power to designate.

As to the second role, Ms. Nielsen's order changed the order for delegation of authority in the case of a disaster or catastrophic emergency by issuing a new version of Annex A.  To do so,

_____

[8] That additional sentence at the conclusion of Annex A is a mainstay in true orders of succession: "[W]hen Presidents issue orders of succession as an advance exercise of their authority to name acting officials under the [FVRA], they often specify that '[n]o individual who is serving in an office . . . in an acting capacity, by virtue of so serving, shall act as [the agency head] pursuant to this order.'"  Office of Legal Counsel, *Designating an Acting Director of National Intelligence*, 43 Op. O.L.C. __, *8 (Nov. 15, 2019), https://www.justice.gov/olc/file/1220586/download; 43 Op. O.L.C. ___ at *8 nn.3-4 (citing illustrative orders of succession).

Ms. Nielsen did not need to expressly invoke Section 112(b)(1) any more than Mr. Johnson had, because Annex A (through Section II.B) already was, by its terms, a delegation of authority. Thus, by changing the officials listed in Annex A, she changed the delegation order. But, given her express invocation of Section 113(g)(2), Annex A's list was about to serve two different functions when Ms. Nielsen resigned: both the order of succession *and* the order for delegation of authority.

The official actions Ms. Nielsen took after signing her order confirm that she did not merely alter Mr. Johnson's delegation order in Section II.B, but also designated a new order of succession for vacancies under Section 113(g)(2). For example, on her last day as Secretary, Ms. Nielsen sent a farewell email to the agency and issued a press release announcing that Mr. McAleenan "will now lead DHS as your Acting Secretary."[9] The same day, she personally swore Mr. McAleenan in to that role.[10] Neither act supports Plaintiffs' reading of Ms. Nielsen's order.

Finally, the Court should defer to DHS's interpretation of Ms. Nielsen's order, because it is the agency's own internal document. *Cf. Kisor v. Wilkie*, 139 S. Ct. 2400, 2416 (2019) (explaining that the Court "ha[s] deferred to 'official staff memoranda'" (citation omitted)).

In sum, Plaintiffs' reading of Ms. Nielsen's order is at odds with the order's express language designating an unqualified order of succession. It ignores the order's structure, the context provided by the intervening grant of statutory authority, and multiple references to an "order of succession" designated under Section 113(g)(2). And it is inconsistent with the official acts Ms. Nielsen took on her last day as Secretary, and violates basic deference principles.

**3.** In asserting its preferred reading of then-Secretary Nielsen's order, Plaintiffs rely heavily on an August 14, 2020 Government Accountability Office Decision ("GAO Decision")

---

[9] Email from Kirstjen M. Nielsen, Secretary of Homeland Security (Apr. 10, 2019, 04:35 EST) (attached as Ex. 8); *see also* Press Release, DHS, Kirstjen M. Nielsen, Secretary of Homeland Security, Farewell Message from Secretary Kirstjen M. Nielsen (Apr. 10 2019), https://www.dhs.gov/news/2019/04/10/farewell-message-secretary-kirstjen-m-nielsen.

[10] *CBP Commissioner Kevin McAleenan sworn-in as the Acting DHS Secretary; Opens New DHS Headquarters*, Border Observer, https://theborderobserver.wordpress.com/2019/04/11/cbp-commissioner-kevin-mcaleenan-sworn-in-as-the-acting-dhs-secretary/ (last visited Sept. 10, 2020).

concluding that the Nielsen order did not effectively change the order of succession.[11]  NY Mem. at 19-21.  But the GAO's analysis—which binds neither DHS, nor this Court—suffers from at least two fundamental flaws, and should thus be disregarded.

*First*, the GAO Decision wrongly assumes that the controlling document is Revision 8.5 to DHS Delegation No. 00106, and hangs its analysis on that administrative document.  *See* GAO Decision at 6 & n.10 (christening DHS, *Orders of Succession and Delegations of Authorities for Named Positions*, Delegation No. 00106, Revision No. 08.5 (Apr. 10, 2019) as "April Delegation") (attached as Ex. 11); GAO Decision at 9 (claiming that Ms. Nielsen "only amended Annex A "[w]hen [she] *issued* the April Delegation" (emphasis added)).  The GAO Decision thus focuses on the "plain language" and the "express terms" *of the wrong document*.  *See id.* at 7, 8, 9.  As the Secretary, Ms. Nielsen was the only person in the agency who could designate an order of succession, 6 U.S.C. § 113(g)(2), and she never signed or otherwise issued Revision 8.5 to DHS Delegation No. 00106.  But she *did* sign her April 9 order—and that order controls.  More than simply analyzing the wrong document, the GAO Decision explicitly tosses aside the plain language in the memorandum that Ms. Nielsen signed on the line reading "[a]pprove."  *See id.* at 9 ("Notwithstanding the General Counsel's statement in the Memorandum asserting the Secretary's intentions in amending the April Delegation, the plain language of the delegation controls, and it speaks for itself.");  *see also* GAO Decision on Reconsideration[12] at 2 ("[G]iven that the plain language of the April Delegation is clear, there is no need to refer to the [April 9] Memorandum.").

