# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

STATE OF NEW YORK, et al.,

        Plaintiffs,

        v.

DONALD J. TRUMP, *in his official capacity as President of the United States*, et al.,

        Defendants.

No. 17-CV-5228 (NGG) (JO)

## DEFENDANTS' RESPONSES TO PLAINTIFFS' LOCAL CIVIL RULE 56.1 STATEMENT

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

SETH D. DuCHARME
Acting United States Attorney

BRAD P. ROSENBERG
Assistant Branch Director

GALEN N. THORP
 Senior Trial Counsel
STEPHEN M. PEZZI
RACHAEL L. WESTMORELAND
 Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch

JOSEPH A. MARUTOLLO
Assistant U.S. Attorney
United States Attorney's Office
Eastern District of New York

Date of Service:  September 11, 2020

Pursuant to Fed. R. Civ. P. 56(e) and Local Civil Rule 56.1(a), Defendants respectfully submit this statement in response to Plaintiffs' Local Civil Rule 56.1 Statement.

**DEFENDANTS' GENERAL OBJECTIONS**
**TO PLAINTIFFS' LOCAL CIVIL RULE 56.1 STATEMENT**

1.      A statement under Local Civil Rule 56.1 is not required on a summary judgment motion in a case seeking review of an administrative action under the Administrative Procedure Act, 5 U.S.C. §§ 551, 702, because such a case "presents only a question of law," as the district court judge conducts what is essentially an appellate review of the challenged administrative action.  *See Just Bagels Mfg., Inc v. Mayorkas*, 900 F. Supp. 2d 363, 372 n.7 (S.D.N.Y. 2012); *accord*, *Glara Fashion, Inc. v. Holder*, 11 Civ. 889, 2012 WL 352309, at *1, n.1 (S.D.N.Y. Feb. 3, 2012); *see also Teleanu v. Koumans*, No. 19-CV-8177 (VEC), 2020 WL 4896858, at *5 (S.D.N.Y. Aug. 20, 2020) ("A Rule 56.1 statement is not required in a case seeking review of an administrative action under the APA because the case only presents a question of law."); *Aleutian Capital Partners, LLC v. Hugler*, No. 16 Civ. 5149, 2017 WL 4358767, at *2 (S.D.N.Y. Sept. 28, 2017) ("Because this action turns entirely on the administrative record and presents only legal issues, Rule 56.1 statements are unnecessary").

2.      Nevertheless, in order to ensure compliance with any possible requirements that Local Civil Rule 56.1(b) may impose, Defendants respectfully submit the following responses to Plaintiffs' Local Civil Rule 56.1 statement.

3.      To the extent that Defendants' replies and responses admit or may be deemed to admit any facts, any such admission is made solely for the purposes of the pending motion and is not intended to constitute an admission or otherwise bind any defendant in any subsequent proceeding.

2

**DEFENDANTS' RESPONSES**
**TO PLAINTIFFS' LOCAL CIVIL RULE 56.1 STATEMENT**

**I.      Issuance of the July 28, 2020 Wolf Memorandum.**

1.        In 2012, former Secretary of Homeland Security Janet Napolitano issued a memorandum establishing Deferred Action for Childhood Arrivals ("DACA")—that set forth specific criteria for DHS to employ on a case-by-case basis when deciding requests for protection from deportation for certain young immigrants brought to the United States as children who have continually lived in the United States for at least five years. *See* Ex. 1 (Janet Napolitano, U.S. Department of Homeland Security, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States As Children* (June 15, 2012)).

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 1.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Accordingly, no response is required.

2.        Individuals granted deferred action under DACA received protection from removal for renewable two-year periods, and the ability to apply for authorization and for permission to travel outside the country ("advance parole").  *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 2.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

3

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

3. On June 18, 2020, the Supreme Court held that the Department of Homeland Security's 2017 rescission of the DACA program was arbitrary and capricious under the Administrative Procedure Act ("APA"). *See Department of Homeland Security v. Regents of Univ. of California*, 140 S. Ct. 1891, 1915 (2020).

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 3. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

4. On June 30, 2020, the Court of Appeals for the Fourth Circuit issued the mandate associated with its 2019 decision entering summary judgment for plaintiffs and vacating the 2017 rescission of DACA as arbitrary and capricious under the APA. Ex. 2 (Mandate, *Casa de Maryland*, No. 18-1521, ECF No. 71 (4th Cir. June 30, 2020)).

