**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

STATE OF NEW YORK, et al.,

                Plaintiffs,

         v.

DONALD J. TRUMP, *in his official capacity as President of the United States*, et al.,

                Defendants.

17-CV-5228 (NGG) (JO)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT, AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................ 4

I.      Wolf Has Been Unlawfully Serving As Acting Secretary in Violation of the Federal
        Vacancies Reform Act and Homeland Security Act ............................................................ 6

A.      DHS Not Dispute That Under the Plain Terms of Delegation 00106, Wolf Unlawfully
        Assumed the Acting Secretary Role ................................................................................... 6

B.      Wolf's Ascension to the Acting Secretary Role Was Also Unlawful Under the Plain
        Language of the April 2019 Memorandum ......................................................................... 7

C.      Nielsen Unlawfully Made Her April 2019 Amendment After She Had Resigned as
        DHS Secretary, Rendering the Amendment Void ............................................................ 16

II.     The Wolf Memo is Void and the Changes Effected By It Must Be Set Aside ................. 17

        A.      The Changes to DACA That Wolf Effected Through the Wolf Memo Were
                Void At the Outset ................................................................................................. 17

        B.      The FVRA Prohibits Wolf From Ratifying the Wolf Memo and His
                Ratification Is Thus Invalid ................................................................................... 23

        C.      This Court Should Vacate the Changes Imposed by the Wolf Memo ................... 24

CONCLUSION ......................................................................................................................... 25

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Batalla Vidal v. Wolf*,
  No. 1:16-cv-04756 (E.D.N.Y.), ECF No. 311 ...........................................................5

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*,
  843 F.3d 48 (2d Cir. 2016)...........................................................................................25

*Cook v. New York State Div. of Parole*,
  321 F.3d 274 (2d Cir. 2003)..........................................................................................12

*Department of Homeland Sec. v. Regents of Univ. of California*,
  140 S. Ct. 1891 (2020)...................................................................................................4

*First Capital Asset Mgmt., Inc. v. Brickelbush, Inc.*,
  218 F. Supp.2d 369 (S.D.N.Y. 2002) ...........................................................................16

*Grant & Eisenhofer, P.A. v. Bernstein Lebhard, LLP*,
  2016 WL 4098616 (S.D.N.Y. July 28, 2017) ...............................................................17

*Kisor v. Wilkie*,
  139 S.Ct. 2400 (2019)....................................................................................................5

*L-M.-M. v. Cuccinelli*,
  442 F. Supp. 3d 1 (D.D.C. 2020) ........................................................................ passim

*La Clinica De La Raza v. Trump*,
  No. 19-cv-4980-PJH, 2020 WL 4569462 (N.D. Cal. Aug. 7, 2020) ......................7, 15

*N.L.R.B. v. SW General, Inc.*,
  137 S.Ct. 929 (2017)......................................................................................................16

*New York v. U.S. Dep't of Homeland Security*,
  969 F.3d 42 (2d Cir. 2020).............................................................................................24

*Novick v. Bankers Life Ins. Co. of New York*,
  450 F. Supp. 2d 196 (E.D.N.Y. 2006) ...........................................................................23

*RadLax Gateway Hotel, LLC v. Amalgamated Bank*,
  566 U.S. 639 (2012).......................................................................................................12

*SW Gen., Inc. v. N.L.R.B.*,
  796 F.3d 67 (D.C. Cir. 2015), aff'd, 137 S. Ct. 929 (2017) .........................................18

*United States v. Yousef*,
    327 F.3d 56 (2d Cir. 2003)................................................................................23

**FEDERAL STATUTES**

5 U.S.C.
    § 3345(a)(2) ............................................................................ 18-19, 23
    § 3348(b)(2) ............................................................................21
    § 3348(d) ................................................................................22
    § 3348(d)(1) ...........................................................................passim
    § 3348(d)(2) ...........................................................................3, 23

6 U.S.C.
    § 112(a)(2) ..............................................................................19
    § 112(a)(3) ..............................................................................19
    § 112(b)(1) ............................................................................ 11-12, 19
    § 113(g) ................................................................................ 2, 10-12, 15
    § 202(b) .................................................................................19

8 U.S.C.
    § 1103(a)(1) ...........................................................................19

10 U.S.C.
    § 113(d) .................................................................................20

20 U.S.C.
    § 3441 ....................................................................................20
    § 3447 ....................................................................................20
    § 3472 ....................................................................................20

22 U.S.C.
    § 2651a(a) .............................................................................20

28 U.S.C.
    § 510 ......................................................................................20

31 U.S.C.
    § 321 ......................................................................................20

38 U.S.C.
    § 303 ......................................................................................20
    § 512 ......................................................................................20

42 U.S.C.
    § 3534(a) ........................................................................................................20
    § 3535(d) ........................................................................................................20
    § 7151 ...........................................................................................................20
    § 7152 ...........................................................................................................20
    § 7252 ...........................................................................................................20

43 U.S.C.
    § 1457c .........................................................................................................20

49 U.S.C.
    § 322(b) ........................................................................................................20

**FEDERAL REGULATIONS**

8 C.F.R.
    § 2.1 .............................................................................................................19

**RULES**

Local Civil Rule 56.1 ................................................................................. 1, 16-17

## PRELIMINARY STATEMENT

Plaintiffs' opening memorandum of law demonstrated that Chad Wolf has been unlawfully serving as Acting Secretary of Homeland Security in violation of the Homeland Security Act ("HSA") and Federal Vacancies Reform Act ("FVRA"), and thus his July 28, 2020 Memorandum (the "Wolf Memo")[1] altering Deferred Action for Childhood Arrivals ("DACA") was invalid under the plain terms of the FVRA.[2] Wolf assumed the Acting Secretary position pursuant to a November 2019 revision that then-Acting Secretary Kevin McAleenan issued to Department of Homeland Security (DHS) Delegation 00106, which sets forth the orders of succession for the Secretary position as well as orders of succession for other positions. But as Plaintiffs showed in their opening memorandum of law, McAleenan lacked authority to make that revision because McAleenan himself assumed the Acting Secretary position unlawfully following then-Secretary Kirstjen Nielsen's April 2019 resignation. DHS does not dispute that if McAleenan was unlawfully serving as Acting Secretary, Wolf was too.

In April 2019, Nielsen issued a memorandum (the "April 2019 memorandum")[3] amending Annex A to Delegation 00106 to move McAleenan's position higher in the succession

---

[1] *See* Ex. 3 (Chad F. Wolf, *Reconsideration of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children"* (July 28, 2020)). Citations to "Ex. __" are to the exhibits to the Declaration of Matthew Colangelo dated August 28, 2020 (ECF No. 273).  Citations to "Defs.' Ex. __" are to the exhibits appended to Defendants' Responses to Plaintiffs' Local Civil Rule 56.1 Statement dated September 11, 2020 (ECF No. 288).

[2] After Plaintiffs filed their motion for partial summary judgment, the district court in *Casa de Maryland, Inc. v. Wolf* found that the plaintiffs there were likely to succeed on their claim that certain asylum rules issued by Wolf should be vacated because Wolf unlawfully assumed the Acting Secretary position in violation of the FVRA and HSA. *See*, No. 8:20-cv-02118-PX, 2020 WL 5500165, at *23 (D. Md. Sept. 11, 2020).

