# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

MARTÍN JONATHAN BATALLA
VIDAL, et al.,

                    Plaintiffs,

        v.                            16-CV-4756 (NGG) (VMS)

CHAD WOLF, et al.,

                    Defendants.

---

STATE OF NEW YORK, et al.,

                    Plaintiffs,

        v.                            17-CV-5228 (NGG) (VMS)

DONALD J. TRUMP, et al.,

                    Defendants.

**PLAINTIFFS' JOINT MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ....................................................................................................... 1

BACKGROUND ......................................................................................................... 2

ARGUMENT ............................................................................................................. 5

I.    Summary judgment is warranted on Plaintiffs' claims for relief under the
Administrative Procedure Act ............................................................................ 5

    A.    Standard of review. ............................................................................... 5

    B.    Because Mr. Wolf was not lawfully serving as Acting Secretary of Homeland
Security, the Wolf Memorandum is invalid under the APA. ................................ 6

    C.    Defendants' renewed efforts to cure Mr. Wolf's unlawful appointment to the
position of Acting Secretary fail for the same reasons as before. ........................... 7

        1.    The November 14 Succession Order and the November 16
ratification memoranda. ............................................................................ 7

        2.    DHS's latest maneuvers do not make Defendant Wolf the lawful
Acting Secretary or permit him to ratify his earlier DACA order. ............. 9

II.    To remedy Defendants' APA violation, the Court should vacate the Wolf
Memorandum and enter permanent injunctive and declaratory relief. ............................ 11

    A.    Vacatur is the appropriate remedy under the APA when an agency acts
contrary to law. ...................................................................................... 11

    B.    Permanent injunctive relief is also warranted here. ............................................. 13

    C.    Declaratory relief is appropriate to remedy Defendants' violations. ..................... 16

    D.    The Court should order the following injunctive and declaratory relief to
remedy Defendants' violations of the law and effectuate the Court's Order. ...... 17

        1.    The Court should issue declaratory and injunctive relief to undo
the Wolf Memorandum. ............................................................................ 17

        2.    Class members should receive notice of the Court's ruling and
Defendants' plans to comply. .................................................................... 19

        3.    The Court should also require Defendants to report on their
compliance with the Court's Orders. ......................................................... 21

CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Air India v. Brien*,
No. 00-CV-1707, 2002 WL 34923740 (E.D.N.Y. Feb. 14, 2002) .........................................11

*Allina Health Servs. v. Sebelius*,
746 F.3d 1102 (D.C. Cir. 2014) ..........................................................................................11

*Barnett v. Bowen*,
794 F.2d 17 (2d Cir. 1986) ..................................................................................................21

*Batalla Vidal v. Nielsen*,
279 F. Supp. 3d 401 (E.D.N.Y. 2018) .............................................................................2, 14

*Bullock v. U.S. Bureau of Land Mgmt.*,
No. 20-CV-62 (BMM), 2020 WL 5746836 (D. Mont. Sept. 25, 2020) ...........................7, 17

*Casa de Maryland, Inc. v. Wolf*,
No. 20-CV-2118 (PX), 2020 WL 5500165 (D. Md. Sept. 11, 2020) .....................................7

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979)..............................................................................................................11

*City of Arlington v. FCC*,
569 U.S. 290 (2013)................................................................................................................6

*Department of Homeland Sec. v. Regents of Univ. of Cal.*,
140 S. Ct. 1891 (2020)...........................................................................................3, 12, 15, 21

*Dow Jones & Co. v. Harrods, Ltd.*,
346 F.3d 357 (2d Cir. 2003)..................................................................................................16

*Guertin v. United States*,
743 F.3d 382 (2d Cir. 2014)..................................................................................................11

*Harmon v. Thornburgh*,
878 F.2d 484 (D.C. Cir. 1989) ..............................................................................................12

*Immigrant Legal Res. Ctr. v. Wolf*,
No. 20-CV-5883 (JSW), 2020 WL 5798269 (N.D. Cal. Sept. 29, 2020)................................7

*L.M.-M. v. Cuccinelli*,
442 F. Supp. 3d 1 (D.D.C. 2020) ...........................................................................................7

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ...................................................................................14

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) .................................................................................13, 15

*N.Y. Progress & Prot. PAC v. Walsh*,
    733 F.3d 483 (2d Cir. 2013) ........................................................................ 14-15

*NAACP v. Trump*,
    315 F. Supp. 3d 457 (D.D.C. 2018) ...............................................................3, 12

*Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*,
    894 F.3d 95 (2d Cir. 2018)...........................................................................6

*New York v. Trump*,
    No. 20-CV-5770 (RCW, PWH, JMF), 2020 WL 5422959 (S.D.N.Y. Sept. 10,
    2020) (three-judge court) ..................................................................... 14, 16-17

*New York v. U.S. Dep't of Commerce*,
    351 F. Supp. 3d 502 (S.D.N.Y.), aff'd, 139 S. Ct. 2551 (2019) ..................... passim

*New York v. U.S. Dep't of Health & Human Servs.*,
    414 F. Supp. 3d 475 (S.D.N.Y. 2019).........................................................6, 11-12

*Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating Dist.*,
    673 F.3d 84 (2d Cir. 2012)...........................................................................17

*Nw. Envtl. Advocates v. U.S. E.P.A.*,
    537 F.3d 1006 (9th Cir. 2008) .....................................................................5

*Onosamba-Ohindo v. Barr*,
    No. 20-CV-290 (EAW), 2020 WL 5226495 (W.D.N.Y. Sept. 2, 2020) ..............20

*Oppenheimer Fund v. Sanders*,
    437 U.S. 340 (1978)....................................................................................21

*Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Human Servs.*,
    337 F. Supp. 3d 308 (S.D.N.Y. 2018)..................................................... 13-14

*Pub. Citizen Health Research Grp. v. Brock*,
    823 F.2d 626 (D.C. Cir. 1987).....................................................................2

*Pursuing America's Greatness v. FEC*,
    831 F.3d 500 (D.C. Cir. 2016) ....................................................................13

*Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
    279 F. Supp. 3d 1011 (N.D. Cal. 2018) ......................................................21

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010)............................................................................14

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)...................................................................................16

*Wong Yang Sung v. McGrath*,
    339 U.S. 33 (1950)........................................................................................6

