# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MARTÍN JONATHAN BATALLA VIDAL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CHAD F. WOLF, *et al.*,<br><br>Defendants. | No. 16-cv-4756 (NGG) (VMS) |
| STATE OF NEW YORK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, *et al.*,<br><br>Defendants. | No. 17-cv-5228 (NGG) (VMS) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................... 1

ARGUMENT ........................................................................................................... 2

I.    The Wolf Memorandum should be vacated under the Administrative
      Procedure Act. ............................................................................................. 2

II.   Plaintiffs' requests for additional injunctive and declaratory relief should be
      rejected. ........................................................................................................ 2

      A.    A permanent injunction is unnecessary and inappropriate. .................... 3

      B.    Additional injunctions to "undo" the Wolf Memorandum are unnecessary
            and inappropriate. ................................................................................. 6

      C.    Additional declaratory relief is unnecessary and inappropriate............. 9

      D.    Individualized notice to absent class members is unnecessary and legally
            unwarranted......................................................................................... 12

      E.    Plaintiffs' request that Defendants file monthly reports indefinitely should
            be rejected. ......................................................................................... 14

      F.    Plaintiffs' requests for various statistical information should be rejected........... 15

      CONCLUSION .................................................................................................. 16

**TABLE OF AUTHORITIES**

**CASES**

*Am. Bioscience, Inc. v. Thompson*,
   269 F.3d 1077 (D.C. Cir. 2001) ................................................................. 3

*Batalla Vidal v. Nielsen*,
   279 F. Supp. 3d 401 (E.D.N.Y. 2018) ................................................... 5, 7

*Bennett v. Donovan*,
   703 F.3d 582 (D.C. Cir. 2013) ................................................................. 3

*Dep't of Homeland Security v. Regents of the Univ. of Cal.*,
   140 S. Ct. 1891 (2020) ............................................................................ 5

*Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prod., Inc.*,
   958 F. Supp. 2d 488 (S.D.N.Y. 2013) .................................................... 8

*Dow Jones & Co. v. Harrods Ltd.*,
   346 F.3d 357 (2d Cir. 2003) .................................................................... 9

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ........................................................................ 3, 5, 6

*New York v. Shinnecock Indian Nation*,
   560 F. Supp. 2d 186 (E.D.N.Y. 2008) .................................................... 4

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................................ 8

*O.A. v. Trump*,
   404 F. Supp. 3d 109 (D.D.C. 2019) ........................................................ 3

*Palisades Gen. Hosp. Inc. v. Leavitt*,
   426 F.3d 400 (D.C. Cir. 2005) ............................................................ 3, 8

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .............................................................................. 11

**STATUTES**

5 U.S.C. § 706 ........................................................................................... 2

8 U.S.C. § 1182 .............................................................................. 6, 9, 10

**RULES**

Fed. R. Civ. P. 23 .................................................................................... 11

**OTHER AUTHORITIES**

3 Newberg on Class Actions § 8:3 (5th ed.) ................................................................................. 10

DACA, Archived Frequently Asked Questions Q48,
 https://www.uscis.gov/archive/frequently-asked-questions#:~:text=Archived%20
 Content&text=USCIS%20is%20not%20accepting%20requests,5%2C%202017 ................... 10

USCIS Adjudicator's Field Manual, Ch. 40.9.2(b)(3)(J),
 https://www.uscis.gov/sites/default/files/document/policy-manual-afm/afm40-external.pdf.. 11

## INTRODUCTION

Although Defendants respectfully disagree with much of this Court's November 14, 2020 Memorandum & Order, *Batalla Vidal* ECF No. 342, the practical result of that order is that very little remains to be decided in these cases.  Defendants have never disputed that "if Plaintiffs prevail on the merits, the Court should simply set aside the Wolf Memorandum" both "as to the named plaintiffs who can adequately demonstrate Article-III standing" and as "to any certified class," and should then "remand to the agency" for further proceedings consistent with the Court's opinion.  Defs.' Mem. in Support of Mot. for Partial Summ. J., *Batalla Vidal* ECF No. 323, at 24. That remains Defendants' position.  Accordingly, Defendants do not oppose the primary request in Plaintiffs' latest motions for partial summary judgment: that the Wolf Memorandum be vacated, in light of the Court's rulings (1) "that Mr. Wolf was not lawfully serving as Acting Secretary of Homeland Security under the Homeland Security Act ('HSA') when he issued the July 28, 2020 memorandum," and (2) that the agency's attempted ratification of the Wolf Memorandum was ineffective.  Mem. & Order, *Batalla Vidal* ECF No. 342, at 2.

