**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Martín Jonathan Batalla Vidal, et al., *Plaintiffs*, v. Alejandro Mayorkas, in his official capacity as Secretary of Homeland Security, et al., *Defendants*. | Case No. 1:16-cv-04756 (NGG) (VMS) May 20, 2022 |

*NEW YORK* **PLAINTIFFS' SUBMISSION IN SUPPORT OF**
*BATALLA VIDAL* **PLAINTIFFS' MOTION FOR MODIFICATION**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

BACKGROUND ................................................................................................................................. 3

ARGUMENT ....................................................................................................................................... 5

CONCLUSION ................................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Department of Homeland Security v. Regents of the University of California*,
 140 S. Ct. 1891 (2020) ...........................................................................................................3

*System Fed'n No. 91 v. Wright*,
 364 U.S. 642 (1961) ...............................................................................................................5

**Federal Regulations**

8 C.F.R. § 103.2 ...........................................................................................................................6

Final Rule: Special Immigrant Juvenile Petitions, 87 Fed. Reg. 13,066 (Mar. 8, 2022) ................8

**Miscellaneous Authorities**

11A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2961 (3d ed.
 Westlaw Apr. 2022 Update) ...................................................................................................5

Comment Letter from Att'ys Gen. 1 (Nov. 19, 2021), https://ag.ny.gov/sites/default/
 files/daca_nprm_ multistate _comment_11.19.21_final.pdf. ........................................... 1-2

United States Citizenship and Immigration Services, U.S. Dep't of Homeland Sec.,
 *Consideration of Deferred Action for Childhood Arrivals (DACA), Frequently
 Asked Questions: Renewals* (last updated Aug. 31, 2021), https://www.uscis.gov/
 humanitarian/consideration-of-deferred-action-for-childhood-arrivals-
 daca/frequently-asked-questions ............................................................................................9

United States Citizenship and Immigration Services, U.S. Dep't of Homeland Sec.,
 *Deferred Action for Childhood Arrivals: Response to January 2018 Preliminary
 Injunction* (last updated Aug. 24, 2020), https://www.uscis.gov/archive/deferred-
 action-for-childhood-arrivals-response-to-january-2018-preliminary-injunction .....................10

United States Citizenship and Immigration Services, U.S. Dep't of Homeland
 Sec., Policy Alert, *Special Immigrant Juvenile Classification and Deferred
 Action* (Mar. 7, 2022), https://www.uscis.gov/sites/default/files/
 document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf ................................8

United States Citizenship and Immigration Services, U.S. Dep't of Homeland
 Sec., *Preparing for Your Biometric Services Appointment*
 (last updated July 28, 2021), https://www.uscis.gov/forms/filing-guidance/
 preparing-for-your-biometric-services-appointment ................................................................6

United States Citizenship and Immigration Services, U.S. Dep't of Homeland
 Sec., Form I-821D, Consideration of Deferred Action for Childhood Arrivals,
 https://www.uscis.gov/sites/default/files/document/forms/i-821d.pdf ...................................10

## PRELIMINARY STATEMENT

The States of New York, Massachusetts, Washington, Colorado, Connecticut, Delaware, Hawaii, Illinois, Iowa, New Mexico, North Carolina, Oregon, Pennsylvania, Rhode Island, and Vermont, and the District of Columbia (collectively "the *New York* plaintiffs") submit this brief regarding the Motion for Modification filed by the plaintiffs in *Batalla Vidal v. Mayorkas*, No. 16-cv-4756 on April 25, 2022. The *Batalla Vidal* plaintiffs request that the Court modify its December 4, 2020, order to provide relief short of adjudication to approximately 80,000 first-time Deferred Action for Childhood Arrivals (DACA) applicants who submitted their applications following the December order ("First-Time Applicants") and to adjudicate the applications of individuals whose DACA status expired more than one year prior to the submission of their renewal application ("Extended Renewal Applicants"). *See* Pls.' Mem. of Law In Supp. of Mot. for Modification ("Pls.' Mem.") at 1–2, 9–20 (Apr. 25, 2022), ECF No. ____.

