1

1  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF NEW YORK
2  ------------------------------x
                                      16-CV-4756(NGG)
3  MARTIN JONATHAN BATALLA
   VIDAL, ET AL.,
4                                     United States Courthouse
           Plaintiffs,               Brooklyn, New York
5
           – versus –                July 7, 2022
6                                     2:30 p.m.
   KIRSTJEN M. NIELSEN, ET AL.,
7
           Defendants.
8
   ------------------------------x
9                                     17-CV-5228(NGG)
   STATE OF NEW YORK, ET AL.,
10                                    United States Courthouse
           Plaintiffs,               Brooklyn, New York
11
           – versus –
12
   DONALD TRUMP, ET AL.,
13
           Defendants.
14
   ------------------------------x
15

16         TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
            BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
17             UNITED STATES SENIOR DISTRICT JUDGE

18  APPEARANCES

19  Attorney for Plaintiffs: MAKE THE ROAD NEW YORK
                             301 Grove Street
20                           Brooklyn, New York 11237
                             BY:  PAIGE AUSTIN, ESQ.
21                                JESSICA YOUNG, ESQ.

22                           JEROME N FRANK LEGAL SVCS. ORG
                             YALE LAW SCHOOL
23                           P.O. Box 209090
                             New Haven, Connecticut 06520
24                           BY:  MICHAEL J. WISHNIE, ESQ.
                                  KAREN TUMLIN, ESQ.
25                                KEVIN CHENG (STUDENT)
                                  AARON BRYCE LEE (STUDENT)

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

```
1   APPEARANCES (CONTINUED)

2                           National Immigration Law Center
                            3450 Wilshire Boulevard #108-62
3                           Los Angeles, California 90010
                            BY:  JESSICA HANSON, ESQ.
4                                ARACELI MARTINEZ-OLGUIN, ESQ.

5
                            STATE OF NEW YORK
6                           OFFICE OF THE ATTORNEY GENERAL
                            28 Liberty Street
7                           New York, New York 10005
                            BY:  ESTER MURDUKHAYEVA, ESQ.
8                                LOUISA IRVING, ESQ.

9
    Attorney for Defendant:  U.S. DEPARTMENT OF JUSTICE
10                          1100 L Street NW
                            Washington, DC 20005
11                          BY:  CORMAC EARLY, ESQ.
                                 BRAD ROSENBERG, ESQ.

12

13

14
    Court Reporter:          LINDA D. DANELCZYK, RPR, CSR, CCR
15                           Phone:  718-613-2330
                             Fax:    718-804-2712
16                           Email:  LindaDan226@gmail.com

17
    Proceedings recorded by mechanical stenography.  Transcript
18  produced by computer-aided transcription.

19

20

21

22

23

24

25
```

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

```
                              PROCEEDINGS                      3
```

 1              (In open court.)

 2              THE COURTROOM DEPUTY:  All rise.

 3              THE COURT:  Call the case.

 4              THE COURTROOM DEPUTY:  Civil cause for oral

 5    argument.

 6              Beginning with the plaintiffs, please state your

 7    appearance for the record.

 8              THE COURT:  The people in the gallery may be seated.

 9              MR. WISHNIE:  Good afternoon, Your Honor.

10              Michael Wishnie, Jerome N. Frank Legal Services

11    Organization of Yale Law School.  And with me today is law

12    student intern Aaron Bryce Lee, whose appearance you've

13    approved and will be presenting the argument today for

14    plaintiffs.

15              THE COURT:  Very good.  Welcome.

16              Nice and loud, if you're wearing a mask.

17              MR. CHENG:  Kevin Cheng for the Jerome N. Frank

18    Legal Services Organization of Yale Law School.

19              MS. TUMLIN:  Karen Tumlin also for Jerome N. Frank

20    Legal Services.

21              THE COURT:  T-U-M-L-I-N.

22              MS. AUSTIN:  Good afternoon, Your Honor.  Paige

23    Austin for Make the Road.

24              MS. YOUNG:  Good afternoon.  Jessica Young for Make

25    the Road, Your Honor.

PROCEEDINGS                                                    4

1          MS. MARTINEZ-OLGUIN:  Good afternoon.  Araceli

2    Martinez-Olguin for the National Immigration Law Center.

3          MS. HANSON:  Good afternoon, Your Honor.  Jessica

4    Hanson from the National Immigration Law Center.

5          THE COURT:  Very good.  Please be seated.

6          MS. MURDUKHAYEVA:  I'm sorry, Your Honor.

7          THE COURT:  I'm sorry.

8          MS. MURDUKHAYEVA:  No worries.  My name is Ester

9    Murkukhayeva from the New York State Office of the Attorney

10   General.

11         THE COURT:  Oh, welcome.

12         MS. MURDUKHAYEVA:  Thank you.

13         MR. EARLY:  Good afternoon, Your Honor.  Cormac

14   Early from the U.S. Department of Justice.  And with me is

15   Brad Rosenberg also from the U.S. Department of Justice.

16         THE COURT:  Welcome.

17         MR. EARLY:  Thank you, Your Honor.

18         THE COURT:  Assuming you're vaccinated, please, when

19   you speak, you can take your mask off.  If you're making a

20   presentation, you can make it at the podium and -- or you can

21   remain seated.  We're very informal in the era of COVID.

22         So there's a -- plaintiffs are making a motion, have

23   made a motion to modified the Court's memorandum and order of

24   December 4th, 2020.  That order followed the Court's earlier

25   decision holding that Chad Wolf was not lawfully serving as

PROCEEDINGS                              5

1    the acting secretary of Homeland Security, and the result was

2    vacating of then Department's then effort to suspend DACA.

3              So, and here we are, in the aftermath of the

4    decision by the Court in the Southern District of Texas, which

5    has been appealed to the Fifth Circuit by the government,

6    which is the defendant in this case, but we have to be aware

7    and mindful of the activity that's going on in this Southern

8    District of Texas and in New Orleans at the Circuit.

9              So having said all that, I'll hear from Mr. -- is it

10   Bryce Lee?

11             MR. LEE:  Just Lee.

12             THE COURT:  Mr. Lee, on the motion by the plaintiff.

13             MR. LEE:  Your Honor, before I begin, we have some

14   named plaintiffs in the court today, as well as some other

15   class members.

16             May I invite them to introduce themselves?

17             THE COURT:  Sure, why not.

18             But if you have to -- if you're going to introduce

19   yourself, you have to take your mask off when you're speaking

20   and speak loudly so we have everything on the record.

21             MS. LARIOS:  Johana Larios.

22             THE COURT:  How do you spell your last name?  Spell

23   your last name.

24             MS. LARIOS:  L-A-R-I-O-S.

25             THE COURT:  Okay.

PROCEEDINGS                                    6

1              MR. BATALLA VIDAL:  Martín Batalla Vidal, V-I-D-A-L.

2              MR. ALARCON:  Antonio Alarcón, A-L-A-R-C-Ó-N.

3              MS. PEREZ:  Denia Perez.

4              THE COURT:  Well, welcome.  Thank you for being

5    here.