The GAO Decision similarly erred in concluding that, in February 2019, Ms. Nielsen adopted Executive Order 13753 as her own order of succession under Section 113(g)(2).  *See id.*

---

[11] *In re Department of Homeland Security—Legality of Service of Acting Secretary of Homeland Security and Service of Senior Official Performing the Duties of Deputy Secretary of Homeland Security*, B-331650 (GAO Aug. 14, 2020).

[12] *In re Department of Homeland Security—Legality of Service of Acting Secretary of Homeland Security and Service of Senior Official Performing the Duties of Deputy Secretary of Homeland Security—Reconsideration*, B-332451 (GAO Aug. 21, 2020).

13

at 5.  To draw this conclusion, it again relies on an internal administrative document (Revision 8.4 to DHS Delegation No. 00106) that Ms. Nielsen never signed.  *See id.* at 5 n.7 (citing *DHS Orders of Succession and Delegations of Authorities for Named Positions*, DHS Delegation No. 00106, Revision No. 08.4 (Feb. 15, 2019) (attached at Ex. 12)).  But in the February 2019 document the GAO Decision cites, Ms. Nielsen set an order of succession for the *Office of Strategy, Policy, and Plans*—not for the Office of the Secretary—in Annex U.[13]  Based on the faulty assumption that Ms. Nielsen designated her own order of succession for the Office of the Secretary in February 2019, the GAO Decision wrongly assumes that Ms. Nielsen needed to say that her order superseded Section II.A.  *Cf. id.* at 9.  She did not.  Rather, Ms. Nielsen's order superseded the Executive Order and Section II.A—both of which were based entirely on the default provisions in the FVRA—as a matter of law.  *See* 6 U.S.C. § 113(g)(2) (Secretary's designated order of succession governs in the event of a vacancy, "[n]otwithstanding" the default provisions in the FVRA).

*Second*, the GAO Decision does not grapple with its unusual reading of Ms. Nielsen's order because it confuses orders of succession and delegations of authority.  It concludes that Ms. Nielsen designated an order of succession when she amended Annex A because she altered Section II.B and "[e]ach ground," that is, Section II.A and Section II.B, "had its own order of succession."  Decision at 5.  Thus, the GAO concludes that Ms. Nielsen "effectively established two different orders of succession."  *Id.* at 7.  But it is only able to reach this conclusion by ignoring the difference between orders of succession and delegations of authority, and the different sources of the Secretary's statutory authority for each.  *Compare* 6 U.S.C. § 113(g)(2) (order of succession), *with* § 112(b)(1) (delegation of authority).  As explained, when Ms. Nielsen signed her order, Section II.B in DHS Delegation No. 00106 was not an order of succession—it was a delegation of authority.  So if, as the GAO Decision concludes, Ms. Nielsen's order applied only

---

[13] *See* Memorandum from Kirstjen M. Nielsen, Secretary, DHS, to Claire M. Grady, Under Secretary for Management and Senior Official Performing the Duties of the Deputy Secretary (attached as Ex. 9).

to Section II.B, then she set an order for delegation of authority, not an order of succession. And under that reading, the GAO Decision has no explanation for how—by signing an order to "amend the order of succession" under § 113(g)(2)—Ms. Nielsen *actually* did nothing but amend the order for delegation of authority under § 112(b)(1). In fact, she employed both powers and thus provided that Annex A would govern matters of both succession and delegation going forward.

## II.   The plain text of the FVRA and the HSA make clear that the FVRA's 210-day time limit does not apply to designations under the HSA.