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 4. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

4

5.      Following *Regents* and the Fourth Circuit's mandate, DHS declined to process DACA applications and instead "generally held" applications "in anticipation of potential policy changes." Ex. 3 (Chad F. Wolf, *Reconsideration of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children"* (July 28, 2020)) ("Wolf Memo").

**Defendants' Response:** It is undisputed that DHS held initial DACA requests, but disputed that DHS held renewal requests.

6.      On July 28, 2020, Acting Secretary of Homeland Security Chad Wolf issued a memorandum directing DHS to make interim changes to DACA while Wolf considered whether to fully rescind DACA.  *Id.*

**Defendants' Response:** It is undisputed that Acting Secretary of Homeland Security Chad Wolf issued a memorandum on July 28, 2020 entitled "Reconsideration of the June 15, 2012 Memorandum Entitled 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children'" ("the Wolf Memo").  Defendants neither admit nor deny the remainder of the statement contained in paragraph 6.  The remainder of the statement is a characterization of the Wolf Memo, rather than a statement of material fact to which a response is required.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Defendants refer the Court to the text of the Wolf Memo for a complete and accurate statement of its contents.

7.      The Wolf Memo orders DHS to reject all new initial DACA applications, to change the renewal period for current beneficiaries from two years to one year, and to reject all advance parole applications absent exceptional circumstances. *Id.* at 7-8; *see also* Ex. 4 (Joseph Edlow, *Implementing Acting Secretary Chad Wolf's July 28, 2020, Memorandum, "Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children'"* (Aug. 21, 2020)).

5

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 7. The statement is a characterization of the Wolf Memo, rather than a statement of material fact to which a response is required. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Defendants refer the Court to the text of the Wolf Memo for a complete and accurate statement of its contents.

8.      The Wolf Memo calls for a retroactive application of its changes to the availability of DACA, making those changes effective as of June 18, the date of the *Regents* decision. Wolf Memo 7 & n.1.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 8. The statement is a characterization of the Wolf Memo, rather than a statement of material fact to which a response is required. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Defendants refer the Court to the text of the Wolf Memo for a complete and accurate statement of its contents.

9.      With respect to advance parole, the Wolf Memo states (Ex. 3 at 7 & n.1) that DHS began categorically holding advance parole requests on July 24. According to the Memo, between June 18 and July 24, many advance parole requests were rejected while some were accepted. *Id.* The Memo invites any DACA recipient whose advance parole requests DHS rejected before July 24 to renew the request if the requestor "believes exceptional circumstances support his or her request." *Id.* at 7 n.1.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 9. The statement is a characterization of the Wolf Memo, rather than a statement of material fact to which a response is required. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Defendants refer the Court to the text of the Wolf Memo for a complete and accurate statement of its contents.

**II.      Amendments to the DHS Succession Order.**

10.      On February 15, 2019, then-Secretary of Homeland Security Kirstjen Nielsen

exercised her authority under 6 U.S.C. § 113(g)(2) to set an order of succession should the Deputy Secretary and Under Secretary for Management positions be vacant, by amending the existing order of succession, Delegation 00106, issued in 2016 by then-Secretary of Homeland Security Jeh Johnson. *See* Ex. 5 at 5 (U.S. Gov't Accountability Off., B-331650, *Department of Homeland Security—Legality of Service of Acting Secretary of Homeland Security and Service of Senior Official Performing the Duties of Deputy Secretary of Homeland Security* (Aug. 14, 2020)) (the "GAO Report").

**Defendants' Response:** Disputed. Ms. Nielsen never signed HSA Delegation 00106, Revision No. 08.4. On February 15, 2019, Secretary Nielson set an order of succession for the Office of Strategy, Policy, and Plans, not for the office of the Secretary. *See* Exhibit 9. Thus, Secretary Nielson did not exercise her authority under 6 U.S.C. § 113(g)(2), which gives the Secretary the authority to "designate such other officers of the Department in further order of succession to serve as Acting Secretary."