[3] Ex. 14 (Memorandum for the Secretary from John M. Mitnick, DHS (Apr. 9, 2019) ("April 2019 Memorandum")).

1

order for the Acting Secretary position. DHS does not dispute that, at the time of the amendment, Delegation 00106 stated that Annex A only governed the succession order when the Secretary is unavailable to act during a disaster or catastrophic emergency. Nielsen did not amend the separate succession order governing instances where the Secretary resigns—the circumstance creating the vacancy that McAleenan purported to fill.

Trying to escape the consequences of this oversight, DHS argues that the April 2019 memorandum amending Delegation 00106 implicitly changed the succession order following resignations by purporting to set an "order of succession": a term that, according to DHS, applies only when the Secretary resigns or otherwise leaves office, and not when the Secretary is absent or unavailable to act. DHS's argument is inconsistent with the Homeland Security Act, the April 2019 memorandum, and Delegation 00106, all of which use the term "order of succession" to include the succession order that applies when the Secretary is absent, even if the Secretary has not left office. The Homeland Security Act, for example, uses "order of succession" to describe who may serve as Acting Secretary in the event of "absence, disability, or vacancy" in office of Secretary. 6 U.S.C. § 113(g)(1), (2).

DHS's argument is also inconsistent with purported Acting Secretary McAleenan's November 2019 amendment to Delegation 00106, which expressly revised the Delegation to make the Annex A succession order apply when the Secretary resigns—a revision that DHS does not dispute would be superfluous if Nielsen had already made that amendment. Nor does DHS's memorandum of law respond to Plaintiffs' argument that even if Nielsen had amended Delegation 00106 in April 2019 to make McAleenan her successor in the event of her resignation, the amendment itself was ultra vires and thus void because she made it after she resigned as Secretary on April 7, 2019.

DHS admits that if Wolf unlawfully assumed the Acting Secretary position, and issued the Memo "in the performance of [a] function or duty" of the Secretary's office, the Wolf Memo is invalid. *See* 5 U.S.C. § 3348(d)(1). This concession establishes Plaintiffs' right to summary judgment because the Wolf Memo, which purports to exercise statutory authority exclusively assigned to the Secretary, on its face shows that Wolf was attempting to perform a function or duty of the Secretary's office. In an effort to resist that conclusion, DHS argues that because DHS's organic statute contains a general vesting-and-delegation provision permitting the Secretary to delegate any of his functions to any other officer in DHS, Wolf was not performing a function or duty belonging exclusively to the Secretary. DHS's argument—that the FVRA's enforcement provisions apply only to the nondelegable functions of the Secretary—is inconsistent with the text, structure, and purpose of the FVRA, which was passed to curb the misuse of the same types of vesting-and-delegation statutes that DHS is relying on now.

Wolf's purported ratification of his prior unlawful actions—issued just last week, after Plaintiffs here brought this challenge—cannot save the Wolf Memo either.  In a memorandum issued on September 17, 2020 (the Ratification Memo), Wolf asserted that after the President recently nominated him to the Secretary position, another DHS official temporarily assumed the Acting Secretary position and amended the succession order for Secretary to permit Wolf to lawfully serve as Acting Secretary. Wolf further asserted that even if he previously had been unlawfully serving as Acting Secretary, he can now ratify the official actions he took during that time, including the Wolf Memo. He cannot. Regardless of whether Wolf is now lawfully serving as Acting Secretary, the FVRA categorically provides that an action that is void under the FVRA "may not be ratified." 5 U.S.C. § 3348(d)(2). DHS responds by arguing that the FVRA's prohibition on ratification applies only to the nondelegable functions of the Secretary position,

3

but that argument fails for the same reasons as DHS's arguments about the applicability of the FVRA's other enforcement provisions.

The Wolf Memo was thus void at the outset, and DHS has been continually violating the Supreme Court's order in *Department of Homeland Sec. v. Regents of Univ. of California*, 140 S. Ct. 1891, 1915 (2020), by not reinstating DACA as DACA existed before DHS rescinded it in September 2017. *See* State Pls.' Mem. Supp. Mot. for Partial Summ. J. (Aug. 28, 2020) ("Mem.") at 2-3. In light of DHS's clear violation of the FVRA and HSA, this Court should grant Plaintiff's motion for partial summary judgment on the claims in Plaintiffs' second amended complaint.

## ARGUMENT

Plaintiffs are entitled to vacatur of the Wolf memo because Wolf was unlawfully serving as Acting Secretary when he issued it.[4] Wolf's accession to Acting Secretary was contrary to DHS Delegation 00106—which sets forth the orders of succession for the Secretary position and other DHS positions—as the plain text of that document shows. Although DHS contends that former Secretary Nielsen's April 2019 memorandum implicitly amended Delegation 00106 in a manner that made Wolf's service lawful, that argument is belied by the plain language of the April 2019 memorandum and the Homeland Security Act.

Contrary to DHS's assertions, DHS is not entitled to any deference in its interpretation of either Secretary's Nielsen's April 2019 memorandum or Delegation 00106, *see* Defs.' Mem. Supp. Cross-Mot. for Partial Summ. J. at 12 (ECF No. 287) ("Opp."). Agencies receive

---

[4] As a threshold matter, DHS does not dispute that the Declaratory Judgment Act provides Plaintiffs with a cause of action to obtain judicial review of Wolf's ultra vires changes to DACA. *See* Mem. at 14-15.

deference when construing their own rules only in the relatively rare instances when, "after exhausting all the traditional tools of construction, the regulation is genuinely ambiguous." *Kisor v. Wilkie*, 139 S.Ct. 2400, 2414 (2019); *id.* at 2418. Here, neither Nielsen's April 2019 memorandum nor the April revision of Delegation 00106 are ambiguous. In addition, for an agency interpretation of its own rules to receive deference, "the agency's interpretation must in some way implicate its substantive expertise." *Id.* at 2417. For example, deference might be appropriate when the Transportation Security Administration is assessing security risks, but interpreting common terms in statutes and agency documents "fall[s] more naturally into a judge's bailiwick." *Id.* Here, DHS's "substantive expertise" plainly does not lie in construing succession orders.

Nor is DHS correct in arguing that the remedies of the FVRA do not apply here, or that the invalidity of the Wolf Memo can be cured through ratification by a lawfully-serving Acting Secretary. Because Wolf was purporting to perform a function or duty of the Secretary's office when he issued the Wolf Memo, the FVRA's remedies apply and ratification is unavailable.[5]

---

[5] As Plaintiffs previously noted (*see* Mem. at 15 n.9), if Plaintiffs' motion for partial summary judgment is not dispositive of this action, Plaintiffs intend to argue in a subsequent motion for partial summary judgment that the Wolf Memo is invalid under the Administrative Procedure Act (APA) and must be set aside because Wolf was exercising authority in violation of the FVRA. Contrary to Defendants' suggestion (*see* Opp. at 15), Plaintiffs agree with the *Batalla Vidal* plaintiffs that Wolf's service as Acting Secretary violates the FVRA's 210-day limit on acting officials, *see* Mem. Supp. Pls.' Mot. for Partial Summ. J., *Batalla Vidal v. Wolf*, No. 1:16-cv-04756 (E.D.N.Y.), ECF No. 311 at 17-18; *see also* Constitutional Accountability Center Amicus Br. (ECF No. 315-1), at 12-18 ("CAC Amicus Br."). And Plaintiffs reserve the right to make that argument in a subsequent motion for partial summary judgment on Plaintiffs' APA claims, if necessary.