**FEDERAL STATUTES**

5 U.S.C.
    § 702........................................................................................................11
    § 706(2)....................................................................................................11
    § 706(2)(A).......................................................................................... 1, 5-7
    § 706(2)(C).......................................................................................... 1, 5-7

8 U.S.C.
    § 1182(a)(9)...............................................................................................19
    § 1182(a)(9)(B)(i)(I)..................................................................................19
    § 1182(a)(9)(B)(i)(II).................................................................................19
    § 1182(a)(9)(B)(iii)....................................................................................18
    § 1182(d)(5)...............................................................................................18

28 U.S.C.
    § 2201........................................................................................................19
    § 2201(a)....................................................................................................16

**RULES**

Fed. R. Civ. P. 56(a)...........................................................................................6

Fed. R. Civ. P. 57.............................................................................................16

**MISCELLANEOUS AUTHORITIES**

Federal Defs.' Resp. to Pls.' Mot. for Summ. J., *Texas v. United States*, No.
    18:cv-00068, Dkt. 501 (S.D. Tex. filed Nov. 6, 2020) ............................16

Federal Defs.' Resp. to Def.-Intervenors' Cross Mot. for Summ. J., *Texas v.
    United States*, No. 18-cv-00068, Dkt. 527 (S.D. Tex. filed Nov. 20, 2020)............16

3 Newberg on Class Actions § 8:33 (5th ed. 2014 & Supp. 2020)...............................20

U.S. Citizenship & Immigration Servs., Frequently Asked Questions, DHS
    DACA FAQs, https://www.uscis.gov/archive/frequently-asked-questions (last
    accessed Nov. 24, 2020) ............................................................................19

## INTRODUCTION

The Supreme Court held five months ago that Defendants' 2017 effort to rescind Deferred Action for Childhood Arrivals ("DACA") was unlawful.  In response, the Department of Homeland Security ("DHS") did *not* restore DACA as it existed before the September 2017 rescission, and did *not* recommence processing DACA applications.  Instead, DHS held applications for weeks before issuing a new memorandum on July 28, 2020, which directed the agency to make critical and retroactive changes to the DACA program while Defendant Chad Wolf purportedly continued considering whether to fully rescind DACA.  That memorandum affected the lives of over one million young individuals, their families, and their communities.

On motions for partial summary judgment by Plaintiffs in these related cases, this Court held that the July 28 memorandum (the "Wolf Memorandum") was unlawful because Mr. Wolf was not lawfully serving as Acting Secretary of Homeland Security under the Homeland Security Act ("HSA") when he issued the memorandum, and because Mr. Wolf lacks authority to ratify any of his former actions after the fact.  Mem. & Order 20, 31 (Dkt. 342).[1]  In light of that holding, Plaintiffs now seek partial summary judgment on their Administrative Procedure Act ("APA") claims that Defendants' issuance of the Wolf Memorandum exceeded Defendants' statutory authority and was otherwise not in accordance with law.  5 U.S.C. §§ 706(2)(A), (C). For the reasons that follow, the Court should grant Plaintiffs' motion for partial summary judgment and hold that Defendants' issuance of the unlawful Wolf Memorandum violated the APA.  In addition to the typical APA remedy of vacatur, the Court should also order the declaratory, injunctive, and other equitable relief described below and set out in the

---

[1] References to the docket ("Dkt.") cite to the docket in the *Batalla Vidal* matter, No. 16-CV-4756 (NGG) (VMS).  References to the docket in the *New York* matter, No. 17-CV-5228 (NGG) (VMS), are labelled as "States Dkt."

accompanying proposed order.

Over one million lives have been put on hold and thrown into deep uncertainty for years as a result of Defendants' unlawful conduct. There is no basis for further delay, and a permanent injunction is necessary to secure Defendants' compliance with the law, ensure the effectiveness of the Court's orders, and remedy Plaintiffs' injuries. "At some point, we must lean forward from the bench to let an agency know, in no uncertain terms, that enough is enough." *Pub. Citizen Health Research Grp. v. Brock*, 823 F.2d 626, 627 (D.C. Cir. 1987).

## BACKGROUND

In 2012, then-Secretary of Homeland Security Janet Napolitano issued a memorandum on DACA that set forth specific criteria for DHS to employ on a case-by-case basis when deciding requests for protection from deportation for certain young immigrants who came to the United States as children and have continually lived in the United States for at least five years. Individuals granted deferred action under DACA received protection from removal for renewable two-year periods, and the ability to apply for work authorization and for permission to travel outside the country ("advance parole"). As this Court has recognized, since 2012, DACA has provided a means for nearly 800,000 grantees to support themselves and their families, and to contribute to their broader communities. *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 407 (E.D.N.Y. 2018).

In September 2017, former Acting Secretary of Homeland Security Elaine Duke issued a memorandum stating that she was rescinding DACA because DACA was purportedly unlawful. In 2018, this Court held that Duke's decision to rescind DACA was likely arbitrary and capricious under the APA and entered a nationwide preliminary injunction requiring DHS to continue processing DACA renewal applications. *See id.* at 420-33, 437-38. The Supreme Court granted the federal government's petition for a writ of certiorari before judgment, and held on

June 18, 2020 that Duke's 2017 rescission of DACA was arbitrary and capricious under the

APA. *See Department of Homeland Sec. v. Regents of Univ. of Cal.* ("*Regents*"), 140 S. Ct.

1891, 1915 (2020). Among other things, the Supreme Court expressly affirmed a summary

judgment ruling "that DACA's rescission was unlawful and must be set aside." *NAACP v.

Trump*, 315 F. Supp. 3d 457, 473 (D.D.C. 2018); *see Regents*, 140 S. Ct. at 1916 & n.7.