Despite this extraordinary result—that is, vacatur of a major Department of Homeland Security policy memorandum on the legal theory that the agency has misinterpreted its own internal succession memoranda—Plaintiffs ask for more.  Plaintiffs now not only seek the traditional remedy for unlawful agency action under the Administrative Procedure Act—vacatur— they also include a lengthy and detailed wish list of various declarations and injunctions, which would have this Court indefinitely supervising the agency's day-to-day work implementing the DACA policy.  Plaintiffs' atypical requests would not only be impractical, unnecessary, and a burden on Defendants and the Court, but they are also entirely untethered from the narrow legal defect identified by the Court with respect to the appointment of the current Acting Secretary of Homeland Security.  Accordingly, there is neither any legal basis nor any practical need to go beyond vacatur in this case.  Instead, much like the Supreme Court did in *Regents*, this Court should grant in part and deny in part Plaintiffs' latest motions for partial summary judgment, order that the Wolf Memorandum be vacated, and remand to the agency for further proceedings.

1

## ARGUMENT

**I.     The Wolf Memorandum should be vacated under the Administrative Procedure Act.**

Given the Court's recent opinion, Defendants do not oppose Plaintiffs' primary request: that the Wolf Memorandum be "set aside" (*i.e.*, vacated) under the Administrative Procedure Act. *See* 5 U.S.C. § 706(2) (a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations").[1] Here, although the Court has not decided whether the Wolf Memorandum was arbitrary and capricious, it has held that it was either "otherwise not in accordance with law," or issued "in excess of statutory . . . authority" because of a defect in Acting Secretary of Homeland Security Chad F. Wolf's appointment.  Accordingly, under the terms of the Court's opinion and the APA, vacatur is now appropriate.[2]  And because the Court has also now certified a class in *Batalla Vidal*, that relief would run to the benefit of the nationwide class in *Batalla Vidal*.

**II.    Plaintiffs' requests for additional injunctive and declaratory relief should be rejected.**

The Court can and should stop there—as is typical in challenges to allegedly unlawful agency action.  But here, on top of vacatur, Plaintiffs now seek a variety of declarations and injunctions, with varying degrees of specificity, as well as varying degrees of connection to the discrete and technical legal issue on which Plaintiffs prevailed.  For the reasons below, all of these requests should be rejected as legally unwarranted and practically unnecessary.  At most, once the

---

[1] Defendants acknowledge that vacatur of the Wolf Memorandum is the natural consequence of the Court's prior ruling, but nonetheless reserve their right to seek appellate relief, if appropriate.

[2] This conclusion is unaffected by the Department of Homeland Security's latest set of ratification documents, described in Plaintiffs' brief, *see* Pls.' Mem. of Law in Support of Mot. for Partial Summ. J. ("Pls.' Mem."), *Batalla Vidal* ECF No. 349, at 7-11, which post-dated the Court's opinion.  The Court already rejected a materially identical ratification, and explicitly referenced (and dismissed as irrelevant) the signature-timing issue that led to the issuance of the agency's latest ratification documents.  *See* Defs.' Letter, *Batalla Vidal* ECF No. 341; *see also* Mem. & Order at 21 n.11.

2

Court has ordered vacatur of the Wolf Memorandum, the Court should order the parties to meet and confer to discuss any of Plaintiffs' outstanding requests, and then come back to the Court for further resolution of any irreconcilable disputes.[3]

**A.  A permanent injunction is unnecessary and inappropriate.**

**1.**  Generally, "under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards." *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005); *see also, e.g., Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013) ("We do not hold, of course, that HUD is required to take this precise series of steps, nor do we suggest that the district court should issue an injunction to that effect.  Appellants brought a complaint under the [APA] to set aside an unlawful agency action, and in such circumstances, it is the prerogative of the agency to decide in the first instance how best to provide relief.").