The *New York* plaintiffs have a profound interest in preserving and strengthening DACA. More than 130,000 DACA recipients currently live in our States, where they are vital members of the community and workforce. Since 2012, DACA had provided access to work authorization and protection from removal to approximately 825,000 individuals across the country, including valued residents of our States.[1] DACA recipients have grown up in this country, enrolled in degree programs, embarked on careers, purchased homes, and started their own families, all in reliance on the policy. Their success has rippled through our States: DACA recipients bolster our tax bases and economies, work in our essential industries, and enrich the student bodies and faculties of our

---

[1] *See* Comment Letter from Att'ys Gen. 1 (Nov. 19, 2021) (Deferred Action for Childhood Arrivals, 86 Fed. Reg. 53,736), https://ag.ny.gov/sites/default/files/daca_nprm_multistate_comment_11.19.21_final.pdf.

1

public universities. The *New York* plaintiffs thus have a fundamental interest in ensuring that our DACA-eligible residents and recipients are given an opportunity to achieve their full potential, and have worked for years to protect and defend this important policy.[2]

This Court can—and should—modify its December 4, 2020, order to grant relief that effectuates the intent of the order, and can do so without creating a conflict with the July 16, 2021, injunction entered in *Texas v. United States*, No. 18-cv-68 (ASH) (S.D. Tex. July 16, 2021), ECF No. 576 ("*Texas* Inj.").[3] To that end, this Court should clarify the provision of its order that the U.S. Department of Homeland Security (DHS) "accept[] first-time requests for consideration of deferred action under DACA" (Order at 4, (Dec. 4, 2020), ECF No. 354)—a step that the *Texas* injunction permits despite enjoining DHS "from granting DACA status for any new applicants" (*Texas* Inj. at 4). For example, this Court may order U.S. Citizenship and Immigration Services (USCIS) to schedule biometric appointments and process biometric information for First-Time Applicants—steps that appear to fall squarely within the meaning of "accepting" a DACA application without granting relief on that application. With respect to the remaining relief sought by the *Batalla Vidal* plaintiffs, the *New York* plaintiffs preliminarily support the relief requests, and, at this stage, seek more information from DHS about their legal and operational requirements in

---

[2] *See, e.g.*, *id.* (comment letter from the *New York* plaintiffs and other States in support of the rulemaking to fortify DACA); Br. for Amici Curiae States in Supp. of Appellants for Reversal, *Texas v. United States*, No. 21-40680 (5th Cir. Dec. 15, 2021), ECF No. 00516133132 (amicus brief by many of the *New York* plaintiffs and other States in support of reversing the *Texas* injunction).

[3] As many of the *New York* plaintiffs explained in an amicus brief to the U.S. Court of Appeals for the Fifth Circuit, we strongly disagree with the *Texas* injunction on the merits and with respect to its scope. *See Texas* Br. for Amici Curiae States at 1–4. The *New York* plaintiffs believe that the Fifth Circuit is the proper forum to litigate challenges to the propriety and scope of the *Texas* injunction. Briefing in the *Texas* appeal was completed on March 30, 2022, and the Fifth Circuit proposed calendaring oral argument the week of July 4, 2022. *See* Docket, *Texas*, No. 21-40680 (5th Cir.).

order to ensure effective implementation and an absence of conflict with the *Texas* injunction. To that end, the *New York* plaintiffs strongly urge this Court to order defendants (including senior officials with decision-making authority) to participate in mediation, as the *Batalla Vidal* plaintiffs have suggested, and explain what additional processing steps can be performed while the legality of the *Texas* injunction is being litigated; what interim relief DHS has the authority to issue during the pendency of the *Texas* appeal; and why, contrary to its previous practice, USCIS is not treating Extended Renewal Applicants like other renewal applicants whose requests are being processed without running afoul of the *Texas* injunction.

## BACKGROUND

On June 18, 2020, the Supreme Court of the United States, in *Department of Homeland Security v. Regents of the University of California*, reviewed decisions by this Court and other district courts, affirmed that the September 5, 2017, rescission of DACA violated the Administrative Procedure Act, remanded to DHS to "consider the problem anew," and remanded this case for further proceedings. 140 S. Ct. 1891, 1910–16 (2020). On the heels of the Supreme Court's decision, the (purported) Acting Secretary of Homeland Security Chad F. Wolf issued a memorandum that effectively suspended DACA pending DHS's review on remand. *See* Recons. of the June 15, 2012 Mem., *Batalla Vidal* (July 28, 2020), ECF No. 297-1.