6              All right, Mr. Lee, go ahead.

7              MR. LEE:  Thank you, Your Honor.

8              I just wanted to mention that I will address this

9    Court's authority to modify its prior order and discuss

10   interim relief that should be afforded the plaintiffs.

11             Attorney Hanson here will address further processing

12   and Extended Renewal Applicants.

13             THE COURT:  Okay.

14             MR. LEE:  Your Honor, modification of this Court's

15   December 2020 order is necessary to effectuate the intended

16   purposes of that order and vindicate the rights of named

17   plaintiff Johana Larios and approximately 80,000

18   similarly-situated class members who are first-time applicants

19   for DACA, and have submitted applications in reliance on this

20   Court's order.

21             Their applications remain stuck in limbo as of

22   July 16th, 2021.  These 80,000 have been waiting for as long

23   as 18 months since applying, and the fear, anxiety and

24   uncertainty they feel about the future will continue for

25   months and years if nothing is done.

PROCEEDINGS                                    7

1          This Court's prior order not only provided hope to

2     the 80,000 themselves, but also touched the lives of hundreds

3     of thousands who are the family members they support and the

4     friends, neighbors and colleagues that make up their

5     communities.

6          This Court's order must be modified to be

7     implemented properly within the bounds of the Texas injunction

8     so that 80,000 Americans can be assured that they may remain

9     in the only country they have ever called home and work

10    legally to support their families and communities.

11         Your Honor, this Court has well-established

12    authority to modify its prior order.  The Supreme Court,

13    Second Circuit, as well as this very Court have reiterated

14    that a court possesses the inherent power to modify an order

15    that it has entered.

16         This authority is especially significant when a

17    change in circumstances, or even a new appreciation of facts

18    in light of experience demonstrates the frustration and the

19    intended effects of an order.  In such a situation, a Court

20    can and should adopt its prior order to accomplish its

21    intended purpose.

22         Your Honor, this Court was well aware of this

23    authority when it entered the order in December 2020, as it

24    reserved the right to impose further remedies if they become

25    necessary and retained jurisdiction of the matter for purposes

PROCEEDINGS                          8

1   of construction, modification and enforcement.

2              When issuing that order, this Court contemplated the

3   relief of allowing first-time applicants to apply for and

4   receive DACA, if eligible, and does require defendants to

5   accept new DACA applications for consideration, among other

6   things.

7              All parties then proceeded with the understanding

8   that defendants would process and adjudicate all these

9   applications that it accepted.  Though there were very few

10  grants, very few new grants of DACA in the first four months

11  following this Court's order, the defendants did eventually

12  ramp up their operations to the level of adjudicating

13  thousands of applications per month by April 2021.

14             However, less than three months later, in July 2021,

15  a district court in Texas enjoined defendants from issuing new

16  grants of DACA, and defendants subsequently not only ceased

17  all adjudications of applications, but also ceased all

18  processing of applications.

19             This represents a significant change in

20  circumstances from December 2020, and demonstrates the

21  frustration of the intended effects of that order.

22             THE COURT:  Isn't the meaning of that order in the

23  Texas court such that the Department of Homeland Security has

24  no choice but to suspend its processing of these new

25  applications?

1          After all, the court in Texas carved out the renewal

2   of DACA applications and permitted those to go forward so as

3   not to create a major crisis among those who already had DACA

4   protections pending the outcome of the appeals to the Circuit

5   and to the Supreme Court.

6          MR. LEE:  No, Your Honor.  The Texas court enjoined

7   defendants from issuing new grants of DACA.

8          In December 2020, this Court ordered that defendants

9   should accept new DACA applications for consideration.

10  There's a lot of space between this Court's requirement to

11  accept for consideration and the Texas court's requirement not

12  to grant.

13         This Court, which was the one to certify the Batalla

14  Vidal class in the first place, has the authority to determine

15  what steps are required in between accepting for consideration

16  and granting, including the interim relief that we seek, as

17  well as other relief that Attorney Hanson will address.

18         If I may, Your Honor, I will address the interim

19  relief now.

20         THE COURT:  All right, go ahead.

21         MR. LEE:  Your Honor, plaintiffs request that the

22  Court modify its prior order to direct defendants to provide

23  interim relief for first-time applicants who have had valid

24  DACA applications pending as of July 16th, 2021.

25         Named plaintiff, Johana, and other class members in

PROCEEDINGS                                    10

1    her position, rely on this Court's order and had a reasonable

2    expectation at the time of their submission that their

3    applications would be processed and adjudicated.

4              THE COURT:  Well, wouldn't that -- I mean, let's

5    stop there for a minute.

6              The processing is an issue which we can talk about

7    that -- that is -- it's a mechanical issue, if you will, as

8    opposed to a substantive outcome issue.

9              But isn't it true that the granting of DACA

10   protection would definitely directly run afoul of the Southern

11   District of Texas injunction?

12             MR. LEE:  No, Your Honor.

13             THE COURT:  Which is -- which is a nationwide

14   injunction, and which I heard, which is very interesting, I

15   heard from former Attorney General Barr, we should have no

16   nationwide injunctions in the district courts, but I guess

17   this one's okay.

18             MR. LEE:  Yes, Your Honor.

19             THE COURT:  It all depends on where you're coming

20   from and where you're ending up.

21             So I don't want to be cynical about it, but I'm

22   cynical about it.  Go ahead.

23             MR. LEE:  Yes, Your Honor.

24             While issuing new grants of DACA would conflict with

25   the Texas injunction, providing interim relief, as plaintiff

PROCEEDINGS                                    11

1   seek here would not for a very important reasons.

2            Interim relief, first I will address the minimum

3   things that we are looking for, that plaintiffs are looking

4   for in interim relief.

5            Interim relief should, at minimum, assure that

6   first-time applicants are able to remain in the country while

7   they still have valid applications pending, and that they may

8   obtain work legally in the meantime.

9            THE COURT:  Is the federal government, is the

10  Justice Department and the Department of Homeland Security

11  sending people back who are, arguably, DACA eligible at this

12  time?

13           Is this Administration doing that?  Or are they

14  foregoing the possibility of doing that and waiting on the

15  outcome of the Appellate process and any potential

16  Congressional action?

17           MR. LEE:  No, Your Honor, the Administration

18  currently is not deporting these individuals; though, they

19  legally remain able to be deported and also are not able to

20  work legally.

21           Your Honor, interim relief would have very important

22  distinctions from DACA that make providing interim relief not

23  conflict with the Texas injunction.

24           First, interim relief would be narrower than DACA in

25  its substantive offerings.

PROCEEDINGS                                    12

1              THE COURT:  Okay, what is the interim relief that

2       you propose?

3              MR. LEE:  Your Honor, the interim relief that

4       plaintiffs propose is limited to an assurance that first-time

5       applicants are able to remain in the country and able to work

6       legally.  I will lay out the mechanisms that can happen in

7       this interim relief program.

8              DACA recipients currently receive awards of deferred

9       action that come or that the Supreme Court in *Regents*

10      identified as coming with associated benefits like Social

11      Security and Medicare, as well as eligibility for work

12      authorization and eligibility for advanced parole.  Interim

13      relief can just be limited to the two main pillars that I've

14      identified previously.