By contrast to the *State of New York* Plaintiffs, the *Batalla Vidal* Plaintiffs seek to void the Wolf Memorandum primarily on the theory that the Federal Vacancies Reform Act's presumptive 210-day time limit for acting service, 5 U.S.C. § 3346, prohibits Acting Secretary Wolf's continued service. BV Mem. at 14-15, 17-20. They make three ostensibly distinct arguments: (i) that former Acting Secretary McAleenan signed his November 2019 order-of-succession amendment after the expiration of 210 days post-vacancy; (ii) that McAleenan's service as Acting Secretary "exhausted" the 210-day period; and (iii) that for his own part, Acting Secretary Wolf issued the challenged Memorandum 256 days after "claiming" the Acting Secretary role. But each of these arguments is essentially a variation on the same core contention: that the FVRA's 210-day post-vacancy time limitation is incorporated into the HSA's succession provision. That contention is incorrect. Under the April 2019 order of succession, Mr. McAleenan validly served as Acting Secretary *pursuant to the HSA*, rather than the FVRA, upon succeeding former Secretary Nielsen. Accordingly, under the plain text of *both* the FVRA *and* the HSA, his service was not subject to the FVRA's time limitation for acting service, 5 U.S.C. § 3346.

**1.** The FVRA generally provides the "exclusive means for temporarily authorizing an acting officer to perform the functions and duties" of a Senate-confirmed office. *Id.* § 3347(a). But it also recognizes exceptions to this general rule of exclusivity. Those exceptions include statutory provisions like 6 U.S.C. § 113(g)(1) that "expressly designate" an acting officer, 5 U.S.C. § 3347(a)(1)(B), and statutory provisions like 6 U.S.C. § 113(g)(2) that "authorize[] the President, a court, or the head of an Executive department, to designate" an acting officer, 5 U.S.C.

§ 3347(a)(1)(A). Thus, when a vacancy arises in an office with an office-specific vacancy statute, that statute provides an alternate means of designating an acting officer. *See Hooks v. Kitsap Tenant Support Servs.*, 816 F.3d 550, 556 (9th Cir. 2016) (FVRA and office-specific statute coexist as "statutory alternatives to designate" acting officer); *see also United States v. Smith*, 962 F.3d 755, 763 n.1 (4th Cir. 2020) (same).

The FVRA imposes an initial 210-day time limit on acting service only on a "person serving as an acting officer *as described under section 3345*." 5 U.S.C. § 3346(a)(1) (emphasis added).[14] Plaintiffs suggest that the Court simply ignore this language, and apply the 210-day limit not just to acting officers "as described under section 3345" but as to *all* acting officers serving under or "described by" *any* statute. That suggestion is ill-founded. When it enacted the FVRA, Congress was aware that "[m]ost office-specific vacancy statutes "do not place time restrictions on the length of an acting officer." S. Rep. No. 105-250, at 17 (1998). Nevertheless, it retained those statutes as an alternative to the FVRA, 5 U.S.C. § 3347(a)(1)(A)-(B). And it limited acting service to 210 days *only* for those serving under the FVRA. *Id.* § 3346(a)(1). That is, Congress placed no such restriction on acting service under *office-specific vacancy statutes*. *See id.*; *see also Guedes v. ATF*, 356 F. Supp. 3d 109, 142 (D.D.C. 2019) (recognizing that unlike the office-specific vacancy statute for Attorney General, acting service under FVRA was subject to "specific time limits"); *United States v. Lucido*, 373 F. Supp. 1142, 1150-51 (E.D. Mich. 1974) (Deputy Attorney General could continue serving as Acting Attorney General under office-specific vacancy statute after time limit in pre-FVRA Vacancies Act expired); Office of Legal Counsel, *Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 66-67 & n.3 (Mar. 22, 1999) (FVRA's time limits "do not apply" to office-specific vacancy statutes).

The HSA is one such office-specific vacancy statute. *See* 6 U.S.C. § 113(g)(1)-(2). By § 3346's unambiguous text, the FVRA's 210-day time limit does not apply to designations under the HSA. Nor does the HSA's text provide any basis to read that time limit into it. The statute

---

[14] That 210-day period can be extended if the President submits a nomination for the office, or there is a change in presidential administrations. *See id.* §§ 3346(a)(2), (b), 3349a(b).