11.     In the case of the Secretary's death, resignation, or inability to perform the functions of office, Secretary Nielsen's February Delegation provided that Executive Order 13753 governed the order of succession. *Id.*

**Defendants' Response:** Disputed. Ms. Nielsen never signed HSA Delegation 00106, Revision No. 08.4. On February 15, 2019, Secretary Nielson set an order of succession for the Office of Strategy, Policy, and Plans, not for the office of the Secretary. *See* Exhibit 9.

12.     If the Secretary is unavailable to act during a disaster or catastrophic emergency, Secretary Nielsen's February Delegation provided that Annex A to the February Delegation governed the order of succession. *Id.*

**Defendants' Response:** Disputed.  Ms. Nielsen never signed HSA Delegation 00106, Revision No. 08.4. On February 15, 2019, Secretary Nielson set an order of succession for the Office of

Strategy, Policy, and Plans, not for the office of the Secretary. *See* Exhibit 9.

13.     At the time of the February Delegation, the orders of succession found in E.O.13753 and Annex A were identical; the first four positions in the order of succession for both were as follows: (1) Deputy Secretary; (2) Under Secretary for Management, (3) Administrator of the Federal Emergency Management Agency ("FEMA") and (4) Director of the Cybersecurity and Infrastructure Security Agency ("CISA"). *See* Ex. 5 at 5-6 (GAO Report); Ex. 6 (*Amending the Order of Succession in the Department of Homeland Security*, Exec. Order 13753, 81 Fed.Reg. 90,667 (Dec. 9, 2016)).

**Defendants' Response:** Disputed.  Ms. Nielsen never signed HSA Delegation 00106, Revision No. 08.4.  On February 15, 2019, Secretary Nielson set an order of succession for the Office of Strategy, Policy, and Plans, not for the office of the Secretary. *See* Exhibit 9.

14.     When E.O 13753 was issued in 2016, the Director of CISA was called the Under Secretary for National Protection and Programs; the position was renamed in 2018. Pub. L. No. 115-278, § 2(a), 132 Stat. 4168, 4169 (Nov. 16, 2018), *codified at* 6 U.S.C. § 652(a), (b).

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 14.  The statement contains a legal conclusion as to the successor office of the Under Secretary for National Protection and Programs, which is not a statement of material fact to which a response is required. *See* Loc. Civ. R. 56(1)(a); Fed. R. Civ. P. 56(a).

15.     The February Delegation further provided that acting officials in the listed positions were ineligible to serve as acting secretary and, thus, the order of succession would fall to the next Senate-confirmed official. *See* Ex. 5 at 6 (GAO Report).

**Defendants' Response:** Disputed.  Ms. Nielsen never signed HSA Delegation 00106, Revision No. 08.4.  On February 15, 2019, Secretary Nielson set an order of succession for the Office of Strategy, Policy, and Plans, not for the office of the Secretary. *See* Exhibit 9.

16.     Secretary Nielsen announced her resignation from the Secretary position effective

8

April 7, 2019. Ex. 7 (Secretary Kirstjen Nielsen, Resignation Letter to the President (Apr. 7, 2019)).

**Defendants' Response:** Disputed.  Kirstjen Nielsen served as Secretary of Homeland Security between December 5, 2017 and April 10, 2019, as evidenced by the FVRA form notifying various congressional committees of the vacancy and designation of an Acting Secretary.  *See* Exhibit 13.

17.     Secretary Nielsen nonetheless purported to remain in office until April 10, 2019. Ex. 8 at 25 (Mem. of Law in Support of Defs.' Opp. to Pls.' Mot. for a Prelim. Injunction, *Casa de Maryland, Inc. et al. v. Wolf, et al.*, No. 8:20-cv-2118, ECF No. 41 (D. Md. Aug. 3, 2020)).

**Defendants' Response:** It is undisputed that Secretary Nielsen remained in office until April 10, 2019.  *See* Exhibit 13.

18.     Before leaving office on April 10, 2019, Nielsen made a partial amendment to DHS's order of succession. In this April Delegation, Secretary Nielsen retained the two separate grounds for accession to the role of Acting Secretary: vacancies arising from Secretary's death, resignation, or inability to perform the functions of office were still governed by E.O. 13753, and vacancies arising from the Secretary's unavailability to act during a disaster or catastrophic emergency were still governed by Annex A to the Delegation. Ex. 9 at §§ II.A, II.B (Dep't of Homeland Security, *DHS Orders of Succession and Delegations of Authorities for Named Positions*, Delegation No. 00106, Revision No. 08.5 (Apr. 10, 2019)).