I.      **Wolf Has Been Unlawfully Serving As Acting Secretary in Violation of the Federal Vacancies Reform Act and Homeland Security Act**

      A.      **DHS Not Dispute That Under the Plain Terms of Delegation 00106, Wolf Unlawfully Assumed the Acting Secretary Role**

DHS does not dispute that under the plain terms of Delegation 00106 as updated after Nielsen's April 2019 memorandum ("April Delegation"),[6] McAleenan unlawfully assumed the Acting Secretary position following Nielsen's April 2019 resignation. The April Delegation expressly stated that "[i]n case of the Secretary's death, *resignation*, or inability to perform functions of the Office, the orderly succession of officials is governed by Executive Order 13753, amended on December 9, 2016." Ex. 9 at § II.A (emphasis added).  E.O. 13753 provided that if the Deputy Secretary and Under Secretary for Management positions were vacant, as they were in April 2019, the Administrator of the Federal Emergency Management Agency ("FEMA") and then the Director of the Cybersecurity and Infrastructure Security Agency would be next in line to succeed—not McAleenan, who was then serving as Commissioner of Customs & Border Protection ("CBP"). *See* Ex. 6 (E.O. 13753); Mem. at 16-17 & n.10; *Casa de Maryland*, 2020 WL 5500165, at *21.

Secretary Nielsen's April revision to Delegation 00106 moved the Commissioner of CBP higher in the order of succession set forth in Annex A to Delegation 00106, which governs circumstances when "the Secretary is unavailable to act during a disaster or catastrophic emergency." Pls.' 56.1 Stmt. ¶¶ 19-20; *Casa de Maryland*, 2020 WL 5500165, at *21; Ex. 5 at 7 (U.S. Gov't Accountability Off., B-331650, DHS—*Legality of Service of Acting Secretary of Homeland Security and Service of Senior Official Performing the Duties of Deputy Secretary of*

---

[6] *See* DHS, *DHS Orders of Succession and Delegations of Authorities for Named Positions*, Delegation No. 00106, Revision No. 08.5 (Apr. 10, 2019).

*Homeland Security* (Aug. 14, 2020)) (the "GAO Report"). DHS does not and cannot dispute that

those circumstances did not apply in April 2019, because the Secretary position was vacant due

to Nielsen's resignation rather than a serving Secretary's unavailability to act, *see* Mem. at 16.

Nor does DHS dispute that if McAleenan unlawfully became Acting Secretary, he would

have had no authority to amend the agency order of succession to move Wolf's position higher in

the order of succession for Acting Secretary—rendering Wolf's November 2019 ascension to the

Acting Secretary position also unlawful, *see* Mem. at 17-18 (citing 5 U.S.C. § 3348(d)(1); *SW*

*Gen., Inc. v. N.L.R.B.*, 796 F.3d 67, 71 (D.C. Cir. 2015), *aff'd*, 137 S. Ct. 929 (2017)); *Casa de*

*Maryland, Inc.*, 2020 WL 5500165, at *20-*21; *La Clinica De La Raza v. Trump*, No. 19-cv-

4980-PJH, 2020 WL 4569462, at *13 (N.D. Cal. Aug. 7, 2020); Ex. 5 at 7 (GAO Report).

### B.    Wolf's Ascension to the Acting Secretary Role Was Also Unlawful Under the Plain Language of the April 2019 Memorandum

In trying to distance itself from the plain text of Delegation 00106, DHS advances two

arguments based on Nielsen's April 2019 memorandum, both of which have already been

squarely rejected by the U.S. District Court for the District of Maryland and the Government

Accountability Office (GAO). *First*, DHS argues that the April 2019 memorandum implicitly

amended the succession order governing circumstances where the Secretary resigns, by directing

an amendment to an "order of succession": a term that DHS claims refers only to vacancies

created when the Secretary resigns or otherwise leaves office. *Second*, DHS argues that the

Delegation is a non-binding, internal administrative document, and Nielsen's April 2019

memorandum should take precedence over it. Opp. at 7-15.

The April 2019 memorandum provided that "Annex A of DHS Orders of Succession and

Delegations of Authorities for Named Positions, Delegation No. 00106, is hereby amended by

striking the text of such Annex in its entirely and inserting" a new succession order for Annex A

that moved the CBP Commissioner's position higher in the succession order. *See* Ex. 14 at 2 (April 2019 Memorandum). It is undisputed at the time of this amendment, the succession order set forth in Annex A applied only in the event the Secretary was "unavailable to act during a disaster or catastrophic emergency." Defs.' Ex. 12 (Delegation No. 00106, Revision No. 8.4 (Feb. 15, 2019) ("February Delegation")). "In case of the Secretary's death, resignation, or inability to perform the functions of office," Delegation 00106 clearly provided that "the orderly succession of officials is governed by Executive Order 13753" (*id.*), which Nielsen did not purport to amend in her April 2019 memorandum. Nor did Nielsen's April 2019 memorandum purport to amend Delegation 00106 to make Annex A—rather than E.O. 13753—govern vacancies created by a Secretary's resignation.[7] Exactly as Nielsen ordered in her April 2019 memorandum, the April revision of Delegation 00106 contained the amended Annex A succession order and retained the existing Delegation provision stating that the succession order in E.O. 13753 governed in the case of the Secretary's resignation.[8]  Ex. 9 at II.A, Annex A (April Delegation)). DHS does not dispute that if E.O. 13753 governed the succession order, then McAleenan's assumption of the Acting Secretary role was unlawful. *See supra* at 6.[9]

---

[7] *See Casa de Maryland, Inc.*, 2020 WL 5500165, at *22 ("Nielsen's order changed Annex A, and Annex A only" and not the separate succession list that governed if Nielsen resigned); Ex. 5 at 8-9 (GAO Report, noting that the "plain language" of the April 2019 memorandum "did not change the ground for which Annex A would apply" but "only amended Annex A" to make the Commissioner of CBP "the next position in the order of succession in cases of the Secretary's unavailability to act during a disaster or catastrophic emergency").

[8] Contrary to DHS's assertion (Opp. at 13), the GAO Report block quoted the "plain language" of Nielsen's April 2019 memorandum, relying on it to conclude that Nielsen amended Annex A only and did not make Annex A applicable to a vacancy created by the Secretary's resignation. Ex. 5 at 8-9 (GAO Report). The GAO Report faulted DHS for relying on a "General Counsel's statement" characterizing the Secretary's intentions because "the plain language" of Nielsen's memorandum is clear and "speaks for itself." *Id.* at 9.