Notwithstanding *Regents*, DHS did not restore DACA as it existed before the September

2017 rescission and did not recommence processing first-time DACA applications,[2] but instead

"generally held" applications "in anticipation of potential policy changes." Chad F. Wolf,

*Reconsideration of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial

Discretion with Respect to Individuals Who Came to the United States as Children"* (July 28,

2020) (the "Wolf Memorandum") (States Dkt. 273-3). On July 28, 2020, Chad Wolf—in his

capacity as purported Acting Secretary of Homeland Security—issued a memorandum directing

DHS to make "interim" changes to DACA while Wolf considered whether to fully rescind

DACA. *Id.* The Wolf Memorandum ordered DHS to reject all new first-time DACA

applications, to change the renewal period and accompanying grants of employment

authorization for renewal beneficiaries from two years to one year, and to reject all advance

parole applications absent exceptional circumstances. *Id.* The Wolf Memorandum purported to

apply these changes retroactively to pending applications that had been held in abeyance by DHS

after the date of the *Regents* decision. *Id.*

Plaintiffs in these related cases filed amended complaints to challenge the Wolf

Memorandum, and moved for partial summary judgment on their claims that the memorandum

---

[2] The term "first-time application" refers to an application made by someone who has never been
granted deferred action pursuant to the DACA program.

was unlawful because Mr. Wolf was improperly serving in the role of Acting Secretary in violation of the HSA, the Federal Vacancies Reform Act, and the Appointments Clause. *See Batalla Vidal* Pls.' Fourth Am. Compl. ¶¶ 192-210 (First and Second Claims for Relief) (Dkt. 308); *Batalla Vidal* Pls.' Mem. Supp. Mot. for Summ. J. (Dkt. 311); States' Second Am. Suppl. Compl. ¶¶ 332-37 (Ninth Claim for Relief) (States Dkt. 271); States' Mem. Supp. Mot. for Summ. J. (States Dkt. 275). The *Batalla Vidal* Plaintiffs also moved for class certification. *See Batalla Vidal* Pls.' Mem. Supp. Mot. to Certify Class (Dkt. 309).

The Court granted Plaintiffs' motions for partial summary judgment by Memorandum and Order dated November 14, 2020 (Dkt. 342). The Court held that "the Wolf Memorandum was not an exercise of legal authority" because "Defendant Mr. Wolf was not lawfully serving as Acting Secretary of Homeland Security under the HSA when he issued the Wolf Memorandum." Mem. & Order 20, 31. The Court further held that "Mr. Wolf did not (and does not) possess the power to ratify any of his former actions." *Id.* at 21. In addition, the Court granted the *Batalla Vidal* Plaintiffs' motion for class certification, certifying a DACA Class of individuals who are or will become *prima facie* eligible for DACA under the pre-2017 guidance, and a Pending Applications Subclass of those who had DACA applications pending at USCIS on any date between June 30 and July 28, 2020 that were not or will not be adjudicated consistent with the pre-2017 DACA guidance.[3] *See id.* at 21-31.

The Court also directed Plaintiffs to advise the Court of any forthcoming motions for relief in light of this holding. *See id.* at 2-3. At a status conference on November 18, Plaintiffs sought (and the Court granted) leave to file motions for partial summary judgment on their

---

[3] Individuals who are "*prima facie* eligible for deferred action through DACA and who bring a federal lawsuit challenging the Wolf Memorandum" are excluded from the DACA Class and the Pending Applications Subclass. Mem. & Order 30-31.

claims under the APA to remedy Defendants' violation of the HSA.  *See* Nov. 18 Hr'g Tr. at 6:3-7:19, 10:8-11:8, 11:12-13:6, 24:9-10, 25:12-20.

Plaintiffs now move this Court for partial summary judgment on their claims that the Wolf Memorandum is invalid under the APA because it was not issued in accordance with law and exceeds Defendants' statutory authority.[4]  5 U.S.C. §§ 706(2)(A), (C); *see Batalla Vidal* Pls.' Fourth Am. Compl. ¶¶ 211-18 (Third Claim for Relief) (Dkt. 308); States' Second Am. Suppl. Compl. ¶¶ 328-31 (Eighth Claim for Relief) (States Dkt. 271).[5]

## ARGUMENT

I. **Summary judgment is warranted on Plaintiffs' claims for relief under the Administrative Procedure Act.**

A. **Standard of review.**

The APA provides that courts "shall" "hold unlawful and set aside" agency action that is "not in accordance with law" or that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. §§ 706(2)(A), (C).  Rigorous judicial review under the APA was intended to maintain the balance of power between the branches of

---

[4] In the interest of judicial economy, the *Batalla Vidal* Plaintiffs and the State Plaintiffs are filing this motion for partial summary judgment jointly.  Identical versions of Plaintiffs' motion papers will be docketed in each action.

[5] Plaintiffs' operative complaints further allege that the Wolf Memorandum should be vacated and set aside under the APA because it is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A).  *See Batalla Vidal* Pls.' Fourth Am. Compl. ¶¶ 211-18 (Third Claim for Relief) (Dkt. 308); States' Second Am. Suppl. Compl. ¶¶ 328-31 (Eighth Claim for Relief) (States Dkt. 271).  In filing this motion for partial summary judgment on their claims that the Wolf Memorandum was not issued in accordance with law and exceeds Defendants' statutory authority, Plaintiffs do not intend to waive their separate claims that the Wolf Memorandum is arbitrary and capricious.  To the extent this motion for partial summary judgment is not fully dispositive of these actions, Plaintiffs intend to argue in a subsequent motion for partial summary judgment on their APA claims that the Wolf Memorandum is arbitrary and capricious and must be set aside on that basis.  *See* 5 U.S.C. § 706(2)(A); *Nw. Envtl. Advocates v. U.S. E.P.A.*, 537 F.3d 1006, 1027 (9th Cir. 2008).

government. "[I]t would be a disservice to our form of government and to the administrative process itself if the courts should fail, so far as the terms of the [APA] warrant, to give effect to its remedial purposes." *Wong Yang Sung v. McGrath*, 339 U.S. 33, 41 (1950).

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). APA claims are particularly "amenable to summary disposition" because "[t]he entire case on review is a question of law." *New York v. U.S. Dep't of Health & Human Servs.*, 414 F. Supp. 3d 475, 516 (S.D.N.Y. 2019).

**B.    Because Mr. Wolf was not lawfully serving as Acting Secretary of Homeland Security, the Wolf Memorandum is invalid under the APA.**

"It is well settled that an agency may only act within the authority granted to it by statute." *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 108 (2d Cir. 2018). The APA thus requires this Court to set aside agency action that exceeds statutory authority or is otherwise not in accordance with law. 5 U.S.C. §§ 706(2)(A), (C). In determining whether agency action exceeds statutory authority in violation of the APA, "the question . . . is always whether the agency has gone beyond what Congress has permitted it to do." *City of Arlington v. FCC*, 569 U.S. 290, 297-98 (2013).