In particular, "[t]he Supreme Court has cautioned that a district court vacating an agency action under the APA should not issue an injunction unless doing so would 'have [a] meaningful practical effect independent of its vacatur.'"  *O.A. v. Trump*, 404 F. Supp. 3d 109, 153-54 (D.D.C. 2019) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)).  Among other reasons, that is because "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course."  *Monsanto*, 561 U.S. at 165-66.  Accordingly, as long as "a less drastic remedy" is available—including "partial or complete vacatur" of the agency rule— "recourse to the additional and extraordinary relief of an injunction" is not just unnecessary, it is inappropriate.  *Id.*  In fact, Plaintiffs concede (as they must) that it is "standard practice under the APA" to *vacate* unlawful agency action—rather than to also issue additional, freestanding

---

[3]  After the recent status conference in these cases, counsel for Defendants proposed to counsel for Plaintiffs that the parties meet-and-confer in advance of Plaintiffs' filing, in hopes of reaching some common ground (or at least narrowing the scope of any disagreements for the Court to resolve).  Plaintiffs' counsel declined that offer.

injunctive relief.  Pls.' Mem. at 11; *see also, e.g.*, *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001) (noting that a party who "prevails on its APA claim . . . is entitled to relief under that statute, which normally will be a vacatur of the agency's order," and that the plaintiff in that case had "introduced a good deal of confusion by seeking an injunction").

Although the nature of the additional permanent injunction that Plaintiffs are requesting is not entirely clear from their brief, their proposed order offers the following language:

> 3.   The Court **PERMANENTLY ENJOINS** Defendants from implementing or enforcing the Wolf Memorandum, and any memorandum or agency guidance issued pursuant to the Wolf Memorandum, and from issuing any new ratification order purporting to ratify the Wolf Memorandum, without curing the legal defects identified in the Court's November 14, 2020 Memorandum & Order.

Proposed Order ¶ 3, *Batalla Vidal* ECF No. 307-1.  As a practical matter, this order will accomplish nothing that vacatur of the Wolf Memorandum (combined with this Court's Memorandum & Order) would not have already accomplished on its own.  Accordingly, under *Monsanto*, such an injunction would be improper for that reason alone.[4]

**2.**  Plaintiffs' only argument to the contrary is that an injunction is necessary because "there is no guarantee that Defendants will comply with the Court's Order absent an injunction compelling them to do so."  Pls.' Mem. at 15.  That extraordinary assertion is baseless.  Defendants will, of course, comply with any order issued by this Court or by any other court, as long as it remains in effect.  For confirmation, the Court need look no farther than this Court's own preliminary injunction order, issued in these cases in February of 2018, *Batalla Vidal* ECF No. 255.  That order—which was in effect for more than two years—required the agency to maintain

---

[4] To the extent the purpose or the effect of this language (particularly, the final clause) would be to operate as some sort of obey-the-law injunction—preventing future agency actions that the agency has not even issued, and that this Court has not even addressed, as long as the Court ultimately concludes that the agency did not successfully "cur[e]" all "legal defects" identified in the Court's opinion—it is improper for that additional reason.  *See, e.g.*, *New York v. Shinnecock Indian Nation*, 560 F. Supp. 2d 186, 189 (E.D.N.Y. 2008) (collecting Second Circuit authority disfavoring such "obey-the-law" injunctions).

(in substantial part) a discretionary enforcement policy that the Attorney General believed to be unlawful, and that was strongly at odds with the policy preferences of the Department of Homeland Security.  Nonetheless, the agency complied with the order for the two-plus years that it was in effect.  Plaintiffs never argued to the contrary.

Without any explanation of how, Plaintiffs now vaguely suggest that "Defendants have defied the Supreme Court's decision in *Regents*."  Pls.' Mem. at 21.  What they mean by "defiance" is unclear, but if what Plaintiffs are implying is that Defendants actually *violated* any court order (in this case or in any of the other DACA-rescission cases), they are incorrect.  As Defendants have explained in greater detail in a separate case that actually presents the question,[5] the Supreme Court's judgment required vacatur of the Duke Memorandum.  DHS complied with that directive: As reflected by the Wolf Memorandum itself, the agency withdrew the Duke and Nielsen memoranda and then modified DACA in certain respects, while retaining its core.  *See* Wolf Memorandum, *Batalla Vidal* ECF No. 297-1.  No court order has ever required DACA to continue indefinitely, let alone in any particular form.  Nor could there be any legal basis for such an order.  Indeed, this Court itself has recognized that "Defendants indisputably can end the DACA program."  *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 408 (E.D.N.Y. 2018).  Whether the agency's efforts to do so actually succeed in litigation is a separate question—especially where, as here, the outstanding legal challenges are no longer even focused on DACA itself, but rather on technical questions regarding the legality of Acting Secretary Wolf's appointment.