The *Batalla Vidal* and the *New York* plaintiffs filed motions for summary judgment challenging the legality of the Wolf memorandum. This Court granted the motions on November 14, 2020, finding that Mr. Wolf's appointment was invalid, and he therefore lacked authority to issue the memorandum. Mem. & Order, *Batalla Vidal* (Nov. 14, 2020), ECF No. 342. On December 4, 2020, following additional briefing on remedies, this Court vacated the Wolf memorandum and ordered defendants to "accept[] first-time requests for consideration of deferred action under DACA,

3

renewal requests, and advance parole requests, based on the terms of the DACA program prior to September 5, 2017, and in accordance with this court's Memorandum & Order of November 14, 2020." Order at 4, ECF No. 354. In conjunction with this relief, the Court required defendants to report the number of first-time DACA applications, renewal requests, and advance parole requests that were received, adjudicated, approved, denied, and rejected from November 14 until December 31, 2020. *Id.* at 4–5. And the Court specifically retained jurisdiction over the matter for purposes of "construction, modification, and enforcement" of the order. *Id.* at 5–6.

Approximately seven months later, on July 16, 2021, the Texas federal district court presiding over a long-running lawsuit filed by Texas and other States challenging the validity of the DACA program issued an order and permanent injunction (i) vacating the 2012 memorandum establishing DACA and (ii) barring DHS from granting any first-time DACA applications. *See Texas* Inj.at 3–4. The *Texas* injunction provides that "DHS may continue to accept [first-time] applications as it has been ordered to do by" this Court and stays the effect of the injunction as to "DACA recipients who obtained that status on or before the date of this injunction and DACA renewal applications for these existing recipients." *Id. at* 4.

The *Batalla Vidal* plaintiffs allege that, following entry of the *Texas* injunction, USCIS stopped processing first-time applications as well as the applications of Extended Renewal Applicants, even though the latter group of applicants previously had DACA status. Pls.' Mem. at 1–2, 6. The *Batalla Vidal* plaintiffs further allege that USCIS cancelled previously scheduled biometrics appointments for First-Time Applicants. *Id.* at 1, 13. This Court granted the *Batalla Vidal* plaintiffs leave to move to clarify the December 4, 2020, order, and granted the *New York* plaintiffs leave to file a submission regarding the motion. Minute Entry (Apr. 4, 2022); Order (Apr. 12, 2022), ECF No. 381. This brief is that submission.

4

**ARGUMENT**

As the *Batalla Vidal* plaintiffs correctly observe, courts possess the power to clarify and modify the terms of an injunctive decree in order to ensure that the decree accomplishes its intended result. *See* Pls.' Mem. at 9–11.[4] "The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief." *System Fed'n No. 91 v. Wright*, 364 U.S. 642, 647 (1961). Here, the Court expressly retained jurisdiction over the December 4, 2020, order for "purposes of construction, modification, and enforcement." Order at 5–6, ECF No. 354. And the exercise of the Court's equitable powers to clarify or to modify the order is particularly warranted now for two reasons.

*First*, at the time the Court issued its injunction requiring defendants to "accept[] first-time requests for consideration," *id.* at 4, there was no obstacle to DHS accepting and adjudicating such DACA applications. Accordingly, the parties proceeded with the understanding that USCIS would process the applications that the Court ordered the agency to "accept[]," even though the order itself did not expressly require such action. *See id.* The Court, too, appeared to share in this understanding: the December 4, 2020, order required defendants to report "the number of first-time DACA applications received, *adjudicated, approved, denied, and rejected*" in the first six weeks after the Court reopened DACA to first-time applicants. *Id.* at 5 (emphasis added). However, in response to the *Texas* injunction, defendants apparently ceased not only to adjudicate or grant first-time DACA applications, but even to process first-time applications, going as far as to cancel previously

---

[4] *See also* 11A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2961 (3d ed. Westlaw Apr. 2022 Update) ("The continuing responsibility of the issuing court over its decrees is a necessary concomitant of the prospective operation of equitable relief . . . .").

5

scheduled biometrics appointments (*see* Pls.' Mem. at 1, 13). To effectuate the intended purpose of its December 4, 2020, order, the Court should clarify that its decree that defendants "accept[] first-time requests for consideration" includes *the processing* of these applications and the Court should order the defendants to carry out any intermediate processing steps that do not conflict with the *Texas* injunction. See *infra* at 6–7.