15             Let me be clear, Your Honor, awards of deferred

16      action are not necessary to assure that these class members

17      are able to remain in this country.

18             Recent DHS memos have demonstrated that there are a

19      number of ways to address prosecutorial discretion to forebear

20      from removal action, including even just a letter that

21      expresses as such.

22             Without deferred action, interim relief recipients

23      would also not be eligible for Social Security benefits and

24      Medicare benefits.  Furthermore, Your Honor, interim relief

25      does not need to include eligibility for advance parole

PROCEEDINGS                                    13

1    either.

2              The Texas court paid special attention to advance

3    parole as one of the major pillars of the DACA program and

4    grounded its ruling, in part, based on the availability of

5    advance parole and Social Security and Medicare benefits when

6    it issued its decision.

7              Furthermore, Your Honor, whereas DACA recipients are

8    able to indefinitely renew their status in two-year

9    increments, interim relief would be temporary and

10   non-renewable.

11             Interim relief would only last until the 80,000

12   pending applications meet final resolution, which can be

13   triggered by the implementation of a final rule, final

14   appellate decision on the Texas injunction, resumed government

15   adjudication or Congressional action.

16             Your Honor, until those things happen, these 80,000

17   class members depend on the proper implementation of this

18   Court's order so that they may be able to live without some

19   of -- go through right now because of this, as well as work

20   legally, instead of having to try to make ends meet in a way

21   that is not authorized.

22             THE COURT:  Well, that's a very creative idea.  Some

23   call it mini DACA.  All right, that it's sort of DACA, it's a

24   part of DACA, but it isn't the relief that you seek ultimately

25   of approval of DACA recipients to get all the relief that

PROCEEDINGS                                    14

1    previous or current DACA recipients receive.

2              So I'm not sure that it doesn't sound more like

3    legislation or executive action than judicial action, and so

4    I'm somewhat sceptical about this Court's capacity, as much

5    authority as it might have in many respects to fashion a

6    temporary solution that could be -- that couldn't be

7    effectuated by the -- by the DHS or in consultation with the

8    Justice Department.

9              It's not exactly the outcome that courts engage in.

10   And you're asking me to do something that also could be

11   interpreted as running afoul of the decision of the court in

12   the Southern District of Texas.

13             I'm not about to contact the Court there to see if

14   it's okay with them, just as they were not going to contact me

15   to find out if their decision was okay with me.  Because they

16   knew my basic view on the subject, and I think I know their

17   basic view on the subject.

18             So we have to be careful that we're not -- that this

19   Court is not going beyond the place where it can go in terms

20   of effectuating some interim relief, if we're going to be able

21   to do anything at this point while the matter is in the Fifth

22   Circuit.

23             So I want you to understand I'm very sympathetic

24   with you and sympathetic with the DACA recipients and

25   applicants for initial DACA approval, but I also have to be

PROCEEDINGS                          15

1   mindful that we have a situation where there is an injunction

2   in Texas, and it's being reviewed by a Circuit panel.  Oral

3   argument took place yesterday, and the Texas court did carve

4   out some interim relief for current DACA recipients.

5           So it is mindful that even -- even the injunction

6   has some -- is cabined in some way, which indicates is a

7   realization and people are already reliant on DACA who have

8   received DACA benefits.

9           And that's -- and that's really where we are.  And

10   if I'm being asked to go beyond a certain point, it may not be

11   appropriate.  I'm just trying to figure out what that point

12   is, and if I can be helpful in any way.

13           The ultimate question that I asked the very first

14   time we met on this case was "Where is Congress?  Why can't

15   Congress help these DACA-eligible applicants?"

16           And by the way, I have the declaration from Connie

17   Nolan, who's the Deputy Associate Director of Service Center

18   Operations at the U.S. Citizenship and Immigration Services,

19   and she -- and this was signed on May 27th of this year, and

20   she indicated that there are 92,000 pending initial DACA

21   requests.  So we're talking big numbers here of initial DACA

22   requests.

23           And then she also, you may have seen it and read it,

24   she also indicates why she believes that it is not prudent to

25   undertake the processing of DACA, initial DACA applicants at

PROCEEDINGS                                    16

1    this time.

2            So we can get into at that later.  But that's a

3    practical issue, and it involves using a finite workforce,

4    which is doing other things, to turn to the job of

5    investigating candidacies for DACA of those who are not yet

6    receiving, so.

7            But go ahead.

8            MR. LEE:  Your Honor, if I may, I would like to

9    respond to some of these concerns --

10           THE COURT:  Sure.

11           MR. LEE:  -- for at least two reasons.

12           First, Your Honor, defendants have the authority to

13   issue this interim relief.  Defendants have previously --

14           THE COURT:  Who has the authority?

15           MR. LEE:  Defendants do, Your Honor.

16           THE COURT:  Oh, okay.  I'll get to them.

17           MR. LEE:  Defendants have previously invoked this

18   authority to provide interim relief, as you say, that is just

19   short of final adjudication with something in between, has

20   previously invoked this authority to the fashion interim

21   relief programs for individuals stuck waiting long periods of

22   time for adjudication of their applications in other

23   immigration programs.

24           Most notably, Your Honor, defendants have afforded

25   the interim relief of work authorization and forbearance from

PROCEEDINGS                    17

1    removal action for individuals with pending special immigrant

2    juvenile applications, individuals who have not completed that

3    process of special immigrant juvenile status.

4              Your Honor, defendants did not rely on any express

5    statutory language for interim relief for a special immigrant

6    juvenile.  There is no such statute.  Rather, defendants used

7    their inherent authority that is classified in 6 U.S.C. 202(5)

8    to establish immigration policy and priorities, as well as

9    their authority in 8 U.S.C. 1324a to issue work authorization

10   to noncitizens to create this program.

11             Your Honor, I would also like to note that it's

12   important to understand that this new policy for special

13   immigrant juveniles came largely as a result of a recent class

14   action lawsuit in the District of Massachusetts.

15             Following that lawsuit and following that Court's

16   order, defendants decided to create this policy and allow

17   interim relief to these special immigrant juveniles, who have

18   not concluded their process, so that they can be protected

19   from removal and be assured that they can obtain work legally

20   so they can go about their lives.

21             Your Honor, secondly, this Court does not have to

22   overextend judicial authority to direct defendants to create

23   such an interim relief program.

24             The Supreme Court has previously sanctioned this

25   type of approach where the Court directs the government

1    defendants to come up with the specifics of a remedial plan

2    according to the Court's general guidelines.

3              In *Brown v. Plata*, the Supreme Court affirmed the

4    District Court's order that required government defendants to

5    come up with the specifics, come up with the details of

6    remedial plan that achieved the goal that the Court laid out.

7              Your Honor, this Court today, or in the coming

8    weeks, can direct defendants to do the same here, and the

9    defendants can submit that plan for your approval.

10             Your Honor --

11             THE COURT:  I want to just ask.  You know, what

12   about the argument that could be reasonably made that this

13   Court's order has been fully complied with, and that what

14   you're asking goes beyond what this Court dealt with, which

15   was remedial in a sense, but has been fully complied with.