16

itself contains no express time limit (as the GAO acknowledges, *see* Decision at 4 n.3).  Not only that, the Secretary's authority to designate an officer under Section § 113(g)(2) applies "*[n]otwithstanding* chapter 33 of title 5," which includes the FVRA.  The "notwithstanding" phrase makes clear that 6 U.S.C. §113(g)(2)—consistent with 5 U.S.C. § 3347(a)(1)(A)— authorizes the Secretary to designate a line of succession for service under the HSA, distinct from the FVRA.  That phrase thus resolves any conflict between the FVRA's 210-day limit and Congress's choice to include no time limit on acting service under the HSA.  *See NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 939 (2017) ("The ordinary meaning of 'notwithstanding' is 'in spite of,' or 'without prevention or obstruction from or by.'").

**2.**  That Congress specifically chose not to impose a time limit on acting service in the HSA finds confirmation in the broader context of office-specific vacancy statutes.  When it enacted the FVRA, Congress knew that many office-specific vacancy statutes contained no express time limit, and the Senate Report accompanying the bill that became the FVRA even suggested that Congress "may choose in the future to reexamine" whether to retain such statutes.  S. Rep. No. 105-250, at 17.  Yet Congress neither superseded these statutes in the FVRA, nor included them in Section 3346's time limit.  Unsurprisingly, then, Congress did the same thing in Section 113(g) of the HSA that it has done in numerous office-specific statutes: provide for acting service outside of the strictures of the FVRA, and thus beyond the FVRA's 210-day initial period of acting service.

What is more, Congress well knew how to include an express time limit in an office-specific vacancy statute.  *See, e.g.*, 29 U.S.C. § 153(d) (Acting General Counsel of the NLRB may serve under that office-specific statute only for "forty days when the Congress is in session unless a nomination . . . ha[s] been submitted to the Senate").  But it did not do so in Section 113(g)(2) of the HSA.  The Court should not read a time limit into Section 113(g)(2) that Congress itself chose not to include.  It is this Court's "duty to respect not only what Congress wrote but, as importantly, what it didn't write."  *Va. Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1900 (2019); *see also Jama v. ICE*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply . . . .").

**3.**  Plaintiffs argue that the HSA "incorporates" the FVRA's provisions, including the FVRA's time limit, in 6 U.S.C. § 113(g)(2).  Although Plaintiffs do not say it outright, their argument appears to be that incorporating the FVRA time limit is warranted because 6 U.S.C. § 113(a)(1)(A) makes the Deputy Secretary the "first assistant" to the Secretary "for purposes of subchapter III of chapter 33 of title 5."  *See* BV Mem. at 14; *see also* 5 U.S.C. § 3345(a)(1) (default rule under FVRA that the first assistant to a vacant office shall serve as the acting officer absent a presidential designation of another individual).  That is incorrect.

To be sure, under the plain meaning of Section 113 of the HSA, the Deputy Secretary of Homeland Security *would* have become the Acting Secretary of Homeland Security, under the FVRA's first-assistant rule, in the event of a vacancy in the Office of the Secretary, and thus *would have been* subject to the 210-day limit—that is, had the Deputy Secretary office not been vacant. But that is because Section 113(g) does not itself designate or authorize the designation of the Deputy Secretary under the HSA.  Plaintiffs might argue that that result—that the Deputy Secretary *is* subject to the 210-day time limit, while a subordinate officer (like Mr. Wolf) designated under the HSA would *not* be subject to a similar time limit—is counterintuitive, but the Court must "interpret the statute as it was written, not to rewrite it as [Plaintiffs] believe Congress *could have* intended to write it."  *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 336 (4th Cir. 2008).[15] Nor would there be anything illogical about a subordinate officer serving as an acting official in circumstances where her superior may not.  *See, e.g.*, 5 U.S.C. § 3345(a)(3) (allowing designation as acting officer of any senior officer or employee who meet certain tenure requirements); *Smith*, 962 F.3d at 763 n.1 (designation of Chief of Staff to Attorney General as Acting Attorney General was lawful despite availability of Deputy Attorney General and other Senate-confirmed officers).

---

[15] Congress may have had reasons for imposing the FVRA time limit on the Deputy Secretary but not on other officers serving during vacancies in the offices of the Secretary and Deputy Secretary.  In such instances, Congress may well have recognized that the absence of the two highest-ranking officials in DHS would justify the need for additional flexibility to ensure the continuing functioning of the department.  *Cf.* S. Rep. No. 105-250, at *18 (provisions of FVRA would ensure that "[a]ll the normal functions of government . . . could still be performed").