**Defendants' Response:** Disputed.  Revision 8.5 to DHS Delegation 00106 is an administrative document that Ms. Nielsen did not sign and it did not establish a new order of succession.  Rather Ms. Nielsen's April 9, 2019 order, Designation of an Order of Succession for the Secretary, established the new order of succession that applied to all vacancies.  *See* Exhibit 1.

19.     Secretary Nielsen also did not amend E.O. 13753, which continued to govern the order of succession in the event of a vacancy created by the Secretary's death, resignation or inability to perform the functions of the office. *See id.* § II.A.

**Defendants' Response:** Disputed.  Revision 8.5 to DHS Delegation 00106 is an administrative document that Ms. Nielsen did not sign and it did not establish a new order of succession.  Rather Ms. Nielsen's April 9, 2019 order, Designation of an Order of Succession for the Secretary, established the new order of succession that applied to all vacancies.  *See* Exhibit 1.

20.     Secretary Nielsen did, however, amend Annex A, which set forth the order of succession for when the Secretary is unavailable to act during a disaster or catastrophic emergency; the new order of succession was as follows: (1) Deputy Secretary; (2) Under Secretary for Management; (3) Commissioner of U.S. Customs and Border Protection ("CBP"), and (4) Administrator of FEMA. *Id.* at Annex A.

**Defendants' Response:** Disputed.  Revision 8.5 to DHS Delegation 00106 is an administrative document that Ms. Nielsen did not sign and it did not establish a new order of succession.  Rather Ms. Nielsen's April 9, 2019 order, Designation of an Order of Succession for the Secretary, established the new order of succession.  *See* Exhibit 1.

21.     Following Nielsen's April 10, 2019 departure, Senate-confirmed Commissioner of CBP Kevin McAleenan assumed the role of Acting Secretary.  *See* Ex. 5 at 4 (GAO Report).

**Defendants' Response:** Undisputed.

22.     On November 8, 2019, McAleenen substituted Annex A for E.O. 13753 to govern the order of succession when the Secretary dies, resigns, or is unable to perform the functions of office. *See* Ex. 10 (Kevin K. McAleenan, Amendment to the Order of Succession for the Secretary of Homeland Security (Nov. 8, 2019)); Ex. 11 (Dep't of Homeland Security, *DHS Orders of Succession and Delegations of Authorities for Named Positions*, Delegation No. 00106, Revision No. 08.6 (Nov. 14, 2019)).

**Defendants' Response:** Disputed.  Revision 8.6 to DHS Delegation 00106 is an administrative document that Mr. McAleenan did not sign and it did not establish a new order of succession.

10

Mr. McAleenan did amend the order of succession for the office of Secretary of Homeland Security on November 8, 2019, but he did so by signing an amendment, not by issuing Revision 8.6.

23.     McAleenan then directed the order of succession in Annex A to be: (1) Deputy Secretary, (2) Under Secretary for Management; (3) Commissioner of CBP; and (4) Under Secretary for Strategy, Policy, and Plans. *See id.*

**Defendants' Response:** Disputed. Revision 8.6 to DHS Delegation 00106 is an administrative document that Mr. McAleenan did not sign and it did not establish a new order of succession.

24.     On November 13, 2019, McAleenan resigned as both Acting Secretary and Commissioner of CBP, and the Senate-confirmed Under Secretary for Strategy, Policy, and Plans, Chad Wolf, assumed the role of Acting Secretary. *See* Ex. 5 at 4 (GAO Report).

**Defendants' Response:** Disputed.  Mr. McAleenan resigned as CBP Commissioner on November 13, 2019.

**III.    Congress and the U.S. Government Accountability Office question the validity of Wolf's service as Acting Secretary of Homeland Security.**

25.     On November 15, 2019, the Chairman of the House of Representatives Committee on Homeland Security and the Acting Chairwoman of the House Committee on Oversight and Reform wrote a letter to the head of GAO "to express serious concerns with the legality of the appointment" of Chad Wolf as Acting Secretary of Homeland Security and Ken Cuccinelli as Senior Official Performing the Duties of Deputy Secretary. Ex. 12 (Letter from Bennie G. Thompson, Chairman, House Committee on Homeland Security, and Carolyn B. Maloney, Acting Chairwoman, House Committee on Oversight & Reform, to Gene Dodaro, Comptroller General of the United States (Nov. 15, 2019)).