[9] Because the April 2019 memorandum and the April Delegation do not conflict, DHS is not aided by its argument (Opp. at 8, 13) that the April 2019 memorandum trumps the April

DHS's primary argument against this plain reading of the April 2019 memorandum is that the phrase "order of succession" purportedly does not describe the list of officials who are to take over when the Secretary is unavailable during a disaster or catastrophic emergency but does not vacate the office; according to DHS, that list is called a "delegation of authority." DHS contends that "order of succession" only describes the list of officials who are to take over when a Secretary resigns or otherwise leaves office, and thus when Nielsen purported to amend the "order of succession" in her April 2019 memorandum, she necessarily amended the order for who takes over when the Secretary resigns. Opp. at 8-11; *id.* at 14-15.

DHS's argument is wholly inconsistent with Nielsen's April 2019 memorandum, Delegation 00106, and the Homeland Security Act, all of which use the term "order of succession" to include the succession order for circumstances when the Secretary is absent or unavailable to act, even if the Secretary has not left office. Nielsen's April 2019 memorandum states that it is amending an "order of succession" and then sets forth the new succession order for Annex A—which only applies if the Secretary is unavailable during disasters and catastrophic emergencies—titled "Annex A. *Order for Delegation of Authority* by the Secretary of the Department of Homeland Security."  Ex. 14 at 2 (April Memorandum) (emphasis added). The April 2019 memorandum itself thus characterizes as an "order of succession" the "Order for Delegation of Authority" that applies when the Secretary is unavailable during a disaster or catastrophic emergency.

---

Delegation. In any event, DHS has admitted in other litigation that Delegation 00106 "is the only written repository that memorialized the Secretary's changes to the succession orders." *Casa de Maryland, Inc.*, 2020 WL 5500165, at *22 (rejecting DHS's argument that the April Delegation was a non-binding administrative document). Indeed, Nielsen's April 2019 memorandum treated Delegation 00106 as authoritative by purporting to amend it pursuant to her authority under 6 U.S.C. § 113(g)(2). Ex. 14 at 2 (April 2019 Memorandum).

Delegation 00106 likewise uses the term "order of succession" to apply to the succession order in effect when the Secretary is unavailable to act during a disaster or catastrophic emergency.[10] The various revisions of Delegation 00106, when discussing the succession order for sub-Secretary positions, consistently use "order of succession" to refer to the lists of officials (contained in Annexes B through AD) who would "exercise the powers and perform the functions and duties of the named position in case of death, resignation, inability to perform, absence, *or inability to act during a disaster or catastrophic emergency* until that condition ceases." *See, e.g.,* Defs.' Ex. 7 §§ II.C, II.D (December 2016 Delegation) (emphasis added); *accord* Ex. 9 §§ II.C., II.D (April Delegation).

Finally, the Homeland Security Act provision on vacancies that the April 2019 Memorandum invokes as the authority for the April 2019 amendment uses the term "order of succession" not only to describe the succession order that the Secretary may prescribe for a "vacancy in office," but also to describe the succession order that the HSA empowers the Secretary to prescribe in the event of an "absence" or "disability."[11] DHS entirely ignores this language.

---

[10] Delegation 00106 also refers to the orderly succession of officials following a DHS official's death or resignation as "a delegation of authority," contradicting DHS's suggestion (Opp. at 9) that a delegation of authority is discrete from an order of succession and applies only "when the Secretary continues to occupy her office." For example, Section II.C of Delegation 00106 "*delegate*[s] *authority* to the officials occupying the identified position in the orders listed in Annexes B through AC to exercise the powers and perform the functions and duties of the named position in case of *death*, *resignation*…." Defs.' Ex. 7 § II.C (DHS Delegation No. 00106, Revision No. 08 Dec. 15, 2016) (December 2016 Delegation) (emphasis added).

[11] See 6 U.S.C. § 113(g) (vacancies), which provides as follows (emphasis added):

(1) **Absence, Disability, Or Vacancy Of Secretary Or Deputy Secretary**. Notwithstanding chapter 33 of title 5, the Under Secretary for Management shall serve as the Acting Secretary if by reason of *absence, disability, or vacancy in office*, neither the Secretary nor Deputy Secretary is available to exercise the duties of the Office of the Secretary.   [footnote cont'd]

10

Put another way, the HSA vested Nielsen with authority to amend (i) the succession order governing in the event of a resignation *and/or* (ii) the succession order to be used if the Secretary has not resigned but is absent or unable to serve. Nielsen's April 2019 memorandum made clear that she was amending the second succession order but not the first, by expressly stating that she was revising Annex A to Delegation 00106, which unambiguously set forth the succession order only for circumstances when the Secretary is unavailable to act because of a disaster or catastrophic emergency. *See supra* at 6-7. DHS is thus incorrect to argue (Opp. at 8-11) that because Nielsen's April 2019 memorandum stated she was exercising her authority under 6 U.S.C. § 113(g)(2), the memorandum indicated she was necessarily changing the succession order for instances when the Secretary has resigned. Section 113(g)(2) also applies when the Secretary is absent or disabled. *See supra* at 11 n.11; *Casa de Maryland, Inc.*, 2020 WL 5500165, at *22 (rejecting this same argument by DHS); *see also* CAC Amicus Br. at 10 n.3.

Nor is DHS aided by its erroneous argument that HSA § 112(b)(1), and not HSA § 113(g), authorizes the Secretary to establish a succession order for circumstances when the Secretary is unavailable to act during a disaster or catastrophic emergency. *See* Opp. at 9-10, 12, 14. *First*, as noted above, the April 2019 memorandum invoked Section 113(g) and not Section 112(b)(1) as the source of authority for the April 2019 amendment, making Section 113(g) the relevant text for this Court's analysis. *See* Ex. 14, at 2 (April 2019 Memorandum). *Second*, Section 112(b)(1) is simply a general delegation statute providing that the Secretary, "except as otherwise provided by this chapter, may delegate any of the Secretary's functions to any officer, employee or organizational unit of the Department." 6 U.S.C. § 112(b)(1). Nothing in the text of

---

(2) **Further Order of Succession.** Notwithstanding chapter 33 of title 5, the Secretary may designate such other officers of the Department in further *order of succession* to serve as Acting Secretary.

Section 112(b)(1) purports to displace Section 113(g)'s more specific provisions regarding who may carry out the Secretary's duties when the Secretary is unavailable to do so. Nor may such a displacement be judicially inferred. A "general [statutory] provision should not be applied when doing so would undermine limitations created by a more specific provision." *Cook v. New York State Div. of Parole*, 321 F.3d 274, 279 n.4 (2d Cir. 2003) (quotation marks omitted); *see also RadLax Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (discussing the "general/specific canon" of statutory interpretation).

DHS's reading of Section 112(b)(1) would vest the Secretary with the authority to appoint *any* "officer" or "employee" as Acting Secretary in the case of the Secretary's "absence" or "disability," unlawfully circumventing the specific succession order that Section 113(g) sets forth for such circumstances. *See RadLax Gateway Hotel, LLC*, 566 U.S. at 645; *Cook*, 321 F.3d at 279 n.4. Rejecting DHS's reading would not render Section 112(b)(1) superfluous. As DHS itself argues in this case, Section 112(b)(1) is part of a vesting-and-delegation statute that authorizes the Secretary to delegate particular functions she possesses to other DHS officers *while she is serving, and continues to serve*, as Secretary. Opp. at 9; *see also L-M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 31 & n.11 (D.D.C. 2020) (observing that "similar vesting and delegation statutes can be found throughout the Executive Branch").