Here, the Court held that "the Wolf Memorandum was not an exercise of legal authority" because "Defendant Mr. Wolf was not lawfully serving as Acting Secretary of Homeland Security under the HSA when he issued the Wolf Memorandum." Mem. & Order 20, 31. The Court further held that "Mr. Wolf did not (and does not) possess the power to ratify any of his former actions." *Id.* at 21. Because Mr. Wolf was exercising the authority of the Acting Secretary in violation of the HSA, it follows axiomatically that the Wolf Memorandum was not issued "in accordance with law," and was "in excess of statutory jurisdiction," in violation of the

APA.[6]  5 U.S.C. §§ 706(2)(A), (C); *see L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 34, 36 (D.D.C.

2020); *see also Immigrant Legal Res. Ctr. v. Wolf*, No. 20-CV-5883 (JSW), 2020 WL 5798269,

at *9 (N.D. Cal. Sept. 29, 2020) (holding for preliminary injunction purposes that because Mr.

Wolf likely was not validly serving in office, his issuance of agency regulation was likely

contrary to law under the APA); *Bullock v. U.S. Bureau of Land Mgmt.*, No. 20-CV-62 (BMM),

2020 WL 5746836, at *12 (D. Mont. Sept. 25, 2020) (holding that any decisions issued by

improperly-appointed Acting Director of the Bureau of Land Management were not in

accordance with law under the APA); *Casa de Maryland, Inc. v. Wolf*, No. 20-CV-2118 (PX),

2020 WL 5500165, at *23 (D. Md. Sept. 11, 2020) (holding for preliminary injunction purposes

that "because Wolf filled the role of Acting Secretary without authority, he promulgated the

challenged rules . . . 'in excess of . . . authority,' and 'not in accordance with the law'") (quoting

5 U.S.C. §§ 706(2)(A), (C)).

### C.    Defendants' renewed efforts to cure Mr. Wolf's unlawful appointment to the position of Acting Secretary fail for the same reasons as before.

Nothing in Defendants' renewed efforts to remedy the unlawfulness of Mr. Wolf's

service as Acting Secretary permits a different result.  Mr. Wolf's service in the position of

Acting Secretary continues to violate the law, and DHS's most recent ratification orders have no

legal effect.

### 1.    The November 14 Succession Order and the November 16 ratification memoranda.

After this Court held on November 14 that Defendant Wolf has never lawfully served as

---

[6] Defendants conceded this point in their opposition to Plaintiffs' motion for partial summary judgment; as they acknowledged there, "Defendants have not disputed the contention that, if Acting Secretary Wolf were not lawfully serving, then the Wolf Memorandum could be set aside under the APA."  Defs.' Mem. Opp. Supp. J. 25 (Dkt. 323).

Acting Secretary of Homeland Security, Defendants attempted yet again to "provide[] an alternative basis for Acting Secretary Wolf's authority" and to "ratif[y] any and all of [Wolf's] actions taken since November 13, 2019." *See* U.S. Dep't of Homeland Security, *DHS Statement on Recent Challenges to Acting Secretary Wolf's Authority* (Nov. 17, 2020) ("DHS Statement") (Ex. 1).[7]  First, on the evening of Saturday, November 14, Federal Emergency Management Agency (FEMA) Administrator Peter Gaynor—purporting to act "[b]y any authority vested in me as Acting Secretary of Homeland Security"—attempted to designate a new order of succession for the Secretary of Homeland Security.[8]  *See* Order Designating the Order of Succession for the Secretary of Homeland Security (Nov. 14, 2020) ("November 14 Succession Order") (Ex. 2).  DHS has characterized this order as "re-issu[ing] the order of succession established by former Acting Secretary McAleenan on November 8, 2019" and, thus, "confirm[ing] Acting Secretary Wolf's authority to continue to serve as the Acting Secretary." DHS Statement at 1-2 (Ex. 1).

Subsequently, on November 16, Defendant Wolf issued two ratification memoranda.  The first purported to "affirm and ratify *any and all* actions involving delegable duties [he had] taken from November 13, 2019, through November 14, 2020, the date of the execution of the Gaynor Order."  Ratification of Actions Taken by the Acting Secretary of Homeland Security, at 3 (Nov. 16, 2020) (emphasis added) (Ex. 3).  The second purported to ratify actions taken by former Acting Secretary McAleenan and U.S. Citizenship and Immigration Services Deputy Director for

---

[7] Citations in this Memorandum to Ex. 1 through Ex. 4 are to the exhibits to the accompanying Declaration of Matthew Colangelo dated November 24, 2020.

[8] Mr. Gaynor's signature is accompanied by a handwritten notation, "14 NOV 2020, 1745," which Plaintiffs understand to indicate that Mr. Gaynor signed the memo at 5:45 p.m., several hours after this Court's decision was entered on the docket of these actions at approximately 2:20 p.m. on November 14.

Policy Joseph Edlow.  *See* Ratification of Certain Actions Taken by Former Acting Secretary

Kevin McAleenan and One Action Taken by U.S. Citizenship and Immigration Services Deputy

Director for Policy Joseph Edlow, at 3 (Nov. 16, 2020) (Ex. 4).  Among the agency actions

expressly identified in this second ratification memorandum is Mr. Edlow's August 21, 2020

memorandum (the "August 21 Edlow Memorandum") implementing the Wolf Memorandum.

> **2.      DHS's latest maneuvers do not make Defendant Wolf the lawful
>          Acting Secretary or permit him to ratify his earlier DACA order.**

Defendants' latest attempts to confer lawful status on Defendant Wolf's service and

actions as the purported Acting Secretary of Homeland Security simply repeat the earlier efforts

to do the same that this Court has already squarely rejected.[9]  Mem. & Order 20-21.