Notably, Plaintiffs have never suggested (and still do not now suggest) that Defendants ever violated any of *this* Court's orders, including the preliminary-injunction order from February 2018.  In any case, the Supreme Court *vacated* this Court's preliminary injunction order, *see Dep't of Homeland Security v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1916 (2020)—presumably because it became unnecessary once the Duke Memorandum had been vacated in its entirety under

---

[5] *See Casa de Maryland v. DHS*, No. 8:17-cv-02942-PWG (D. Md.), ECF No. 116, Defs.' Opp'n to Pls.' Mot. for an Order to Show Cause.

the APA.  The same logic applies here: once the Wolf Memorandum is vacated, no additional injunctive relief will be necessary or appropriate.  There is no reason for this Court to go farther than the Supreme Court did when faced with an analogous remedial question in the same litigation.

*       *       *

In sum, vacatur of the Wolf Memorandum will provide Plaintiffs with complete relief, and an additional injunction is unnecessary.  Plaintiffs' request for injunctive relief can be rejected on that basis alone.  *See Monsanto*, 561 U.S. at 165-66.  And there is no basis for Plaintiffs' extraordinary charge that Defendants might do something other than fully comply with this Court's orders.  For those reasons, Plaintiffs' request for an additional permanent injunction should be rejected.

**B.    Additional injunctions to "undo" the Wolf Memorandum are unnecessary and inappropriate.**

Plaintiffs also request a series of specific, *additional* injunctions that would, in Plaintiffs' words, "undo" the Wolf Memorandum.  But the result of an order vacating the Wolf Memorandum *will* be to "undo" the Wolf Memorandum—no additional injunctive relief is necessary to accomplish that result.  Accordingly, those injunctions are also inappropriate for the reasons already set forth above.  *See Monsanto*, 561 U.S. at 165-66.

Plaintiffs' requests for additional permanent injunctive relief are also inappropriate for more specific reasons, and thus warrant a more fulsome response.  In particular, Plaintiffs propose the following:

> 4.  The Court **ORDERS** Defendants to adjudicate renewal requests and, at minimum, accept and process all first-time requests for consideration of deferred action under DACA in accordance with the terms of DACA in place prior to September 5, 2017, and to adjudicate all requests for advance parole from DACA recipients in accordance with 8 U.S.C. § 1182(d)(5) and the terms in place prior to September 5, 2017.

> 5.  The Court **ORDERS** Defendants to immediately (i) extend from one year to two years the grants of deferred action and EADs that Defendants issued since July 28, 2020, and (ii) reissue the relevant

6

documents to the affected DACA recipients, notwithstanding any agency practice of deferring adjudication on renewals.

Proposed Order ¶¶ 4-5, *Batalla Vidal* ECF No. 307-1.  Again, at least in the short term, these proposed additional injunctions will accomplish nothing.  Once the Wolf Memorandum is vacated, the relevant processing criteria will be governed by the last DACA-related memorandum that will be left standing—currently, the Napolitano Memorandum that was issued in June 2012.  And, injunction or not, once the Wolf Memorandum is vacated, the agency will then (consistent with the Napolitano Memorandum) extend from one years to two years any grants of deferred action and employment-authorization that were issued pursuant to the Wolf Memorandum (that is, unless and until the agency, or Congress, takes additional action with respect to DACA).[6]  That process will ultimately provide complete relief to Plaintiffs, and redress any legally cognizable harms that they allegedly suffered as a result of the Wolf Memorandum.

---

[6] Plaintiffs propose that the agency not only extend the relevant grants of deferred action and employment authorization—which, to be clear, the agency intends to begin doing as soon as practicable, with or without an injunction, once the Wolf Memorandum is vacated—but also that the agency "reissue the relevant documents to the affected DACA recipients" on the same timeline. Proposed Order ¶¶ 4-5, *Batalla Vidal* ECF No. 307-1.  But, as a logistical matter, the former request can be accomplished far more quickly than the latter.  Moreover, the proposed order for DHS to reissue relevant documents, which would include Employment Authorization Documents (EADs) that are costly and time-consuming to replace and mail, would not permit DHS to explore and implement more efficient methods of extending the relevant documentation.  For example, as explained in the attached declaration from USCIS, the agency could otherwise decide to automatically extend all of the relevant grants of deferred action and related EADs simultaneously and by operation of law, after publication of notice in the Federal Register—rather than going through a slower, more burdensome, and more error-prone process of reopening each one-year grant to change the validity date, and sending approximately 65,800 letters and EADs through the U.S. mail.  *See* Ex. 1, Decl. of Joseph B. Edlow ("Edlow Decl."), ¶¶ 9-11.  The agency should be allowed leeway to implement this or other expeditious, but equally effective, measures for extending affected individuals' DACA and related documentation—without premature judicial involvement.  If those measures do not satisfactorily address Plaintiffs' concerns, then they may seek further relief at the appropriate time.  These sorts of unanticipated complexities further illustrate why Plaintiffs' proposed injunctions are too blunt an instrument, and why the Court should simply vacate the Wolf Memorandum and leave further implementation to agency staff.  At most, the Court should order the parties to meet and confer to discuss these logistical challenges, and come back to the Court for resolution of any irreconcilable disputes.