*Second*, the equities weigh sharply in favor of modifying the December 4, 2020, order to afford some form of relief to the 80,000 individuals who submitted first-time DACA applications in reliance on the Court's order and for whom the grant of DACA is currently forestalled. This is especially the case given that these first-time applications may very well have been granted had the federal government acted more expeditiously in adjudicating applications prior to the issuance of the *Texas* injunction. *See* Pls.' Mem. at 5 (noting that USCIS adjudicated only 1,663 of 50,000 applications in the first four months following the December 4, 2020, order).

With respect to the specific forms of relief sought by the *Batalla Vidal* plaintiffs, there are at least two intermediate processing steps described in the *Batalla Vidal* plaintiffs' motion (Pls.' Mem. at 4) which do not appear to conflict with the *Texas* injunction that precludes defendants from "granting" first-time applications (*Texas* Inj. at 4): taking and processing applicants' biometrics. DHS is independently authorized by regulation to "require *any* applicant, petitioner, sponsor, beneficiary, or individual filing a benefit request . . . to appear for an interview and/or biometric collection." 8 C.F.R. § 103.2(b)(9) (emphasis added).[5] These steps are clerical actions that provide

---

[5] *See also* USCIS, U.S. Dep't of Homeland Sec., *Preparing for Your Biometric Services Appointment* (last updated July 28, 2021), https://www.uscis.gov/forms/filing-guidance/preparing-for-your-biometric-services-appointment (stating that the agency has "the general authority to require and collect biometrics from any applicant" for "any immigration and naturalization benefit").

6

data about the applicant but do not determine an application's merit and cannot plausibly be construed as adjudication—much less a grant—of first-time DACA applications. Accordingly, this Court should order USCIS to schedule biometric appointments for the subclass of 80,000 First Time Applicants and to process their biometric information. Doing so appropriately gives effect to the Court's decree that DHS "accept[] first-time requests *for consideration*" (Order at 4, ECF No. 354 (emphasis added)), while respecting the injunction against *granting* first-time DACA applications that is currently in place.

There may very well be other intermediate processing steps that are likewise consistent with both orders. But absent more concrete information from DHS on what the processing of DACA applications entails, the *New York* plaintiffs have incomplete information about what those processing steps can and should be. *See* Pls.' Mem. at 3–4 (outlining the *Batalla Vidal* plaintiffs' best "understand[ing]" of the intermediate processing steps). The *New York* plaintiffs thus urge the Court to grant the *Batalla Vidal* plaintiffs' request for mediation (Pls.' Mem. at 16 n.18) and order the parties to explore what additional intermediate processing steps DHS can perform while the *Texas* injunction is being litigated. Specifically, the Court should order defendants to (i) explain what specific, interim steps occur between "accepting" a first-time DACA application and "granting" it; and (ii) if defendants take the position that DHS is prohibited from engaging in any of the enumerated intermediate processing steps, to justify their position with citations to legal authority.[6]

---

[6] If the Court orders mediation, the *New York* plaintiffs respectfully request to participate in the mediation process. To ensure that the parties' discussions are fruitful, we further request that the Court order either the named defendants or other senior officials with decision-making authority on the issues presented in the *Batalla Vidal* plaintiffs' motion to appear from the Department of Justice and DHS (including USCIS).

7

The Court likewise should order defendants to explain in mediation any categories of interim relief that DHS has the authority to provide without running afoul of the *Texas* injunction. As the *Batalla Vidal* plaintiffs observe (*id.* at 14–16), USCIS has—in other immigration contexts—invoked the agency's "inherent authority" to grant interim relief where the processing of applications for immigration relief is delayed. For example, USCIS recently updated its policy manual "to consider deferred action (and related employment authorization) for noncitizens classified as Special Immigrant Juveniles (SIJs) who are ineligible to apply for adjustment of status to lawful permanent resident (LPR) status solely due to visa unavailability."[7] In explaining the basis for this new guidance, USCIS emphasized that interim relief for SIJs who are awaiting adjustment of status is warranted because the process is "often delayed for years, leaving this especially vulnerable population in limbo."[8]

Critically, USCIS made clear that the grant of this interim relief constituted an exercise of DHS's "inherent authority" to provide interim relief without rulemaking.[9] The *New York* plaintiffs do not know whether, or why, defendants would understand their "inherent authority" with respect to the DACA-eligible population to be limited in a way that prevents the defendants from providing the same type of interim relief here, as requested by the *Batalla Vidal* plaintiffs.[10] Accordingly, this Court should order defendants to explain in mediation whether they have "inherent authority"

---

[7] USCIS, U.S. Dep't of Homeland Sec., Policy Alert, *Special Immigrant Juvenile Classification and Deferred Action* 1 (Mar. 7, 2022), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf.