16             As a result of this Court's order, this DACA program

17   went back into operation, because Mr. Wolf was not lawfully

18   entitled to bring an end to it.

19             And so the job was done and now other litigants,

20   other plaintiffs, are going to a different court in a

21   different district.  They didn't come to me, and they made the

22   application to a court in a district where they thought the

23   court would be more receptive to their views, legal and policy

24   views, than this Court might have been, and they received a --

25   they received the results that they sought, and now it's up on

PROCEEDINGS                              19

1    appeal.

2              Why should I be moving into a realm that I was not

3    in when I issued a rather-narrow decision regarding the

4    lawfulness of Mr. Wolf's order or directive to terminate DACA?

5              Why is this something for this Court to do at this

6    time?

7              MR. LEE:  Your Honor, plaintiff -- or the 80,000

8    class members --

9              THE COURT:  92,000.  More.  They're saying it's

10   92,000.  That's not my number, that's their number.  That's

11   the government's number, the defendant's number.  That's a lot

12   of people.

13             I'll get to them.  Go ahead.

14             MR. LEE:  Your Honor, close to a hundred thousand --

15             THE COURT:  That's better.

16             MR. LEE:  Close to a hundred thousand class members

17   have not received --

18             THE COURT:  There's also -- actually, it's sort of

19   humorous, but it's not funny, because what this does also is

20   it discourages people from applying.

21             I'm sure there are a lot of other people out there

22   who would -- would like to apply, who really don't want to

23   disclose their existence to the United States of America, to

24   the government, in case DACA is struck down and nothing is put

25   in place so that by either an administrative process or by a

PROCEEDINGS                                        20

1    statutory solution.

2              So it may be over a hundred thousand people.  It

3    could be well over a hundred thousand people.  And I'm just

4    saying the number I have from the Justice Department is

5    that -- Homeland Security, is that it's at least 92,000

6    people.

7              But we're talking about a massive group of people

8    who could benefit from this program.  And hopefully Congress

9    could create a path to citizenship for these people that would

10   benefit not only them and their families, but also the United

11   States.

12             So -- and that's always been my position.  I only --

13   you know, the decision that I made, back when, was only that

14   the -- that the would-be or or supposed Secretary of Homeland

15   Security didn't have the authority to upend the Obama

16   Administration's implementation of DACA.

17             Go ahead.

18             MR. LEE:  Your Honor, this huge group, this huge

19   population who have not received full relief that they are

20   entitled to in their -- that they are entitled to in the

21   December 2020 order, come to this Court today to make sure

22   that they are given full relief, Your Honor.

23             Defendants violated the HSA, and this Court

24   rightfully found that it did so.  In December 2020, it entered

25   remedies to address that violation.

PROCEEDINGS                    21

1          When contemplating relief in that sense, this Court

2     contemplated that first-time applicants should receive DACA if

3     eligible, and all parties proceeded with that understanding.

4     This Court shared in that understanding as it required

5     defendants to report not only the number of applications that

6     it accepted in the first six weeks following this Court's

7     order, but it also required defendants to report the number of

8     applications that were adjudicated, approved, rejected and

9     denied, Your Honor.

10         THE COURT:  But I didn't -- but the Court did not

11    issue an order providing declaratory relief.  This was -- it

12    was basically a reporting requirement and didn't create an

13    obligation of the Department of Homeland Security to engage in

14    a -- engage in the program.

15         That was beyond what the Court did.  The whole idea

16    was to cabin the remedy to the specific needs of the moment,

17    and perhaps it should have done more, but it didn't.

18         And then a court in Texas decided to take on, based

19    on litigation brought by a number of states, to take on the

20    substantive issue of whether DACA was lawful.  And it made a

21    decision.  It issued an injunction.  And then that injunction

22    is now off on appeal.

23         And the defendant here is fighting, has appealed,

24    and is disagreeing with the Court in Texas, and this Court has

25    to be mindful of the current status of that case.  That's all

PROCEEDINGS                                    22

1    I'm saying.

2              MR. LEE:  Your Honor, if I may respond.

3              THE COURT:  Okay.

4              MR. LEE:  This the --

5              THE COURT:  Then we're going to move on to the next

6    person.

7              MR. LEE:  In the December 2020 order, this Court did

8    order that vacatur was not enough.  There were more remedies

9    that were granted in that order, including the requirement

10   that defendants would accept DACA applications for

11   consideration.

12             At that time, that was enough for everyone to

13   understand that this would be processing and adjudicating as

14   well, but in July 2021, as I mentioned, there was a change in

15   circumstances where that no longer was clear that this

16   Court -- it was no longer clear that the language in the

17   December 2020 order meant what it once had.

18             Therefore, Your Honor, plaintiffs come to this Court

19   today to seek modification of your order to make sure that the

20   intention of this Court is effective.

21             THE COURT:  All right.  Thank you very much.

22             Now are you a student at Yale?

23             MR. LEE:  Yes, Your Honor.

24             THE COURT:  What year are you in?

25             MR. LEE:  I'm going into my third year.

PROCEEDINGS                          23

1          THE COURT:  Are you looking for a clerkship?

2          MR. LEE:  Yes, I am, Judge.

3          THE COURT:  Well, you've done a very good job.

4    Thank you very much.

5          MR. LEE:  Appreciate it, Your Honor.  Thank you.

6          MS. HANSON:  Good afternoon, Your Honor.  Jessica

7    Hanson from the National Immigration Law Center.

8          THE COURT:  Nice to see you.

9          MS. HANSON:  Thank you.

10          The Court should modify its December 2020 order to

11    clarify that the order requires defendants to process pending

12    first-time DACA requests up to the point of decision.

13          This Court ordered defendants to accept first-time

14    requests for consideration.  And the Texas order explicitly

15    acknowledges this Court's order, and then prohibits only the

16    granting of first-time requests.

17          But defendants have ceased all processing, other

18    than receiving the applications, issuing receipt notices, and

19    cashing class members' money orders.

20          The Texas court did not require this action, and

21    modification of this Court's order is necessary to effectuate

22    this Court's intent.

23          THE COURT:  Yes, you know, I raised the issue of

24    that declaration by Ms. Nolan.  And in that declaration, it

25    makes clear that much of what you're asking the Court to

PROCEEDINGS                          24

1    require of the defendant is a processing which becomes stale

2    after a certain period of time, like the fingerprinting and

3    the security review of applicants.  That after a certain

4    number of months, the process has to be restarted.

5           And so what I'm being told is that it doesn't make

6    sense that to have staff moved from other responsibilities to

7    undertake 92,000 investigations, when we don't even know, one,

8    whether the program will exist in a year; two, when -- if it

9    does continue to exist, when it will be reenergized, meaning

10   that the injunction of the Texas court will be lifted so the

11   processing may continue, or when Congress will get around to

12   enacting legislation which will by make DACA a -- unnecessary,

13   or codify DACA as part of our law.

14          So what the defendant is saying, and I'll get to

15   them, is that it doesn't make sense, operationally, for the --

16   to place this burden on the Department of Homeland Security at

17   this time.  And how do you respond to that?