Moreover, Plaintiffs' argument comes with no explanation for Congress's decision to restrict 5 U.S.C. § 3346's time limit solely to acting service under the FVRA.[16]

Likewise, Plaintiffs offer no plausible explanation for what the "notwithstanding" clause in Section 113(g)(2) of the HSA means. They argue merely that the clause does not apply because there is no conflict between the FVRA's time limit and the HSA. BV Mem. at 14-15. That suggestion is incorrect. The HSA—like many other office-specific vacancy statutes—has no express time limit. Congress understood when enacting the FVRA that the lack of an express time limit in an office-specific vacancy meant that the statute did "not place time restrictions on the length of an acting officer." S. Rep. No. 105-250, at 17. There is no basis, then, to read Congress's decision *not* to include a time limit in the HSA as anything other than a conscious choice.

On reply, Plaintiffs may argue that 6 U.S.C. § 113(g)(2)'s notwithstanding clause only displaces the President's authority under 5 U.S.C. §§ 3345(a)(2) and (a)(3) to designate an acting official other than the first assistant. If so, that would get them nowhere; the text of the notwithstanding clause is not so limited. In any event, 6 U.S.C. § 113(g)(1) and (g)(2) do not override the President's FVRA authority to designate an Acting Secretary. The FVRA authorizes the President to deviate from the default rule that the first assistant—here, the Deputy Secretary—serves as the acting officer by designating any Senate-confirmed officer, 5 U.S.C. § 3345(a)(2), or a senior officer or employee within the agency who meets certain tenure requirements, *id.*

---

[16] Plaintiffs might also argue in reply that it would be unusual for the Under Secretary for Management to be able to serve as the Acting Deputy Secretary (or another Senate-confirmed position) for an initial period of only 210 days, but as the Acting Secretary for longer. Again, though, that is the obvious effect of 5 U.S.C. § 3346's plain text. Indeed, that same scenario could occur under any office-specific statute that lists more than one potential acting officer. For example, under 28 U.S.C. § 508(b), which contains no express time limit, the Associate Attorney General serves as the Acting Attorney General when the offices of the Attorney General and the Deputy Attorney General are both vacant. But, if the President were to designate the Associate Attorney General as the Acting Attorney General, he would need to do so pursuant to the FVRA, 5 U.S.C. § 3345(a)(2), meaning the Associate Attorney General could serve in that capacity for an initial period of only 210 days. To prevent that scenario would presumably require a court to import the FVRA's time limit to 28 U.S.C. § 508, a result that would nullify Congress's specific choice in 5 U.S.C. § 3346 *not* to apply the default FVRA time limit to office-specific statutes.

§ 3345(a)(3). The HSA's designation provisions apply only when the Secretary and the Deputy Secretary are not "available to exercise the duties of the Office of the Secretary," 6 U.S.C. § 113(g)(1), which would not include instances where the Deputy Secretary is available to serve but the President has designated someone else under the FVRA.

**4.** *Amicus curiae* Morton Rosenberg suggests that reading Section 113(g)(2) according to its plain text would conflict with Congress's goal of limiting indefinite service by acting officials. *See* Rosenberg Amicus Br., *Batalla Vidal* ECF No. 317-1, at 8-13. This argument errs by conflating so-called "agency 'housekeeping statutes'" with office-specific vacancy statutes.

As the Senate Report explains, in enacting the FVRA, Congress was motivated in part by its concern that, under the pre-FVRA Vacancies Act, the Executive Branch had argued that if "a department's organic act vests the powers and functions of the department in its head and authorizes that officer to delegate such powers and functions," that "authority supersedes the Vacancies Act . . . allowing for designations of acting officials for an indefinite period." S. Rep. No. 105-250, at 3 (1998). But office-specific vacancy statutes—like the Homeland Security Act— are not the agency housekeeping statutes with which Congress was concerned. The latter vest all of an agency's authority in its head and then authorize the head to delegate that authority to other officers and employees. *See, e.g.*, 6 U.S.C. § 112(a)(3) (vesting "[a]ll functions of all officers, employees, and organizational units" of DHS in the Secretary), *id.* § 112(b)(1) (Secretary may delegate functions to "any officer, employee, or organizational unit" of DHS). The former expressly designate or authorize the designation of officials outside of the confines of the FVRA. *See, e.g.*, *id.* § 113(g) (vacancies in office of Secretary); *compare* 28 U.S.C. §§ 509, 510 (vesting authority in Attorney General and authorizing delegations, and cited at S. Rep. No. 105-250, at 3 as example of housekeeping statute), *with* § 508 (office-specific statute for Attorney General).