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph

25.  The statement is a characterization of the Thompson Letter, rather than a statement of material fact to which a response is required.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Defendants refer the Court to the text of the Thompson Letter for a complete and accurate statement of its contents.

26.       In particular, the Chairman and Acting Chairwoman expressed concern that Wolf was serving in violation of the Federal Vacancies Reform Act ("FVRA") and Homeland Security Act ("HSA") because former Acting Secretary McAleenan did not lawfully assume the Acting Secretary position, and so McAleenan had no authority to make the changes to DHS's order of succession that formed the basis for Wolf's accession to Acting Secretary. *Id.* at 2.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 26.  The statement is a characterization of the Thompson Letter, rather than a statement of material fact to which a response is required.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Defendants refer the Court to the text of the Thompson Letter for a complete and accurate statement of its contents.

27.       On August 14, 2020, GAO issued a report responding to the Chairman and Acting Chairwoman's request, and assessing the legality of the appointment of Chad Wolf as Acting Secretary of Homeland Security and Ken Cuccinelli as Senior Official Performing the Duties of Deputy Secretary. *See* Ex. 5 (GAO Report).

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 27.  The statement is a characterization of the GAO Report, rather than a statement of material fact to which a response is required.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Defendants refer the Court to the text of the GAO Report for a complete and accurate statement of its contents.

28.       In the report, GAO explained that "[i]n the case of vacancy in the positions of Secretary, Deputy Secretary, and Under Secretary for Management, the HSA provides a means for

an official to assume the title of Acting Secretary pursuant to a designation of further order of succession by the Secretary." *Id.* at 11.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 28. The statement is a characterization of the GAO Report, rather than a statement of material fact to which a response is required. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Defendants refer the Court to the text of the GAO Report for a complete and accurate statement of its contents.

29.     Based on the amendments Secretary Nielsen made to the order of succession in April 2019, GAO concluded that the Senate-confirmed CBP Commissioner (McAleenan) "would have been the appropriate official" to serve as Acting Secretary only if Secretary Nielsen had been "unavailable to act during a disaster or catastrophic emergency." *Id.* at 7 (citing Annex A to the April Delegation).

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 29. The statement is a characterization of the GAO Report, rather than a statement of material fact to which a response is required. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Defendants refer the Court to the text of the GAO Report for a complete and accurate statement of its contents.

30.     GAO concluded that because Secretary Nielsen had *resigned*, E.O. 13753 controlled under "the plain language of the April Delegation." *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 30. The statement is a characterization of the GAO Report, rather than a statement of material fact to which a response is required. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Defendants refer the Court to the text of the GAO Report for a complete and accurate statement of its contents.

31.     GAO explained that after Nielsen's resignation, then-Director of CISA, Christopher Krebs, should have assumed the position Acting Secretary because he was the first

Senate-confirmed official in the E.O. 13753 order of succession, which governed following a Secretary's resignation. *Id.* at 8 & n.11.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 31. The statement is a characterization of the GAO Report, rather than a statement of material fact to which a response is required. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Defendants refer the Court to the text of the GAO Report for a complete and accurate statement of its contents.

32.     GAO noted that although "McAleenan assumed the title of Acting Secretary upon the resignation of Secretary Nielsen," "the express terms of the existing [succession] designation required [Krebs] to assume that title" and so "McAleenan did not have authority to amend the Secretary's existing designation." *Id.* at 11.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 32. The statement is a characterization of the GAO Report, rather than a statement of material fact to which a response is required. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Defendants refer the Court to the text of the GAO Report for a complete and accurate statement of its contents.

33.     GAO thus concluded that Wolf and Cuccinelli were improperly serving in their acting roles because they assumed those acting roles under "[the] invalid order of succession" established by McAleenan in November 2019. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 33. The statement is a characterization of the GAO Report, rather than a statement of material fact to which a response is required. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Defendants refer the Court to the text of the GAO Report for a complete and accurate statement of its contents.