When criticizing GAO's conclusion that Wolf was unlawfully serving as Acting Secretary, DHS incorrectly suggests that a February 2019 amendment made by Secretary Nielsen to Delegation 00106 adopted only the succession order for the position whose succession she amended (the Under Secretary for the Office of Strategy, Policy, and Plans) and rendered the remaining succession orders in Delegation 00106 inoperative, including the succession order for the Secretary's death, resignation or inability to perform the functions of Office. *See* Opp. at 13-

12

14. Though Delegation 00106 was originally enacted by a prior Secretary, Nielsen adopted Delegation 00106 in toto and consistently treated it as authoritative, amending the Delegation four different times during her tenure as Secretary. Throughout her amendments, Nielsen consistently retained the provision of Delegation 00106 stating that the succession order set forth in E.O. 13573 governed when the Secretary resigns, and so it was that succession order that governed when Nielsen resigned. *See Casa de Maryland*, 2020 WL 5500165, at *20 (finding that throughout her amendments, Nielsen "left in place the framework set by Secretary Johnson which had provided succession orders applicable to two different scenarios").

More specifically, Delegation 00106 was originally enacted and signed by former Secretary Jeh Johnson in December 2016 under the authority vested in him by the FVRA and HSA. *See* Defs. Ex. 7 (December 2016 Delegation); Mem. at 20. That December 2016 Delegation contained the same two succession orders for the Secretary position retained in February 2019 and April 2019 revisions to Delegation 00106 (Revisions 08.4 and 08.5, respectively): in the case of the Secretary's death, resignation, or inability to perform the functions of Office, the succession order was governed by E.O. 137573 (December 2016 Delegation § II.A) and in the event the Secretary is unavailable to act during a disaster or catastrophic emergency, the succession order in Annex A to the Delegation applied (December 2016 Delegation § II.B). Defs. Ex. 7 at 1, §§ II.A, II.B. During her tenure (or purported tenure) as Secretary from December 2017 through April 2018, Nielsen amended Delegation 00106 at least four different times. In May 2018, she revised Annex G to Delegation 00106 (Revision 08.2 to Delegation 00106), which sets the succession order for the Counting Weapons of Mass Destruction Office. *See* Ex. 9 at 4 (April Delegation) (noting Revision 08.3's issue date at May 21, 2018). In October 2018, Nielsen revised Annex Z to Delegation 00106, which sets the

succession order for the Transportation Security Administration (Revision 08.3 to Delegation 00106). *See* Ex. 9 at 4 (April Delegation) (noting Revision 08.3's issue date as October 23, 2018). In February 2019, she revised Annex U to Delegation 00106, which sets the succession order for the Office of Strategy, Policy, and Plans (Revision 08.4 to Delegation 00106). Defs.' Exs. 9 (Secretary's Memorandum amending Annex U to Delegation 00106), 12 (Revision 08.4 to Delegation 00106). And, lastly, in April 2019, Nielsen amended Annex A to Delegation 00106, which sets the succession order for the Secretary position when the Secretary is unavailable because of a disaster or catastrophic emergency. Exs. 9 (Revision 08.5 to Delegation 00106, or "April Delegation"), Ex. 14 (April 2019 Memorandum). *Supra* at 6-7; *see also* Mem. at 10 (chart depicting different succession orders for Secretary following Feb. 2019, April 2019 and Nov. 2019 revisions to Delegation 00106).

Notably, in making these various amendments, Nielsen consistently retained the two separate orders of succession for Secretary contained in Sections II.A and II.B of Delegation 00106: E.O. 13753 governed the succession order if the Secretary resigned (Section II.A.) and Annex A to Delegation 00106 governed the succession order if the Secretary was unavailable to act during a disaster or catastrophic emergency (Section II.B). *See, e.g.,* Ex. 9 at II.A, II.B. (April Delegation); *Casa de Maryland*, 2020 WL 5500165, at *20. As noted *supra* at 9 n.9, Nielsen's April 2019 memorandum treated Delegation 00106 as authoritative, and purported to revise it only by amending Annex A; she retained Section II.A in its entirety. *See* Ex. 14, at 2 (April 2019 Memorandum) ("Annex A of DHS Order of Succession and Delegations of Authorities for Named Positions, Delegation No. 00106, is hereby amended by . . ."). The GAO Report was thus correct in declining to infer that Nielsen amended Section II.A by implication through the April

2019 memorandum's use of the phrase "orders of succession," or its invocation of 6 U.S.C § 113(g).[12] *See* Ex. 5 at 8-9 (GAO Report); *supra* at 9-11; *contra* Opp. at 14.

As DHS does not dispute, former Secretary McAleenan's November 2019 revision to Delegation 00106 ("November Delegation") would have been superfluous if Nielsen had already made Annex A govern the succession order in the event of the Secretary's resignation. *See* Mem. at 20-21; *see also La Clinica De La Raza*, 2020 WL 4569462, at *14. Specifically, McAleenan's November Delegation purports to revise Section II.A of Nielsen's April Delegation to state that "[i]n case of the Secretary's death, resignation, or inability to perform the functions of the Office, the order of succession is governed by Annex A," rather than E.O. 13753. Pls. 56.1 Stmt. ¶ 22. This is the exact same change that DHS insists Nielsen made in April 2019. Perhaps for this reason, DHS entirely ignores the November Delegation, never mentioning it in DHS's memorandum of law.

DHS separately argues that Nielsen's conduct after she issued the April 2019 Memorandum shows that she intended McAleenan to assume the Secretary position and thus intended the succession order set forth in the April 2019 Memorandum to apply to all vacancies, including vacancies following the Secretary's resignation. Opp. at 12 (citing Nielsen's farewell

---

[12] Contrary to DHS's arguments (Opp. at 9-10), this analysis does not change simply because DHS did not yet have the statutory power to establish a further line of succession for the Secretary's office when President Obama adopted E.O. 13753 pursuant to the FVRA's default provisions (*see* CAC Amicus Br. at 7 n.2), and when former Secretary Jeh Johnson issued Revision 8 to Delegation 00106 in December 2016. DHS had the relevant statutory power when Secretary Nielsen assumed office. *See* Opp. at 9. And Nielsen adopted Delegation 00106— including Section II.A (which referred to E.O. 13753 as providing the succession order if the Secretary resigns)—treating it as authoritative, when she exercised her 6 U.S.C. § 113(g) authority to amend (or purported to amend) Delegation 00106 four different times in her tenure as Secretary. See *supra* at 13-14; CAC Amicus Br. at 7 n.2; *Casa de Maryland, Inc.*, 2020 WL 5500165, at *20, *22 (DHS concedes Delegation 00106 is "the only written repository that memorialized the Secretary's changes to the succession orders.").

email and press release, and a newspaper article reporting on Nielsen swearing in McAleenan).