In issuing the November 14 Succession Order, Administrator Gaynor claimed to act

pursuant to "any authority vested in me as Acting Secretary of Homeland Security."  November

14 Succession Order at 1 (Ex. 2).  But Administrator Gaynor had not, on November 14 or at any

other point, replaced Defendant Wolf.  As the Court held when rejecting Defendants' earlier

attempt to alter the succession order through Administrator Gaynor in September 2020, "[t]here

is no indication that Administrator Gaynor has even been empowered by the agency to exercise

---

[9] At the November 18 status conference in these actions, Defendants' counsel asserted that the
November 14 Succession Order and November 16 ratification memoranda had "nothing to do
with DACA and nothing to do with this litigation," because "Your Honor ruled against the
Government on the issue of whether Administrator Gaynor's [September 10] order could
effectively ratify the Wolf Memorandum."  Nov. 18 Hr'g Tr. 17:7-18:9.  But Defendants'
counsel declined to state that the federal government would not raise on appeal the argument
Defendants had just disclaimed.  Nov. 18 Hr'g Tr. 19:4-24.  To avoid the prospect that
Defendants may raise new arguments on appeal that this Court has not had an opportunity to
adjudicate, the Court should address the effect of the November 14 Succession Order and
November 16 ratification memoranda, and should hold those invalid.  *See, e.g.*, *New York v. U.S.
Dep't of Commerce*, 351 F. Supp. 3d 502, 671 (S.D.N.Y.) ("With time so short and the
likelihood that one or both sides will seek appellate relief so high, it is critical to make a
comprehensive record in order to facilitate higher court review and to minimize any potential
need for a remand."), *aff'd*, 139 S. Ct. 2551 (2019).

the powers of the Acting Secretary, and there is every indication to the contrary." Mem. & Order

21.  Indeed, in the November 14 Succession Order, Mr. Gaynor expressly proclaimed "the

continued validity" of the November 8, 2019 succession order issued by then-Acting Secretary

McAleenan, notwithstanding this Court's decision to the contrary.  November 14 Succession

Order at 1 (Ex. 2).  And, in its November 17 statement, DHS announced that "Acting Secretary

Chad Wolf continues to exercise authority as the head of the Department of Homeland Security

in line with the succession orders issued by former Secretary Kirstjen Nielsen and former Acting

Secretary McAleenan," describing the November 14 Succession Order as "an *alternative* basis

for Acting Secretary Wolf's authority."  DHS Statement at 1 (emphasis added) (Ex. 1).

Administrator Gaynor's latest attempt to alter the succession order fails for the identical

reasons as his first attempt to do so.  Then, as now, Administrator Gaynor purported to issue the

succession order under "any authority" he might have as Acting Secretary.  But as the Court

previously held, there is no "authority that would allow a government official to take

administrative action in the alternative."  Mem. & Order 20.  In any event, by DHS's *own*

*characterization*, Defendant Wolf remained Acting Secretary at the time Administrator Gaynor

signed the succession order.  DHS Statement at 1 (Ex. 1).  As the Court held in rejecting the

same maneuver when DHS attempted it two months ago, it would defeat Congress's intent in

enacting "detailed contingency plans to ensure that somebody is accountable for the

Department's mission" for this Court to permit "two different people—Mr. Wolf and

Administrator Gaynor—to simultaneously exercise the Secretary's power."  Mem. & Order 20.

Just as the September 10 Gaynor Order "had no legal effect," *id.* at 21 n.11, Administrator

Gaynor's November 14 Succession Order is similarly void.

Because the November 14 Succession Order has no legal effect, Defendant Wolf is still

unlawfully serving in the position of Acting Secretary.  "[T]herefore, Mr. Wolf did not (and does

not) possess the power to ratify any of his former actions."  Mem. & Order 21.  The November

16 ratification memoranda thus are powerless to ratify Mr. Wolf's or other DHS officials' prior

actions, including the Wolf Memorandum and the August 21 Edlow Memorandum.

## II.      To remedy Defendants' APA violation, the Court should vacate the Wolf Memorandum and enter permanent injunctive and declaratory relief.

### A.      Vacatur is the appropriate remedy under the APA when an agency acts contrary to law.

The APA prescribes a remedy for any "person suffering legal wrong because of agency

action"—namely, "the reviewing court *shall . . .* hold unlawful *and set aside* agency action"

found to violate the APA's terms.  5 U.S.C. §§ 702, 706(2) (emphases added).  "By the statute's

plain terms, therefore, the 'normal remedy' in a successful APA challenge is to set aside—that is,

vacate—the final agency action at issue."  *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d

502, 671 (S.D.N.Y.), *aff'd*, 139 S. Ct. 2551 (2019) (quoting *Allina Health Servs. v. Sebelius*, 746

F.3d 1102, 1110 (D.C. Cir. 2014)); *see also Guertin v. United States*, 743 F.3d 382, 388 (2d Cir.

2014) ("In the usual case, when an agency violates its obligations under the APA, [the court] will

vacate a judgment and remand to the agency . . . .").

Vacatur properly reflects the sound principle that an agency action that violates the APA

"'cannot be afforded the force and effect of law,' and therefore is void."  *Air India v. Brien*, No.

00-CV-1707, 2002 WL 34923740, at *14 (E.D.N.Y. Feb. 14, 2002) (quoting *Chrysler Corp. v.

Brown*, 441 U.S. 281, 313 (1979)).  The Wolf Memorandum "was not an exercise of legal

authority," Mem. & Order 20, and violates the APA, *see supra* Part I.B.  Consistent with

"standard practice under the APA," the Court should therefore vacate the Wolf Memorandum.

*New York*, 414 F. Supp. 3d at 575-76.

The Court should reject any request from Defendants to limit the scope of any vacatur to

the plaintiffs in these actions.  *See* Defs.' Mem. Opp. Summ. J. 24 (Dkt. 323).  "[W]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed."  *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989).  An order vacating the Wolf Memorandum under the APA thus inherently has nationwide application, without implicating concerns about the power of courts to issue nationwide injunctive relief.  *See NAACP*, 315 F. Supp. 3d at 474 n.3 (order setting aside agency decision under APA did not implicate any concerns about nationwide injunctions), *aff'd sub nom. Dep't of Homeland Sec. v. Regents of Univ. of Cal.* ("*Regents*"), 140 S. Ct. 1891 (2020).  And the Court's conclusion that Mr. Wolf was serving unlawfully—and that the Wolf Memorandum therefore was not an exercise of legal authority—did not depend on "facts or considerations specific to this District or particular plaintiffs."  *New York*, 414 F. Supp. 3d at 579 (rejecting the federal government's request that vacatur under the APA be limited geographically to specific jurisdictions or plaintiffs).