By contrast, entering Plaintiffs' proposed injunctions could inappropriately hamstring future agency policy changes with respect to DACA—or, potentially, even future *legislative* changes.  On its face, the permanent injunction that Plaintiffs are requesting risks judicially freezing the DACA policy as it existed prior to September 5, 2017—even if, for example, a future Senate-confirmed Secretary of Homeland Security wished to wind down DACA, which this Court has already correctly noted is "indisputably" within the agency's authority.  *Batalla Vidal*, 279 F. Supp. 3d at 408.   In fact, Plaintiffs' injunction would even seem to prevent a future Senate-confirmed Secretary of Homeland Security from an effort to *expand* DACA, to make modest adjustments to its eligibility guidelines (in either direction), to tweak adjudication standards for DACA-based advance parole, and so on.  Plaintiffs have identified no legal basis for such an order under the APA—and certainly not in a case like this one, in which the legal theory on which the Wolf Memorandum was invalidated was atypically specific to the current Acting Secretary, and the basis for his acting service.  In other words, no future Secretary of Homeland Security should be bound by this order.   Indeed, nor should Mr. Wolf, were he ultimately confirmed by the Senate, where his nomination is currently pending.

Setting aside the lack of any legal basis for such an injunction, as a practical matter its potential harm to the Executive Branch—now, and in the future—is significant.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (the "harm to the opposing party" and the "public interest" factors "merge when the Government is the opposing party").   And such an order could even potentially cause great harm to *Plaintiffs*, were it to prevent future agency efforts to expand or fortify DACA, or if it were to dampen congressional incentives for negotiation on a permanent legislative solution.  These hypotheticals illustrate why the typical APA remedy is vacatur—not a permanent injunction.  Complex policy decisions of this sort are better left to agency experts, which is why "the court's inquiry is at an end" once it "determines that an agency made an error of law" and it "remand[s] to the agency for further action consistent with the correct legal standards."  *Palisades General Hospital*, 426 F.3d at 403.

### C.     Additional declaratory relief is unnecessary and inappropriate.

**1.**  Plaintiffs request "a declaratory judgment that the Wolf Memorandum was issued in violation of the Homeland Security Act and the APA, and that Defendants' efforts to ratify Mr. Wolf's unlawful actions are without effect."  Pls.' Mem. at 16-17; *see also* Proposed Order ¶ 1, *Batalla Vidal* ECF No. 347-1.   But it is hard to see how that request, even if granted, would differ in any practical way from the Memorandum & Order that this Court already issued—"Plaintiffs' request for declaratory judgment is duplicative of its other claims" on which it has already prevailed.  *Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prod., Inc.*, 958 F. Supp. 2d 488, 507 (S.D.N.Y. 2013).   And in this case, vacatur offers "a better or more effective remedy."   *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 360 (2d Cir. 2003). Accordingly, this duplicative request for a declaratory judgment should be rejected.

**2.**  More significantly, Plaintiffs also seek two specific additional declarations with respect to how accrual of "unlawful presence" is calculated under the Immigration & Nationality Act (INA).  Both requests should be rejected.  For starters, both requests are improper because neither operative complaint asserts any claim or requests any relief regarding the calculation of unlawful presence.  Nor have Plaintiffs offered any legal argument at any stage of this litigation (let alone that the Court has actually addressed) regarding how DHS calculates periods of "unlawful presence" under the INA.  And it is not the case (and certainly not self-evident) that the mere fact of the Court's holding on the legality of Acting Secretary Wolf's appointment somehow trumps entirely separate statutory provisions that govern the accrual of unlawful presence. *See* 8 U.S.C. § 1182(a)(9).  Nor is it at all surprising that one who is undisputedly in this country without any lawful immigration status—true for all DACA recipients, and prospective DACA recipients— would accrue periods of "unlawful presence" before a request for DACA was granted (including while the request is pending before the agency).

Even accepting the faulty premise that this Court should now, without any prior briefing on the subject, start tinkering with statutory calculations (and related agency guidance) about unlawful presence, in a misguided effort to try and "undo" indirect, downstream effects of the

issuance of the Wolf Memorandum, Plaintiffs' proposals should *still* be rejected. That is because Plaintiffs' proposals actually go *farther* than any relief that would have been available to class members had the pre-September 2017 DACA policy been in effect for the past three years.