[8] *Id.*

[9] Final Rule: Special Immigrant Juvenile Petitions, 87 Fed. Reg. 13,066, 13,095 (Mar. 8, 2022).

[10] As noted above (at 6–7), defendants need not rely on their "inherent authority" to perform the intermediate processing steps of scheduling biometric appointments and processing biometric information because they are authorized to do so by regulation.

to provide any interim relief (whether requested by the *Batalla Vidal* plaintiffs or not) to the 80,000 class members who submitted first-time DACA applications at a time when DACA was fully operational and whose applications cannot be adjudicated for reasons that have nothing to do with actions taken by the applicants.

Finally, the *New York* plaintiffs respectfully request that the Court order defendants to address in mediation why USCIS is refusing to adjudicate extended-renewal applications, notwithstanding the fact that the *Texas* injunction permits the adjudication of DACA renewal applications. *See Texas* Inj. at 3–4. Specifically, USCIS appears to be treating extended-renewal applications as first-time applications that may not be granted under the *Texas* injunction,[11] but USCIS previously distinguished between the two categories, including during earlier stages of this litigation. For example, in a February 13, 2018, order, this Court preliminarily enjoined defendants' rescission of DACA, ordered defendants to maintain DACA as it existed on September 4, 2017, and specified that, while defendants "need not consider new applications by individuals who had never before obtained DACA benefits," defendants "may adjudicate DACA renewal requests on a case-by-case, individualized basis." *See* Am. Mem. & Order & Prelim. Inj. at 2, 53, *Batalla Vidal* (Feb. 13, 2018), ECF No. 209. In response to this order, USCIS, which was "not accepting requests from individuals who have never before been granted deferred action under DACA," announced that it would "resume[] accepting requests to renew a grant of deferred action under DACA," *including* allowing

---

[11] *See* USCIS, U.S. Dep't of Homeland Sec., *Consideration of Deferred Action for Childhood Arrivals (DACA), Frequently Asked Questions: Renewals* at No. 21 (last updated Aug. 31, 2021), https://www.uscis.gov/humanitarian/consideration-of-deferred-action-for-childhood-arrivals-daca/frequently-asked-questions (explaining that DACA requests submitted more than one year since the last grant of DACA expired will be considered "initial" requests that will not be processed beyond acceptance, in compliance with the *Texas* injunction).

Extended Renewal Applicants to "file a new initial DACA request."[12] Moreover, USCIS instructed these Extended Renewal Applicants, like other applicants seeking renewal within the one-year filing window, to list the date their prior DACA expired on Part 1 of the Form I-821D[13] to "assist USCIS with reviewing [their] DACA request for acceptance."[14]

In light of the above, it appears that at least for some period following this Court's February 13, 2018, order, USCIS was adjudicating applications from Extended Renewal Applicants even though the agency was *not* adjudicating first-time, initial applications. The agency has taken a different course here but has not provided any reasons.[15] The Court should order defendants to explain why USCIS is no longer treating Extended Renewal Applicants like other renewal applicants, and to explain whether USCIS has authority to provide any relief for this category of applicants consistent with the terms of the *Texas* injunction.

---

[12] USCIS, U.S. Dep't of Homeland Sec., *Deferred Action for Childhood Arrivals: Response to January 2018 Preliminary Injunction* (last updated Aug. 24, 2020), https://www.uscis.gov/archive/deferred-action-for-childhood-arrivals-response-to-january-2018-preliminary-injunction (explaining that "[d]ue to federal court orders on Jan. 9, 2018 and Feb. 13, 2018, USCIS has resumed accepting requests to renew a grant of deferred action under DACA" and describing the treatment of renewal requests filed within and outside of the one-year filing window).

[13] *See* USCIS, U.S. Dep't of Homeland Sec., Form I-821D, Consideration of Deferred Action for Childhood Arrivals, https://www.uscis.gov/sites/default/files/document/forms/i-821d.pdf.