18          MS. HANSON:  Yes, Your Honor.  I have a couple of

19   points there.

20          So one note on the staleness issue of certain steps

21   being completed that expire after a certain period of time,

22   those expiration dates were created by defendants, and so just

23   the same, they could make exceptions here, or change their

24   policies about the longevity of certain checks.

25          But more important here, we've seen that the

PROCEEDINGS                                    25

1   processing does make a tangible difference for class members,

2   and that can be demonstrated when you compare plaintiff Johana

3   Larios Sainz, who's in court with us today, with plaintiff

4   M.B.F., who couldn't make it today.  Both applicants applied

5   within days of Your Honor's December 2020 order, and days

6   apart from each other as well.

7          Plaintiff Johana Larios had never before had any

8   processing done, and so it took her almost six months to even

9   get an appointment to have her biometrics captured, whereas

10  plaintiff M.B.F. had had her -- certain processing steps

11  completed as a part of an unrelated immigration petition.  And

12  because of that, USCIS used her same fingerprints and told her

13  that three days later, and within five months she had DACA in

14  hand.

15         So even if we know that under the current Texas

16  order USCIS is not able to grant new DACA, having processing

17  steps completed in advance makes a tangible difference in the

18  world we're in right now.

19         As I mentioned, all the moving pieces with the

20  different courts, potential legislation, potential rules

21  coming out.  That's actually more of a reason for this Court

22  to act now on behalf of class members who are injured now.

23         Because if they are in the processing step further

24  up in the line, if there is a narrow opening again, like we

25  saw between this Court's order and the Texas order, they'll

PROCEEDINGS                              26

1   have the best chance possible at getting their DACA

2   adjudicated at that point.

3          I would also mention that, as far as the processing

4   we're asking for, we are not trying to micromanage the

5   government or suggest specific steps or ordering of steps that

6   need to take place.  We are simply asking for an order that

7   requires defendants to process applications to the fullest

8   extent possible under the law, up to the point of

9   adjudication.

10         And if Your Honor would like something that has more

11  detail, we would request that after issuing that order

12  requiring processing, Your Honor can refer us to mediation to

13  work out the details of what that processing could look like

14  so that it does make sense.

15         THE COURT:  What about this extended renewal issue?

16  Are you going to discuss that?  Because I find that to be an

17  interesting concept that you have that policy that's been in

18  place that requiring a DACA, someone who had DACA protection

19  but it had expired and was over a year old since it expired,

20  would have to apply as a new applicant.

21         MS. HANSON:  Yes, Your Honor.

22         We are also asking the Court to monetize its

23  December 2020 order to clarify that defendants are required to

24  adjudicate these extended renewal requests as renewal

25  requests; not to cease requiring additional evidence, which is

PROCEEDINGS                                27

1    what defendants do now, but to treat them as if they are

2    renewals, allowed by the Texas order, rather than classifying

3    them in USCIS systems as first-time applicants that have never

4    before had DACA.

5            We have seen that the Texas court explicitly said

6    that defendants could adjudicate renewals, regardless of when

7    they are submitted.  And so more than a year after the

8    previous falls into regardless of when, we think those are

9    clearly renewal applications.

10           And the Texas court also recognized reliance

11   interest, and it said:  It is not equitable for a government

12   program that has engendered such significant reliance to

13   terminate suddenly.  But that's exactly what defendants have

14   done to these extended renewal applicants, who were able to

15   have DACA before they had DACA before and suddenly they're

16   left in the lurch.

17           And so we think that, you know, in the lack of any

18   argument from defendants as to why USCIS can not classify

19   these folks as renewals in their system, there's no other

20   reason why defendants are treating them like first-time

21   applicants, Your Honor.

22           THE COURT:  Thank you.

23           MS. HANSON:  And I can stop there.

24           THE COURT:  Thank you.

25           All right, who's going to speak for the defense?

PROCEEDINGS                                    28

1    Don't fight on it, just...

2              MR. EARLY:  Good afternoon, Your Honor.  Cormac

3    Early.

4              THE COURT:  Yes, just keep the microphone close.

5              MR. EARLY:  Sure.

6              THE COURT:  Because there are people in another room

7    as well.

8              MR. EARLY:  Understood, Your Honor.

9              Your Honor, everyone in this room shares the goal of

10   fortifying and preserving DACA, including very much the

11   defendants, and we are making progress on the limited avenues

12   available to us in light of the Texas injunction.

13             As Your Honor mentioned, the argument in the Fifth

14   Circuit on the appeal of the Texas order took place yesterday.

15   The day before yesterday, the rule-making that DHS is

16   undergoing in response to the Texas order reached OIRA, Your

17   Honor.

18             THE COURT:  Reach what?

19             MR. EARLY:  OIRA review, which as Your Honor knows,

20   is one of the final steps before publication of the final

21   rule.

22             So --

23             THE COURT:  For notice.  That's not the end of the

24   road, that's just the beginning of the comment period.

25             MR. EARLY:  No, Your Honor, the comment period

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                              29

1   closed in, I believe it was November of 2021.  This would be

2   publication of the rule.

3           THE COURT:  When would this rule go into effect?

4           MR. EARLY:  I'm not aware that an effective date has

5   been determined yet.  That would be the final rule that is

6   published in the Federal Register.  But the point for Your

7   Honor is that it has reached the final step of the

8   prepublication process.

9           THE COURT:  Okay.

10           MR. EARLY:  So beyond --

11           THE COURT:  And how would that effect the injunctive

12   relief that was imposed by the Texas court?

13           MR. EARLY:  Well, Your Honor, that would -- that

14   would, of course, depend on what the Texas court does in light

15   of the final rule, and it would depend on the exact scope of

16   the final rule itself which, of course, has not yet been

17   finalized.  So it is, at this point, a little bit premature to

18   say.

19           That said, Your Honor, defendants are vigorously

20   pursuing all of the available avenues of relief.  If we could

21   grant DACA, if defendants had their way, we would be granting

22   DACA right now to the 92,000 pending first-time applicants,

23   and --

24           THE COURT:  Does that include applicants who

25   previously had DACA but had not applied for renewal within the

PROCEEDINGS                    30

1   year?

2              MR. EARLY:  As I understand it, yes, Your Honor, and

3   I will get to this in the renewal versus initial.

4              THE COURT:  Go ahead.

5              MR. EARLY:  But DHS policy consistently has been to

6   treat an application from someone who previously had DACA and

7   then reapplies for DACA more than a year after the expiration

8   of DACA, or after the DACA is terminated as an initial

9   application.  And in the Nolan declaration, I believe that's

10  an approximate figure for initial applications.

11             THE COURT:  Okay.

12             Go ahead, Mr. Early.

13             MR. EARLY:  The problem for defendants, and for this

14  Court, is that we are bound by the Texas injunction.  There

15  are limits as a result of that injunction to the kind of

16  relief that we can provide to the plaintiff class.

17             THE COURT:  Well, do you agree with plaintiff that

18  you're under no obligation to stop processing people, as long

19  as you don't give them a DACA status at the end of the day?