And the FVRA itself distinguishes between these two types of statutes. The FVRA retains office-specific statutes as an exception to its exclusivity, *see* 5 U.S.C. § 3347(a)(1)(A)-(B), while explicitly providing that housekeeping statutes are not an exception, *see id.* § 3347(b) ("Any statutory provision providing general authority to the head of an Executive agency . . . to delegate

20

duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency, is not a statutory provision to which subsection (a)(1) applies.").[17]

### III.     Acting Secretary Wolf's service does not violate the Appointments Clause.

Finally, the *Batalla Vidal* Plaintiffs—but notably, not the *State of New York* Plaintiffs—argue that the service of Acting Secretary Wolf violates the Appointments Clause of the U.S. Constitution.  Essentially, they suggest that Acting Secretary Wolf's service—having followed that of Acting Secretary McAleenan and now having exceeded the FVRA's 210-day limit for its own part—cannot be fairly characterized as "temporary," and thus violates the Clause for that reason alone.  BV Mem. at 20-23.  Plaintiffs' legal conclusion does not follow from the facts.

The absence of a statutory time limit for acting service under the HSA does not mean that an Acting Secretary can serve indefinitely.  The Supreme Court has recognized that an acting designation must be "temporary."  *United States v. Eaton*, 169 U.S. 331, 343 (1898).  By definition, acting service cannot be permanent.  But neither the Appointments Clause nor any other provision of the Constitution sets forth an express limit on acting service.  Nor is there any reason to believe that 210 days has any constitutional valence.  Congress has frequently changed the time limit for acting service under the general vacancies statutes.  *See, e.g.*, Act of Feb. 13, 1795, 1 Stat. 415 (six months); 5 U.S.C. § 3348(a) (1994) (120 days).  Indeed, the first vacancies statute, enacted shortly after the Founding, had no express time limit.  *See* Act of May 8, 1792, ch. 37, § 8, 1 Stat. 279, 281; *see also Alden v. Maine*, 527 U.S. 706, 743-44 (1999) ("[E]arly congressional practice . . . provides contemporaneous and weighty evidence of the Constitution's meaning.").  For that matter, the FVRA does not limit acting service to 210 days.  The FVRA expressly permits an

---

[17] In a footnote, the *Batalla Vidal* Plaintiffs (but not the *State of New York* Plaintiffs) briefly suggest that, now that Mr. Wolf has been nominated for the position of Secretary, he has become "ineligible to continue as Acting Secretary" pursuant to certain provisions of the FVRA.  BV Mem. at 19 n.17; *see also* 5 U.S.C. § 3345(b)(1) (placing certain restrictions upon a person who "serve[s] as an acting officer for an office *under this section*") (emphasis added).  That is incorrect for all the reasons set forth above: Acting Secretary Wolf is currently serving under the HSA, not under the FVRA.  In any event, the only question currently before the Court is whether Acting Secretary Wolf was serving lawfully on July 28, 2020, the date he signed the Wolf Memorandum—not whether he is lawfully serving today.

official acting under its authority to serve beyond the initial 210-day period, during the pendency of a first Senate nomination, for 210 days following that nomination's rejection, return, or even withdrawal by the President, during the pendency of a second nomination, and for a final 210 days following the second nomination's rejection, return, or withdrawal.  *See* 5 U.S.C. § 3346(b)(1)-(2). A Presidential transition affords an acting officer even more time.  *See id.* § 3349a(b).  The length of acting service permitted under the FVRA is consistent with constitutional limitations and longstanding practice.  *See Eaton*, 169 U.S. at 343-44.  And without any viable constitutional standard, defining the precise point at which permissible temporary acting service transforms into unconstitutional permanent service is a nonjusticiable political question committed to the political branches.  *See Bhatti v. Fed. Hous. Fin. Agency*, 332 F. Supp. 3d 1206, 1218 (D. Minn. 2018).