34.     GAO did not assess the consequences of Wolf's and Cuccinelli's unlawful appointments and instead referred that question to the DHS Office of Inspector General. *Id.* at

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph

34.  The statement is a characterization of the GAO Report, rather than a statement of material fact to which a response is required.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Defendants refer the Court to the text of the GAO Report for a complete and accurate statement of its contents.

## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Notwithstanding Defendants' General Objections to Plaintiffs' Local Civil Rule 56.1 Statement above, Defendants submit, pursuant to Local Civil Rule 56.1, the following material facts to which they contend that there is no genuine issue to be tried.

1.  On April 9, 2019, Kirstjen M. Nielson issued her signed approval of a Memorandum for the Secretary with the subject "Designation of an Order of Succession for the Secretary."  This Memorandum is annexed hereto as Exhibit 1.

2.  On June 1, 2020, Neal J. Swartz executed a sworn declaration.  The declaration is annexed hereto as Exhibit 2.

3.  On April 16, 2018, Neal J. Swartz submitted a form for a "notice of a vacancy and designation of an acting officer" for Claire M. Grady to the Honorable Michael R. Pence, President of the Senate.  This form, and the cover letter submitting the form, are annexed hereto as Exhibit 3.

4.  On April 11, 2019, Neal J. Swartz submitted a form for a "notice of a vacancy and designation of an acting officer" for Charles H. Fulgham to the Honorable Michael R. Pence, President of the Senate.  This form, and the cover letter submitting the form, are annexed hereto as Exhibit 4.

5.  On November 8, 2019, Kevin K. McAleenan signed the "Amendment to the Order of Succession for the Secretary of Homeland Security."  The signed document is annexed hereto as Exhibit 5.

6.  On September 10, 2020, Peter T. Gaynor signed an "Order Designating the Order of Succession for the Secretary of Homeland Security."  The order is annexed hereto as Exhibit 6.

7.  On December 15, 2016, Jeh Johnson signed Revision 8 to DHS Delegation No. 00106, titled

"DHS Orders of Succession and Delegations of Authorities for Named Positions."  The signed document is annexed hereto as Exhibit 7.

8.  On April 10, 2019, Kirstjen M. Nielson sent an email entitled "Farewell Message from Secretary Kirstjen M. Nielsen."  A copy of the email is annexed hereto as Exhibit 8.

9.  Kirstjen M. Nielson signed a memorandum for Claire M. Grady and Frank DiFalco with the subject "Amendment to the Order of Succession for the Office of Strategy, Policy, and Plans. The memorandum is annexed hereto as Exhibit 9.

10. On June 23, 2003, Delegation Number 0100.2 was issued.  The document is annexed hereto as Exhibit 10.

11. On April 10, 2019, Revision 8.5 to DHS Delegation No. 00106, titled "DHS Orders of Succession and Delegations of Authorities for Named Positions," was issued.  The document is annexed hereto as Exhibit 11.

12. On February 15, 2019, Revision 8.4 to DHS Delegation No. 00106, titled "DHS Orders of Succession and Delegations of Authorities for Named Positions," was issued.  The document is annexed hereto as Exhibit 12.

13. On April 11, 2019, Neal J. Swartz submitted a form for a "notice of a vacancy and designation of an acting officer" for Kevin K. McAleenan to the Honorable Michael R. Pence, President of the Senate.  This form, and the cover letter submitting the form, are annexed hereto as Exhibit 13.


Dated: Brooklyn, New York
          September 11, 2020

                                        JEFFREY BOSSERT CLARK
                                        Acting Assistant Attorney General

                                        DAVID M. MORRELL
                                        Deputy Assistant Attorney General

SETH D. DuCHARME
Acting United States Attorney

BRAD P. ROSENBERG
Assistant Branch Director

GALEN N. THORP
  Senior Trial Counsel
       /s/ *Stephen M. Pezzi*
STEPHEN M. PEZZI
RACHAEL L. WESTMORELAND
 Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 305-8576
Fax: (202) 616-8470
Email: stephen.pezzi@usdoj.gov

JOSEPH A. MARUTOLLO
Assistant U.S. Attorney
United States Attorney's Office
Eastern District of New York
271-A Cadman Plaza East, 7th Floor
Brooklyn, NY  11201
Phone:  (718) 254-6288
Fax:  (718) 254-7489
Email:  joseph.marutollo@usdoj.gov

*Attorneys for Defendants*

17