But Nielsen's behavior cannot defeat the plain language of the April 2019 Memorandum and

April Delegation, which are both clear and consonant with one another. See *supra* at 6-9;

*N.L.R.B. v. SW General, Inc.*, 137 S.Ct. 929, 942 (2017); Ex. 5 at 9 (GAO Report) (rejecting

DHS's argument); *Casa de Maryland, Inc.*, 2020 WL 5500165, at *23 ("Delegation 00106 is

plain, and the Government provides no support . . . to look beyond the Order itself.").

### C.    Nielsen Unlawfully Made Her April 2019 Amendment After She Had Resigned as DHS Secretary, Rendering the Amendment Void

In its memorandum of law, DHS does not contest, let alone address, Plaintiffs' alternative

argument that even if Nielsen had amended Delegation 00106 in April 2019 to make McAleenan

her successor in the event of her resignation, the amendment itself was ultra vires and therefore

void because she indisputably made it after she resigned as Secretary on April 7, 2019. *See* Mem.

at 21-22; Ex. 7 (Secretary Kirstjen Nielsen, Resignation Letter to the President Apr. 7, 2019) ("I

hereby resign from the position of Secretary of the U.S. Department of Homeland Security

(DHS), effective April 7th 2019."). That Nielsen was acting ultra vires when she made her April

2019 amendment to the succession order in an effort to move up McAleenan's position provides

an alternative and independent basis for finding McAleenan's (and then Wolf's) assumption of

the Acting Secretary role invalid. Mem. at 21-22.

DHS's response to Plaintiffs' 56.1 statement disputes that Secretary Nielsen resigned on

April 7, 2019, asserting instead that she resigned on April 10, 2019. Defs.' Responses to Pls.'

Local Civil Rule 56.1 Stmt. ¶ 16 (ECF No. 288). But to raise a responsive argument at the

summary judgment stage, a party must include it in the party's memorandum of law in

opposition to summary judgment. *See First Capital Asset Mgmt., Inc. v. Brickelbush, Inc.*, 218 F.

Supp.2d 369, 392-93 (S.D.N.Y. 2002). A point not raised in a memorandum of law is waived

even if raised in a Rule 56.1 statement. *Grant & Eisenhofer, P.A. v. Bernstein Lebhard, LLP*,
2016 WL 4098616, at *4 n.3 (S.D.N.Y. July 28, 2017). In any event, the only evidence DHS
cites in support of its claim that Nielsen actually resigned on April 10 is an FVRA form
submitted to Congress by DHS's Associate General Counsel for General Law, who reported that
the Secretary's position became vacant on April 10, 2019. *See id.*; Defs.' Ex. 4 (FVRA
notification form and cover letter, dated April 11, 2019). Entirely ignoring the date on Nielsen's
resignation letter, DHS cites no authority in support of its unspoken premise that an FVRA
notification form drafted by a third party after the relevant event determines the Secretary's
resignation date—as opposed to the effective date of the Secretary's resignation letter, drafted
contemporaneously by the Secretary herself. Indeed, DHS's unspoken premise would allow
agencies—through manipulation of the resignation dates of Senate-confirmed officials—to
circumvent the succession orders and time-limits set forth in the FVRA, agency organic statutes,
and associated agency orders. DHS seemingly engaged in just such manipulation here. Based on
Nielsen's resignation date of April 7, 2019, Under Secretary for Management Claire Grady
should have become Acting Secretary, because the Deputy Secretary position was vacant. *See*
Mem. at 21. But DHS instead treated April 10, 2019 as Nielsen's resignation date, to ensure that
McAleenan would assume the Acting Secretary role. *See* Mem. at 8.

## II.     The Wolf Memo is Void and the Changes Effected By It Must Be Set Aside

### A.     The Changes to DACA That Wolf Effected Through the Wolf Memo Were Void At the Outset

Because Wolf has been unlawfully serving as Acting Secretary, the Wolf Memo's
changes to DACA are wholly invalid under the plain terms of the FVRA. *See* Mem. at 22-24.
The FVRA provides that "[a]n action taken by any person who is not acting under section 3345,
3346, or 3347 . . . . in the performance of any function or duty of a vacant office . . . shall have

no force or effect." 5 U.S.C. § 3348(d)(1). DHS admits that if Wolf was unlawfully serving as

Acting Secretary, and he was performing a "function or duty" of the Secretary's office by issuing

the Wolf Memo, Section 3348(d)(1) of the FVRA would render the Wolf Memo void ab initio.

Opp. at 24; *see* Mem. at 22-23; *SW Gen., Inc.*, 796 F.3d at 71 ("[T]he FVRA renders actions

taken by persons serving in violation of the Act void ab initio."); CAC Amicus Br. at 18.

DHS incorrectly asserts that when Wolf effected changes to DACA through the Wolf

Memo, he was not performing a "function or duty" as Acting Secretary under 5 U.S.C.

§ 3348(d)(1).[13] Opp. at 24-25 & n.22. The FVRA defines a "function or duty" as including "any

function or duty of the applicable office that is established by statute and is required by statute to

be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2)(A). That

provision simply "require[s] that the statute or regulation at issue provide that the function or

duty at issue is assigned to one particular office." *L.M.-M.*, 442 F. Supp. 3d at 31.

When Wolf issued the Wolf Memo, he purported to change DHS-wide policies regarding

deferred action, and ordered the heads of three different DHS agencies (U.S. Immigrations and

Customs Enforcement, CBP, and U.S. Citizenship and Immigration Services) to implement the

changes to DACA that he ordered.[14] Those functions are "required by statute to be performed by

_____

[13] While DHS contests whether the FVRA's enforcement provisions apply here and render the
Wolf Memo voidable under the FVRA, DHS admits that "if Acting Secretary Wolf was not
lawfully serving, then the Wolf Memorandum could be set aside under the APA." Opp. at 25; *see
also L.M.-M.*, 442 F. Supp. 3d at 35-36 (finding that directives issued by DHS officer serving in
violation of FVRA could be voided under either FVRA or APA). Thus, if this Court were to find
that the Wolf Memo was unlawfully issued but was not void under the FVRA's enforcement
provisions, Plaintiffs could simply obtain relief in a subsequent motion for partial summary
judgment on APA grounds.

[14] *See* Ex. 1 (Janet Napolitano, DHS, *Exercising Prosecutorial Discretion with Respect to
Individuals Who Came to the United States As Children* (June 15, 2012)); Ex. 3 (Wolf Memo);
Ex. 4 (Joseph Edlow, *Implementing Acting Secretary Chad Wolf's July 28, 2020, Memorandum,
"Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with
Respect to Individuals Who Came to the United States as Children'"* (Aug. 21, 2020)).

the [DHS Secretary] (and only that officer)." 5 U.S.C. 3348(a)(2)(A). Indeed, the Secretary alone

"is the head of the Department and shall have direction, authority, and control over it." 6 U.S.C.