In any event, the Court granted the *Batalla Vidal* Plaintiffs' motion for class certification, Mem. & Order 21-31, and Defendants have already conceded that the class certification order renders nationwide relief appropriate.  *See* Nov. 18 Hr'g Tr. at 16:6-10 ("Obviously some of our remedial arguments have now been rejected by the Court, so, for example, Your Honor's opinion also included a class certification order which would provide for relief to be granted to a nationwide class notwithstanding some of our arguments."); *see also* Defs.' Mem. Opp. Summ. J. 23-24 (Dkt. 323) (conceding that "if Plaintiffs prevail on the merits," the Court should set aside the Wolf Memorandum "as to . . . any certified class").  The Court should accordingly vacate the Wolf Memorandum without geographic limitation.

**B.      Permanent injunctive relief is also warranted here.**

Although vacatur and remand are the typical remedies for an APA violation, courts are not limited to those remedies when circumstances require more.  *See New York*, 351 F. Supp. 3d at 671-72.  Indeed, "[c]ourts often enjoin future action by government officials where the principles of equity support such relief."  *Id.* at 673; *see also Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308, 342 (S.D.N.Y. 2018) (granting permanent injunction in APA litigation).

A plaintiff seeking a permanent injunction must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010).  Where the federal government is a party, the last two factors merge, because "the government's interest *is* the public interest."  *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016).

In this case, each of these factors weighs in favor of injunctive relief.  Defendants' unlawful actions have forced DACA-eligible youth into a state of limbo since September 2017, and Defendants' refusal following the *Regents* decision to restore DACA as it existed before the September 2017 rescission has only compounded these harms.  DACA-eligible individuals have suffered financial difficulties, foregone educational opportunities, accrued unlawful presence, and been put at imminent risk of immigration proceedings because of Defendants' actions.  *See, e.g.*, Fung Feng Decl. ¶¶ 4, 8 (current job is temporary and the new one-year grant will make it difficult to find a new job) (Dkt. 309-5 at Ex. G); Vargas Decl. ¶ 8 (risk of loss of EAD and employer-provided healthcare during a pandemic) (Dkt. 309-5 at Ex. H); Larios Sainz Decl.

¶¶ 10, 14, 16-17, 19-20 (inability to access better paid jobs without ability to access DACA) (Dkt. 309-5 at Ex. I); Fernandez Decl. ¶ 3 (anxiety and physical symptoms of stress caused by Wolf Memorandum's changes to DACA) (Dkt. 309-5 at Ex. F); Zamora Decl. ¶¶ 12-15, 19 (reduced opportunity to access educational and work opportunities) (Dkt. 309-5 at Ex. K); M.B.F. Decl. ¶¶ 2-4, 14-19, 23-30 (imminent accrual of unlawful presence, receipt of a "Notice to Appear" in immigration court, and financial and educational setbacks) (Dkt. 309-5 at Ex. L). As the Court already recognized, these injuries cause irreparable harm both to the *Batalla Vidal* Plaintiffs and to the State Plaintiffs as well, who in their capacity as employers will "suffer due to the inability to hire or retain erstwhile DACA recipients, affecting their operations on an ongoing basis and causing them to incur unrecoverable economic losses." *Batalla Vidal*, 279 F. Supp. 3d at 434; *see also id.* at 435. Plaintiffs' injuries—including deferred or denied economic, employment, and educational opportunities—are also irreparable because there is "no way to remedy them after the fact." *New York v. Trump*, No. 20-CV-5770 (RCW, PWH, JMF), 2020 WL 5422959, at *33 (S.D.N.Y. Sept. 10, 2020) (three-judge court); *see also Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) ("Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer"). These harms cannot be compensated with monetary damages or otherwise redressed absent injunctive relief. *See Planned Parenthood*, 337 F. Supp. 3d at 343.

Moreover, the balance of the equities and the public interest weigh decisively in favor of injunctive relief, because "[t]here is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also N.Y. Progress & Prot.*

*PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013).

Although the Supreme Court has cautioned that an injunction should not be granted in addition to vacatur and remand where doing so would "not have any meaningful practical effect independent of . . . vacatur," *Monsanto*, 561 U.S. at 165, an injunction would have independent practical effect here. This is because the typical APA remedy of vacatur likely will not suffice, on its own, to redress Plaintiffs' or the class's injuries or ensure the efficacy of the Court's Order invalidating the Wolf Memorandum.

In particular, given Defendants' repeated and continuing efforts to avoid administering DACA as it existed before the unlawful September 2017 rescission, there is no guarantee that Defendants will comply with the Court's Order absent an injunction compelling them to do so. *See New York*, 351 F. Supp. 3d at 676 (entering permanent injunction in addition to vacatur because an injunction "will make it easier for Plaintiffs to seek immediate recourse from this Court in the event that Defendants seek to do anything inconsistent" with the Court's order). The Supreme Court held more than *five months ago* that Defendants' rescission of DACA in September 2017 was arbitrary and capricious under the APA. *See Regents*, 140 S. Ct. at 1915. But DHS did not restore DACA as it existed before the September 2017 rescission, and instead held applications before issuing "interim" changes to DACA through the Wolf Memorandum, which DHS purported to make retroactive to the date of *Regents*. *See* Wolf Memorandum (States Dkt. 273-3). To this day, Defendants have refused to restore DACA as it existed before the September 2017 rescission, and have instead pursued a series of dilatory maneuvers to evade the Supreme Court's mandate.[10]

---

[10] Indeed, in litigation before the United States District Court for the Southern District of Texas, DHS has asked "the Court [to] permit DHS to continue its policy deliberations regarding the

In these circumstances, an injunction is not only warranted but necessary to ensure the Court's orders are followed and to provide an avenue for prompt judicial intervention if they are not.[11]  *See New York*, 351 F. Supp. 3d at 676.