*First*, Plaintiffs seek a declaration that "individuals who submitted first-time requests for consideration of deferred action under DACA before they turned 18, whose requests were denied or rejected under the Wolf Memorandum, who re-submit first-time requests and whose resubmitted requests are granted, do not accrue unlawful presence under 8 U.S.C. § 1182(a)(9) as of the submission date of their first request that was unlawfully rejected under the Wolf Memorandum." Proposed Order ¶ 6, *Batalla Vidal* ECF No. 347-1. This proposal *exceeds* the period of tolling of unlawful presence afforded individuals who submit a DACA request before they turn 18 under the pre-September 2017 DACA policy.[7] Specifically, it would toll not only the period of time during which a covered individual's rejected or denied first-time request was pending—in addition to the time any resubmitted request is pending, if granted—it would also toll, without limitation, all time the individual takes to in fact resubmit his or her DACA request once the court issues its order.

In other words, under Plaintiffs' proposal, an individual could wait several years before resubmitting his or her request and still benefit from this provision, on the theory that the request was wrongfully rejected years ago. In that circumstance, were Plaintiffs' proposed order adopted, years of unlawful presence time would have to be forgiven—not because USCIS rejected their prior initial DACA request in 2020 under the Wolf Memorandum, but because the individual delayed resubmission of his or her DACA request after having turned 18. As a practical matter, this would be a great *expansion* of the pre-September 2017 tolling policy, and it would cover periods of time when a DACA request is not pending before USCIS and is beyond its control.[8]

---

[7] *See* DACA, Archived Frequently Asked Questions Q48, *available at* https://www.uscis.gov/archive/frequently-asked-questions#:~:text=Archived%20Content&text=USCIS%20is%20not%20accepting%20requests,5%2C%202017.

[8] Although Plaintiffs' request should be rejected altogether for this and other reasons, at a minimum, any such relief should be contingent not only on the resubmitted DACA request being

*Second*, even more expansively, Plaintiffs seek a declaration that "individuals who became prima facie eligible for deferred action under DACA after July 28, 2020, and who submit their first-time request for consideration of deferred action under DACA after the issuance of this order and are granted deferred action under DACA, do not accrue unlawful presence under 8 U.S.C. § 1182(a)(9) as of the date they turned 18." Proposed Order ¶ 6, *Batalla Vidal* ECF No. 347-1. But once again, this proposal goes far beyond the relief that DACA requestors would be eligible for even under the pre-September 2017 DACA policy. Under Plaintiffs' rubric, anyone who becomes "prima facie eligible" for DACA would have all of their accrued unlawful presence erased simply by filing a new DACA request that is approved, regardless of their age on July 28, 2020. But Plaintiffs fail to define "prima facie eligibility"—or tie such "prima facie eligibility" to the requestor's age when eligibility was attained. For example, a 29-year old who is not a high school graduate or honorably discharged from the armed forces may be considered for DACA if he enrolls in school—assuming he meets the other DACA guidelines. Under Plaintiffs' requested language, that individual would have *11 years* of unlawful presence erased—for reasons that have nothing to do with the Duke, Nielsen, or Wolf Memoranda. This windfall would be contrary to longstanding USCIS policy across multiple administrations, in which a grant of deferred action stops the continued accrual of unlawful presence, but does not eliminate prior periods already accrued, *see* USCIS Adjudicator's Field Manual, Ch. 40.9.2(b)(3)(J), *available at* https://www.uscis.gov/sites/default/files/document/policy-manual-afm/afm40-external.pdf. And this request also goes far beyond the 2012 version of the DACA policy, which only provided an accommodation for DACA requestors who were under the age of 18 when they filed their requests, but whose requests were not granted until after they turned 18.[9]

---

approved, but also on the individual resubmitting their DACA request within in a reasonable, clearly defined period of time after the Court's order of vacatur.

[9]  *See* DACA, Archived Frequently Asked Questions Q48, *available at* https://www.uscis.gov/archive/frequently-asked-questions#:~:text=Archived%20Content&text=USCIS%20is%20not%20accepting%20requests,5%2C%202017.