[14] USCIS, U.S. Dep't of Homeland Sec., *Deferred Action for Childhood Arrivals: Response to January 2018 Preliminary Injunction, supra*.

[15] As further evidence that USCIS previously recognized Extended Renewal Applicants as distinct from first-time, initial applicants, defendants' January 4, 2021, status report in this case noted that data on the number of "DACA - Initial" requests "may include some I821D renewal requests where the requestor's previous DACA had expired more than 1 year ago or the previous DACA was terminated." *See* Ex. A to Defs.' Status Rep. at n.6, *Batalla Vidal* (Jan. 4, 2021), ECF No. 361-1. Defendants explained that "[s]ystem limitations prevent USCIS from being able to segregate such DACA requests categorized as 'initials' from those that were filed by individuals seeking DACA for the first-time." *Id.* In other words, although USCIS's system categorized Extended Renewal Applicants and First-Time Applicants together as "initial" requests, USCIS recognized the distinction between these two groups of applicants.

## CONCLUSION

The *New York* plaintiffs agree that this Court has authority to modify its December 4, 2020, order, including by ordering defendants to take actions that are permitted by the terms of the *Texas* injunction such as the taking and processing of biometrics for the 80,000 First-Time Applicants. The *New York* plaintiffs further agree that defendants may have authority to provide other forms of relief to First-Time Applicants and Extended Renewal Applicants and ask that this Court order defendants to participate in mediation to determine what relief defendants can provide consistent with the terms of the *Texas* injunction during the pendency of the *Texas* appeal.

Dated:   New York, New York
         May 20, 2022

                                    Respectfully submitted,

                                    LETITIA JAMES
                                      *Attorney General*
                                      *State of New York*
                                    Attorney for State Plaintiffs


                                By:   /s/ Ester Murdukhayeva
                                    ESTER MURDUKHAYEVA
                                    Assistant Deputy Solicitor General

BARBARA D. UNDERWOOD                28 Liberty Street
  *Solicitor General*               New York, NY 10005
ESTER MURDUKHAYEVA                  (212) 416-6279
  *Assistant Deputy Solicitor General*
LOUISA IRVING                       *Counsel for Plaintiffs New York,*
  *Assistant Attorney General*      *Massachusetts, Washington, Colorado,*
GRACE X. ZHOU                       *Connecticut, Delaware, Hawaii, Illinois,*
  *Assistant Solicitor General*     *Iowa, New Mexico, North Carolina, Oregon,*
    *of Counsel*                    *Pennsylvania, Rhode Island, and Vermont,*
                                    *and the District of Columbia.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2022, a true and correct copy of the *New York* plaintiffs' Submission In Support of *Batalla Vidal* Plaintiffs' Motion for Modification was served electronically by email to counsel for *Batalla Vidal* plaintiffs and counsel for defendants at the following email addresses:

Counsel for *Batalla Vidal* plaintiffs:

Marisol Orihuela, marisol.orihuela@yale.edu
Michael Wishnie, michael.wishnie@yale.edu
Muneer Ahmad, muneer.ahmad@yale.edu
Araceli Martinez-Olguin, martinez-olguin@nilc.org
Jessica Hanson, hanson@nilc.org
Jessica Young, jessica.young@maketheroadny.org
Karen C. Tumlin, karen.tumlin@justiceactioncenter.org
Paige Austin, paige.austin@maketheroadny.org
Vanessa L. Dell, vanessa.dell@maketheroadny.org
Alexia R. Schapira, alexia.schapira@maketheroadny.org
batallavidal_lso@mailman.yale.edu
batalla@maketheroadny.org
batalla@nilc.org
harold.solis@maketheroadny.org

Counsel for defendants:

Cormac Early, Cormac.A.Early@usdoj.gov
Stephen Pezzi, Stephen.Pezzi@usdoj.gov
Rachael Westmoreland, Rachael.Westmoreland@usdoj.gov
Brad Rosenberg, Brad.Rosenberg@usdoj.gov
Joseph Marutollo, Joseph.Marutollo@usdoj.gov
Scott Dunn, Scott.Dunn@usdoj.gov

/s/ Grace X. Zhou
GRACE X. ZHOU
Assistant Solicitor General
Office of the New York Attorney General
28 Liberty St, 23rd Fl.
(212) 416-6160
grace.zhou@ag.ny.gov