20             MR. EARLY:  Your Honor, candidly it is not entirely

21  clear.  The Texas court said that we could, and let me quote

22  it, get the exact language here:  It allowed us to accept but

23  not grant those applications.  And it also separately enjoins

24  us from administering or reimplementing DACA.  So we can

25  accept but not grant, and we can't administer and we can't

PROCEEDINGS                                    31

1    implement.

2              And with all of those, it may be possible that the

3    Texas court would view the kind of pre-adjudication the

4    plaintiffs are asking for as a violation, and the Court may

5    not.

6              THE COURT:  You know, I'm a separate entity, and I

7    read that potentially as meaning that once DACA is granted,

8    that maintaining DACA or overseeing DACA, if someone is

9    granted DACA status, at that point that's maintaining DACA.

10             The idea of terminating processing doesn't strictly

11   fall within that description; does it?

12             MR. EARLY:  Well, Your Honor, if Your Honor is

13   inclined to order that kind of relief, we have requested in

14   our brief that we be given some time to file a motion for

15   clarification with the Texas court.  Because ultimately we are

16   not in a position to finally adjudicate what that order means,

17   and with respect to Your Honor or plaintiffs.

18             So if the Court is inclined to grant that kind of

19   relieve, we would want to seek clarification.

20             THE COURT:  I have a class here.  Does he have a

21   class in his case of applicants?  Does he have a class action

22   where class has been established?

23             MR. EARLY:  My understanding of that case is that

24   the plaintiffs are all states.  I don't believe --

25             THE COURT:  Well, that's another question, how they

1   have -- how does -- how does the quote "states" have standing

2   in a situation like this?

3             MR. EARLY:  Your Honor, the position of the

4   government is that they do not.

5             THE COURT:  Well I'm glad to hear that.

6             MR. EARLY:  Again, we have fully and vigorously

7   pursued that argument in the Fifth Circuit.

8             THE COURT:  I know.  I understand that.

9             But what I'm saying to you is that the processing

10  function is relevant to the class and not relevant to the

11  states.  And so while I will not tread into the space of the

12  four corners of that injunction, neither you nor anyone else

13  can convince me that I don't have a responsibility to protect

14  the rights of the class with regard to those functions that

15  were not the specific limitations placed on the DACA program

16  by some other court.  All right?

17            I'm not asking you to go back and have a chat with

18  the judge in Texas about what my rights are as a jurist in a

19  class action.  So let's not even go there.  You can do what

20  you want, but I will tell you that, you know, if somebody else

21  hasn't said this is something you can't do, and I have a class

22  of people, then I'm still at liberty, because I have equal

23  status as a federal district judge approved by the same Senate

24  that approved the other judge at the same level to implement

25  as much of my case as I feel is appropriate.

PROCEEDINGS                                33

1          I'm very careful about not going somewhere where

2     it's going to create a direct conflict with another judge's

3     injunction.  I respect that.  But, you know, the idea that

4     it's not in -- it's not in the injunctive document, and you're

5     not sure, well, I don't have to -- I don't have to be limited

6     by that document if it doesn't make reference to a function

7     that I serve on behalf of a class action.

8          The states are not a class.  These people are a

9     class.  So I just raise that.

10          MR. EARLY:  Certainly, Your Honor.

11          THE COURT:  And I'm not teaching federal courts

12     here, I'm just saying that this is one of the problems that we

13     have where different interests are being adjudicated in

14     different places involving the same group of people who are

15     simply asking to be protected from an appropriate removal from

16     the United States, in their view.

17          So go ahead.

18          MR. EARLY:  Certainly, Your Honor.

19          THE COURT:  And I'm not arguing with you, I'm

20     just -- I understand the Justice Department has to deal with

21     everybody.  But I'm telling you that if it's not in the

22     injunction, you know, I'm not bound by it what's not there.

23     That's what I'm telling you.  Go ahead.

24          MR. EARLY:  Certainly, Your Honor.  I don't, by any

25     means, want to suggest that Your Honor is bound by the Texas

PROCEEDINGS                                    34

1    court.

2              THE COURT:  You're being careful.  Go ahead.

3              MR. EARLY:  Yes, I just --

4              THE COURT:  I know.

5              MR. EARLY:  I want to be clear that we as the

6    defendants are bound, and we need to be appropriate.

7              THE COURT:  Well you're bound to what's in the

8    injunction.  You're not bound to go back and say, You didn't

9    talk about it, so now what are you going to do?

10             Because that's what you're really saying that if it

11   isn't there, it isn't there, and these plaintiffs want this

12   Court to order that processing occur without implementation of

13   the grant of DACA, and you'll go after the Court in Texas and

14   ask the question, Gee, you didn't mention it, did you really

15   want to mention it?  I don't -- I don't get that, frankly.

16             Although I will say, that the judge in Texas did

17   carve out the ability of the judge -- of Homeland Security to

18   renew DACA while this matter is being resolved by the

19   Appellate courts.

20             So there was a sensitivity there on the part of the

21   judge in the Southern District of Texas, and I -- you know, I

22   wanted to recognize that.  It wasn't -- it wasn't a

23   completely -- the judge didn't completely eviscerate DACA, the

24   judge simply made a ruling and said that pending the outcome

25   of Appeals, current DACA recipients could be renewed.  Isn't

PROCEEDINGS                    35

1   that right?

2              MR. EARLY:  Yes, Your Honor.

3              THE COURT:  All right, so we have that much.

4              MR. EARLY:  I think, Your Honor --

5              THE COURT:  I just want to make my position

6   perfectly clear, that I don't feel bound by something that's

7   not there.  Okay?  If it's not in his order, then it's not in

8   his order.  And I'm not bound by something that may be, you

9   know, the plaintiffs in that case wanted but they didn't get.

10  And so I don't feel constrained by something that's -- that

11  hasn't been placed in an injunction.

12             Go ahead.

13             MR. EARLY:  Certainly, Your Honor.  And I think it's

14  certainly true that the sensitivities around potential

15  conflicts between injunctions are different for the different

16  forms of relief the plaintiffs are seeking.

17             THE COURT:  Understood.

18             MR. EARLY:  Since Your Honor raised

19  pre-adjudication, there are two other reasons, aside from the

20  sensitivities, with respect to the Texas order that defendants

21  oppose that particular relief.

22             The first, in particular to the pre-adjudication,

23  which Your Honor already discussed, is simply a matter of

24  administrative inefficiency that plaintiffs are proposing that

25  defendants take a series of steps, none of which would likely,

1   although to be fair, no one knows exactly, when, if ever,

2   defendants will be allowed to grant DACA to first-time

3   applicants.

4          Many of those steps may need to be redone.  And

5   that, of course, creates a large administrative burden for

6   USCIS, which is already, as a result of COVID, as a result of

7   resource shortages that date back at this point many years,

8   dealing with significant backlogs, and ultimately the resource

9   pool USCIS has to adjudicate a wide variety of different

10  applications for immigration and DACA benefits are all coming

11  from the same resource pool, as I understand it.

12         And so to take resources and ultimately to apply

13  resources to the kind of pre-adjudication the plaintiffs are

14  proposing, would be taking resources from other applications

15  which currently can be granted and would lead for some people

16  to have even longer processing times.