Further, the specific circumstances here belie any concerns that Acting Secretary Wolf has been serving in his position "indefinitely without confirmation," Reply at 9—even ignoring the fact that the President recently nominated Mr. Wolf for the Secretary position.  Mr. Wolf has been Acting Secretary for approximately ten months.  He assumed that role by function of his prior Senate confirmation as the Under Secretary for DHS's Office of Strategy, Policy and Plans, *see* 6 U.S.C. § 113(a)(1)(K), and the duties of the Secretary are "germane" to that position.  *See Weiss v. United States*, 510 U.S. 163, 176 (1994) (Appointments Clause permitted commissioned officers, who had received Senate-confirmation for their positions, to serve as military judges without second confirmation because "the role of military judge is 'germane' to that of military officer").  Prior to Mr. Wolf's November 13, 2019 confirmation, Mr. McAleenan had already amended the Section 113(g)(2) line of succession, and it was widely reported that Mr. Wolf would become Acting Secretary once confirmed.[18]  Thus, the Senate confirmed him to the Under Secretary position knowing full well that it was vetting him, in part, for the ability to exercise the

---

[18] *See, e.g.*, Daniel Lippman, Ian Kullgren, & Anita Kumar, *White House plans to name Chad Wolf acting DHS Secretary*, Politico (Oct. 31, 2019), https://www.politico.com/news/2019/10/31/chad-wolf-acting-dhs-secretary-063363; Zolan Kanno-Youngs & Maggie Haberman, *Trump to Name Chad Wolf as Acting Secretary*, N.Y. Times (Nov. 1, 2019), https://www.nytimes.com/2019/11/01/us/politics/trump-chad-wolf-dhs.html.

Secretary's authority.  Nor is there any broader constitutional concern with Mr. Wolf's acting service—in addition to his germane Senate-confirmation, an individual temporarily performing the duties of a principal officer in an acting capacity does not require Senate confirmation.  *See Eaton*, 169 U.S. at 343; *Smith*, 962 F.3d at 764 (same).

## IV.    Plaintiffs' requested relief is overbroad.

Even if Plaintiffs were correct that Acting Secretary Wolf's service is unlawful, the relief they request is overbroad.  At most, the Court should set aside the Wolf Memorandum under the Administrative Procedure Act, and only as to plaintiffs in these cases who have demonstrated Article-III standing (and, if a class is ultimately certified in *Batalla Vidal*, to any certified class).

**1.**  In an earlier iteration of this litigation, the Court entered a nationwide preliminary injunction, although in doing so it recognized that "commentators have insightfully observed various problems with the practice of granting nationwide injunctions against the Government." *Batalla Vidal*, 279 F. Supp. 3d at 437.  Since then, "[t]he issuance of nationwide injunctions has" continued to be "the subject of increasing scrutiny."  *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 87 (2d Cir. 2020) (narrowing nationwide injunction to Second Circuit).  And the Second Circuit has identified "certain circumstances," in which a nationwide injunction may be permissible, such as "where only a single case challenges the action or where multiple courts have spoken unanimously on the issue."  *Id.*  On the other hand, the Second Circuit also recognized that "[t]he issuance of unqualified nationwide injunctions is a less desirable practice where, as here, numerous challenges to the same agency action are being litigated simultaneously in district and circuit courts across the country."  *Id.*

The factors identified by the Second Circuit counsel against nationwide relief here.  The validity of the Wolf Memorandum is now being challenged in a variety of district courts across the country,[19] and the validity of Acting Secretary Wolf's *appointment* is being challenged in even

---

[19] *Regents v. DHS*, 17-cv-5211-WHA (N.D. Cal.); *Santa Fe Dreamers Project v. Wolf*, 1:20-cv-02465 (D.D.C.); *Portillo-Moreno v. Wolf*, 20-cv-02097 (D.D.C.); *Arrizon v. Wolf*, 1:20-cv-00788 (W.D. Mich.); *FIEL Houston v. DHS*, 20-cv-2515 (S.D. Tex.).

more.[20]  This Court need not and should not enter an order that would preempt or disrupt litigation elsewhere.  Instead, if Plaintiffs prevail on the merits, the Court should simply set aside the Wolf Memorandum as to the named plaintiffs who can adequately demonstrate Article-III standing (and, if a class is ultimately certified in *Batalla Vidal*, to any certified class), and remand to the agency.[21]

**2.**  Plaintiffs seem to request that the Court set aside the Wolf Memorandum *under the FVRA itself*, 5 U.S.C. § 3348, either instead of or in addition to relying on the APA's general grant of remedial authority to courts reviewing allegedly unlawful agency action, 5 U.S.C. § 706.  The *Batalla Vidal* Plaintiffs (but not the *State of New York* Plaintiffs) also request an *injunction* to that effect, rather than the traditional remedy of vacatur.  All of those requests are meritless.