§ 112(a)(2). So too the Secretary alone is "[r]esponsible for . . . [e]stablishing national

immigration enforcement policies and priorities," *id.* § 202(5), and is "charged with the

administration and enforcement of . . . all . . . laws relating to the immigration and naturalization

of aliens," 8 U.S.C. § 1103(a)(1). In accord with Secretary's exclusive authority in these

domains, former Secretary Janet Napolitano established the DACA program in a memorandum

"setting forth how" DHS "should enforce the Nation's immigration laws." Pls. 56.1 Stmt. ¶ 1

(ECF No. 274). Wolf issued the Wolf Memo pursuant to that same exclusive statutory authority.

Ex. 3 at 4 (Wolf Memo) (exercising authority under 8 U.S.C. § 1103(a)(1) and 6 U.S.C. § 202(b)

to "mak[e] certain immediate changes to the DACA policy"). *See* CAC Amicus Br. at 18-19.

DHS argues (Opp. at 25) that if a person serving as Secretary or Acting Secretary could

have delegated the authority to modify DACA to other DHS officials through DHS's general

vesting-and-delegation statute and regulation[15]—an erroneous premise in any event, see *infra*

n.17—then altering DACA was not "required by statute to be performed by the [Secretary or

Acting Secretary] (and only the [Secretary or Acting Secretary])," 5 U.S.C § 3348(a)(2)(A))(ii).

That argument is inconsistent with the text, structure, and purpose of the FVRA. Because the

Secretary can delegate virtually any of her functions to any other DHS officer or employee,

under DHS's reading, there is almost no function that is assigned "only" to the Secretary under

5 U.S.C. § 3348(a)(2)(A)(ii). Conversely, under the vesting part of DHS's organic statute, "[a]ll

functions of all officers, employees, and organizational units of the Department are vested in the

Secretary." 6 U.S.C § 112(a)(3). The upshot is that under DHS's reading of Section 3348, almost

---

[15] *See* 6 U.S.C. § 112(b)(1)); 8 C.F.R. § 2.1.

no action executed by a DHS official can ever be voided under the FVRA. Indeed, the premise of

DHS's argument, which it has argued expressly in other litigation, is that the term "function or

duty" in Section 3348 "includes only 'non-delegable duties—that is, only those duties . . . that

may not be reassigned." *L.M.-M.*, 442 F. Supp. 3d at 31 (quoting brief). But "[b]ecause similar

vesting and delegation statutes can be found throughout the Executive Branch, the logic of this

position would cover all (or almost all) departments under the FVRA," effectively removing any

means for enforcing the FVRA in most federal agencies.[16] *Id.* at 31. DHS's reading would

wholly undermine Congress's intent in passing the FVRA, given that "[i]t was the pervasive use

of [] vesting-and-delegation statutes, along with the lack of an effective enforcement process" for

enforcing the plain terms of the prior Vacancies Act, "that convinced Congress of the need to

enact the FVRA." *Id.* at 34 (quotation marks omitted).

Apart from undercutting the purpose of the FVRA, DHS's sweeping reading of "only that

officer" in Section 3348 does not cohere with the FVRA's text and structure. Under the FVRA's

vacant-office provision (part of the FVRA's enforcement provisions), "[u]nless an officer or

employee is performing the functions and duties of the vacant office in accordance with the

FVRA's appointment requirements, time limitations, and exclusivity provision, the office shall

remain vacant," and, in the case of a subcabinet office, "only the heads of such Executive agency

---

[16] The *L.M.-M.* court provided the following examples: 10 U.S.C. § 113(d) (Dep't of Defense);
20 U.S.C. §§ 3441, 3347, 3472 (Dep't of Education);  22 U.S.C. § 2651a(a) (Dep't of State); 28
U.S.C. § 510 (Dep't of Justice); 31 U.S.C. § 321(b), (c) (Dep't of the Treasury); 38 U.S.C.
§§ 303, 512 (Dep't of Veterans Affairs); 42 U.S.C. §§ 3534(a), 3535(d) (Dep't of Housing and
Urban Development); 42 U.S.C. §§ 7151, 7152, 7252 (Dep't of Energy); 43 U.S.C. § 1457c
(Dep't of the Interior); 49 U.S.C. § 322(b) (Dep't of Transportation); Reorganization Plan No. 5
of 1950, § 2 (Dep't of Commerce); Reorganization Plan No. 6 of 1950, § 2 (Dep't of Labor);
Reorganization Plan No. 2 of 1953, § 4 (Dep't of Agriculture); Reorganization Plan No. 3 of
1966, § 2 (Dep't of Health and Human Services). *L.M.-M.*, 442 F. Supp. 3d at 31 n.11.

may perform any function or duty of such office." *Id.* (citing 5 U.S.C. §§ 3345, 3346, 3347, 3348(b)). For example, if the CBP Commissioner were serving in violation of the FVRA's appointment requirements, under the FVRA's enforcement provisions, the Secretary (and only the Secretary) "may perform any function or duty of" the CBP Commissioner in his place. *See* 5 U.S.C. § 3348(b)(2).  "[T]his fallback provision presupposes that the head of the department will have authority to discharge the functions and duties of the vacant subcabinet office." *L.M.-M.*, 442 F. Supp. 3d at 32. But under DHS's sweeping view of "functions or duties," "the fallback would be rendered meaningless" because it "would apply only to cases, if any, where the relevant subcabinet office is the sole office permitted to perform the 'functions or duties' at issue *and* where the department head's vesting-and-delegation authority is insufficient to overcome that exclusive assignment of authority." *Id.* In addition, the fallback provision presupposes that the entirety of the subcabinet officer's functions and duties could be delegated to the cabinet head; contrary to DHS's view, then, the FVRA's enforcement provisions can apply even when an officer's functions or duties can in theory be entirely delegated to another officer.

In addition, "[t]o avoid circumvention of the vacant-office provision," Congress "added a 180-day lookback to the definition of regulatorily assigned functions or duties." *Id.* at 33 (citing 5 U.S.C. § 3348(a)(2)(B)(ii)). That provision "defines the functions or duties of a vacant office to include those that were established by regulation and are 'in effect at any time during the 180-day period preceding the date on which the vacancy occurs." *Id.* (citing 5 U.S.C. § 3348(a)(2)(B)(ii)). The FVRA's lookback provision thus supports the view that courts should determine what was *actually* delegated in the 180-day period preceding the vacancy rather than what was merely delegable *in theory*. Put another way, it is immaterial that the Secretary could in theory issue a regulation delegating a particular function to another DHS official under the

21

general vesting-and-delegation statute; the relevant question is whether the Secretary actually delegated the function in the lookback period. As the district court in *L.M.-M.* observed, "the lookback provision contemplates that agencies may and will use their organic authorities to issue rules reassigning duties and that duties subject to that authority may, at least at times, fall within the statutory definition of 'functions or duties.'" *Id.*

Accordingly, the lookback provision further undermines DHS's argument that the phrase "function or duty" includes only duties that are assigned to a single official and may not even in theory be reassigned. Reading the lookback provision in tandem with the "only that officer" provision, "what matters . . . is whether the rules—*i.e.,* the delegations and assignments—as they existed 'at any time during the 180-day period preceding the date on which the vacancy occurs,' assigned the functions or duties to the vacant office and "only [to] that office." *Id.* (quoting 5 U.S.C. § 3348(a)(2)(B)(ii); *id* § 3348(a)(2)). If so, the statutory definition of "function or duty" is satisfied and actions taken by officials unlawfully serving in violation of the FVRA shall have "no force or effect." [17] 5 U.S.C. § 3348; *L.M.-M.*, 442 F. Supp. 3d at 33. Here, Wolf and Wolf alone invoked the Secretary's exclusive statutory to effect changes to DACA in the Wolf Memo and "direct[ed] DHS personnel to take all appropriate actions" to implement those changes. Ex. 3 at 1 (Wolf Memo). Because Wolf "perform[ed] a function or duty of a vacant office" while unlawfully serving as Acting Secretary, the changes he effected "shall have no force or effect."[18] 5 U.S.C. § 3348(d)(1).