### C.   Declaratory relief is appropriate to remedy Defendants' violations.

The Court should also enter a declaratory judgment that the Wolf Memorandum was issued in violation of the Homeland Security Act and the APA, and that Defendants' efforts to ratify Mr. Wolf's unlawful actions are without effect.  The Declaratory Judgment Act vests federal courts with discretion to "declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a); *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).  In exercising that discretion, courts consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to *res judicata*; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (5) whether there is a better or more effective remedy."  *New York*, 2020 WL 5422959, at *35 (citing *Dow Jones & Co. v. Harrods, Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003)).  The Court may grant declaratory relief "whether or not further relief is or could be sought."  28 U.S.C. § 2201(a); *see also* Fed. R. Civ. P. 57 ("The

---

future of DACA," suggesting that additional changes to the program may be forthcoming. Federal Defs.' Resp. to Def.-Intervenors' Cross Mot. for Summ. J. 5, *Texas v. United States*, No. 18-cv-00068, Dkt. 527 (S.D. Tex. filed Nov. 20, 2020).

[11] Although Defendants have previously disputed the legality of deferred action under DACA and continue to raise doubts about the legality of DACA in other proceedings, *see* Federal Defs.' Resp. to Pls.' Mot. for Summ. J. 10-14, *Texas v. United States*, No. 18:cv-00068, Dkt. 501 (S.D. Tex. filed Nov. 6, 2020), the Court need not reach that issue in order to grant relief here.  If the Court were to determine that the issue should be addressed by the parties, Plaintiffs are prepared to provide briefing at the Court's convenience.

existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.").

A declaration that the Wolf Memorandum and Defendants' efforts to ratify Mr. Wolf's actions are unlawful "would serve a useful purpose here, settle the legal issues involved, finalize the controversy, and offer [Plaintiffs] relief from uncertainty." *Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating Dist.*, 673 F.3d 84, 105 (2d Cir. 2012).  In particular, given Defendants' refusal even after *Regents* to restore DACA as it existed before the September 2017 rescission, a declaration that the Wolf Memorandum is unlawful would provide the DACA Class, the Pending Applications Subclass, and the State Plaintiffs alike with certainty regarding the administration of DACA.  *See New York*, 2020 WL 5422959, at *35 (issuing declaratory judgment where "an unambiguous judicial declaration" would help restore public confidence in the decennial census and mitigate the plaintiffs' harms); *see also Bullock*, 2020 WL 5746836, at *12 (issuing declaratory judgment that agency official "served unlawfully as the Acting BLM Director for 424 days").

**D.     The Court should order the following injunctive and declaratory relief to remedy Defendants' violations of the law and effectuate the Court's Order.**

**1.     The Court should issue declaratory and injunctive relief to undo the Wolf Memorandum.**

First, the Court should enjoin Defendants from implementing or enforcing the Wolf Memorandum, and any memorandum or agency guidance issued pursuant to the Wolf Memorandum, and from issuing any new ratification order purporting to ratify the Wolf Memorandum, without curing the legal defects identified in the Court's November 14, 2020 opinion.  *See New York*, 351 F. Supp. 3d at 679.

In addition, the Court should direct Defendants to take the steps necessary to restore DACA as it existed before the September 2017 rescission.  *See id.* at 676 ("In the circumstances

of these cases, . . . an injunction is necessary to make the Court's vacatur effective"). Specifically, Plaintiffs ask that the Court order Defendants to accept and process all first-time requests for consideration of deferred action under DACA in accordance with the steps that USCIS routinely takes after DACA applications are filed.  *See* USCIS Service Center Directorate, National Standard Operating Procedures (SOP), Deferred Action for Childhood Arrivals (DACA) (Apr. 4, 2013) (Dkt. 123-3 at Ex. E).  Plaintiffs also ask the Court to order Defendants to adjudicate all renewal requests in accordance with the terms of DACA in place prior to the September 2017 rescission, and to adjudicate all requests for advance parole from DACA recipients in accordance with 8 U.S.C. § 1182(d)(5) and the terms in place prior to September 5, 2017.

In addition, since July 28, 2020, Defendants have unlawfully issued employment authorization documents and grants of DACA for a one-year period instead of the two-year period that DACA grantees should have received.  To provide complete relief to Plaintiffs and class members, the Court should order Defendants to (i) extend from one year to two years the grants of deferred action and EADs that Defendants issued since July 28, 2020, and (ii) reissue the relevant documents to the affected DACA recipients. The Court should also order Defendants to send appropriate notice of this available relief, within ten calendar days, to DACA recipients who received one-year grants and their immigration counsel, if any.

Further, to grant full relief to individuals who accrued unlawful presence[12] as a result of

_____

[12] Under 8 U.S.C. § 1182(a)(9)(B)(iii), immigrant youth do not accrue unlawful presence while they are under 18 years of age.  Under the DACA terms that were in place before the Wolf Memorandum was issued, an individual who submitted a DACA application before they turned 18 did not accrue unlawful presence even after turning 18 while their application was pending at USCIS.  *See* U.S. Citizenship & Immigration Servs., Frequently Asked Questions, DHS DACA FAQs, at Q48, https://www.uscis.gov/archive/frequently-asked-questions (last accessed Nov. 24,

the Wolf Memorandum, the Court should declare under 28 U.S.C. § 2201 that: (1) individuals

who submitted first-time requests for consideration of deferred action under DACA before they

turned 18, whose applications were denied or rejected under the Wolf Memorandum, who re-

submit first-time requests and whose resubmitted requests are granted, do not accrue unlawful

presence under 8 U.S.C. § 1182(a)(9) as of the submission date of their unlawfully-rejected

DACA request.  The Court should also declare that individuals who became prima facie eligible

for deferred action under DACA after July 28, 2020, and who submit their first-time request for

consideration of deferred action under DACA after the issuance of this order and are granted

deferred action under DACA, do not accrue unlawful presence under 8 U.S.C. § 1182(a)(9) as of

the date they turned 18.

> ### 2.      Class members should receive notice of the Court's ruling and Defendants' plans to comply.