### D.     Individualized notice to absent class members is unnecessary and legally unwarranted.

In their brief, Plaintiffs request that some form of notice about the Court's decision be provided to absent class members, and they briefly mention the possibility of notice on the agency's website.  *See* Pls.' Mem. at 19-20.  In their proposed order, however—in language that is not even mentioned in, let alone justified by their brief—Plaintiffs propose a series of unfeasibly short deadlines and specific demands on the subject of notice.  *See* Proposed Order ¶¶ 8-9, *Batalla Vidal* ECF No. 307-1.  All of these requests and deadlines should be rejected as unnecessary in light of Defendants' agreement to provide public notice on the relevant agency websites, even in the absence of a court order.

**1.**     At the outset, Plaintiffs barely make reference to Defendants' actual legal obligations, if any, on the subject of notice to absent class members.  Where, as here, a class has been certified under Federal Rule of Civil Procedure 23(b)(2), there is no legal right to *any* form of notice to absent class members.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) ("The Rule . . . does not even oblige the District Court to afford them notice of the action."); 3 Newberg on Class Actions § 8:3 (5th ed.) (explaining that notice of class certification is "not mandatory in (b)(1) and (b)(2) class actions," and that in practice courts "generally limit certification notice in (b)(1) and (b)(2) actions to exceptional situations involving due process concerns").  To be sure, a district court has the *authority* to order some form of notice to absent members of a (b)(2) class, even though it is not required.[10]  But Plaintiffs have not even attempted to show that this is the sort of "exceptional situation[] involving due process concerns" that might justify this atypical step.

**2.**     In any case, apart from any legal obligation or future court order, in the interest of clarity and transparency, Defendants do intend to post public notice on the relevant agency websites regarding this Court's decision, and what it means for members of the certified class—much like

---

[10] *Compare* Fed. R. Civ P. 23(c)(2)(A) (authorizing notice in a (b)(1) or (b)(2) class), *with* Fed. R. Civ. P. 23(c)(2)(B) (*requiring* notice in a (b)(3) class, and specifying that such notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort").

the agency did (also of its own accord) in February of 2018 when this Court (and another district courts in California) issued a DACA-related preliminary injunction.  Defendants intend to post such notice no later than ten days from this Court's remedial order.  *See* Ex. 1, Decl. of Joseph B. Edlow ("Edlow Decl."), ¶ 8. Given that voluntary commitment from the agency, no court order regarding notice is necessary.

3.   If this Court does intend to order Defendants to issue some form of notice beyond publication on the relevant agency websites, the deadlines and specific details set forth in Plaintiffs' proposed order—entirely unmentioned in (and thus unjustified by) Plaintiffs' brief—should be rejected as unreasonable, unrealistic, and insufficiently accommodating of the logistical challenges facing agency staff.  In particular, Plaintiffs request the following:

> 8.  The Court **ORDERS** Defendants to post prominently on their website within three (3) calendar days, and send, by mail and by electronic mail wherever possible within ten (10) calendar days, notice of this court's order, along with a notice from class counsel regarding their rights under this court's order, to individuals whose first-time requests for consideration of deferred action under DACA or advance parole requests were submitted on or after June 30, 2020 and rejected by Defendants pursuant to the Wolf Memorandum. The Court **ORDERS** class counsel to provide the notice for Defendants to send to the class within three (3) calendar days of this order.
>
> 9.  The Court **ORDERS** Defendants to give appropriate notice to requestors and their immigration counsel, if any, of the relief required by paragraph 5 above, within ten (10) calendar days of this order.

Proposed Order ¶¶ 8-9, *Batalla Vidal* ECF No. 307-1.  But none of this is necessary once Defendants place prominent notice on the relevant agency websites, which they have now agreed to do voluntarily.  And for the reasons explained in detail in the attached USCIS declaration, 10 calendar days is too soon to provide the sort of notice that is contemplated by Plaintiffs.  *See* Ex. 1, Edlow Decl. ¶¶ 7-8.

In addition, there is no basis to allow *Plaintiffs'* counsel to draft a notice that will be published on a government website, and Plaintiffs cite no authority that would justify that extraordinary facet of Plaintiffs' notice request.  Instead, Defendants intend to post reasonable

notice on the relevant agency websites—just as they did in February of 2018, in a manner that drew no objection from Plaintiffs.  Should Plaintiffs ultimately find themselves dissatisfied with the language on the website, they are free to confer with counsel for Defendants to propose alternative language.  Plaintiffs are also free to propose language to Defendants' counsel ahead of time.  But the content of government websites should remain subject to the government's editorial control, rather than control by Plaintiffs' counsel.[11]

### E.   Plaintiffs' request that Defendants file monthly reports indefinitely should be rejected.

Plaintiffs also request that Defendants be ordered to prepare and file monthly reports, which would include a variety of statistical information about the DACA policy:

> 10.  The Court **ORDERS** Defendants to keep records of its actions on all DACA-related applications and provide regular summary reports to the court and class counsel on the first business day of each month. Such monthly reports shall include (1) the number of first-time DACA applications received, adjudicated, approved, denied, and rejected that month; (2) the number of renewal requests received, adjudicated, approved, denied, and rejected that month, and (3) the number of advance parole requests received, adjudicated, approved, denied, and rejected that month.