17         THE COURT:  You mean for other forms of

18  adjudication, other matters.

19         MR. EARLY:  Yes, Your Honor.

20         THE COURT:  All right.  Well, I think that's --

21  that's what Ms. Nolan is talking about here in her -- in her

22  declaration; isn't it, that there are other programs?  You're

23  human resources within -- within Homeland Security have been

24  shifted to other forms of adjudication or other programs.

25         MR. EARLY:  Yes, Your Honor.  And it's been

PROCEEDINGS                          37

1    defendants' administrative judgment that's the most efficient

2    way to manage ultimately limited agency resources, given the

3    constraints they face.

4              And that gets me on to the second reason to oppose

5    relief here, which is simply that, as Your Honor has already

6    mentioned, this Court entered relief on a claim under the

7    succession provision of the Homeland Security Act.  And the

8    relief that plaintiffs seek is simply not tied to the

9    violation that this Court has found.

10             Now plaintiffs were given the opportunity to amend

11   their complaint, or in some way to raise a claim about the

12   resource allocation decision when it comes to

13   pre-adjudication, or the other decisions that defendants have

14   taken to comply with or manage the effects of the Texas order,

15   but plaintiffs chose not to amend their complaint.

16             So, again, the only operative judgment here is a

17   judgment on the succession provision of the Homeland Security

18   Act, that Chad Wolf was not validly serving as acting

19   secretary, and that being the case, that simply does not

20   relate to the relief the plaintiffs are now seeking.

21             THE COURT:  You're saying it's outside the scope of

22   the plaintiffs' application?

23             MR. EARLY:  It's beyond the scope of the judgment,

24   Your Honor, and as a result of that, it's beyond the scope of

25   this Court's injunctive power.

PROCEEDINGS                                     38

1          And certainly if this Court were to enter a

2    different judgment, then different relief may be appropriate

3    and, of course, depending on the judgment the plaintiffs may

4    seek, we would defend or oppose that.

5          THE COURT:  You mean, in other words, it's premature

6    for the Court to consider this type of relief until the Court

7    receives an amended complaint seeking the relief?

8          MR. EARLY:  Right, Your Honor.

9          THE COURT:  Interesting.

10         MR. EARLY:  But there's simply isn't a judgment that

11   would support the kind of relief the plaintiffs are seeking,

12   and this judgment could not support that kind of relief.

13         THE COURT:  All right.  Thank you.

14         MR. EARLY:  If, for example, this case had never

15   been brought, and the Secretary had taken office and rescinded

16   the whole memorandum on his own, as an independent action, and

17   given -- changed the one year and limit documents to two years

18   and taken all the steps that this Court got there in about

19   three months ahead, but if he had taken those steps

20   independently, and then the Texas court had come along in July

21   of 2021 and entered the order that it did, if plaintiffs were

22   to bring this as a fresh lawsuit now, raising only the

23   Homeland Security Act succession provisions, the relief that

24   they were seeking -- that they're seeking now simply would not

25   flow from the alleged violation.

PROCEEDINGS                           39

1          The violation has been fully remedied by the

2     existing relief that this Court ordered, and that idea applies

3     across the board to all forms of relief the plaintiffs are

4     seeking, but none of it is within the scope of the judgment,

5     and thus within the scope of this Court's power.

6              There are -- certainly there are distinct arguments

7     for each form of relief, and I've already discussed some of

8     them for pre-adjudication.  I think maybe the most important

9     is the interim relief that plaintiffs are seeking.  And that

10    would, again, obviously respecting that Your Honor is not

11    bound by the injunction, but we very much are, but that form

12    of relief is, we think, exceedingly risky in terms of creating

13    conflict with the Texas court.

14              So plaintiffs make the argument that various

15    benefits and ancillary aspects of deferred action could be

16    carved off, and some of that we would need to dispute.

17              THE COURT:  A mini DACA, you're talking about?

18              MR. EARLY:  Right.  So plaintiffs say that --

19    they're really only seeking two core benefits, which are

20    forbearance and work authorization.

21              THE COURT:  You don't need to go into that.  I think

22    I made it pretty clear that it would be pretty difficult for

23    me to do something like that.

24              MR. EARLY:  Right.  Again, we think that would be --

25              THE COURT:  All right.

1            MR. EARLY:  -- the most obvious.

2            I do want to --

3            THE COURT:  The processing issue is a real issue for

4     me, because I think it's important that we continue to give

5     these applicants the sense that their interests are being

6     served by the process -- the processing of their applications

7     short of granting the relief, final relief.  And that's really

8     something that, you know, it's how things look to people who

9     feel that they are at risk of some major disruption in their

10    lives when they've spent their entire conscious existence as

11    Americans, and someone or somebody or some state attorney

12    generals are seeking to take that away from them.

13            I think that's -- this is about human beings who are

14    being placed in an untenable circumstance by people they don't

15    know who have objectives that they don't share when they've

16    been working very hard to be Americans.  That's really what

17    we're talking about here.

18            The last time I said stuff like that, you know, the

19    Attorney General of the United States, that Attorney General

20    was hysterical over the fact that a judge would actually think

21    about people as opposed to politics.  He's not there any more.

22            MR. EARLY:  Certainly, Your Honor.  And I do want --

23            THE COURT:  Is he your former boss?  I didn't want

24    to disparage your former boss.

25            MR. EARLY:  Well, boss' boss' boss, but I'm not sure

1  which Attorney General you're referring to.

2          THE COURT:  Sessions.

3          MR. EARLY:  Sessions, I believe he was gone before I

4  joined the Department, Your Honor.

5          THE COURT:  You're the lucky one.

6          MR. EARLY:  No commenting on that, Your Honor.

7          I do want to emphasize, though, in line with the

8  President's directive to preserve and fortify DACA that we,

9  the defendants, do take very seriously that these are real

10  human beings who are plaintiffs, that they've been waiting at

11  this point 18 months for processing, for relief that, in our

12  view, is very much within defendants' power to provide.  In

13  fact, we are fighting with every tool available to us to be

14  able to provide the applicants, and our judgments about the

15  kinds of relief that we can reasonably afford plaintiffs,

16  that's not -- that's not a judgment that was taken in July of

17  2021.

18          But we are dealing with a world which the processing

19  the plaintiffs are asking for has a limited shelf life.

20

21          (Continued on the following page.)

22

23

24

25

PROCEEDINGS                    42

1          MR. EARLY:  And so, the administration needs to

2     balance, certainly, very real concerns that your Honor

3     mentioned and that the plaintiffs have raised about the

4     processing of these applications.  So that if we are

5     eventually in a position to grant them, we can do so

6     expeditiously, and not drag out the state of legal limbo that

7     members of the plaintiff class may find themselves in, we have

8     to balance that against the risk that much of this work will

9     be wasted and will ultimately come at the expense of other

10    people who are also waiting for immigration and nonimmigrant

11    benefits.

12          So that is a decision that the defense takes very

13    serious and We appreciate and understand that these are

14    people's lives and people's livelihoods in the United States

15    and the ability to work and come into the community.  But

16    those considerations are difficult administrative

17    considerations about resource allocation, about what is

18    legally feasible, litigation timing that are properly left to

19    the Executive Branch.