To be sure, under 5 U.S.C. § 3348(d), an action taken by an official whose service is inconsistent with the FVRA or an office-specific vacancy statute "shall have no force or effect" if that action is taken "in the performance of any function or duty of [the] vacant office."  But Section 3348 narrowly defines "function or duty"—solely for purposes of that section—as "any function or duty" of the office that is "established" by statute or by regulation and "required" by statute or "such regulation" "to be performed by the applicable officer (and only that officer)."  *Id.* § 3348(a)(2).  In other words, Section 3348 of the FVRA renders "void" a limited class of actions taken by an invalidly serving official that are, by statute or regulation, *exclusive* to the vacant office.  *SW. Gen., Inc. v. NLRB*, 796 F.3d 67, 78 (D.C. Cir. 2015), *aff'd*, 137 S. Ct. 929 (2017).

---

[20] *ILRC v. Wolf*, 4:20-cv-05883 (N.D. Cal.); *CASA de Maryland v. Wolf*, 8:20-cv-02118 (D. Md.); *Don't Shoot Portland v. Wolf*, 1:20-cv-02040 (D.D.C.); *Khudheyer v. Cuccinelli*, 1:20-cv-01882 (D.D.C.); *A.B.-B. v. Morgan*, 20-cv-00846 (D.D.C.); *Zappata v Trump*, 5:20-cv-00106 (S.D. Tex.); *La Clinica de la Raza v. Trump*, 19-cv-4980 (N.D. Cal.); *NWIRP v. USCIS*, 1:19-cv-03283 (D.D.C.).

[21] Earlier in this litigation, Defendants challenged the standing of various Plaintiffs.  The Court agreed in part and disagreed in part with Defendants' standing arguments, in an opinion issued on November 9, 2017.  *Batalla Vidal v. Duke*, 295 F. Supp. 3d 127 (E.D.N.Y. 2017).  Defendants maintain those arguments, though also recognize that pursuant to the reasoning of the Court's prior opinion on justiciability, both sets of Plaintiffs would likely have standing to challenge the Wolf Memorandum on the theory that Acting Secretary Wolf was not validly appointed.  *See id.* at 157-58.  Defendants may argue at a later date that some plaintiffs lack standing to bring some of the claims that appear in Plaintiffs' latest amended complaints.

Section 3348(d) has no direct import here.  First, Defendants have not disputed the contention that, if Acting Secretary Wolf were not lawfully serving, then the Wolf Memorandum could be set aside under the APA.  *See id.* at 79 (citing 5 U.S.C. § 706).  Second, the issuance of the Wolf Memorandum was not an action "in the performance of any function or duty" of the office of the Secretary because the authority exercised was not limited to the Secretary by any statute or regulation—which is unsurprising, given that DACA itself does not have any explicit statutory basis.  Rather, any such authority could be exercised by other officials, including, for example, the Deputy Secretary.  *See, e.g.*, Ex. 10, DHS Delegation No. 0100.2 ¶ II.G (June 23, 2003); *accord* 8 C.F.R. § 2.1.  And Congress knows how to specify when certain authorities are to be exercised *only* by the Secretary of Homeland Security, and are not to be further delegated.[22]

Relatedly, Plaintiffs assert that actions set aside under Section 3348(d) cannot be later ratified by a validly serving official.  The prohibition on ratification is applicable, however, only to the nondelegable functions of an office.  *See* 5 U.S.C. § 3348(a).  In any case, the Court need not consider that question now—both because relief under Section 3348 is inappropriate for the reasons above, and because no agency official has yet sought to "ratify" the Wolf Memorandum.  The parties can address the significance of any future ratification at the appropriate time.

## CONCLUSION

For these reasons, Plaintiffs' motions for partial summary judgment should be denied, and Defendants' motion for partial summary judgment should be granted.

---

[22] *See, e.g.*, 31 U.S.C. § 1344(d)(3).

Dated: September 11, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

SETH D. DuCHARME
Acting United States Attorney

BRAD P. ROSENBERG
Assistant Branch Director

 /s/   *Stephen M. Pezzi*
GALEN N. THORP
Senior Trial Counsel
STEPHEN M. PEZZI
RACHAEL L. WESTMORELAND
  Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 305-8576
Fax: (202) 616-8470
Email: stephen.pezzi@usdoj.gov

JOSEPH A. MARUTOLLO
Assistant U.S. Attorney
United States Attorney's Office
Eastern District of New York
271-A Cadman Plaza East, 7th Floor
Brooklyn, NY  11201
Phone:  (718) 254-6288
Fax:  (718) 254-7489
Email:  joseph.marutollo@usdoj.gov

*Attorneys for Defendants*

26