---

[17] Even if DHS's sweeping definition of "function or duty" were correct, DHS's organic statute does not allow delegation of the Secretary's leadership responsibilities to lower-level staff. *See* CAC Amicus Br. at 20 n.6.

[18] The FVRA's prohibition on ratification of actions that "shall have no force or effect," 5 U.S.C. § 3348(d), on its face applies when an acting officer unlawfully serves pursuant to an agency-specific statute. Section 3347 of the FVRA authorizes an acting official's service under an

**B.    The FVRA Prohibits Wolf From Ratifying the Wolf Memo and His Ratification Is Thus Invalid**

The FVRA provides that "[a]n action that has no force or effect under" § 3348(d)(1) "may not be ratified." 5 U.S.C. § 3348(d)(2). In other words, official actions that are void under the FVRA cannot be subsequently saved through ratification. DHS incorrectly argues that "[t]he prohibition on ratification is applicable . . . only to the nondelegable functions of the office." Opp. at 25 (citing 5 U.S.C. § 3348(a)). But, as explained above (*supra* at 18-23), DHS is incorrect that § 3348(a)'s statutory definition of "function or duty" includes only nondelegable functions.

Even if the FVRA permitted ratification, Wolf could not ratify his prior actions because he never lawfully assumed the Secretary position. In his Ratification Memo, *see* Notice dated September 18, 2020 (ECF No. 290), Wolf asserts that after the President recently nominated Wolf as Secretary of Homeland Security, the President theoretically could have appointed Peter Gaynor—the Administrator of FEMA—as Acting Secretary of Homeland Security, pursuant to one of the FVRA's default appointment provisions (*see* Mem. at 5-6), 5 U.S.C. § 3345(a)(2). That provision permits the President to appoint a Senate-confirmed agency official "to perform the duties of the vacant office temporarily in an acting capacity subject to the time limitations of section 3346." 5 U.S.C. § 3345(a)(2). Ratification Memo at 2. The Ratification Memo further

---

agency-specific statute as an alternative to the FVRA's default framework. *See* Mem. at 5. And the FVRA states that "[a]n action taken by any person who is not acting under section 3345, 3346, or *3347* . . . shall have no force or effect." 5 U.S.C. § 3348(d)(1) (emphasis added). Wolf was purporting to act under Section 3347. The district court in *Casa de Maryland* erred in suggesting that the FVRA's enforcement provision does not apply to Wolf because he was serving under DHS's agency-specific statute. *See* 2020 WL 5500165, at *17. In any event, DHS did not raise this argument here, and may not raise it for the first time in its reply. *See, e.g., United States v. Yousef*, 327 F.3d 56, 116 (2d Cir. 2003); *Novick v. Bankers Life Ins. Co. of New York*, 450 F. Supp. 2d 196, 198 (E.D.N.Y. 2006).

asserts that on September 10, 2020, Gaynor issued an order[19] exercising his theoretical "authority of the position of Acting Secretary" to reissue McAleenan's November Delegation, which purportedly "removes any doubt that" Wolf is lawfully "serving as the Acting Secretary." *Id.* The Ratification Memo purports to ratify all of Wolf's prior official actions in the event his earlier service as Acting Secretary was unlawful. *Id.* at 3.

Setting aside the question of whether the FVRA even permitted the President to appoint Gaynor as Acting Secretary on September 10, 2020, the President indisputably *did not do so*. The Ratification Memo does not point to any authority even suggesting that the President exercised his purported FVRA authority to appoint Gaynor as Acting Secretary. As a result, Gaynor had no authority to amend or re-issue the orders of succession contained in Delegation 00106, a power that is solely reserved for "the Secretary." 6 U.S.C. § 113(g)(2). Gaynor thus could not lawfully reissue McAleenan's November Delegation to purportedly render Wolf's service as Acting Secretary lawful. And because Wolf was still unlawfully serving as Acting Secretary when he issued the Ratification Memo, it "shall have no force or effect." 5 U.S.C. § 3348(d)(1).

## C.   This Court Should Vacate the Changes Imposed by the Wolf Memo

While DHS asserts that the relief Plaintiffs seek is overbroad, DHS admits that the "traditional remedy" for an FVRA violation is "vacatur," which is exactly what Plaintiffs seek here. *See* Opp. at 24; Mem. at 23. And, as the Second Circuit recently observed, vacatur has nationwide effect; it does not just mean that the application of rules "to the individual petitioners is prescribed." *New York v. U.S. Dep't of Homeland Security*, 969 F.3d 42, 87 (2d Cir. 2020) (quoting *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)). The district court in *L.M.-M* recently applied this principle following a grant of partial

---

[19] DHS has not filed this order, and Plaintiffs have not seen it.

summary judgment to set aside directives issued by a purported Director of USCIS who was serving unlawfully in violation of FVRA.  *L.M.-M*, 442 F. Supp.3d at 36-37.

Because Plaintiffs are moving for partial summary judgment, DHS misplaces its reliance on principles pertaining to whether nationwide relief should be afforded when district courts grant a preliminary injunction. *See* Opp. at 23. The relief here is final, not preliminary, and the principle that an "injunction should be no broader than necessary to cure the effects of the harm caused by the violation" does not apply given the summary judgment posture. *See Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 72 (2d Cir. 2016). This Court should vacate the changes Wolf made to the DACA program through his issuance of the Wolf Memo. *See L.M.-M*, 442 F. Supp.3d at 36-37.

## CONCLUSION

For the reasons set forth above, Plaintiff States respectfully request that the Court grant this motion for partial summary judgment, and vacate the changes to DACA effected by the Wolf Memo.

DATED:  September 25, 2020                        Respectfully submitted,

                                                 LETITIA JAMES
                                                 *Attorney General of the State of New York*

Anisha S. Dasgupta                               By: */s/ Matthew Colangelo*
  *Deputy Solicitor General*                     Matthew Colangelo
Joshua M. Parker                                   *Chief Counsel for Federal Initiatives*
  *Assistant Solicitor General*                  Sania Khan, *Assistant Attorney General*
                                                 Joseph Wardenski, *Senior Trial Counsel*
*Of Counsel*                                     Office of the New York State Attorney General
                                                 28 Liberty Street
                                                 New York, NY 10005
                                                 Phone: (212) 416-6057
                                                 Matthew.Colangelo@ag.ny.gov

                                                 *Attorneys for the Plaintiffs*