Following the Supreme Court's decision in *Regents*, Defendants' lack of transparency

over whether they intended to comply with *Regents* left individuals who were eligible for DACA

under the terms that existed before the September 2017 rescission in a state of confusion and

uncertainty as to how Defendants would process DACA applications.  To ensure that all

individuals who are eligible for DACA are informed about the relief to which they are entitled

under this Court's judgment and order, the Court should order Defendants to post public notice,

---

2020).  Individuals granted deferred action under DACA also do not accrue unlawful presence while they have DACA.  *Id.* at Q1.  As a result of the Wolf Memorandum, however, individuals who applied for a first-time DACA grant before they turned 18, who are now 18, and whose DACA applications were rejected because of the Wolf Memorandum have begun accruing unlawful presence, which could bar them from seeking immigration relief they would be otherwise eligible for in the future.  *See* M.B.F. Decl. ¶¶ 4, 28 (Dkt. 309-5 at Ex. L).  The accrual of unlawful presence has significant adverse effects, including that individuals who accrue unlawful presence of 180 days or more face three-year or ten-year bars to admissibility depending on the length of accrual.  *See* 8 U.S.C. § 1182(a)(9)(B)(i)(I), (II).

including on their website, that USCIS will resume accepting and processing first-time requests
for consideration of deferred action under DACA, and adjudicating renewal requests and
advance parole requests, pursuant to the policies in place prior to the September 2017 rescission.
*See* USCIS Service Center Directorate, National Standard Operating Procedures (SOP), Deferred
Action for Childhood Arrivals (DACA) (Apr. 4, 2013) (Dkt. 123-3 at Ex. E).  Providing the class
with notice of Defendants' change in policy is important because DACA applications—
particularly first-time requests for deferred action under DACA—require applicants to gather
significant amounts of information and evidence, which can be time-consuming and expensive.
*See* Zamora Decl ¶ 2 (Dkt. 309-5 at Ex. K); M.B.F. Decl ¶ 2 (Dkt. 309-5 at Ex. L); Larios Sainz
Decl. ¶ 15 (Dkt. 309-5 at Ex. I).  Defendants can easily post a notice on USCIS's website, which
will help ensure that DACA-eligible individuals can begin preparing their applications.

    In addition, the Court should order Defendants to distribute notice from class counsel
relating to the relief that this Court's order provides for members of the Pending Applications
Subclass who submitted DACA applications or advance parole requests on or after June 30, 2020
that were rejected by Defendants pursuant to the Wolf Memorandum.  *See, e.g.*, *Onosamba-
Ohindo v. Barr*, No. 20-CV-290 (EAW), 2020 WL 5226495, at *23 (W.D.N.Y. Sept. 2, 2020)
(ordering the development of a notice to explain the court's order to class members); *see also* 3
Newberg on Class Actions § 8:33 (5th ed. 2014 & Supp. 2020) (noting defendants may be
ordered to notify class members under certain circumstances, including where defendants "can
perform one of the tasks necessary to send notice, such as identification, more efficiently than
the representative plaintiff" or when there has been some finding of defendant's liability)
(quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 359 (1978)).

### 3. The Court should also require Defendants to report on their compliance with the Court's Orders.

For over five months, Defendants have defied the Supreme Court's decision in *Regents*. *See Regents*, 140 S. Ct. at 1915. In light of the irreparable harm suffered by the class since the issuance of the Wolf Memorandum, Plaintiffs request that the Court exercise its equitable powers to order Defendants to undertake certain reporting. Specifically, Plaintiffs request that the Court require Defendants to (1) keep records of its actions on all DACA applications, including first-time applications, renewals, and applications for advance parole, and provide summary reports to the Court (and counsel) on the first business day of each month; (2) provide class counsel within ten days of the Court's order the names and contact information for all individuals in the Pending Applications Subclass; and (3) provide class counsel within ten days of the Court's order a report that includes: (a) the number of first-time requests for consideration of deferred action under DACA received and rejected pursuant to the Wolf Memorandum; (b) the number of renewal DACA applications and applications for EADs that were granted for a period of one year pursuant to the Wolf Memorandum; and (c) the number of advance parole requests received, approved, denied, and rejected pursuant to the Wolf Memorandum. These reports are an appropriate exercise of the Court's broad equitable powers, *see Barnett v. Bowen*, 794 F.2d 17, 23-24 (2d Cir. 1986), and are similar to those Defendants were ordered to provide in parallel DACA litigation. *See Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1048 (N.D. Cal. 2018)

### CONCLUSION

Plaintiffs respectfully request that the Court grant this motion for partial summary judgment, vacate the Wolf Memorandum, and enter the further relief set forth in the proposed order filed with Plaintiffs' motion.

DATED:  November 24, 2020

By: */s/ Araceli Martínez-Olguín*
Araceli Martínez-Olguín, Esq. (AM 2927)
Mayra B. Joachin, Esq. (pro hac vice)
NATIONAL IMMIGRATION LAW
CENTER
3450 Wilshire Blvd. #108-62
Los Angeles, CA 90010
(213) 639-3900
martinez-olguin@nilc.org

Trudy S. Rebert, Esq. (TR 6959)
NATIONAL IMMIGRATION LAW
CENTER
P.O. Box 721361
Jackson Heights, NY 11372
(646) 867-8793

Camila Bustos, Law Student Intern
Armando Ghinaglia, Law Student Intern
Angie Liao, Law Student Intern*
Edgar A. Melgar, Law Student Intern
Medha Swaminathan, Law Student Intern*
Ramis Wadood, Law Student Intern
Muneer I. Ahmad, Esq. (MA 9360)
Marisol Orihuela, Esq. (pro hac vice)
Michael J. Wishnie, Esq. (MW 1952)
JEROME N. FRANK LEGAL SERVS.
ORG.
P.O. Box 209090
New Haven, CT 06520
(203) 432-4800

Karen C. Tumlin, Esq. (pro hac vice)
Cooperating Attorney
JEROME N. FRANK LEGAL SERVS.
ORG.
P.O. Box 209090
New Haven, CT 06520
(323) 316-0944

Vanessa Dell, Esq. (VD 1157)
Jessica Young, Esq.**

Respectfully submitted,

By: */s/ Matthew Colangelo*
Matthew Colangelo
   *Chief Counsel for Federal Initiatives*
Anisha S. Dasgupta, *Deputy Solicitor General*
Alex Finkelstein, *Project Attorney*
Sania Khan, *Assistant Attorney General*
Joseph Wardenski, *Senior Trial Counsel*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
Matthew.Colangelo@ag.ny.gov

*Attorneys for the Plaintiffs in* 17-CV-5228
(NGG) (VMS)

MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
(718) 418-7690

*Attorneys for the Batalla Vidal Plaintiffs in*
16-CV-4756 (NGG) (VMS)

\* Motion for law student appearance
pending

\*\*Application forthcoming in E.D.N.Y.