Proposed Order ¶ 10, *Batalla Vidal* ECF No. 307-1.  This proposed obligation appears to have no end date—it is styled as a permanent, indefinite obligation.  Other than a generic reference to the Court's "equitable powers" (and another conclusory accusation that "Defendants have defied the Supreme Court's decision in *Regents*," Pls.' Mem. at 21) Plaintiffs offer no justification for this request.  To the extent it is about monitoring compliance with the Court's forthcoming remedial order, it is premature and unnecessary.  If some actual compliance problem arises, the parties can meet and confer, and if the parties are unable to resolve the issue on their own, Plaintiffs may present any disputes to the Court in the normal course—as is typical.  But there is no need to order

---

[11] At a minimum, if the Court is to permit class counsel to participate in the drafting of any notice, USCIS's deadline to mail the notice should run from the date that USCIS is provided the form of the notice by class counsel (or from the date that the text of the notice is otherwise finalized).

Defendants—in advance, and in perpetuity—to file monthly status reports.  That is especially true where, as here, much of this information is *already* provided on the USCIS website.[12]

### F.     Plaintiffs' requests for various statistical information should be rejected.

Without acknowledging it, Plaintiffs have served the near-equivalent of post-judgment discovery requests in their proposed order—with a 10-day response time, no less.  *But cf.* Fed. R. Civ. P. 33(b)(2) (providing 30 days to respond to interrogatories).  In particular, Plaintiffs propose the following orders:

> 11.  The Court **ORDERS** Defendants to provide class counsel, within ten (10) calendar days of the date of this order, the names and contact information for all members of the Subclass certified by this court.

> 12.  The Court **ORDERS** Defendants to file with the Court and provide to class counsel, within ten (10) calendar days of the date of this order, a report that includes (1) the number of first-time requests for consideration of deferred action under DACA received and rejected pursuant to the Wolf Memorandum; (2) the number of renewal DACA applications and applications for EADs that were granted for a period of one year pursuant to the Wolf Memorandum; and (3) the number of advance parole requests received, approved, denied, and rejected pursuant to the Wolf Memorandum

Proposed Order ¶¶ 11-12, *Batalla Vidal* ECF No. 307-1.  There is no legal basis for these discovery-like requests, which are once again barely mentioned in (let alone justified by) Plaintiffs' memorandum of law.  Should actual questions arise in the future about Defendants' efforts to comply with the Court's forthcoming remedial order, the parties can confer, attempt to resolve them, and (if it proves to be necessary) present any unsolvable disputes to the Court for resolution.[13]

---

[12]https://www.uscis.gov/sites/default/files/document/reports/DACA_performancedata_fy2020_qtr3.pdf.

[13] Although Defendants continue to oppose these requests for relief in full, some of the information that Plaintiffs are seeking is already included in the Edlow Declaration that is attached as Exhibit 1 to this filing.  In particular, the Edlow Declaration reports that "USCIS estimates that there are approximately 65,800 individuals who have been granted DACA and DACA-related employment authorization documents (EADs) since July 28, 2020 for a one-year validity period."  Ex. 1, Edlow Decl. ¶ 6.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' requests for declaratory and injunctive relief.

Dated: December 1, 2020                    Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

JOHN V. COGHLAN
Deputy Assistant Attorney General

SETH D. DuCHARME
Acting United States Attorney

BRAD P. ROSENBERG
Assistant Branch Director

 /s/   *Stephen M. Pezzi*
GALEN N. THORP
  Senior Trial Counsel
STEPHEN M. PEZZI
RACHAEL L. WESTMORELAND
  Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 305-8576
Fax: (202) 616-8470
Email: stephen.pezzi@usdoj.gov

JOSEPH A. MARUTOLLO
Assistant U.S. Attorney
United States Attorney's Office
Eastern District of New York
271-A Cadman Plaza East, 7th Floor
Brooklyn, NY  11201
Phone:  (718) 254-6288
Fax:  (718) 254-7489
Email:  joseph.marutollo@usdoj.gov

*Attorneys for Defendants*

16