20          THE COURT:  Thank you.  Anything else.

21          MR. EARLY:  I do want to briefly touch on the

22    initial and renewal application issue that plaintiffs have

23    raised.  And I appreciate certainly that the nomenclature is

24    maybe not exactly intuitive.

25          THE COURT:  Go ahead briefly.

PROCEEDINGS                              43

1          MR. EARLY:  The initial and renewal applications,

2     those are terms with a defined meaning, and they have had a

3     defined meaning in the DACA program from the beginning.  So

4     while we might colloquially think that someone, who, at any

5     point in the past had DACA and applied for DACA again that

6     would be known colloquially as a quote, unquote, renewal.

7          As a matter of the way the DHS has consistently

8     defined those terms, a renewal application is from someone who

9     has DACA at the time of application, or who had DACA and DACA

10    expired less than a year before the time of the application.

11    Everyone else, whether it's someone who never had DACA at all,

12    someone who had DACA but it was terminated, or someone who had

13    DACA and it's been more than a year since it expired those are

14    all initial applications.

15          And so, when your Honor ordered defendants, I

16    believe, it was back in 2018 to process DACA applications, and

17    I don't have the exact wording in front of me, but for those

18    who had already received DACA that defendants primarily

19    processed renewal applications but they also processed quote,

20    unquote, initial applications.  And the only initial

21    applications that defendants processed were those from

22    applicants who had received DACA and their DACA had expired

23    for more than a year they all went into the quote, unquote,

24    initial application category.

25          THE COURT:  I see.

PROCEEDINGS                          44

1          MR. EARLY:  And so, the Texas court enjoined us from

2     granting anything other than renewal applications.

3          THE COURT:  With the understanding that renewal had

4     a defined meaning, the one you just described.

5          MR. EARLY:  Yes.  And within, I believe we've also

6     submitted it here.  It's the declaration of Tracy Renaud which

7     was submitted to the Texas court within two weeks of its order

8     that raised this distinction.

9          THE COURT:  I see.  Okay.

10          MR. EARLY:  And that's been the Texas court's

11     understanding.  So for, again, the same reasons about the

12     scope of the Texas injunction --

13          THE COURT:  Thank you.

14          MR. EARLY:  -- we're reluctant to grant that relief.

15          THE COURT:  Thank you.

16          A few issues there.  A question of whether what's

17     before this court would authorize it to provide the kind of

18     relief that is being sought now by plaintiffs or whether you

19     would have to amend your complaint.  If the Court doesn't have

20     something before it upon which you could issue relief, then it

21     can't issue relief, that's number one.  And if there's

22     anything else that the defense has of raised that you'd like

23     to briefly comment on before we adjourn.

24          Mr. Lee.

25          MR. LEE:  Thank you, your Honor.

1            In response to the defendant's point about the

2     amended complaint, your Honor, plaintiffs are not required to

3     file an amended complaint here because we are merely seeking

4     that this court's prior order, which was entered to remedy the

5     HSA violation, is given proper effect for the 80,000 pending

6     applicants, your Honor.

7            As I said before, defendants violated the HSA.  This

8     Court found that this Court granted the remedies that it did

9     in December 2020 and we are just merely seeking to ensure that

10    those terms are followed, your Honor.

11           Finally, I point to the December 2020 order, your

12    Honor.  Your Honor had written that in addition to vacating

13    the Wolf memorandum, the Court orders additional relief, your

14    Honor.

15           Furthermore, in the discussion of the Final Rule

16    Timeline that defendants have brought up, their discussion

17    bolsters both my argument as well as attorney Hanson's

18    argument.  Publication -- the fact that the publication of the

19    rule may be soon is more reason to order processing so that

20    close to a hundred thousand are in the best position to access

21    it while it's still live and before it's shut down again which

22    defendants have no answer to whether that would happen.

23           Your Honor, because of this uncertainty, it is

24    necessary for processing to be done as much as possible so

25    that when this window is opened, and it may be brief, that as

1    many applicants as possible may go through those doors.

2              Your Honor, that discussion of the final rule, the

3    vague timeline of the final rule, also bolsters the argument

4    for interim relief.  They say that it's soon but they have no,

5    not even an understanding of when that might be, not even

6    months, not even years, we don't know it could be any of

7    those, it could be never.

8              Your Honor, these delays are the reason why

9    plaintiffs come to you today.  Class members have been waiting

10   for as long as 18 months and counting, your Honor.

11             As I mentioned, in the District of Massachusetts

12   that provided interim relief for special immigrant juveniles,

13   they relied on this delay to order interim relief as well as

14   deny a motion to stay by government defendants because they

15   claimed that they had some type of action that they were

16   preparing on a vague timeline as well.

17             Your Honor, defendants also focus on the word

18   "administer" in the Texas injunction, your Honor.  This

19   Court's order in December 2020 -- the validity of this Court's

20   order in December 2020 is not disputed by any party or court,

21   and thus, the Texas court does acknowledge that applications

22   are able to be accepted.

23             Furthermore, your Honor, the Government has cashed

24   the checks that have been submitted by these 80,000, 92,000,

25   close to a hundred thousand people.  Your Honor, that's

PROCEEDINGS                                    47

1    anywhere from $40 to $50 million that they have cashed and

2    will not be refunded to those people.  These actions are

3    currently deemed to be allowed and, therefore, this court, as

4    you correctly pointed out, which was the one to certify the

5    Batalla Vidal class has the authority to determine what other

6    steps are within the bounds that do not fall under the Texas

7    injunction, your Honor.  Just as accepting is okay, just as

8    cashing checks are okay, this court can determine what else is

9    okay in between accepting for consideration and granting

10   including interim relief and the steps that attorney Hanson

11   had outlined.

12            Your Honor, if I may conclude with discussion with

13   interim relief, again, I want to reiterate that these delays

14   are extremely, extremely difficult for these close to a

15   hundred thousand people who have to find some way, some way

16   outside of law, some way to find a way to support their

17   families, to keep living in their communities, your Honor.

18            If your Honor denies interim relief, we would ask

19   that you would do so without prejudice so that we may come

20   back to you, come back to this court if delays are further, if

21   delays are continued even further than it has already.

22            Thank you, your Honor.

23            THE COURT:  Thank you.  All right.  I deem the

24   motion submitted and I appreciate the arguments of both sides.

25            This has been, this is a very difficult circumstance

PROCEEDINGS                              48

1   that we're in and, once again, I really do hope that we will

2   have a solution that is legislative, if possible, so that we

3   can forgo having courts involved in what is fundamentally a

4   critical national policy discussion and the rights of so many

5   fine people are hanging in the balance.

6            So, again, I thank the applicants who are here.  I

7   thank the attorneys who are working so diligently for these

8   individuals and the Court will give a lot of careful attention

9   to the arguments that have been made.

10           So, again, thank you, everyone, have a nice day.

11

12           (Whereupon, the matter was concluded.)

13

14                    *     *     *     *     *

15

16

17

18

19

20

21

22

23

24

25